UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JULIE AVERBACH FOR THE ESTATE OF STEVEN AVERBACH, et al.,

Plaintiffs,

- v -

CAIRO AMMAN BANK,

Defendant.

No. 1:19-cv-00004-GHW-KHP

**DEFENDANT CAIRO AMMAN BANK'S MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
Phone: (212) 335-4500
Fax: (212) 335-4501

*Counsel for Defendant Cairo Amman Bank*

**Table of Contents**

**Page**

ARGUMENT ..... 1

I. PLAINTIFFS FAIL TO MAKE A PRIMA FACIE SHOWING THAT THIS COURT HAS PERSONAL JURISDICTION OVER CAB. ..... 1

A. CAB Had Insufficient Contacts with New York to Warrant the Exercise of Specific Personal Jurisdiction. ..... 1

B. The Twenty-Three Alleged Transfers Lack a Plausibly Substantial Connection to Plaintiffs' Aiding and Abetting Claim under 28 U.S.C. § 2333(d). ..... 4

II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR LIABILITY UNDER JASTA. ..... 6

A. Plaintiffs Have Not Adequately Plead the "General Awareness" Element of Aiding and Abetting Liability. ..... 7

B. Plaintiffs Have Not Adequately Plead the "Substantial Assistance" Element of Aiding and Abetting Liability. ..... 9

III. THE STEINHERZ FAMILY'S INJURIES WERE NOT REASONABLY FORESEEABLE. ..... 10

IV. JULIE AVERBACH, NEVENKA GRITZ AND MATANYA NATHANSEN LACK STANDING. ..... 10

CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amigo Foods Corp. v. Marine Midland Bank-New York*,
39 N.Y.2d 391 (1976) ....................2, 3, 4

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
305 F.3d 120 (2d Cir. 2002)....................6

*Boltax v. Joy Day Camp*,
67 N.Y.2d 617 (1986) ....................10

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)....................4

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010)....................2

*In re Farm Family Casualty Ins. Co. (Trapani)*,
301 A.D.2d 740 (3d Dep't 2003) ....................10

*Gill v. Arab Bank, plc*,
893 F. Supp. 2d 474 (E.D.N.Y. 2012) ....................6

*Goldberg v. UBS AG*,
660 F. Supp. 2d 410 (E.D.N.Y. 2009) ....................6

*Hau Yin To v. HSBC Holdings, PLC*,
700 F. App'x 66 (2d Cir. 2017) ....................2, 4

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010)....................6

*Jesner v. Arab Bank, plc*,
138 S. Ct. 1386 (2018)....................10

*Licci v. Lebanese Canadian Bank*,
20 N.Y.3d 327 (2012) ....................3

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013).................... *passim*

*Linde v. Arab Bank, plc*,
882 F.3d 314 (2d Cir. 2018)....................6, 9

*Linde v. Arab Bank, plc*,
97 F. Supp. 3d 287 (E.D.N.Y. 2015) ....................6

*Miller v. Arab Bank, plc*,
372 F. Supp. 3d 33 (E.D.N.Y. 2019) ....................6

*Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016)....................2, 3, 4, 6

*Rushaid v. Pictet & Cie*,
28 N.Y.3d 316 (2016) ....................2, 3, 6

*Siegel v. HSBC N. Am. Holdings, Inc.*,
933 F.3d 217, 2019 WL 3719976 (2d Cir. Aug. 8, 2019) .................... *passim*

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018)....................5

*Strauss v. Credit Lyonnais, S.A.*,
379 F. Supp. 3d 148 (E.D.N.Y. 2019) ....................7, 8

*Strauss v. Credit Lyonnais, S.A.*,
925 F. Supp. 2d 414 (E.D.N.Y. 2013) ....................6, 7, 8

*Walden v. Fiore*,
571 U.S. 277 (2014)....................4

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016)....................5, 6

*Weiss v. Nat'l Westminster Bank plc*,
453 F. Supp. 2d 609 (E.D.N.Y. 2006) ....................8

*Weiss v. National Westminster Bank PLC*,
381 F. Supp. 3d 223 (E.D.N.Y. 2019) ....................7, 8

**Statutes**

18 U.S.C. § 2333(a) ....................10

18 U.S.C. § 2339B ....................6, 7

28 U.S.C. § 2333(d) ....................4, 5, 6

**Other Authorities**

Antiterrorism Act of 1990: Hearing on S. 2465 Before the Subcomm. on Courts & Admin. Practice of the S. Comm. on the Judiciary, at 46, 101st Cong. 84 (1990)....................10

Cairo Amman Bank ("CAB" or the "Bank") respectfully submits this reply memorandum of law in support of its motion to dismiss the Complaint.[1]

## ARGUMENT

### I. Plaintiffs Fail to Make a Prima Facie Showing that this Court Has Personal Jurisdiction over CAB.

CAB cannot be subjected to personal jurisdiction in a New York court based solely on the passive receipt of fewer than two dozen incoming wire transfers originated by unrelated third parties that were sent to its New York correspondent bank account nearly two decades ago and had nothing to do with the attacks giving rise to Plaintiffs' injuries. In their response, Plaintiffs: (i) do not address the details, facts, or circumstances surrounding these alleged transfers; (ii) do not explain how these transfers (which are CAB's *only jurisdictionally relevant conduct*) are connected to any alleged act of terrorism; and (iii) do not address the due process implications of their arguments. Because no legally or factually sufficient basis exists to exercise personal jurisdiction over CAB, the Complaint must be dismissed.

#### *A. CAB Had Insufficient Contacts with New York to Warrant the Exercise of Specific Personal Jurisdiction.*

In their brief, Plaintiffs fail to isolate and examine CAB's forum-related conduct, conflating it with conduct that is entirely unrelated to New York—*e.g.*, the banking services CAB provided in the Middle East. *See* Opp. at 5-8. To be clear, *only* the alleged incoming transfers through CAB's Citibank correspondent account are jurisdictionally relevant here and are insufficient to show CAB purposefully availed itself of the privilege of transacting business in New York. All other allegations about foreign fund transfers, terrorist attacks, banking services, and bank accounts—*i.e.*, the bulk of the allegations in the Complaint—are entirely irrelevant to

[1] Contrary to the assertion in Plaintiffs' brief, CAB is not a sister bank of Arab Bank plc and no such allegation appears in the Complaint.

the threshold question of jurisdiction because those allegations do not relate to New York.[2] *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

The only relevant transfers for purposes of determining specific jurisdiction are the handful of transfers identified in the Complaint that were sent to CAB's correspondent account in New York by third-party banks. Those originating banks, like the originating bank in *Amigo Foods Corp. v. Marine Midland Bank-New York*, 39 N.Y.2d 391 (1976), unilaterally chose the route of transfer without any volitional conduct on CAB's part. There is no allegation in the Complaint that CAB directed that the transfers be sent to its New York correspondent account.[3] As set forth in CAB's moving brief, only when a defendant bank *purposely* selects and uses a correspondent bank to effectuate a transaction out of which plaintiff's claim arises, can it be held to have purposefully availed itself of transacting business in New York and subject to jurisdiction here. That is not the case here. Accordingly, the pleading fails to satisfy the very first prong required to establish specific jurisdiction – that of purposeful availment. *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 67–68 (2d Cir. 2017) (summary order); *Amigo Foods*, 39 N.Y.2d 391.

Plaintiffs urge this Court to adopt a new standard, found nowhere in case law, that the passive receipt of incoming transactions to a bank's New York correspondent account is sufficient to confer personal jurisdiction, even if the defendant played no role in directing that transfer be sent to its correspondent account. Plaintiffs cite *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013), *Rushaid v. Pictet & Cie*, 28 N.Y.3d 316 (2016), and *Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56 (S.D.N.Y.

[2] *Compare* Compl. ¶¶ 579, 580, 764, 769, 772, 776 (jurisdictionally relevant allegations), *with id.* ¶¶ 558-62, 730, 754, 804 (examples of jurisdictionally irrelevant allegations about wire transfers and banking services).

[3] The Complaint also expressly contradicts the assertion in Plaintiffs' brief that "no other 'route[]' appear[s] to [] exist[]" for making U.S. dollar-denominated transfers to CAB customers (Opp. at 11). The Complaint identifies multiple U.S. dollar-denominated transfers, for example by the Al Aqsa Foundation, where originating banks chose to transfer U.S. dollars to CAB customers through routes other than CAB's correspondent accounts in New York. *See e.g.* Compl. ¶ 559.

2016) ("*Arcapita*"), as support for this novel proposition and attempt to distinguish *Amigo Foods*. Opp. at 12-13. But those courts announced no such rule. In each case, the answer to whether the defendant's use of its correspondent account was "purposeful" turned on whether the defendant bank was alleged to have *directed* the relevant transfers through its New York correspondent account. If it did not, its "use of the account . . . was essentially adventitious – i.e. it was not even [its own] doing," and insufficient to establish jurisdiction. *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 338 (2012) ("*Licci III*").

In *Licci III* and *IV*, the courts stressed that the foreign defendant bank "*deliberately chose* to process" fund transfers at issue through its New York correspondent account, rather than elsewhere—perhaps because it was the "cheaper and easier" option. *Licci IV*, 732 F.3d at 171; *Licci III*, 20 N.Y.3d at 340. In *Rushaid*, the court found that the defendant bank's correspondent account was not the "passive recipient" of funds "unilaterally" transferred by a third party to its customer, as is the case here. Rather, the Court found that the defendant bank "orchestrated" the money-laundering scheme at issue and, together with its customers, *directed* that bribes paid by third party vendors be made through its New York correspondent account as an "integral" part of that scheme. 28 N.Y.3d at 328 ("It is precisely the fact *that defendants chose New York*, when other jurisdictions were available, that makes the New York connection 'volitional' and not 'coincidental.' . . . [H]ere the vendors' choice to deposit money in New York was precisely part of defendants' design, and not a 'unilateral' decision at all.") (emphasis added). Similarly, in *Arcapita*, Judge Daniels held the defendant banks subject to jurisdiction because, "unlike the defendant in *Amigo Foods*, the Banks' contacts with New York were not established passively through another entity's unilateral action. . . . Rather the selection of the New York correspondent bank accounts that received the funds *originated with* the Banks; they *actively directed* the funds

at issue into those New York accounts." 549 B.R. at 69 (emphasis in original).[4] As Judge Daniels noted, the New York Court of Appeals in *Amigo Foods* expressly declined to exercise jurisdiction where, as here, it was the originating bank's unilateral choice to send funds through the defendant's New York correspondent account, rather than a volitional choice by the foreign bank.

As the very cases cited by Plaintiffs make clear, unilateral decisions of other banks made without CAB's prior knowledge, approval, or direction are insufficient to establish jurisdiction over CAB. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (explaining that "the unilateral activity of another party or a third person" cannot support personal jurisdiction).[5]

### *B. The Twenty-Three Alleged Transfers Lack a Plausibly Substantial Connection to Plaintiffs' Aiding and Abetting Claim under 28 U.S.C. § 2333(d).*

Even if CAB's passive receipt of funds constituted purposeful availment—which it does not—jurisdiction would still be lacking because Plaintiffs fail to plausibly allege that a substantial and constitutionally sufficient connection exists between their *claims* and CAB's jurisdictionally relevant conduct—*i.e.*, the incoming New York correspondent banking transactions.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (internal quotations omitted). At bottom, "the defendant's *suit-related conduct* must create a substantial connection with the forum State" before a court can exercise specific personal jurisdiction. *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir.

[4] In *Arcapita*, the defendant banks executed investments for the plaintiff pursuant to the terms of Placement Agreements the banks drafted. In those agreements, the banks selected U.S. dollars as the currency in which to execute the transactions and designated the New York correspondent bank accounts to receive the funds from the plaintiff. 549 B.R. at 61, 69.

[5] Plaintiffs attempt to manufacture some volitional conduct by CAB by arguing that "CAB affirmatively [1] chose to offer its customers . . . the option of maintaining U.S. dollar-denominated accounts in the Palestinian Territories and [2] chose to maintain correspondent bank accounts in New York to facilitate the settling and clearing of its dollar-denominated transactions." Opp. at 13. But neither "choice" is relevant. Offering customers bank accounts in the Palestinian Territories, including U.S.-dollar accounts, is not New York forum-related conduct, *Licci IV*, 732 F.3d at 170, and merely maintaining a correspondent account in New York does not give rise to jurisdiction. *See, e.g.*, *Amigo Foods*, 39 N.Y.2d at 396; *Hau Yin To*, 700 F. App'x at 67; *Arcapita*, 549 B.R. at 65-66, 69.

2018) (emphasis added). And "suit-related conduct" is limited to "conduct that could have subjected [a foreign defendant] to liability under the ATA"—not any New York–related conduct. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016).[6]

Plaintiffs have not plausibly shown that any of the twenty-three transfers sent to CAB's Citibank correspondent account aided and abetted, or were related in any way, to the terrorist attacks at issue. Compl. ¶¶ 579-81, 764-65, 769, 772, 776. Of the five alleged CAB customers who were the intended beneficiaries of these transfers, only one, Abbas al-Sayed, is alleged to have any involvement at all in an attack, and the transfers to him pre-dated that attack, the March 27, 2002 Park Hotel bombing, by ten months, a passage of time that the Second Circuit recently held made implausible a similar aiding and abetting claim against HSBC. *See Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 2019 WL 3719976, at *6 (2d Cir. Aug. 8, 2019) ("HSBC's decision not to provide banking services to ARB for the ten months preceding the November 9 Attacks makes it implausible under the circumstances that HSBC had knowingly assumed a role in the Attacks."). None of the other alleged CAB customers are alleged to have had any involvement in planning, authorizing or committing the attacks, rendering any transfers to them through New York irrelevant to Plaintiffs' aiding and abetting claims under 18 U.S.C. § 2333(d).[7] Compl. ¶¶ 579-81, 769, 772, 776.

---

[6] In assessing whether a "substantial connection" exists, some courts have asked only whether an element of the plaintiffs' claims "arise[] from the New York contacts," *Licci IV*, 732 F.3d at 169, but others have held that, where a bank "has had only limited contacts with the state" it "will be subject to suit in that state *only if* the plaintiff's injury was proximately caused by those contacts." *SPV Osus*, 882 F.3d at 344 (emphasis added). Although this proximate cause standard should apply here given CAB's limited contacts with New York, Plaintiffs' allegations are insufficient to make out a prima facie case of personal jurisdiction under either standard.

[7] While Plaintiffs spend significant time discussing the alleged relationship between the Holy Land Foundation ("HLF") and Hamas, there is no allegation that HLF "committed, planned or authorized" any of the attacks at issue here. Furthermore, the two transfers alleged in the Complaint to have been sent to CAB's Citibank account occurred in December 1999 and January 2001, at least twelve months to two years before any of the attacks at issue here occurred. The plausibility of any connection between the transfers and terrorism is also negated by HLF's use of these funds for lawful purposes, such as funding "Palestinian refugee camps in Lebanon to build Hamas's support within that community." Compl. ¶ 593; *Siegel*, 2019 WL 3719976, at *5-6.

Accordingly, the Complaint fails to allege a substantial connection between the twenty-three transfers—again, the only jurisdictionally relevant conduct—and Plaintiffs' claim. As such, there is no culpable "suit-related conduct" in New York that permits the Court to exercise jurisdiction over CAB here. *Waldman*, 835 F.3d at 344.[8]

**II. Plaintiffs Have Failed to State A Claim for Liability Under JASTA.**

In both their Complaint and Opposition, Plaintiffs have conflated the requirements for pleading "material support" under § 2339B with the stricter aiding and abetting standard of § 2333(d). Although Plaintiffs purport to criticize CAB for failing to cite *Miller v. Arab Bank plc*, 372 F. Supp. 3d 33 (E.D.N.Y. 2019), Plaintiffs' brief, while citing the Second Circuit's decisions in both *Siegel* and *Linde v. Arab Bank, plc*, 882 F.3d 314 (2d Cir. 2018), disregards their central holdings that allegations of material support, such as those alleged in the Complaint, are insufficient to state a claim under JASTA. The Second Circuit's critical distinction between "material support" under §2339B for primary liability and the stricter requirements of aiding and abetting liability under § 2333(d), which the Complaint fails to plead, is fatal to Plaintiffs' claims.[9]

[8] Plaintiffs' allegations here are thus unlike those in *Licci IV*, *Rushaid* and *Arcapita*, where the courts concluded that the defendant banks repeatedly used their New York correspondent bank account "*to achieve the wrong complained of in this suit*." *Licci IV*, 732 F.3d at 173 (emphasis added); *Rushaid*, 28 N.Y.3d at 331 (same); *Arcapita*, 549 B.R. at 67 (same). And Plaintiffs' rely on *Licci IV* but do not address the due process implications of exercising jurisdiction over CAB. *Licci* is not controlling because the constitutionality of exercising jurisdiction "varies inversely with the strength of the 'minimum contacts' showing." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002).

[9] Although Plaintiffs claim this case is "factually analogous" to *Miller* (it is not), even they recognize that the two most factually analogous cases are, in fact, the actions they themselves brought in *Strauss* and *Weiss* which involve virtually the same attacks, charities and individuals that are the basis of their aiding and abetting claim here. As set forth *infra*, the Court in those cases denied as "futile" Plaintiffs' request to amend their complaint to assert a claim under JASTA. Plaintiffs are left to argue that the Court's decision was erroneous, but cite as support pre-*Siegel* and pre-JASTA cases upholding primary liability based on *material support*, rather than the slew of recent authorities, including *Siegel*, dismissing secondary liability claims under the stricter requirements for pleading aiding and abetting liability under the ATA . *See* Opp. at 20, 22, *e.g.*, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 31 (2010) (analyzing 18 U.S.C. § 2339B); *Linde v. Arab Bank, plc*, 97 F. Supp. 3d 287, 334 (E.D.N.Y. 2015) (citing to 18 U.S.C. § 2339B's material support provision); *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 435 (E.D.N.Y. 2013) (addressing primary liability claims); *Gill v. Arab Bank, plc*, 893 F. Supp. 2d 474 (E.D.N.Y. 2012) (assessing causation requirement for material support); *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 429 (E.D.N.Y. 2009) (discussing material support and primary liability).

*A. Plaintiffs Have Not Adequately Plead the "General Awareness" Element of Aiding and Abetting Liability.*

The Complaint fails to adequately plead the "general awareness" element of aiding and abetting liability. Citing *Linde*, the Second Circuit held in *Siegel* that Plaintiffs must allege plausible facts that CAB was generally aware that "by providing financial services to a client, it was thereby playing a 'role' in the violent or life-endangering activities," in contrast to the "mens rea required to establish material support in violation of 18 U.S.C. § 2339B, which requires only knowledge of the organization's connection to terrorism, not intent to further its terrorist activities or awareness that one is playing a role in those activities." 2019 WL 3719976, at *5.

As set forth in CAB's moving brief at pages 17-20, the Complaint does not allege that any of the individuals who committed the attacks were clients of the bank, nor does it allege that the Bank was aware of any fund transfers to those individuals. It also does not allege that any alleged CAB customer—be it a charity or an individual—other than Abbas Al-Sayed was involved in committing, planning or authorizing the attacks. Nor could it. Plaintiffs' claims here are based on virtually the same attacks that they asserted in *Strauss v. Credit Lyonnais, S.A.*, 379 F. Supp. 3d 148 (E.D.N.Y. 2019) and *Weiss v. National Westminster Bank PLC*, 381 F. Supp. 3d 223 (E.D.N.Y. 2019). In each of those cases, the court dismissed Plaintiffs' claims of both primary and aiding and abetting liability against the defendant banks, finding that the plaintiffs "offer[ed] no evidence, and their experts d[id] not opine, that the 13 Charities participated in, planned, trained the perpetrators of, requested that someone carry out, or were the cause of the attacks giving rise to the Plaintiffs' claims." *Strauss*, 379 F. Supp. 3d at 159, 164; *Weiss*, 381 F. Supp. 3d at 234, 239.[10] It also rejected Plaintiffs' attempt to impose liability based on the assertion that certain of

[10] The charities and organizations referenced in *Strauss* and *Weiss* and identified in the Complaint here include: the Islamic Charitable Society – Hebron; Al Jami'ya Al-Islamiya; Jenin Zakat Committee; Al Mujama Al Islami; Nablus Zakat Committee; Ramallah Al Bireh Zakat Committee; al Salah Islamic Society in the Gaza Strip; Al-Tadamun Charitable

the banks' alleged customers "were instrumental in organizing and distributing payments to families of suicide bombers and other terrorists." *Strauss*, 379 F. Supp. 3d at 157; *Weiss*, 381 F. Supp. 3d at 232. Plaintiffs make a similar allegation here about the Arab Liberation Front and al-Ansar Society, but, as in *Strauss* and *Weiss*, cannot and do not allege that CAB made any such payments to the perpetrators (or their families) of the attacks at issue in this case.[11]

Even as to Al-Sayed, there is no allegation in the Complaint to support a plausible inference that the Bank was generally aware that by providing banking services to him, it was playing a role in terrorist activities. Al-Sayed was not on any designated terror list, and as noted in Section I, *supra*, the last alleged banking transaction for him pre-dated by 10 months the attack with which he was allegedly involved, a passage of time which the Second Circuit in *Siegel* sensibly held was insufficient to sustain a similar JASTA claim against HSBC. 2019 WL 3719976, at *6.

As the Second Circuit held in *Siegel*, when faced with similar allegations regarding HSBC and its customer:

> At most, the allegations, even when viewed in the light most favorable to the plaintiffs, assert that HSBC was aware that [Al-Rajhi Bank] was believed by some to have links to [al-Qaeda in Iraq] and other terrorist organizations. Without further allegations that would support a conclusion that HSBC knowingly played a role in the terrorist activities the [Third Amended Complaint] pleadings are insufficient to state a claim for aiding-and-abetting liability under JASTA.

---

Society; Tulkarem Zakat Committee; and Al-Wafa Charitable Society. Although the Complaint here asserts one additional attack, the Ariel Bombing, it does not allege any connection between that attack and any of the charities. CAB closed the account of an additional charity, HLF, *the day after* it was designated an SDGT on December 4, 2001, further undermining any plausible inference that CAB intended to play any role in HLF's terrorist activities. *See Weiss v. Nat'l Westminster Bank plc*, 453 F. Supp. 2d 609, 626 n. 12 (E.D.N.Y. 2006) ("[D]efendant is correct that designations of organizations as terrorist groups which occurred after the relevant bank transfers cannot demonstrate that [the bank] had knowledge of the group's terrorist identity when it provided material support to an FTO….").

[11] Similarly, Plaintiffs bare allegations that there were alleged transfers from CBSP, Interpal, and the Union of Good to various charities alleged to be CAB customers does not satisfy the general awareness standard. *See e.g.* Compl. ¶ 729. Those organizations are not alleged to be customers of CAB. Moreover, as Plaintiffs conceded, and the Court found in *Strauss* and *Weiss*, there was no evidence that any of those transfers "were used to perpetrate any of the [terrorist attacks]," and do not plausibly demonstrate an intent to play a role in Hamas' terrorist activities. *See Weiss*, 381 F. Supp. 3d at 232; *Strauss*, 379 F. Supp. 3d at 158.

*Id.* at *5. So, too, here. At most, Plaintiffs' allegations that "Charities are part of HAMAS" (Opp. at 4-6) or that "CAB knowingly provided banking services to notorious HAMAS Leaders and Institutions" (*Id.* at 8-9), when viewed in their most favorable light, show only that CAB might have been aware that its customers *were believed by some,* to have links to Hamas but are insufficient to demonstrate that CAB knowingly played a role in terrorist activities by Hamas.

*B. Plaintiffs Have Not Adequately Plead the "Substantial Assistance" Element of Aiding and Abetting Liability.*

The Complaint also fails to allege plausible facts to satisfy the "substantial assistance" element of aiding and abetting liability under JASTA. In *Siegel*, the Second Circuit analyzed the six factors[12] required for substantial assistance and rejected Plaintiffs' attempt to bring a JASTA claim against HSBC based on similar allegations. 2019 WL 3719976, at *6. *First*, here, as in *Siegel,* "plaintiffs have not plausibly alleged that [CAB] encouraged the…Attacks." *See id. Second*, CAB did not provide assistance to anyone who committed, planned or authorized the attacks, except for the transaction with Al-Sayed that occurred a full ten months before the Park Hotel bombing and before his name appeared on any terror list. At most, Plaintiffs have alleged that CAB provided material support to individuals and entities "believed by some to be linked to" Hamas. *Third*, Plaintiffs concede that CAB was not "present" during the attacks. Opp. at 24. *Fourth*, Plaintiffs make no non-conclusory allegations that CAB had any relationship with Hamas, itself, rather the Complaint alleges that CAB provided banking services to individuals and entities alleged to have some connection to Hamas. *Fifth*, as stated in Section II.A., *supra*, Plaintiffs have not plausibly alleged that CAB knowingly assumed a role in Hamas' terrorist activities. *Sixth*, although Plaintiffs allege that the duration of CAB's banking services to its customers was "for

[12] The six substantial assistance factors are: (1) the nature of the act encouraged; (2) the amount of assistance given by defendant; (3) defendant's presence or absence at the time of the torts; (4) defendant's relation to the principal; (5) defendant's state of mind; and (6) the period of defendant's assistance. *See Linde*, 882 F.3d at 329.

years," (*Id.* ¶ 813), so, too, was HSBC's in *Siegel*. As the Court held in *Siegel, and as is true here*, Plaintiffs fail to "advance any non-conclusory allegation that [Hamas] received any of those funds or that [CAB] knew or intended that [Hamas] would receive the funds." 2019 WL 3719976, at *6.

Having failed to plead adequately either the "general awareness" or "substantial assistance" elements of aiding and abetting liability under JASTA, the Complaint should be dismissed.

## III. The Steinherz Family's Injuries Were Not Reasonably Foreseeable.

The Steinherz family's injuries are not fairly traceable to CAB's banking services. Plaintiffs liken Ms. Steinherz's injuries from her fall to that of a plaintiff who was injured running from sparks raining down from a power line. *See* Opp. at 25 (citing *In re Farm Family Casualty Ins. Co. (Trapani)*, 301 A.D.2d 740, 740-42 (3d Dep't 2003)). But Ms. Steinherz was not fleeing a scene of imminent danger. To the contrary, Ms. Steinherz was walking home *after* the attack and *after* deciding it was safe to leave the restaurant where they were dining. *See* Compl. ¶¶ 465-67. Her decision to run—after seeing a "crazed-looking man" somewhere along the way—was an intervening cause of her injury, absolving CAB of any alleged liability. *See Boltax v. Joy Day Camp*, 67 N.Y.2d 617, 619-20 (1986) (holding that diving into the shallow end of the pool was the intervening cause of an injury, relieving the owner of the pool from premises liability).

## IV. Julie Averbach, Nevenka Gritz and Matanya Nathansen Lack Standing.

18 U.S.C. § 2333(a) confers standing on "any *national* of the United States injured . . . by reason of an act of international terrorism, or his or her estate, survivors, or heirs" (emphasis added). These three Plaintiffs are foreign nationals and, as such, have no standing under the ATA to assert claims for their *own* injuries, nor can they so end run the Alien Tort Statute.[13]

[13] *See* Antiterrorism Act of 1990: Hearing on S. 2465 Before the Subcomm. on Courts & Admin. Practice of the S. Comm. on the Judiciary, at 46, 101st Cong. 84 (1990) (expanding definition of "U.S. National" to include family members who would bring an action "*on behalf of* a slain or injured relative") (emphasis added); *Jesner v. Arab Bank, plc*, 138 S. Ct. 1386, 1433 (2018) (stating that the ATA, "created a civil cause of action for *U.S. nationals* injured abroad by an act of international terrorism.") (emphasis added) (Sotomayor, J. dissenting).

**CONCLUSION**

For the foregoing reasons and those stated in CAB's moving brief, the Court should grant Defendant's motion and dismiss Plaintiffs' claim in its entirety, with prejudice.

Dated: September 6, 2019

Respectfully submitted,

**DLA PIPER LLP (US)**

/s/ *Jonathan D. Siegfried*

Jonathan D. Siegfried
jonathan.siegfried@dlapiper.com
Brett Ingerman
brett.ingerman@dlapiper.com
DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Courtney G. Saleski
courtney.saleski@dlapiper.com
One Liberty Place
1650 Market Street, Suite 5000
Philadelphia, PA 19103
(215) 656-3300

*Counsel for Defendant Cairo Amman Bank*