UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------
                                                    :
JULIE AVERBACH FOR THE ESTATE OF                    :
STEVEN AVERBACH, *et al.*,                          :
                            Plaintiff,              :
                                                    :
   - v -                                            :   1:19-CV-00004 (GHW) (KHP)
                                                    :
CAIRO AMMAN BANK,                                   :
                            Defendant.              :
                                                    :
------------------------------------------------------------------------------

**CAIRO AMMAN BANK'S MEMORANDUM OF LAW IN RESPONSE TO
PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE PARKER'S
<u>REPORT AND RECOMMENDATION OF JANUARY 21, 2020</u>**

**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
Phone:  (212) 335-4500
Fax:  (212) 335-4501

*Counsel for Defendant Cairo Amman Bank*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ......................................................................................................................4

I.      THE LEGAL STANDARD FOR THIS COURT'S REVIEW............................................4

II.     RESPONSES TO PLAINTIFFS' OBJECTIONS ............................................................5

        A.      Response to Objection 1: Magistrate Judge Parker Applied The Correct Legal Standard. ...............................................................................6

        B.      Response to Objections 3-8: Magistrate Judge Parker Was Entirely Correct and Did Not Clearly Err In Holding That Plaintiffs Failed to Meet The General-Awareness Element Of Their Claim...................................9

        C.      Response to Objection 9: Magistrate Judge Parker Properly Applied The Six *Halberstam* Factors In Evaluating Substantial Assistance. ............................17

        D.      Response to Objection 2: Magistrate Judge Parker Correctly Recommends Dismissing Certain Foreign Nationals' Claims For Lack Of ATA Standing. ......................................................................................20

CONCLUSION....................................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...................................................................................................6

*Averbach v. Cairo Amman Bank,*
  No. 19 Civ. 0004 (GHW) (KHP), 2020 WL 486860 (S.D.N.Y. Jan. 21, 2020)............. *passim*

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)...................................................................................................6

*Boim v. Holy Land Found. for Relief and Dev.,*
  549 F.3d 685 (7th Cir. 2008) ............................................................................... 16-17

*Copeland v. Twitter, Inc.,*
  352 F. Supp. 3d 965 (N.D. Cal. 2018) ...................................................................17

*Erickson v. Pardus,*
  551 U.S. 89 (2007) (per curiam) ..............................................................................6

*In re Facebook, Inc., Initial Public Offering Derivative Litig.,*
  797 F.3d 148 (2d Cir. 2015)......................................................................................6

*Freeman v. HSBC Holdings PLC,*
  No. 14 Civ. 6601 (PKC) (CLP), 2019 WL 4452364 (E.D.N.Y. Sept. 16, 2019) .................1, 5

*Halberstam v. Welch,*
  705 F.2d 472 (D.C. Cir. 1983)................................................................................18

*Hirshfeld v. The Bank of China Ltd.,*
  No. 18 Civ. 1982 (KPF) (S.D.N.Y. Aug. 9, 2019) ...............................................10

*Holder v. Humanitarian Law Project,*
  561 U.S. 1 (2010)....................................................................................................16

*Honickman v. BLOM Bank SAL,*
  No. 19 Civ. 00008 (KAM) (SMG), 2020 WL 224552 (E.D.N.Y. Jan. 14,
  2020) ............................................................................................................ *passim*

*Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.,*
  No. 07 Civ. 6865 (LTS) (GWG), 2008 WL 4810043 (S.D.N.Y. Nov. 3, 2008) ......................4

*Kaplan v. Lebanese Canadian Bank, SAL,*
  405 F. Supp. 3d 525 (S.D.N.Y. 2019)............................................................ *passim*

*Kemper v. Deutsche Bank AG*,
    911 F.3d 363 (7th Cir. 2018) ............................................................17

*Linde v. Arab Bank, PLC*,
    385 F. Supp. 2d 571 (E.D.N.Y. 2005) ..............................................15

*Linde v. Arab Bank, PLC*,
    882 F.3d 313 (2d Cir. 2018)................................................. *passim*

*Miller v. Arab Bank, PLC*,
    372 F. Supp. 3d 33 (E.D.N.Y. 2019) .................................9-10, 14-15

*Lelchook v. Islamic Rep. of Iran*,
    393 F. Supp. 3d 261 (E.D.N.Y. 2019) ...............................................10

*O'Sullivan v. Deutsche Bank AG*,
    No. 17-cv-8709, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019)...............1, 7, 13

*Ortiz v. Barkley*,
    558 F. Supp. 2d 444 (S.D.N.Y. 2008).................................................4

*Retana v. Twitter, Inc.*,
    No. 19 Civ. 0359 (JJB), 2019 WL 6619218 (N.D. Tx. Dec. 5, 2019).............17

*Sci. Components Corp. v. Sirenza Microdevices, Inc.*,
    No. 03 Civ. 1851 (NGG) (RML), 2006 WL 2524187 (E.D.N.Y. Aug. 30,
    2006) ...........................................................................4

*Siegel v. HSBC Bank USA, N.A.*,
    No. 17 Civ. 6593 (DLC), 2018 WL 3611967 (S.D.N.Y. July 27, 2018)...........13

*Siegel v. HSBC N. Am. Holdings, Inc.*,
    933 F.3d 217 (2d Cir. 2019)................................................. *passim*

*Strauss v. Credit Lyonnais. S.A.*,
    379 F. Supp. 3d 148 (E.D.N.Y. 2019) .................................... *passim*

*Taamneh v. Twitter, Inc.*,
    343 F. Supp. 3d 904 (N.D. Cal. 2018) ...............................................18

*Vega v. Artuz*,
    No. 97 Civ. 3775 (LTS) (JCF), 2002 WL 31174466 (S.D.N.Y. Sept. 30, 2002) ....4

*Weiss v. National Westminster Bank PLC*,
    381 F. Supp. 3d 223 (E.D.N.Y. 2019) .................................... *passim*

*Wiltz v. New York University*
  No. 19 Civ. 3406 (GHW) (SDA), 2020 WL 614658 (S.D.N.Y. Feb. 10, 2020)
  (Woods, J.)......................................................................................................................4

**Statutes**

18 U.S.C. § 2339B .................................................................................................................10

18 U.S.C. § 2333(d)(2) ...........................................................................................................8

28 U.S.C. § 636(b)(1) .............................................................................................................4

N.Y. E.P.T. § 5-4.1 ................................................................................................................20

N.Y. Surr. Ct. Proc. Act § 707 ..............................................................................................20

**Rules**

Fed. R. Civ. P. 12(b)(1)................................................................................................1, 4, 22

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 4, 6, 22

**Other Authorities**

Antiterrorism Act of 1990: Hr'g on S.2465 Before the Subcomm. On Courts &
  Admin. Practice if the S. Comm. on the Judiciary, at 46 101st Cong. 84 (1990)
  (statement of Sen. Strom Thurmond)..............................................................................21

Cairo Amman Bank ("CAB") respectfully submits this memorandum of law in response to Plaintiffs' Objections to the Report and Recommendation ("R&R") of Magistrate Judge Katharine H. Parker and requests that the Court enter an order dismissing the Complaint, as recommended in the R&R, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *Averbach v. Cairo Amman Bank*, No. 19 Civ. 0004 (GHW) (KHP), 2020 WL 486860, at *9-17 (S.D.N.Y. Jan. 21, 2020).

## PRELIMINARY STATEMENT

In her well-reasoned opinion recommending dismissal of the Complaint, Magistrate Judge Parker faithfully applied controlling Circuit precedent and followed the rulings of sister courts that rejected attempts, such as this, to hold commercial banks liable as aiders and abettors of deplorable acts of terrorism. *Averbach*, 2020 WL 486860, at *11-17 (citing, *inter alia*, *Siegel v. HSBC N. Am. Holdings, Inc.,* 933 F.3d 217 (2d Cir. 2019), *Linde v. Arab Bank, PLC,* 882 F.3d 313 (2d Cir. 2018), *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525 (S.D.N.Y. 2019), *Weiss v. National Westminster Bank PLC*, 381 F. Supp. 3d 223 (E.D.N.Y. 2019), *O'Sullivan v. Deutsche Bank AG*, No. 17-cv-8709, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019)). *See also Honickman v. BLOM Bank SAL,* No. 19 Civ. 00008 (KAM) (SMG), 2020 WL 224552 (E.D.N.Y. Jan. 14, 2020); *Freeman v. HSBC Holdings PLC,* No. 14 Civ. 6601 (PKC) (CLP), 2019 WL 4452364 (E.D.N.Y. Sept. 16, 2019).

The common denominator in all of these cases is the courts' refusal to allow allegations of arms-length banking services to replace what the law requires: factual, non-conclusory allegations supporting a plausible inference that the bank defendants were (i) generally aware that by providing routine financial services to customers (later alleged by some to have some kind of affiliation with a terrorist group), they were assuming a role in that terror group's violent or life-endangering activities, and (ii) knowingly and substantially assisting those terrorist activities.

As the Magistrate Judge found, the Complaint failed to allege any facts supporting a plausible inference that CAB was "generally aware" that it was playing a role in Hamas' violent or life-endangering activities or that it knowingly provided substantial assistance to Hamas' terrorist activities, much less those that allegedly caused Plaintiffs' injuries. For example, the Complaint does not allege that any of the individuals who committed the attacks (or Hamas itself) were customers of the Bank. Nor does the Complaint contain any non-conclusory allegations that: (i) CAB was aware of any alleged connection between its Alleged Customers[1] and Hamas; (ii) even if it were so aware (which it was not), the Bank intended to further Hamas' violent or life-endangering activities; (iii) CAB encouraged the attacks which injured Plaintiffs; (iv) CAB knowingly processed any funds that actually went to Hamas or intended that Hamas receive any such funds; or (v) any of CAB's Alleged Customers engaged in violent activities or, with the exception of one individual, were themselves involved in committing, planning or authorizing the attacks.[2]

Plaintiffs and their same counsel have previously sought to assert these same JASTA claims against three other banks based on these attacks. Just days before Magistrate Judge

---

[1]    Although factual allegations of a complaint are deemed true for purposes of a 12(b)(6) motion, CAB does not admit that all of the individuals and entities referenced in the Complaint as account holders were, in fact, customers of the Bank. According, they are referred to herein as the "Alleged Customers."

[2]    One individual, Abbas al-Sayed, was alleged to have a role in planning one of the attacks. However, as the Magistrate Judge properly found, there was no allegation in the Complaint to support a plausible inference that CAB was aware of any connection between al-Sayed and Hamas or that it knowingly and substantially assisted him in terrorist activity. His name did not appear on any terror list (Plaintiffs concede as much in their objections), the last alleged transaction with him pre-dated the attack by ten months, and Plaintiffs do not allege that there were any "red flags" in connection with that transfer.

Parker issued her R&R in this case, Judge Matsumoto, in *Honickman*, dismissed, on 12(b)(6) grounds, Plaintiffs' complaint against BLOM Bank, citing many of the same pleading deficiencies that Magistrate Judge Parker found here. 2020 WL 224552, at *13 ("[T]he Court finds that Plaintiffs have failed to plausibly state a claim that Defendant aided and abet[ed] Hamas's terrorist acts, such as those which caused their injuries…. Plaintiffs' complaint fails plausibly to allege (1) that Defendant was generally aware that, by providing financial services to [its] Customers, it was thereby playing a 'role' in Hamas's terrorist activities, and (2) that Defendant knowingly provided 'substantial assistance' to Hamas by providing financial services to [its] Customers."). And in *Strauss v. Credit Lyonnais. S.A.,* 379 F. Supp. 3d 148 (E.D.N.Y. 2019) and *Weiss v. National Westminster Bank PLC,* 381 F. Supp. 3d 223 (E.D.N.Y. 2019), Chief Judge Irizarry denied, as futile, these Plaintiffs' request to amend their complaint to add a JASTA aiding and abetting claim, finding that they "offer[ed] no evidence that the 13 charities identified in the pleading [(essentially the same institutions named in the Complaint against CAB)] participated in, planned, trained the perpetrators of, requested that someone carry out, or were the cause of the attacks giving rise to the Plaintiffs' claims."  *Strauss.* 379 F. Supp. 3d at 159, 164; *Weiss.* 381 F. Supp. 3d at 234, 239.[3]

---

[3]      The charities and organizations referenced in *Strauss* and *Weiss* and identified in the Complaint here include: the Islamic Charitable Society — Hebron; Al Jami'ya Al-Islamiya; Jenin Zakat Committee; Al Mujama Al Islami; Nablus Zakat Committee; Ramallah Al Bireh Zakat Committee; al Salah Islamic Society in the Gaza Strip; Al-Tadamun Charitable Society; Tulkarem Zakat Committee; and Al-Wafa Charitable Society.

# ARGUMENT

## I.   THE LEGAL STANDARD FOR THIS COURT'S REVIEW

In *Wiltz v. New York University*, this Court recently articulated the standard of review

applicable to this motion:

> When a party timely objects to a magistrate's report and recommendation, a district court reviews, *de novo*, "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.") (citation and internal quotation marks omitted). "Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a meaningless dress rehearsal. The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge." *Vega v. Artuz*, No. 97 Civ. 3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (citations and internal quotation marks omitted). Finally, "it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03 Civ. 1851 (NGG) (RML), 2006 WL 2524187, at *2 (E.D.N.Y. Aug. 30, 2006).

No. 19 Civ. 3406 (GHW) (SDA), 2020 WL 614658, at *2 (S.D.N.Y. Feb. 10, 2020) (Woods, J.).

Plaintiffs' Objections repackage the arguments they unsuccessfully presented to Magistrate

Judge Parker.[4]  They are also a rehash of the same arguments they made in *Strauss*, *Weiss,* and

---

[4]      *Compare* Pls.' Mem. of Law in Opp. to Def. Cairo Amman Bank's Mot. to Dismiss the Compl., at 14-25 (filed Aug. 9, 2019) (ECF No. 50) (setting forth Plaintiffs' arguments in opposition to CAB's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)) *with Averbach*, 2020 WL 486860, at *9-17 (carefully considering and rejecting Plaintiffs' arguments) *and* Pls.' Objections to the Magistrate Judge's Report & Recommendation,

*Honickman*, *supra,* and that their counsel, representing different plaintiffs, unsuccessfully made in *Freeman* in an attempt to stretch liability beyond what JASTA permits. Accordingly, the Court should review Magistrate Judge Parker's thorough and well-reasoned R&R for clear error.

## II.      RESPONSES TO PLAINTIFFS' OBJECTIONS

Contrary to Plaintiffs' contention (at 1-2), it is their legal analysis—and not Magistrate Judge Parker's—that is "erroneous," replete with "clear legal errors," "contravenes" Circuit precedent, "contradicts" statutory text, "deviates" from accepted aiding-and-abetting standards and seeks to turn the ATA "on its head."  The crux of Plaintiffs' objections is their pervasive insistence (at 1-5, 11-25) that, in order to state a viable aiding and abetting claim under JASTA, they need only plead that CAB knew it was providing financial services to customers who were, in some way, affiliated with Hamas. Plaintiffs (at *id.*) reject the notion that they are obligated to plead sufficient factual matter to support an inference that CAB was generally aware that it was assuming a role in Hamas violence by providing routine banking services to its customers, or that it knowingly and substantially assisted Hamas in committing such violence. But Plaintiffs' argument is not the law and was properly rejected by Magistrate Judge Parker, as it has been by numerous other courts that have considered this issue. *Averbach*, 2020 WL 486860, at *4, 11-17 (collecting cases); *see also Siegel*, 933 F.3d at 224 ("Plaintiffs 'must plausibly allege that defendant was "aware that, by assisting the principal, it is itself assuming a role in terrorist activities.'" (quoting *Linde*, 882 F.3d at 329)) *and* cases cited *supra.*

Likewise, Plaintiffs' contention (at 8-11) that Magistrate Judge Parker erred in recommending dismissal of the foreign nationals' claims contravenes the relevant statutory text

---

at 8-25 (filed Feb. 11, 2020) (ECF No. 58) (rehashing same unsuccessful arguments from Plaintiffs' opposition memorandum).

and legislative history, which restrict foreign nationals' standing to bring ATA claims to instances

where they are suing on behalf of a U.S. national terror victim as his or her heirs, survivors, or

estate. *Averbach*, 2020 WL 486860, at *9-10.

A.      **Response to Objection 1: Magistrate Judge Parker Applied The Correct Legal Standard.**

Magistrate Judge Parker applied the following legal standard on CAB's motion to dismiss:

> When considering a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F. 3d 217, 222 (2d Cir. 2019). The court, however, does not credit "conclusory allegations or legal conclusions masquerading as factual conclusions. *Siegel*, 933 F.3d at 222 (quoting *In re Facebook, Inc., Initial Public Offering Derivative Litig.*, 797 F.3d 148, 159 (2d Cir. 2015)). To survive the motion, the complaint must contain "sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id.* (internal quotation marks and citation omitted). "[N]aked assertions devoid of further factual enhancement" are insufficient to survive a motion to dismiss. *Id.* (internal quotation marks, alteration, and citation omitted). As the United States Supreme Court explained in *Ashcroft v. Iqbal*, the "plausibility standard" asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted).

Notwithstanding that this is undeniably the proper legal standard, and oft-repeated by the

courts in this Circuit (including the cases cited in the R&R), Plaintiffs allege that the Magistrate

Judge erroneously drew inferences against them. Not true. As the Supreme Court explained in

*Iqbal*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556

U.S. at 678 (citation omitted). What the Magistrate Judge ruled, consistent with *Iqbal,* is that

Plaintiffs either failed to plead sufficient facts to support the inferences they ask be drawn (*see,*

*e.g.*, that CAB was generally aware that it was playing a role in terrorist activities by virtue of

media reports absent allegations that the defendant actually read or was aware of the media reports (*Averbach*, 2020 WL 486860, at *12 (citing *Kaplan*, 2019 WL 4869617, at *6-7)), or that the requested inferences were undermined by concessions in Plaintiffs' own pleading  (*see, e.g.,* "[C]oncessions that charity Account Holders take part in actual charitable activities and provide actual social services undermine any inference that CAB had general knowledge that by providing financial services to [these Alleged Customers] it was assuming a role in Hamas's terrorist activities" (*Averbach*, 2020 WL 486860, at *14 (citing *O'Sullivan,* 2019 WL 1409446, at *8; *Weiss,* 381 F. Supp. 3d at 329))).

The examples cited by Plaintiffs (at 6-7) underscore the weakness of this Objection. Plaintiffs' contention that there are "ample sources connecting the [charities] to Hamas," even if true, misses the point. As the Magistrate Judge states in her R&R, "[m]erely providing banking services to a Hamas-affiliated charity, does not satisfy JASTA's *mens rea* requirement." *Averbach*, 2020 WL 486860, at *13 (citing *Weiss*, 381 F. Supp. 3d at 235-36, 238-39). The court in *Honickman* rejected this very argument by the same counsel*:*

> Adopting this reading would, in effect, replace the scienter for aiding-and-abetting liability with the lower scienter required for material support, in direct contravention of *Linde*'s holding that the bank must be aware that it is assuming a role in the organization's "violent or life-endangering activities." *See Siegel,* 933 F.3d at 224 (citing *Linde,* 882 F.3d at 329). Attempts to conflate these scienter requirements have been rejected by courts within the circuit

2020 WL 224552, at *8 (citing *Weiss*, 381 F. Supp. 3d at 238-39; *Strauss*, 379 F. Supp. 3d at 164) (additional citation omitted).

As set forth *infra,* none of the "ample sources" referenced by Plaintiffs (at 13-16) allege facts supporting an inference that CAB was generally aware that it was supporting terrorist activities. In the R&R, Magistrate Judge Parker quoted the Second Circuit's decision in *Siegel*, 33 F.3d at 224 that "'[a]t most, the allegations, even when viewed in the light most favorable to

plaintiffs, assert that the bank] was aware that [its customer] was believed by some to have links to…terrorist organizations.'"  *Averbach*, 2020 WL486860, at *13.

Plaintiffs also incorrectly argue (at 6) that the Magistrate Judge "overstate[d]" the need for a U.S. designation in order to establish general awareness. She did not. What she properly held, consistent with, *inter alia*, *Kaplan*, 405 F. Supp. 3d at 535 and *Honickman*, 2020 WL 224552, at *8, is that its absence serves to undermine an inference of general awareness by the Bank.[5]  And in the case of the Holy Land Foundation, she recognized that following its designation as an SDGT on December 4, 2001, there were no allegations that the Bank processed any further transfers for this entity, nor any allegation that the account remained open after this designation. *Averbach,* 2020 WL 224552, at *8.

Finally, conclusory allegations that an alleged individual customer is a Hamas leader are not sufficient to establish that the Bank knowingly played a role in terrorism, where, as the Magistrate Judge found here, the individuals were not designated by any government during the relevant time period, were not alleged (with the exception of one individual noted *supra*) to have played any role in planning, encouraging or committing any of the attacks causing Plaintiffs'

---

[5]    Significantly, none of CAB's Alleged Customers was ever designated a Foreign Terrorist Organization ("FTO"), the State Department designation that Congress specifically invoked as a basis for liability in JASTA (*see* 18 U.S.C. § 2333(d)(2)). In the absence of any such designation, Plaintiffs instead now argue that CAB knew or should have known that Israel designated certain of the charities as "unlawful associations."  Even assuming *arguendo* that were true, there is no allegation in the Complaint that Israel (or CAB's regulator in the Palestinian Territories, the Palestinian Monetary Authority) took any enforcement action against the Bank during the time period relevant to the Complaint (2001-2003) as a result of this alleged designation. Moreover, these were the same charities identified by Plaintiffs in *Strauss* and *Weiss*. And as the court held there, merely providing banking services to alleged Hamas-affiliated charities does not satisfy JASTA's *mens rea* requirement. *Averbach*, 2020 WL 486860, at *13 (citing *Weiss*, 381 F. Supp. 3d at 235-36, 238-39).

injuries, and where no facts were alleged that CAB transferred funds to Hamas through their accounts. *Averbach,* 2020 WL 224552, at *13-16. The Courts in *Kaplan* and *Honickman* reached the same conclusion. *Kaplan*, 405 F. Supp. 3d at 535; *Honickman*, 2020 WL 224552, at *10. Even assuming arguendo that there was a non-conclusory allegation—which there is not—that the Bank was aware that these individuals were somehow affiliated with Hamas, that would not be sufficient under the facts alleged here to demonstrate that CAB knowingly played a role or intended to play a role in Hamas' terrorist activities. *See, e.g., Siegel* 33 F.3d at 224 (citing *Linde*, 882 F.3d at 329).

Similarly deficient are Plaintiffs' conclusory allegations attempting to link alleged "martyr" payments to CAB, or to analogize the alleged role of CAB here to that of the defendant bank in *Miller.* As the Magistrate Judge explained, and as discussed more fully *infra* at II.B(3), the facts alleged in *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33 (E.D.N.Y. 2019), including numerous red flags absent here, clearly distinguish the facts alleged in *Miller* from those asserted in this case, and do not provide a basis for drawing a similar inference.[6]

### B.   Response to Objections 3-8: Magistrate Judge Parker Was Entirely Correct and Did Not Clearly Err In Holding That Plaintiffs Failed to Meet The General-Awareness Element Of Their Claim.[7]

Magistrate Judge Parker correctly determined that in order to meet the general awareness element of their JASTA claim, Plaintiffs must plausibly allege that CAB was aware that, by assisting the principal, it was itself assuming a role in terrorist activities, citing the Circuit's

---

[6]   Plaintiffs made similar arguments about alleged martyr payments in *Strauss* and *Weiss* which were similarly rejected as insufficient. *Strauss*, 379 F. Supp. 3d at 157; *Weiss,* 381 F. Supp. 3d at 232.

[7]   Objection 2 is not addressed to CAB's 12(b)(6) motion. Therefore, it is addressed separately at the end of this memorandum.

holdings in *Siegel* and *Linde*. 2020 WL 224552, at *12. As the Circuit held in *Siegel*, 33 F.3d at 224:

> In *Linde*, we explained that although "[s]uch awareness does not require proof of…specific intent" or knowledge "of the specific attacks at issue," it does require that "the bank was generally aware that [, by providing financial services to a client,] it was thereby playing a 'role' in [the] violent or life endangering activities." [882 F.3d at 329.] We contrasted this with "the *mens rea* required to establish material support in violation of 18 U.S.C. § 2339B, which requires only knowledge of the organization's connection to terrorism, not intent to further its terrorist activities or awareness that one is playing a role in those activities." *Id.* at 329-30.
>
> Here, the plaintiffs have failed to allege that HSBC was aware that by providing banking services to ARB, it was supporting AQI, much less assuming a role in AQI's violent activities. At most the allegations, even when viewed in the light most favorable to the plaintiffs, assert that HSBC was aware that ARB was believed by some to have links to AQI and other terrorist organizations.

The Magistrate Judge, applying this standard, properly determined that Plaintiffs failed to meet the general awareness element of their aiding and abetting claim, carefully detailing the deficiencies in their pleading.[8]

---

[8]   Plaintiffs' reliance (at 2) on *Miller, Lelchook v. Islamic Rep. of Iran*, 393 F. Supp. 3d 261 (E.D.N.Y. 2019) and *Hirshfeld v. The Bank of China Ltd.*, No. 18 Civ. 1982 (KPF) (S.D.N.Y. Aug. 9, 2019) is misplaced. As noted, the Magistrate Judge distinguished the facts alleged in *Miller* regarding general awareness from those alleged here, as did the courts in *Honickman*, 2020 WL 224552, at *9, *Weiss*, 381 F. Supp. 3d at 234, and *Strauss*, 379 F. Supp. 3d at 159. *Lelchook*, as noted in *Honickman*, was a default judgment. 2020 WL 224552, at *9. When the *Lelchook* plaintiffs brought essentially the same lawsuit against Lebanese Canadian Bank, it was dismissed on a 12(b)(6) motion. *Kaplan*, 405 F. Supp. 3d at 531-37. And *Hirshfield*, an unpublished bench opinion, if anything, undercuts rather than supports Plaintiffs on alleging general awareness. Unlike here, the complaint, according to the opinion in that case, alleged "actual knowledge," specifically that the Israeli government sent a delegation to China to "spell out" to government and bank officials that transfers processed by the bank were being sent to Hamas to plan and carry out terrorist attacks, but that the bank continued to process such transfers, including transfers that were used to "carry out the [attack causing plaintiffs' injuries]." *See id.*, at 13:17-22, 14:12-22, 15.23-16.2.

**(1)  Objection 3**

Plaintiffs state (at 13) that "The R&R erred in finding that Plaintiffs failed to allege that CAB knew it was assisting Hamas." But that, of course, is not the legal standard for establishing general awareness under JASTA. As Magistrate Judge Parker correctly held, the relevant question under the law of this Circuit is not whether CAB knew or should have known that any of its customers were tied to Hamas, but rather whether CAB "was generally aware it was playing a role i[n] [Hamas's] terrorist activities" at the time it provided the financial services at issue to its Alleged Customers. *Averbach*, 2020 WL 486860, at *12.

Plaintiffs' theory of liability (at 13-16) is the same theory they unsuccessfully sought to assert in *Honickman*, decided just days before the R&R. As described by the court there, and as evidenced by the Complaint and objection here:

> Much of Plaintiffs' complaint is dedicated to describing Hamas' use of a civil infrastructure, which Plaintiffs call its "*da'wa*," to compete with other organizations for support in the areas in which it operates.…  It appears that the complaint's focus on Hamas' *da'wa* is predicated on Plaintiffs' theory of liability, that BLOM [Bank] is liable because it provided financial services to its … Customers, all of which are alleged to be "*da'wa* institutions…tasked by Hamas to extend [its] reach … through the provision of charitable services and financial support to the local populations."

*Honickman*, 2020 WL 224552, at *2.

Here, the Complaint fails to allege non-conclusory facts that CAB was even aware that any of its Alleged Customers were part of Hamas' "*da'wa*," much less that they were engaged in violent or life-threatening activities or that they transferred any funds processed by CAB to Hamas. *Averbach*, 2020 WL 486860, at *13-15. There is no allegation in the Complaint that the "public pronouncements" cited by Plaintiffs (at 13-15) were ever read by any Bank employee. But even if they were, the referenced pronouncements make no mention of any of CAB's Alleged Customers engaging in violent activities. To the contrary, the cited pronouncements (as does the Complaint,

*see, e.g.,* Compl. ¶¶ 623, 760) refer to the "social work" of these institutions, including "medical clinics, schools and welfare institutions that distribute free food to the needy."  As the Magistrate Judge held, "Plaintiffs' concessions that the charity Account Holders take part in actual charitable activities and provide actual social services [further] undermine any inference that CAB had general knowledge that by providing financial services to the Account Holders it was assuming a role in Hamas's terrorist activities." *Averbach*, 2020 WL 486860, at *14 (citations omitted).

Similarly, this Objection (at 13) refers to various "leaders" of Hamas. But none of those leaders is alleged to be a customer of CAB, and there is no non-conclusory allegation in the Complaint demonstrating that CAB or its employees were aware of any relationship between these individuals and the charities alleged to be CAB's customers.[9]  Indeed, the referenced paragraphs in the Complaint, for the most part, fail to provide any information as to whether these individuals held any positions with these charities during the time period relevant to the Complaint.

Moreover, as Magistrate Judge Parker held, even assuming that CAB knew or should have known that the charities alleged to be its customers were affiliated with Hamas (by virtue of their alleged leadership, public pronouncements, designations or otherwise), "[m]erely providing banking services to a Hamas-affiliated charity does not satisfy JASTA's *mens rea* requirement" in the absence of pleaded facts (not present here) supporting an inference that the Bank knowingly played a role in supporting terrorist activities. *Averbach*, 2020 WL 486860, at *13; *accord Honickman*, 2020 WL 224552, at *9 (finding that even if bank defendant's charity customers were

---

[9]      For example, some of these individuals are described as former students, lecturers and employees who only later became leaders of Hamas. *See, e.g.,* Compl. ¶¶ 657, 676, 699.

affiliated with Hamas and provided social services to procure local support "this does not cure the absence of any plausible allegation that [the bank defendant] was aware that it was assuming a role in Hamas' violent or life-endangering activities"); *Weiss*, 381 F. Supp. 3d at 236, 238-39 ("[M]erely provid[ing] services to a [Hamas-affiliated charity] for ostensibly charitable purposes … does not satisfy the intent required by [JASTA]"); *O'Sullivan*, 2019 WL 1409446 at *10; *Siegel v. HSBC Bank USA, N.A.*, No. 17 Civ. 6593 (DLC), 2018 WL 3611967, at *4 (S.D.N.Y. July 27, 2018) ("Accepting these statements as true, however, the [complaint] does not demonstrate that defendants knew that the financial services they provided to ARB would in turn be given to AQI and al-Qaeda to carry out terrorist attacks….").

Finally, Plaintiffs rehash in this Objection the same arguments they made in Objection 3 regarding designations and alleged martyr payments, which are themselves a rehash of the arguments they previously made to the Magistrate Judge. Rather than repeat CAB's response, we respectfully refer to our responses to Objection 3 *supra*, and to our response to Objection 5 *infra*, where the martyr argument is made yet one more time.

### (2) Objection 4

Plaintiffs object (at 16-20) that Magistrate Judge Parker erroneously required them to allege that CAB knew that the funds it transferred for its Alleged Customers would be used for the attacks that caused their injuries. Not true. In the R&R, Magistrate Judge Parker quoted directly from *Siegel* and *Linde* that general awareness does not require proof of specific intent or specific knowledge of the specific attacks at issue, but does require factual allegations demonstrating that the bank was generally aware that by providing financial services to a client, it was assuming a role in its violent or life-endangering activities. *See Averbach*, 2020 WL 486860, at *12. That is the standard she found Plaintiffs failed to meet. *Id.*, 2020 WL 486860, at *13-15. She further held,

as did the Court in *Siegel,* that allegations linking financial transactions processed by the Bank to the attacks that injured Plaintiffs would have also been sufficient to meet the general awareness standard. *Id.* As Magistrate Judge Parker makes clear in the R&R, the Complaint fails to assert either (i) non-conclusory allegations that CAB knowingly played a role in Hamas' terrorist activities generally by providing financial services to its Alleged Customers or (ii) facts demonstrating that CAB was aware of any fund transfers by or to its Alleged Customers for these specific attacks. *Averbach*, 2020 WL 486860, at *13-15.

Plaintiffs also seek to improperly cabin the basis for the R&R's conclusion that the Complaint failed to satisfy the general awareness element of its aiding and abetting claim. Contrary to Plaintiffs' assertion (at 18-19), the Magistrate Judge did *not* reach this conclusion simply "because the first attack occurred approximately three months" after the transfers identified in the Complaint, or merely because the last transfer to al Sayed occurred ten months before one of the terror attacks. Rather, her conclusion was based on her detailed review of the allegations and law, of which the timing of transfers actually alleged in the Complaint was but one factor. *Averbach*, 2020 WL 486860, at *13-14.

**(3)   Objection 5**

Plaintiffs claim (at 20) that that the R&R erroneously found that the "martyr payments" described in *Miller* set the minimum showing required to establish general awareness. Magistrate Judge Parker established no such standard. She merely distinguished the facts alleged in this case from those asserted in *Linde* and *Miller*. *See Averbach*, 2020 WL 486860, at *14.[10]  It is hardly

---

[10]    Plaintiffs assert (at 20) that the *Miller* plaintiffs were only able to plead facts relating to the martyr payment scheme allegedly administered by Arab Bank due to the trial record in *Linde*. Not true. Those facts were alleged by the *Linde* plaintiffs in their very first pleading, as Plaintiffs and

surprising that she did so, since Plaintiffs alleged in their brief opposing dismissal that *Miller* was

"the case most factually analogous to this Action."   *See* Pls.' Mem. of Law in Opp. to Def. CAB's

Mot. to Dismiss the Compl., at 2 (filed Aug. 9, 2019) (ECF No. 50). She also made detailed

findings that the Complaint failed to include any non-conclusory allegations that martyr payments

were actually made out of any CAB accounts, or, if there were such payments, that CAB or its

employees were aware of them. *Averbach*, 2020 WL 486860, at *14-16.

### (4)   Objection 6

This Objection (at 20-21), that the R&R "improperly imported the erroneous specific intent

standard from *Kaplan*," is essentially a rehash of the argument in Objection 4. Plaintiffs merely

compound the error of their earlier Objection by misstating and casting aspersion on Judge

Daniels' decision in *Kaplan.* First, as already noted, Magistrate Judge Parker correctly applied the

general awareness standard articulated by the Second Circuit in *Linde* and *Siegel.* Second, so did

Judge Daniels. In their Objection (at 20), Plaintiffs quote from page 536 of the *Kaplan* opinion

---

their counsel well know, because they were the Plaintiffs and counsel in *Linde.* The decision on
the motion to dismiss in *Linde* expressly references the detailed allegations in that complaint that
are so strikingly absent here:

> Plaintiffs allege that [Arab] Bank is the exclusive administrator of the death and
> dismemberment benefit plan. Once the Saudi Committee prepares a list of eligible
> martyrs, the list is provided to the Bank. Arab Bank, in consultation with the Saudi
> Committee and local representatives of HAMAS, finalizes the lists, maintains a
> database of persons eligible to receive benefits under the death and dismemberment
> plan, and opens a dollar account for each beneficiary. Families who choose to
> collect the benefit must present to the Bank an official certification from the
> Palestinian Authority that includes the individualized identification number of the
> martyr. If the documentation proves satisfactory, Arab Bank issues a receipt to the
> designated recipient of the benefit. Plaintiffs allege that these payments create an
> incentive to engage in terrorist acts by rewarding all Palestinian terrorists,
> regardless of their affiliation with a particular group.

*Linde v. Arab Bank, PLC,* 385 F. Supp. 2d 571, 577, 588 (E.D.N.Y. 2005).

(and then only one line of the court's analysis on that page), ignoring entirely his complete articulation of the general awareness standard at page 535. Plaintiffs also ignore those portions of Judge Daniels' decision detailing the multiple deficiencies of the complaint in pleading general awareness. *See Kaplan,* 475 F. Supp. 3d at 535-36.

(5)   **Objections 7 and 8**

Objections 7 and 8 (at 21-23) misstate the findings in the R&R. They also misstate the law regarding aiding and abetting liability under JASTA. Put differently, they state the law as Plaintiffs wish it would be, not what the law provides following the Circuit's holdings in *Linde* and *Siegel.*

Nowhere in her R&R did Magistrate Judge Parker suggest that a bank is "shielded from liability" simply because a customer engages in charitable activities or because it did not itself perpetrate an attack. Nor did she suggest that providing financial services to an entity affiliated with an FTO can never result in JASTA liability. What the Magistrate Judge held, consistent with *Linde*, *Siegel* and the recent trend of cases in this and other Circuits, is that the Complaint fails to do what JASTA and the courts require:  plausibly allege with factual, non-conclusory allegations, the elements of general awareness and substantial assistance. Conclusory allegations, facts that undermine the inferences Plaintiffs seek to draw, and the absence of allegations sufficient to satisfy these elements do not suffice to state a viable claim. And the Magistrate Judge detailed those deficiencies in the R&R.

What Plaintiffs urge (at 21-22) is a return to pre-JASTA law, citing *Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685 (7th Cir. 2008), *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) and their *da'wa* theory of liability. They contend that banks should be subject to aiding and abetting liability because even routine banking services to an individual, entity or charity allegedly affiliated in any way with Hamas materially supports Hamas' objectives. But that

-16-

is not the law. The Second Circuit made clear in *Linde* that the *mens rea* for JASTA aiding and abetting liability is higher than the scienter required to establish material support in violation of the ATA "which requires only knowledge of the organization's connection to terrorism, not intent to further its terrorist activities or awareness that one is playing a role in those activities." 882 F.3d at 729-30. [11] Accordingly, Plaintiffs' theory of liability was properly rejected by the Magistrate Judge, just as it was when presented by Plaintiffs in *Honickman*, *Weiss*, and *Strauss*. "'Evidence that [a bank] knowingly provided banking services to [an FTO], without more, is insufficient to satisfy JASTA's scienter requirement.'" *Honickman*, 2020 WL 224552, at *7 (quoting *Weiss*, 381 F. Supp 3d at 239); *Strauss*, 379 F. Supp. 3d at 164.

### C.     Response to Objection 9: Magistrate Judge Parker Properly Applied The Six *Halberstam* Factors In Evaluating Substantial Assistance.

As the Circuit made clear in *Linde*, "aiding and abetting focuses on the relationship between the act of international terrorism [that injured a plaintiff] and the secondary actor's alleged supportive conduct." 882 F.3d at 331. And only a defendant whose conduct "play[ed] a 'major part in prompting the tort' or [was] 'integral' to the tort [can] … be considered [to have provided] substantial assistance." *Copeland v. Twitter, Inc.*, 352 F. Supp. 3d 965, 976 (N.D. Cal. 2018) (dismissing JASTA aiding and abetting claim against social media companies) (quoting

---

[11]     *Boim*, of course, did not involve a claim for secondary liability under JASTA, and, as the Second Circuit held in *Linde*, is not even the proper standard for establishing primary liability against a bank under the ATA. *Linde*, 882 F.3d at 327. Its continued validity, even in the Seventh Circuit, for holding financial institutions (and other corporations) liable under the ATA is also open to question following that Circuit's subsequent decision in *Kemper v. Deutsche Bank AG*, 911 F.3d 363 (7th Cir. 2018). *See, e.g., Retana v. Twitter, Inc.*, No. 19 Civ. 0359 (JJB), 2019 WL 6619218, at *5 (N.D. Tx. Dec. 5, 2019) ("[T]he expansive language in *Boim* [ ]—which was merely used in response to a hypothetical posed by the court…—was clarified in *Kemper*[.]").

-17-

*Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983)); *accord Taamneh v. Twitter, Inc.*, 343 F. Supp. 3d 904, 917 (N.D. Cal. 2018) (dismissing JASTA aiding and abetting claim absent plausible allegations that social media services "played a major or integral part in ISIS's terrorist attacks" and defendants' alleged relationship with ISIS was "an arms-length one—a market relationship at best").

Magistrate Judge Parker closely and correctly followed the Second Circuit's decision in *Linde* and its application of the six *Halberstam* factors in *Siegel* when evaluating substantial assistance. There was no clear error.

<u>Nature of the Act Encouraged</u>:  The Magistrate Judge found, as the Court did in *Siegel,* that there was no plausible allegation that the bank encouraged any of the attacks or any of the FTO's terrorist activities. *Averbach*, 2020 WL 486860, at *16.

<u>The Amount of Assistance</u>:  The Magistrate Judge, consistent with *Siegel,* found that the account transfers identified in the Complaint substantially pre-dated the attacks at issue. Plaintiffs' objection that there may have been other unidentified transfers is merely speculation. Even assuming there were later transfers processed by CAB for these Alleged Customers, the objection ignores the Magistrate Judge's further finding, *Averbach*, 2020 WL 486860, at *16, that there were no plausible allegations that any fund transfers processed by CAB for these Alleged Customers (whether specifically identified in the Complaint or not) were ever sent to or received by Hamas, much less used for the attacks that injured Plaintiffs or for any other violent or life-endangering activity. *See Siegel*, 933 F.3d at 225 ("To be sure, the plaintiffs did allege that HSBD provided hundreds of millions of dollars to ARB, but they did not advance any non-conclusory allegation that AQI received any of these funds or that HSBC knew or intended that AQI would receive those funds). The same is true here.

Presence or Absence at the time of the Attacks:  CAB was not present as the Magistrate Judge correctly found. *Averbach*, 2020 WL 486860, at *16. In their Objection, Plaintiffs apparently would like to read this *Halberstam* factor out of the case.

Relation to the tortious actor:  Plaintiffs, not the Magistrate Judge, got this factor wrong. Plaintiffs make the conclusory allegation (at 25) that CAB was "Hamas's willing banker," just as plaintiffs did in *Siegel*. *See Siegel*, 933 F.3d at 225 ("[P]laintiffs do not plead any non-conclusory allegations that HSBC had any relationship with AQI."). As stated in the R&R, "Plaintiffs have not pleaded that CAB had any type of relationship other than an arms-length business type relationship with the Account Holders." *Averbach*, 2020 WL 486860, at *16.

State of Mind:  As set forth in the R&R, Plaintiffs failed to allege facts sufficient to meet the general awareness element of JASTA liability. *Id.* The R&R summarizes these findings under this factor, concluding, as did the Second Circuit in *Siegel,* that Plaintiffs failed to plausibly allege that the Bank knowingly assumed a role in terrorist activities.

Duration of Assistance:  Plaintiffs misapprehend this factor, taking issue with the R&R's finding regarding the duration of time that transfers occurred based on the factual allegations of the Complaint. Instead, Plaintiffs argue (at 25) duration based on speculation about transfers or "accounts for Hamas" that are not alleged in their pleading. But as the Second Circuit held in *Siegel* with respect to this factor, the amount of time an account may or may not be open may "bespeak[ ] a lengthy relationship but not necessarily of *assistance in terrorism*." 933 F.3d at 225 (emphasis supplied). The fact that there are no adequate allegations that any funds were ever transferred by CAB to Hamas, along with the other factors listed in the R&R, including that CAB's Alleged Customers provided charitable and social services, do not, as the Court held in *Siegel*, admit an inference of aiding and abetting terrorism, based on length of relationship alone.

**D.      Response to Objection 2: Magistrate Judge Parker Correctly Recommends Dismissing Certain Foreign Nationals' Claims For Lack Of ATA Standing.[12]**

Magistrate Judge Parker correctly determined that three Plaintiffs (Julie Averbach, Matanya Nathansen, and Nevenka Gritz) lack standing under the ATA to bring suit as foreign nationals for their own personal damages. The ATA provides for the recovery *by U.S. nationals* for damages they suffer as victims of international terrorism. Contrary to Plaintiffs' assertions, it does not provide a back door for recovery by certain foreign citizens who may be heir or survivors of the decedent while simultaneously denying ATA coverage to all other foreign nationals for their personal injuries. If Congress had intended to so discriminate between foreign nationals, it could clearly have written the law to do so. It did not.

Congress wrote the right to bring a claim on behalf of a U.S. decedent in the disjunctive, not the conjunctive. The claim is not one that can be brought by "the estate *and* his or her survivors *and* his or her heirs."  It may be brought only by the estate "*or* his or her survivors *or* his or her heirs."  There are numerous possible reasons for this. While one would normally expect such an action to be brought by the Estate, estates, with the passage of time, can be closed. In this very case almost two decades have passed since the events at issue. Foreign survivors or heirs may not wish to put up with the various formalities and obstacles involved in re-opening estates, or for that matter opening an estate in the U.S. if one was never previously opened, or engaging a U.S. citizen or non-citizen resident in New York to serve as an executor, or obtain special court permission to

---

[12]      If the Court adopts the R&R and dismisses the Complaint in its entirety pursuant to Rule 12(b)(6), it need not resolve the issue of statutory standing which applies to the claims of only three Plaintiffs. *See Honickman*, 2020 WL 224552, at *6 n.7 ("Defendant alternatively moves to dismiss certain individual plaintiffs' claims…. Because the Court grants Defendant's motion to dismiss in its entirety, it need not address whether these plaintiffs' claims should also be dismissed on other grounds.").

do so, in the event that the foreign survivor or heir is not a New York resident. *See*, *e.g.*, N.Y. Surr. Ct. Proc. Act § 707; N.Y. E.P.T. § 5-4.1.

The record of the legislative hearing regarding the enactment of this provision makes clear Congress' intent in this regard. *Averbach*, 2020 WL 486860, at *9 (citing Antiterrorism Act of 1990:  Hr'g on S.2465 Before the Subcomm. On Courts & Admin. Practice if the S. Comm. on the Judiciary, at 46 101st Cong. 84 (1990) (statement of Sen. Strom Thurmond) (stating that the ATA would allow family members to file a lawsuit *on behalf of* a slain or injured relative)).

To quote from that hearing:

> Senator Thurmond: "It is my understanding that implicit within the right to sue contained in Senate bill 2465 was the ability of family members to bring a lawsuit *on behalf of a slain or injured relative*. Do we need to expand the definition in order to make certain the ability of family members to file a lawsuit on behalf of a slain or injured relative?"

> Mr. Green:  "We believe it would be beneficial. It would make clear that which is already implied in the bill. It would remove any doubt that anyone would have as to whether or not they could bring the litigation."

In short, rather than being left out in the cold as Plaintiffs suggest, the Act, as drafted, and as correctly interpreted by the Magistrate Judge, makes explicit the right of a foreign national to bring suit under the ATA *on behalf of a U.S. family member* who is a victim of international terrorism and ease some of the legal barriers in doing so, while not discriminating between foreign nationals with respect to claims for their own personal damages, by giving some foreign nationals a back door right to bring claims under the ATA while denying others standing to do so. Even if Plaintiffs feel otherwise, rewriting the ATA to provide the standing they request is properly the province of Congress, not the Court, as Magistrate Judge Parker properly concluded.

## <u>CONCLUSION</u>

For the reasons set forth herein and in its motion papers in support of its motion to dismiss (ECF Nos. 47 & 52), CAB respectfully requests that this Court adopt Magistrate Judge Parker's R&R and dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, and, with respect to certain foreign nationals (Julie Averbach, Matanya Nathansen, and Nevenka Gritz), pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing to bring an ATA claim.

Dated:  February 25, 2020                              Respectfully submitted,

DLA PIPER LLP (US)

By:    /s/Jonathan D. Siegfried
        Jonathan D. Siegfried
          jonathan.siegfried@dlapiper.com
        Douglas W. Mateyaschuk II
          douglas.mateyaschuk@dlapiper.com
        1251 Avenue of the Americas
        New York, NY 10020-1104
        (212) 335-4500

        *Counsel for Cairo Amman Bank*

-22-