IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIE AVERBACH FOR THE ESTATE OF STEVEN AVERBACH, *et al.*, | |
| Plaintiffs, | 1:19-CV-00004 (GHW) (KHP) |
| v. | |
| CAIRO AMMAN BANK, | |
| Defendant. | |

**CAIRO AMMAN BANK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
Phone: (212) 335-4500
Fax: (212) 335-4501

*Counsel for Defendant Cairo Amman Bank*

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

INTRODUCTION ...................................................................................................................1

BACKGROUND ..................................................................................................................4

      A.    Overview of this Action ..........................................................................................4

      B.    The Court's Prior Report and Recommendation .....................................................6

      C.    The Court's Prior Analysis Applies with Equal Force to the JASTA Claim in the Amended Complaint .......................................................................................7

STANDARD OF REVIEW .................................................................................................9

ARGUMENT .......................................................................................................................9

I.      Plaintiffs Fail to State a Secondary Liability Claim for Aiding and Abetting Claim Under JASTA..................................................................................................................10

      A.    Plaintiffs Still Fail to Plead the "General Awareness" Element of Aiding and Abetting Liability ..........................................................................................11

      B.    Plaintiffs Still Fail to Plead the "Substantial Assistance" Element of Aiding and Abetting Liability ..........................................................................................15

II.     Plaintiffs Fail to State a Claim for Primary Liability under the ATA .............................18

      A.    Plaintiffs Fail to Allege that CAB's Provision of Banking Services Constitutes "International Terrorism" under the ATA ..........................................18

      B.    Plaintiffs Fail to Allege that CAB's Provision of Banking Services Proximately Caused the Rocket Attacks or Plaintiffs' Alleged Injuries...............21

III.    Plaintiffs Julie Averbach, Matanya Nathansen, Nevenka Gritz, and Arie Miller Lack Standing, as this Court Previously Ruled .............................................................23

CONCLUSION...................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................9

*Averbach for Estate of Averbach v. Cairo Amman Bank*,
    2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020) .........................................................1

*Averbach v. Cairo Amman Bank*,
    2020 WL 486860 (S.D.N.Y. Jan. 21, 2020) ................................................ *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................9

*Brill v. Chevron Corp.*,
    No. 15-cv-04916, 2018 WL 3861659 (N.D. Cal. Aug. 14, 2018), *aff'd by*, ---
    Fed. Appx. ---, 2020 WL 1200695 (9th Cir. Mar. 12, 2020)...................................10

*Cain v. Twitter, Inc.*,
    No. 17 Civ. 2506, 2018 WL 4657275 (N.D. Cal. Sept. 24, 2018)..........................10

*Copeland v. Twitter, Inc.*,
    352 F. Supp. 3d 965 (N.D. Cal. 2018) ...................................................................15

*Crosby v. Twitter, Inc.*,
    921 F.3d 617 (6th Cir. 2019) ..................................................................................10

*Fields v. Twitter, Inc.*,
    881 F.3d 739 (9th Cir. 2018) ..................................................................................10

*Freeman v. HSBC Holdings PLC*,
    No. 14 Civ. 6601(PKC) (CLP), 2019 WL 4452364 (E.D.N.Y. 2019) .......................12, 20, 21

*Gonzalez v. Google, Inc.*,
    335 F. Supp. 3d 1156 (N.D. Cal. Aug. 15, 2018) ..................................................10

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) ..............................................................7, 10, 11, 15

*Honickman v. Blom Bank SAL*,
    No. 19 Civ. 00008 (KAM), 2020 WL 224552 (E.D.N.Y. Jan. 14, 2020)....................... *passim*

*Kaplan v. Lebanese Canadian Bank, SAL*,
    405 F. Supp. 3d 525 (S.D.N.Y. 2019)........................................................... *passim*

*Kemper v. Deutsche Bank AG*,
  911 F.3d 383 (7th Cir. 2018)911 F.3d at 396 ................................................................10, 20

*Linde v. Arab Bank, PLC*,
  882 F.3d 314 (2d Cir. 2018)...................................................................... *passim*

*Mastafa v. Chevron Corp.*,
  770 F.3d 170 (2d Cir. 2014).....................................................................................9

*O'Sullivan v. Deutsche Bank AG*,
  17 Civ. 8709 (LTS) (GWG), 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019) ........10, 18, 20, 21

*O'Sullivan v. Deutsche Bank AG*,
  No. 17 Civ. 8709 (LTS) (GWG), 2020 WL 906153 (S.D.N.Y. Feb. 25, 2020) .....................10

*Owens v. BNP Paribas, S.A.*,
  897 F.3d 266 (D.C. Cir. 2018) ................................................................................10

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013).....................................................................................9

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013)................................................................................10, 21

*Siegel v. HSBC N. Am. Holdings*,
  (2d Cir. 2019)933 F.3d at 224.................................................................... *passim*

*Strauss v. Credit Lyonnais. S.A.*,
  379 F. Supp. 3d 148 (E.D.N.Y. 2019) .................................................................3, 12, 14

*Stutts v. De Dietrich Grp.*,
  2006 WL 1867060 (E.D.N.Y June 30, 2006) .......................................................22

*Taamneh v. Twitter, Inc.*,
  343 F. Supp. 3d 904 (N.D. Cal. 2018) .............................................................10, 17

*In re Terrorist Attacks on Sept. 11, 2001 (Al Rajhi Bank)*,
  714 F.3d 118 (2d Cir. 2013)..........................................................................10, 21

*Weiss v. Nat'l Westminster Bank PLC*,
  381 F. Supp. 3d 223 (E.D.N.Y. 2019) ....................................................... *passim*

*Zapata v. HSBC Holdings PLC*,
  No. 17 Civ. 6645 (NGG) (CLP), 2019 WL 4918626 (S.D.N.Y. Sept. 30, 2019)...................21

**Statutes**

18 U.S.C. § 2331(1) ..................................................................................................19, 20

18 U.S.C. § 2333 ........................................................................................... *passim*

18 U.S.C. § 2333(a) ............................................................................................18, 20, 23

18 U.S.C. § 2339B(a)(1) ..............................................................................................20

Pub. L. 114-222, 130 Stat. 852 (2016) ........................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ....................................................................................................1

Fed. R. Civ. P. 12(b)(6) ................................................................................................1, 9

Cairo Amman Bank ("CAB" or "the Bank") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failing to allege sufficient facts to support a plausible inference that CAB is liable under the Anti-Terrorism Act, 18 U.S.C. § 2333 (the "ATA"), as amended by the Justice Against Sponsors of Terrorism Act, Pub. L. 114-222, 130 Stat. 852 (2016) ("JASTA"), for the terrorist attacks that injured Plaintiffs; and, with respect to Plaintiffs Julie Averbach, Nevenka Gritz, Matanya Nathansen, and Arie Miller pursuant to Fed. R. Civ. P. 12(b)(1), because these Plaintiffs also lack standing to assert a claim for their personal injuries under those statutes.

## INTRODUCTION

This Court is well aware of the tragic and deplorable acts of violence underlying this action. It is also aware of the manifest deficiencies underlying Plaintiffs' first misplaced attempt to hold CAB liable for those attacks. The Bank unconditionally condemns all acts of international terrorism, but had nothing to do with the terrorist attacks that caused Plaintiffs' injuries. This Court accordingly issued a well-reasoned and amply supported Report that recommended dismissing Plaintiffs' initial Complaint as inadequately pleaded. *See* Jan. 21, 2020 Report & Rec., ECF No. 53 (hereinafter, "the R&R"); *Averbach v. Cairo Amman Bank*, 2020 WL 486860, at *2 (S.D.N.Y. Jan. 21, 2020). Judge Woods adopted the R&R in its entirety, but allowed Plaintiffs one more opportunity to replead. Dist. Ct. Op., ECF No. 61; *Averbach for Estate of Averbach v. Cairo Amman Bank*, 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020). Despite that opportunity, Plaintiffs' Amended Complaint—which includes the previously dismissed JASTA claim and a new primary liability claim—remains deficient and should be dismissed with prejudice.

The vast majority of the Amended Complaint merely repeats the allegations of the initial Complaint (often *in haec verba*) and is devoted to a lengthy description of the attacks, the history of Hamas and its designation as a Foreign Terrorist Organization ("FTO") by the U.S. Government, the

Second Intifada, Hamas's purported civil infrastructure of social service and charitable organizations, and Hamas leaders and affiliates who are not even alleged to be customers of CAB. Except for a few scattered references to CAB among these hundreds of paragraphs, it is not until the last few pages of the Amended Complaint that Plaintiffs purport to allege facts specific to CAB—and for the most part, in conclusory form. The Amended Complaint suffers from the same flaws as its predecessor, as it likewise fails to plead facts sufficient to state a viable secondary liability claim under JASTA or a primary liability claim under the ATA.

*First*, none of the new allegations cure Plaintiffs' prior failure to satisfy the "general awareness" or "substantial assistance" elements of an aiding and abetting claim under JASTA. The Amended Complaint alleges no new facts demonstrating that CAB was aware that it was assuming a role in Hamas's violent, life-endangering activities, by providing banking services to various charities and individuals alleged to be affiliated with Hamas.[1] Read most generously, the new allegations purport to provide additional support for Plaintiffs' assertion that CAB should have known that certain of the charities were affiliated with Hamas. But as this Court has already held, even if CAB knew of such an affiliation (which is denied), "merely provid[ing] banking services to a Hamas-affiliated charity[] does not satisfy JASTA's *mens rea* requirement." *Averbach*, 2020 WL 486860, at *13. Similarly, the Amended Complaint contains no new factual allegations to cure Plaintiffs' deficient pleading of the substantial assistance element of their JASTA claim.

Plaintiffs' inability to replead a viable JASTA claim against CAB is unsurprising. It is consistent with their inability to assert similar aiding and abetting claims against three other banks

---

[1] The Amended Complaint adds one new charity, the Beit Fajar Zakat Committee, to the list of alleged CAB Customers. As with the other social welfare organizations identified in the initial Complaint, Plaintiffs do not allege that this charity committed, planned, or authorized any of the attacks at issue or was engaged in violent or life-endangering activities. For the Court's convenience, attached as Appendices A-C are the appendices previously submitted to the Court in connection with CAB's prior motion, with Appendix B updated to include this charity.

arising out of the same attacks.  Just one week prior to the R&R issued by this Court recommending dismissal of the initial Complaint, the Honorable Kiyo A. Matsumoto dismissed Plaintiffs' similar JASTA claim against Blom Bank.  *Honickman v. Blom Bank SAL,* No. 19 Civ. 00008 (KAM), 2020 WL 224552 (E.D.N.Y. Jan. 14, 2020).  In a carefully reasoned decision, Judge Matsumoto rejected the same theory of liability that Plaintiffs advance here—namely, that Blom Bank could be held liable as an aider and abettor "because it provided financial services to . . . Customers . . . alleged to be '*da'wa* institutions . . . tasked by Hamas to extend [its] reach . . . through the provision of charitable services and financial support to the local population."  *Id.* at *2, 7-9 (finding that even if Plaintiffs' plausibly alleged that the bank knew its customers were related to Hamas, "[e]vidence that [Blom] knowingly provided banking services to [Hamas], without more, is insufficient to satisfy JASTA's scienter requirement").  Judge Matsumoto, like this Court, cited Judge Irizarry's dismissal of Plaintiffs' same aiding and abetting claims against National Westminster Bank and Credit Suisse arising out of the same attacks.  *Id.* at *7; *Weiss v. Nat'l Westminster Bank PLC,* 381 F. Supp. 3d 223, 234, 239 (E.D.N.Y. 2019) (finding Plaintiffs failed to satisfy general awareness element because they "offer[ed] no evidence that the 13 charities identified in the pleading [essentially the same institutions named in the complaints against CAB] participated in, planned, trained the perpetrators of, requested that someone carry out, or were the cause of the attacks giving rise to the Plaintiffs' claims"); *Strauss v. Credit Lyonnais. S.A.,* 379 F. Supp. 3d 148, 159, 164 (E.D.N.Y. 2019) (same).  Dismissal is similarly warranted here.

*Second*, Plaintiffs' last-ditch attempt to tack on a new claim for primary liability in the Amended Complaint fares no better.  The claim is utterly meritless.  It conflates the basic principles of secondary liability with the principles of primary liability.  As set forth below, a bank's provision of banking services to customers—even if those customers are alleged to be affiliates of an FTO—

does not equate to an "act of international terrorism" under the ATA.  The Amended Complaint also fails to plausibly allege that the financial services provided by CAB proximately caused Plaintiffs' injuries.  Thus, Plaintiffs lack any plausible basis to have asserted this primary liability claim—which presumably is why they omitted it from their initial Complaint.

CAB respectfully requests that this Court dismiss the Amended Complaint with prejudice.

## BACKGROUND

### A.      Overview of this Action

As the Court is already aware, this action arises from twelve terrorist attacks that occurred in Israel between December 2001 and August 2003 during the Palestinian-Israeli conflict known as the Second Intifada.  Plaintiffs are alleged victims (or relatives of victims) of those attacks.  Nearly two decades later, Plaintiffs filed this action seeking to hold CAB—a Jordanian bank that has never been accused by the U.S., Israeli, Palestinian or Jordanian authorities of negligent or intentional wrongdoing, much less of supporting terrorism—both principally and secondarily liable for the attacks.

Like the initial Complaint, the Amended Complaint contains no allegations connecting CAB to the attacks or the perpetrators of the attacks.  The attacks were allegedly committed by fifteen Hamas terrorists.  *See* Appendix A.  *None* of those terrorists are alleged to be CAB customers or alleged recipients of any funds transferred through the Bank.  As a result, the entirety of Plaintiffs' claims rest on a flawed legal premise already rejected by this Court—namely, that CAB can be liable for the attacks merely because it provided arms-length banking services to four individuals and eighteen charities that were supposedly affiliated in some way with Hamas (the "Alleged Bank Customers").  *See* Appendices B-C.  Those banking "services included maintaining accounts and processing wire transfers for the Account Holders."  *Averbach*, 2020 WL 486860, at *2.

In its prior decision, the Court recognized that Hamas "consists of both a civilian infrastructure known as the *da'wa*—which provides people with charitable, religious, and social support—and "an operational militia arm, the *Izz al-Din al-Qassam* Brigades, which engages in terrorist activities." *Id.* at *2. The Bank's Customers are alleged to be part of this civilian infrastructure of "charities and other organizations including mosques, hospitals, religious schools, clinics, and other institutions that provide social services." *Id.* Plaintiffs concede "these organizations perform actual social work and provide charitable services." Am. Compl. ¶ 654.[2] Plaintiffs contend (as they did in the initial Complaint) that the funds raised by these organizations for charitable purposes "free[d] up money to be redirected" to acts of terrorism. *Id.* In other words, as before, Plaintiffs are pursuing a *da'wa* theory of liability that rests on "the fungibility of money to draw the connection between ostensibly neutral banking services and the terror attacks at issue"— a theory of liability that was rejected by this Court, "in keeping with the trend in JASTA case law disallowing [such] claims." *Averbach*, 2020 WL 486860, at *12.

The salient facts in the Amended Complaint remain the same as those alleged in the initial Complaint. None of the charities alleged to be customers of the Bank are alleged to have played any role in the attacks. Nor were any of these entities designated by the U.S. for any suspected ties to terrorist activities or terrorist organizations at the time of the attacks, with the sole exception of the Holy Land Foundation ("HLF") which was designated three days after the first attack. *Averbach*, 2020 WL 486860, at *13. The Amended Complaint, like the initial Complaint, does not allege any

---

[2] *See, e.g., id.* ¶¶ 747 (Al Salah Charity "distributed 200,000 food packages"); 790 (Tulkarem Zakat Committee provided "financial aid" and "clothing and food for the needy"); 801 & 812 (Nablus Zakat Committee and Al-Tadamun Charitable Society provided "social welfare, education, religious studies and health" services); 827 (Jenin Zakat Committee "operate[d] in the areas of health and education, services for children and employment"); 841 (Ramallah al-Bireh Zakat Committee's "principal activities . . . are support for orphans, providing health services and running summer camps"); 903 (Al-Ihsan Charitable Society – Hebron "specialized in taking care of the disabled and . . . helping the poor, downtrodden and unfortunate members of Palestinian society").

facts demonstrating that CAB provided any financial services to HLF following its designation and the U.S. government's order freezing HLF's assets.[3]  *Id.*  Similarly, none of the four individuals alleged to be Customers and Hamas leaders were designated as terrorists prior to the attacks, and with the exception of one individual, none were alleged to have played any role in the attacks.  Am. Compl. ¶¶ 936-46.[4]  With respect to the Bank's transactions for that one individual, Abbas al-Sayed, the Amended Complaint identifies the same few small-denomination transfers to his account referenced in the initial Complaint.  As the Court previously recognized, these transfers were made "well before" (*i.e.*, ten months before) the only attack "in which he was involved and before any other of the Attacks."  *Averbach*, 2020 WL 486860, at *14.  The Amended Complaint does not plausibly allege any connection between those transactions and the attack.

Notwithstanding the foregoing, Plaintiffs seek to hold CAB not only secondarily liable for aiding and abetting, but also *primarily* liable for committing acts of international terrorism.  No new facts are asserted to support either claim.

## B.   The Court's Prior Report and Recommendation

The Court correctly recommended dismissing the sole claim in Plaintiffs' initial Complaint, which alleged that CAB was liable as an aider and abettor under JASTA, because Plaintiffs failed to plead two distinct essential elements of that claim: general awareness and substantial assistance.  *Id.* at *11-17.  *As to general awareness*, the Court closely parsed the allegations, remained faithful to the case law, and declared that "even if CAB had knowledge of the Account Holders' ties to Hamas, Plaintiffs have failed to sufficiently allege that CAB knew or intended their services would be used by Hamas or for terrorist activities."  *Id.* at *14 (citing *Siegel v. HSBC N. Am. Holdings*, 933 F.3d

---

[3] Nor could any such factual allegation be made. As set forth in CAB's motion to dismiss the initial Complaint, CAB immediately closed HLF's account following its designation by the United States.

[4] The individuals alleged to be CAB Customers in the initial and Amended Complaints are the same.

217, 224 (2d Cir. 2019)).  In other words, Plaintiffs failed to plausibly allege that CAB intended to further the terrorist activities of Hamas or was generally aware that it was playing a role in the violent or life-endangering activities of Hamas by providing routine banking services to its customers.

*As to substantial assistance*, the Court analyzed each of the six *Halberstam* factors and ruled that Plaintiffs had "clear[ly]" failed "to meet their pleading burden with respect to this element." *Id.* at *16.  Judge Woods adopted this Court's analysis of each element and dismissed the Complaint, but with leave to amend.  Dist. Ct. Op., ECF No. 61.

## C.   The Court's Prior Analysis Applies with Equal Force to the JASTA Claim in the Amended Complaint

This Court's reasons for recommending dismissal of the initial Complaint apply with equal force to the JASTA claim in Plaintiffs' Amended Complaint.  There is nothing new that would alter the outcome of that sound analysis.  Plaintiffs sought to establish CAB's liability in the initial Complaint by relying on various pieces of information that were insufficient to plausibly show that CAB knew it was assuming a role in Hamas's violent, terrorist activities or processed any transactions that substantially assisted Hamas in committing terrorist attacks, much less those that injured Plaintiffs.  Hoping to nudge their claim across the plausibility threshold, Plaintiffs add some new allegations in the Amended Complaint—but none that cure the deficiencies in pleading a viable aiding and abetting claim under JASTA.

*First*, although Plaintiffs have added a new customer to the amended pleading, the Beit Fajar Zakat, there is no allegation that this charity committed, planned, or authorized any of the attacks at issue, engaged in any terrorist activities, or was ever designated as an SDGT by the U.S. Government.  Nor are there any allegations suggesting that CAB knew that this charity was affiliated with Hamas, let alone that CAB knowingly assumed a role in Hamas's terrorist acts by providing this charity with banking services. Am. Compl. ¶¶ 862-77.  In fact, Plaintiffs concede that the

7

*principal* purpose of this zakat was to support orphans and the needy and to operate kindergartens. *Id.* ¶ 865.  Aside from this one charity, Plaintiffs' claims remain predicated solely on the same banking services and transactions identified in the initial Complaint with the same twenty-one Alleged Customers.

*Second*, throughout the Amended Complaint, Plaintiffs cite to several new documents about Hamas, its history, its *da'wa* social service infrastructure, and the Alleged Bank Customers.  But these added references, like the documents cited in the initial Complaint, fail to demonstrate that CAB knew of a link between the Alleged Bank Customers and Hamas, let alone that it knowingly played a role in Hamas's violent or life-endangering activities.  That is because these documents either: (i) did not exist before the attacks,[5] (ii) were not published or declassified *before* the attacks,[6] (iii) were not allegedly read or known by CAB before the attacks,[7] and/or (iv) are undated or involve anonymous sources or were already cited and discussed in the initial Complaint.[8]  *See, e.g.*, *Averbach*, 2020 WL 486860, at *12 (citing *Kaplan*, 405 F. Supp. 3d at 535).  Nor do those documents provide facts addressing the deficiencies in pleading "substantial assistance" previously identified by this Court.  *Id.* at 16.

---

[5] *See, e.g.*, Am. Compl ¶¶ 508 n.6 (referring to brief filed *in 2008* in the *HLF* litigation); ¶¶ 645, 667, 670, 674, 684, 776-79, 807, 819, 835, 837, 859, 895 (referring to Israeli government reports from *2004* and *2009*).

[6] *See, e.g.*, Am. Compl ¶¶ 741, 751, 794 816, 845, 871, 887 (referring to letter from German Intelligence Service to German Minister of Interior, without any allegations that CAB maintains an office in Germany or would have any reason to know of this internal communication, or any allegation as to whether or when this letter became public); ¶¶ 555, 600, 627, 664, 735 n.24, 804, 866, 880, 843 (referring to statements from unnamed or anonymous officials from the Israeli Government and the Palestinian Authority General Intelligence service and a now unclassified "Expert Opinion" from 2001 that was not allegedly available to the public before the attacks).

[7] *See, e.g.*, Am. Compl ¶¶ 554, 662, 684, 700, 713 (referring to purported publications and opinions that cannot be inferred as public materials or otherwise read by CAB before the attacks).

[8] *See, e.g.*, Am. Compl ¶¶ 544 n.10, 557,559 n.11, 582, 583-85, 592 n.13, 594-96, 610, 614-15, 618, 620, 625, 651,672, 676, 710, 714, 731, 737, 739, 747, 752-53, 756-58, 773, 990, 1017, including Exhibits B-I (ECF Nos. 63-2 - 63-9) thereto.

*Third*, even if the additional allegations were sufficient to demonstrate that CAB knew of an affiliation between any of the Alleged Bank Customers and Hamas, none demonstrate that CAB knew or intended that any transaction it processed for the Alleged Bank Customers would be used or was used for violent or life-endangering activities.  Nor do they allege that CAB *itself* engaged in an act of international terrorism by providing routine commercial banking services to the Alleged Bank Customers.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The "plausibility standard" asks for "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks and citation omitted).  The court may consider only well-pled factual allegations, *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014), and must ignore "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements." *Iqbal*, 556 U.S. at 678 (citation omitted).   A pleading that offers "labels and conclusions" of the elements of a cause of action and "naked assertion[s] devoid of 'further factual enhancement'" will not do. *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678) (other citations omitted).

## ARGUMENT

The Amended Complaint asserts two cause of action against CAB: one for aiding and abetting liability under JASTA, and the other for committing acts of international terrorism under the ATA.  Am. Compl. ¶¶ 1021-42.  Both claims are inadequately pleaded and should be dismissed

with prejudice.[9]   The JASTA claim fails because Plaintiffs have failed to cure the deficiencies identified by this Court and have failed to plausibly allege the substantial assistance and general awareness elements of their claims.   The primary liability claim fails because Plaintiffs have not plausibly alleged either that CAB's purported provision of banking services to the Alleged Bank Customers constituted "acts of international terrorism" or that such services proximately caused Plaintiffs' injuries.   Those conclusions are consistent with the wealth of case law routinely dismissing ATA cases, like this one, seeking to hold private companies civilly liable for terrorist attacks far removed from the commercial services they provided to their customers.[10]

## I.   Plaintiffs Fail to State a Secondary Liability Claim for Aiding and Abetting Claim Under JASTA

The Court is abundantly familiar with the *Halberstam* framework for analyzing aiding and abetting claims under the ATA.   *See* 18 U.S.C. § 2333 Statutory Note (Findings and Purpose § 5); *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983).   A plaintiff must plead and prove three elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; and (3) the defendant must knowingly and substantially assist

---

[9] Since the enactment of JASTA, the first of these claims is commonly referred to as a "secondary liability" claim and the second is commonly referred to as a "primary liability claim."

[10] *See e.g.*, *Siegel*, 933 F.3d at 224; *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013); *In re Terrorist Attacks on Sept. 11, 2001 (Al Rajhi Bank)*, 714 F.3d 118, 124 (2d Cir. 2013); *Fields v. Twitter, Inc.*, 881 F.3d 739, 744, 748 (9th Cir. 2018); *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 396 (7th Cir. 2018); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 624-27 (6th Cir. 2019); *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 276 (D.C. Cir. 2018); *Honickman*, 2020 WL 224552, at *7-12 ; *Kaplan*, 405 F. Supp. 3d at 529; *O'Sullivan v. Deutsche Bank AG*, 17 Civ. 8709 (LTS) (GWG), 2019 WL 1409446, at *5-10 (S.D.N.Y. Mar. 28, 2019) ("*O'Sullivan I*"); *O'Sullivan v. Deutsche Bank AG*, No. 17 Civ. 8709 (LTS) (GWG), 2020 WL 906153, at *4-6 (S.D.N.Y. Feb. 25, 2020) ("*O'Sullivan II*"); *Taamneh v. Twitter, Inc.*, 343 F. Supp. 3d 904, 912-18 (N.D. Cal. 2018); *Brill v. Chevron Corp.*, No. 15-cv04916, 2018 WL 3861659 (N.D. Cal. Aug. 14, 2018), *aff'd by*, --- Fed. Appx. ---, 2020 WL 1200695 (9th Cir. Mar. 12, 2020); *Gonzalez v. Google, Inc.*, 335 F. Supp. 3d 1156, 1178-79 (N.D. Cal. Aug. 15, 2018); *Cain v. Twitter, Inc.*, No. 17 Civ. 2506, 2018 WL 4657275, at *2-9 (N.D. Cal. Sept. 24, 2018).

the principal violation." *Halberstam*, 705 F.2d at 477.  Much like the initial Complaint, the Amended

Complaint fails to satisfy the second and third elements.

### A.   Plaintiffs Still Fail to Plead the "General Awareness" Element of Aiding and Abetting Liability

To meet the general awareness element, Plaintiffs "must plausibly allege that defendant was

'aware that, by assisting the principal, it is itself assuming a role in terrorist activities.'" *Siegel,* 933

F.3d, 224 (quoting *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018)); *see Averbach*, 2020

WL 486860, at *12-13.   Despite that requirement, as the Court previously held, "none of the

allegations in this case support a conclusion that CAB knew the funds transferred to the Account

Holders would be used for terrorist activities, let alone the Attacks that injured Plaintiffs or their

relatives." *Averbach*, 2020 WL 486860, at *12-13; *see Kaplan v. Lebanese Canadian Bank, SAL*,

405 F. Supp. 3d 525, 529 (S.D.N.Y. 2019); *Honickman*, 2020 WL 224552, at *2, 7-9.  Nothing in

the Amended Complaint alters that conclusion.

The crux of the Amended Complaint is that CAB provided financial services to individuals

and charities who it knew were, in some way, affiliated with Hamas.  That is not enough.  As the

Second Circuit held in *Linde* and reaffirmed in *Siegel*, "[a]iding and abetting an *act* of international

terrorism requires more than the provision of material support to a designated terrorist organization.

*Aiding and abetting requires the secondary actor to be 'aware'* that by assisting the principal, it is

*itself assuming a 'role' in terrorist activities*."  *Linde*, 882 F.3d at 329 (emphasis added); *see, e.g.*,

*Weiss*, 381 F. Supp. 3d at 239.  Plaintiffs still fail to plead facts making any such showing.  The

financial services provided to the Alleged Bank Customers, the same as those alleged in the initial

Complaint, are not alleged to be connected to the attacks, and the terrorists who committed the

attacks were not customers of the Bank.  JASTA claims are routinely dismissed at the pleading stage

in these circumstances, "with the trend in JASTA case law toward disallowing claims against

defendants who did not deal directly with a terrorist organization or its proxy." *Averbach*, 2020 WL 486860, at \*12 (citing *Freeman v. HSBC Holdings PLC*, No. 14 Civ. 6601(PKC) (CLP), 2019 WL 4452364, at \*1 n.2 (E.D.N.Y. 2019)).

That is particularly true where, as here, the banking services were provided to entities conceded to be providing social services, since the mere provision of "banking services to a Hamas-affiliated charity" is insufficient to satisfy the general awareness requirement, as this Court has already held. *Id.* at \*13 (collecting cases); *Honickman,* 2020 WL 224552, at \*7-9; *Weiss*, 2019 WL 1441118, at \*5 (noting that Plaintiffs' experts "admitted that [the alleged Hamas-affiliated charities] performed charitable work"); *Strauss*, 379 F. Supp. 3d at 157 (same).

When recommending dismissal for failure to plead facts sufficient to satisfy the general awareness element of a JASTA claim, the Court identified, *inter alia,* the following deficiencies, none of which are addressed in the Amended Complaint:

- "[A]ll the transfers alleged in the [Amended] Complaint were small and occurred before any of the Attacks," and "[n]one of the services provided were pleaded to have indicators that anything unusual was going on." *Averbach*, 2020 WL 486860, at \*15.

- "Plaintiffs have not alleged that any of the charity Account Holders actually took part in the attacks." *Id.* at \*13.

- Plaintiffs concede "that the charity Account Holders take part in actual charitable activities and provide actual social services," which undermines an inference of general awareness that CAB was assuming any role in terrorist activities by providing banking services to those charities. *Id.* at \*14.

- "None of the Account Holders were designated by the United States government as terrorists or terrorist organizations when the identified fund transfers took place." *Id*. at \*13.

- Although HLF was designated after the first attack in 2001, Plaintiffs "do not plead that any of the services that CAB provided to HLF through the correspondent bank accounts occurred after that designation." *Id.*

- "The first of the Attacks occurred about three months after any of the fund transfers identified by Plaintiffs." *Id.*

- "None of the individual Account Holders in this case, other than al-Sayed, was alleged to have participated in any of the Attacks," and al-Sayed's involvement was limited to planning only one of attacks that was carried out nearly a year after the wire transfer he received through CAB—a transfer that Plaintiffs do not allege facilitated the Park Hotel Bombing. *Id.* at *14.

- "There are no facts showing that CAB was administering a 'martyr payment' scheme," "no indication that CAB knew that its services were being used for martyr payments," and the allegations about CAB's passive involvement with three alleged martyr payments is a far cry from those at issue in *Miller*, since there are no allegations that CAB actively administered the payments; that CAB "received lists identifying violent causes of death as part of its administration" of the payments; that advertisements described CAB as the administrator as the scheme; or that CAB employees "affirmatively contacted a terrorist to inform him of his eligibility payment." *Id.* at *14-15.

- "Plaintiffs fail to allege that CAB was aware of or read any of [the cited] sources tying its clients to Hamas." *Id.* at *13.

The Amended Complaint, like the initial Complaint, is simply devoid of any factual, non-conclusory allegations that by providing banking services to the Alleged Bank Customers, CAB intended, or was generally aware, that it was assuming a role in Hamas' violent or life-endangering activities.

The Court's analysis of the decisions in *Kaplan*, *Miller*, *Siegel* and *Halbertam* (among others) that led to its recommended dismissal of the initial Complaint is directly on point and equally applicable to the Amended Complaint. *Id.* at *12-17. CAB has little to add to the lengthy and persuasive discussion of those cases in the R&R, and why they also dictate the dismissal here. It does, however, wish to draw the Court's attention to an additional decision, the *Honickman* decision, involving these same Plaintiffs, issued contemporaneously with this Court's R&R. In *Honickman*, Plaintiffs brought a similar aiding and abetting claim against Blom Bank, arising out of the same attacks, and asserting the same *da'wa* theory of liability. 2020 WL 224552, at *2. The court's dismissal of the complaint there mirrors this Court's analysis, providing further support for dismissal here.

There, as here, the court held the complaint failed to plead the "general awareness" element of aiding and abetting liability. First, it found, as did this Court, that Plaintiffs did not allege any acts or statements by the bank or its employees suggesting that the bank knew of any connection between its customers and Hamas. It also rejected Plaintiffs' references to "press articles, government actions, and allegedly 'public knowledge' discussing a connection" between the bank's customers and Hamas as establishing such knowledge, absent evidence that the bank knew or read the cited references. *Id.* at *8. And, as here, the court noted that none of the bank's customers were designated as SDGT's by the U.S. Treasury Department before the attacks.

Second, much like this Court, the *Honickman* court found that even if Plaintiffs' allegations plausibly alleged that Blom Bank knew that its customers were related to Hamas, "[e]vidence that [Blom] knowingly provided banking services to [Hamas], without more, in insufficient to satisfy JASTA's scienter requirement. . . . Plaintiffs must plausibly allege that [the bank] intended to further Hamas' *violent or life-endangering activities*[.]" *Id.* at *9 (citing *Linde* and cases cited by this Court) (emphasis in original). As is true here, the district court in *Honickman* noted that the pleading did not allege that any of the bank's customers engaged in any violent activities; "[t]o the contrary, the complaint set[] forth a number of charitable purposes towards which the []Customers put their funds, including giving money to orphans, students and the needy." *Id.*

The fundamental flaw common to Plaintiffs' aiding and abetting claims against Blom Bank in *Honickman,* Credit Lyonnais Bank in *Strauss,* National Westminster Bank in *Weiss,* and now for a second time against CAB, is that Plaintiffs seek to "replace the scienter for aiding and abetting liability with the lower scienter required for material support, in direct contravention of *Linde's* holding that the bank must be aware that it is assuming a role in the [FTO's] violent or life-

endangering activities.  *Honickman,* 2020 WL 224552, at *8.  Plaintiffs' attempt to conflate these very different scienter requirements has been repeatedly rejected, and should be so again.

**B.      Plaintiffs Still Fail to Plead the "Substantial Assistance" Element of Aiding and Abetting Liability**

The substantial assistance element "focuses on the relationship between the act of international terrorism and the secondary actor's alleged supportive conduct."  *Averbach*, 2020 WL 486860, at *16 (quoting *Kaplan*, 405 F. Supp. 3d at 536); *Linde*, 882 F.3d at 331.  In effect, it operates to preclude liability against secondary actors (such as CAB) that played only a remote and insubstantial role in supporting the act of international terrorism.  For that reason, courts have held that only a defendant whose conduct "play[ed] a 'major part in prompting the tort' or [was] 'integral' to the tort [can] . . . be considered [to have provided] substantial assistance."  *Copeland v. Twitter, Inc.*, 352 F. Supp. 3d 965, 976 (N.D. Cal. 2018) (quoting *Halberstam*, 705 F.2d at 484).  CAB's alleged conduct is precisely the opposite: minor and insubstantial.  It cannot plausibly constitute substantial assistance, as this Court previously concluded.  *Averbach*, 2020 WL 486860, at *16-17.  Nor can Plaintiffs rely "on the fungibility of money to draw the connection between ostensibly neutral banking services and the terror attacks at issue."  *Id.* at *12.

Nothing in the Amended Complaint meaningfully alters this Court's prior analysis of the six *Halberstam* factors, which include: "(1) the nature of the act encouraged, (2) the amount of assistance given by the defendant, (3) the defendant's presence or absence at the time of the tort, (4) the defendant's relation to the principal, (5) the defendant's state of mind, and (6) the period of the defendant's assistance."  *Averbach*, 2020 WL 486860, at *16 (quoting *Siegel*, 933, F.3d at 225).  Each of these factors still favors CAB and weighs in favor of dismissing Plaintiffs' JASTA claim.

*First*, Plaintiffs allege that CAB provided arms-length financial services to individuals and charities that were affiliated with Hamas, but still do not plausibly allege that CAB encouraged

Hamas to engage in acts of terrorism.  Once again, there is "no allegation that CAB encouraged the Attacks or any of Hamas's terrorist activities." *Averbach*, 2020 WL 486860, at *16. *Honickman*, 2020 WL 224552, at *11.  Plaintiffs' vague allegations about "martyr payments" still fall well short of plausibly showing "substantial assistance," since they do not "suggest that CAB took on any active role in encouraging or administering" those alleged payments. *Averbach*, 2020 WL 486860, at *16; *see Honickman*, 2020 WL 224552, at *11.

*Second*, the Amended Complaint confirms that the "amount of assistance" CAB allegedly provided to Hamas was attenuated and insubstantial.  As this Court correctly concluded, "making twenty-three account transfers well before any of the Attacks occurred and holding accounts[] does not give rise to a plausible inference that CAB provided 'substantial assistance to Hamas in carrying out the Attacks." *Averbach*, 2020 WL 486860, at *16.  There are no additional factual allegations in the Amended Complaint "indicat[ing] that CAB's services [to the Alleged Bank Customers] contributed to the Attacks." *Id.*  Nor are there any allegations suggesting that any fund transfers processed by CAB for these Alleged Customers were ever sent to or received by Hamas, much less used for the attacks that injured Plaintiffs or for any other violent or life-endangering activity. *See Siegel*, 933 F.3d at 225 ("To be sure, the plaintiffs did allege that HSBC provided hundreds of millions of dollars to ARB, but they did not advance any non-conclusory allegation that AQI received any of these funds or that HSBC knew or intended that AQI would receive those funds); *Honickman*, 2020 WL 224552, at *11.

*Third*, CAB was not "present" at the time of the attacks in any sense of the word. *Averbach*, 2020 WL 486860, at *16.

*Fourth*, despite leave to amend, "Plaintiffs [still] have not pleaded that CAB had any type of relationship other than an arms-length business type relationship with the Account Holders and *have*

16

*pleaded no relationship at all to Hamas except through the Account Holders*." *Averbach*, 2020 WL 486860, at *16 (emphasis supplied); *see also Taamneh*, 343 F. Supp. 3d at 918. Conclusory allegations about an ostensibly nefarious relationship are insufficient. *See, e.g.*, *Siegel*, 933 F.3d at 225 ("[P]laintiffs do not plead any non-conclusory allegations that HSBC had any relationship with AQI."); *Honickman*, 2020 WL 224552 at *11; *Kaplan*, 405 F. Supp. 3d at 536.

*Fifth*, Plaintiffs have still failed to allege that CAB knew that the services it was providing its Alleged Customers would assist Hamas's terrorist activities or the attacks that injured Plaintiffs. Nor does the Amended Complaint allege additional facts demonstrating that Hamas actually received any funds transferred through any CAB account. *Averbach*, 2020 WL 486860, at *12, *16-17; *Honickman*, 2020 WL 224552, at *12.

*Finally*, apart from the reasons previously stated by this Court, the duration of CAB's alleged assistance to its Customers is insufficient to establish substantial assistance, since the Amended Complaint makes no plausible allegation that any of the funds transferred to or by the Alleged Customers went to support Hamas' violent activities. *See e.g. Siegel*, 933 F. 3d at 225; *Honickman*, 2020 WL 224552, at *12.

*   *   *   *   *

In sum, Plaintiffs' have not and cannot plausibly allege facts supporting the two essential elements of their JASTA claim—general awareness and substantial assistance. They have had more than a decade to investigate CAB's supposed support for Hamas and two opportunities to plead a plausible claim against CAB for aiding and abetting. Each attempt has failed. The first for the reasons set out in this Court's thoughtful, well-reasoned R&R, and the second because their Amended Complaint failed to cure the numerous deficiencies this Court identified when recommending the dismissal of the initial Complaint. Plaintiffs' JASTA claim should be dismissed with prejudice.

## II.     Plaintiffs Fail to State a Claim for Primary Liability under the ATA

In apparent recognition of the deficiencies underlying their *secondary* liability claim, Plaintiffs have now added a meritless *primary* liability claim to their Amended Complaint.  *See* Am. Compl. ¶¶ 1032-42 (Count II); *see also id.* at 1 (describing the "nature of the action" as a JASTA action without any reference to the primary liability claim tacked on to the end of the pleading).  In essence, Plaintiffs assert for the first time that CAB *itself committed* "acts of international terrorism" by providing financial services to its customers.  *Id.*  Plaintiffs are wrong, as a matter of fact and law, and they lack any plausible basis for asserting this claim.  Courts have routinely rejected similar primary liability claims brought against financial institutions, which presumably is why Plaintiffs chose not to assert such a claim in the initial Complaint.

To prevail on a claim of primary liability under the ATA, "a plaintiff must demonstrate '(1) an injury to a U.S. national, (2) an act of international terrorism, and (3) causation.'"  *Kaplan*, 405 F. Supp. 3d at 531 (quoting *O'Sullivan I*, 2019 WL 1409446, at * 4).  Because Plaintiffs have not plausibly alleged CAB perpetrated "an act of international terrorism" or proximately caused their injuries, Count II of the Amended Complaint should be dismissed with prejudice.

### A.     Plaintiffs Fail to Allege that CAB's Provision of Banking Services Constitutes "International Terrorism" under the ATA

Plaintiffs' primary liability claim should be dismissed because Plaintiffs fail to allege facts supporting an inference that CAB's own conduct constitutes an act of "international terrorism" within the meaning of the ATA.  The ATA imposes liability only for injuries incurred "by reason of *an act of international terrorism*." 18 U.S.C. § 2333(a) (emphasis added).  Plaintiffs must allege that *CAB itself* committed an "act of international terrorism."  *Linde*, 882 F.3d at 320. They have not come close to pleading facts that could conceivably support such an inference.

The definition of "international terrorism" includes four *separate* components.  18 U.S.C. § 2331(1).  In particular, "[t]he ATA defines 'international terrorism' as activities that (1) 'involve violent acts or acts dangerous to human life'; (2) qualify as 'a violation of the criminal laws of the United States or of any State' if committed within the United States; (3) 'appear to be intended' to 'intimidate or coerce a civilian population,' to 'influence the policy of a government by intimidation or coercion,' or to 'affect the conduct of a government by mass destruction, assassination, or kidnapping'; and (4) 'occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries.'" *Kaplan*, F04 F. Supp. 3d at 531 (quoting 18 U.S.C. § 2331(1)).  In *Linde*, the Second Circuit held that an act constitutes international terrorism *only if* it satisfies *each* of these distinct requirements.  882 F.3d at 326.

Try as they might, Plaintiffs cannot contort CAB's provision of routine banking services into violent, terrorist conduct.  Judge Daniels's recent decision in the "near identical case" of *Kaplan*— which this Court cited when dismissing the initial Complaint—demonstrates why the Plaintiffs have not (and cannot) make such a showing.  *See Averbach*, 2020 WL 486860, at *12 (relying on *Kaplan* to dismiss JASTA claim); Dist. Ct. Op. at 2, ECF No. 61 ("[T]he R&R correctly referenced the analysis in *Kaplan*[.]").  The *Kaplan* plaintiffs also brought a claim for primary liability in addition to an aiding and abetting claim under JASTA.  The court dismissed that claim, explaining that the focus of any primary liability claim is "Defendant's *own* actions" and whether *those actions* constitute acts of "international terrorism"—that is, whether those actions "involve[d] violence or endanger[ed] human life" *and* "appear[ed] to be intended to intimidate or coerce a civilian population or to influence or affect a government."  405 F. Supp. 3d at 531-36 (quoting *Linde*, 882 F.3d at 326).

Much like CAB, the bank in *Kaplan* "did not itself perpetrate the []attacks that injured plaintiffs," but rather provided financial services to customers allegedly affiliated with Hizbollah  *Id.*

at 532.  As the court held, the provision of such "financial services *does not*, in itself, equate to international terrorism," *regardless of whether the defendant bank was fully aware of those affiliations when it provided the services or was providing "material" support in violation of federal criminal law.  Id.* (quoting *Linde*, 882 F.3d at 326); 18 U.S.C. § 2331(1).[11]  Only *direct* perpetrators of international terrorism are liable as primary actors under §2333(a) —not secondary actors, such as banks, absent a showing that the banks' *own* actions constituted terrorist conduct.  That is because routine banking services, as alleged here and in *Kaplan*, do not involve inherently violent acts or acts dangerous to human life and are not undertaken to intimidate or coerce a civilian population.  *See O'Sullivan I,* 2019 WL 1409446, at *8 (dismissing plaintiffs' ATA primary claim against a bank that provided financial services to various Iranian entities "with connections to terrorist organizations" because "the provision of banking services, which are not inherently violent or dangerous, cannot be considered as acts dangerous to human life"); *Freeman*, 413 F. Supp. 3d at 83 (rejecting a similar primary liability claim against a bank that did business with entities with affiliations to terrorists because "accepting Plaintiffs' logic under these circumstances would mean, in effect, that any dealings with these entities is dangerous to human life, which the Court finds would stretch the statutory definition of an act of terrorism too far."); *Weiss*, 381 F. Supp. 3d at 236-39 (dismissing primary liability claim of these same Plaintiffs, holding that "merely provid[ing] banking services to [an alleged SDGT] for ostensibly charitable purposes . . . does not satisfy the intent required by § 2331(B) as established by the *Linde* Court"); *Kemper*, 911 F.3d at 390 (rejecting a similar claim because "[t]o the objective observer, [Deutsche Bank's] interactions with Iranian entities were motivated by economics, not by a desire to 'intimidate or coerce'").

---

[11] Plaintiffs allege that CAB's provision of banking services to alleged Hamas affiliates constituted the crime of providing of "material support" to a designated terrorist organization in violation of 18 U.S.C. § 2339B(a)(1).  Am. Compl. ¶ 1034.

Because the Amended Complaint fails to allege facts demonstrating that CAB itself committed an act of international terrorism as defined in the ATA, Plaintiffs' primary liability claim fails as a matter of law.

**B.      Plaintiffs Fail to Allege that CAB's Provision of Banking Services Proximately Caused the Rocket Attacks or Plaintiffs' Alleged Injuries**

Plaintiffs have also failed to sufficiently plead the causal element of their primary liability claim.  The ATA's plain language "restricts the imposition of such liability to situations where plaintiffs plausibly allege that defendant's actions proximately caused their injuries." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 125 (2d Cir. 2013) (citation omitted).  "Central to the notion of proximate cause is the idea that a person is not liable to all those who may have been injured by his conduct, but only to those with respect to whom his acts were a substantial factor in the sequence of responsible causation and whose injury was reasonably foreseeable or anticipated as a natural consequence." *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013); *Zapata v. HSBC Holdings PLC,* No. 17 Civ. 6645 (NGG) (CLP), 2019 WL 4918626, at *9 (S.D.N.Y. Sept. 30, 2019) ("Proximate causation in the ATA context … requires … a sufficiently *direct relationship* between the conduct in question and the injuries for which recovery is sought.") (citations omitted) (emphasis supplied); *see also Al Rajhi Bank*, 714 F.3d at 124 ("We also are not persuaded that providing routine banking services to organizations and individuals said to be affiliated with al Qaeda—as alleged by plaintiffs—proximately caused the September 11, 2001 attacks or plaintiffs' injuries."); *Freeman*, 2019 WL 4452364, at *17 (dismissing claims because "[t]here are no allegations that Defendants directly provided funds or services to a terrorist group, no non-conclusory allegations that the specific funds processed by Defendants were destined for a terrorist organization rather than some more benign or legitimate purpose, and no plausible allegations that the attacks in Iraq were only possible due to Defendants' actions."); *O'Sullivan I*, 2019 WL 1409446 at *6 ("Absent further

factual allegations connecting Defendants' conduct to the terrorist organizations and attacks that injured Plaintiffs, the provision of financial services to Iran or various Iranian entities is insufficient on its own to support a plausible inference that the transferred funds were subsequently used to finance terrorism."); *Stutts v. De Dietrich Grp.*, 2006 WL 1867060, at *3-4 (E.D.N.Y June 30, 2006) (concluding that it was not reasonably foreseeable that issuing letters of credit to Iraqi chemicals manufacturers would lead to the manufacture of chemical weapons).

The Amended Complaint does not allege that the financial services CAB allegedly provided to its Customers proximately caused the attacks that injured Plaintiffs.  It merely alleges that CAB provided financial services to customers with supposed Hamas affiliations who engage in actual charitable activities and provide social services.  It does not plausibly allege facts demonstrating that the Bank provided funds directly to Hamas for terrorist purposes or that link any transaction processed by CAB to any of the attacks that injured Plaintiffs.

Judge Daniel's decision in *Kaplan* is again instructive.  Finding the complaint devoid of any factual, non-conclusory allegations demonstrating that Defendant provided money directly to Hizbollah to carry out the attacks, that any funds transferred through the LCB Accounts were, in fact, sent to Hizbollah and then used by Hizbollah to perpetrate the rocket attacks, or that Hizbollah would not have been able to carry out the attacks absent those specific funds, Judge Daniels held that the bank's "provision of financial services and Plaintiffs' injures is too attenuated to support a finding of proximate cause."  405 F. Supp. 3d at 533 (citing *Rothstein*).  The reasoning applies with equal force here.  Plaintiffs have likewise failed to allege that CAB ever provided money or financial services to Hamas to carry out the attacks, that any of the funds transferred through CAB accounts were actually used to perpetrate the attacks, or that the attacks would not have occurred but-for the provisions of those funds.

*     *     *     *     *

In sum, the Court should dismiss Plaintiffs' ATA claim for primary liability because the Amended Complaint fails to plead facts establishing that CAB committed an act of international terrorism or proximately caused Plaintiffs' injuries.

### III. Plaintiffs Julie Averbach, Matanya Nathansen, Nevenka Gritz, and Arie Miller Lack Standing, as this Court Previously Ruled

The ATA confers statutory standing only on "[a]ny national of the United States injured . . . by reason of an act of international terrorism, <u>or</u> his or her estate, survivors, <u>or</u> heirs[.]"  18 U.S.C. §§ 2333(a) (emphasis supplied); 2333(d)(2) (incorporating Section 2333(a)'s standing requirements by reference).  "Nowhere in the statute does Congress provide remedies for non-nationals claiming damages for personal injuries."  Dist. Ct. Op. at 4, ECF No. 61.  For that reason, the District Court held that the "R&R correctly determined that Plaintiffs Julie Averbach, Matanya Nathansen, and Nevenka Gritz lack standing to bring claims on their own behalf under JASTA because they are foreign nationals bringing claims for personal injuries." *Id.*  In so ruling, the District Court dismissed those claims *with prejudice*.  Plaintiffs Julie Averbach, Matanya Nathansen, and Nevenka Gritz have nonetheless reasserted their direct-capacity claims in the Amended Complaint—without pleading *any* new facts establishing their standing.  *See* Am. Compl. ¶¶ 30, 127, 382.  The Amended Complaint still confirms they are foreign nationals without statutory standing to sue under the ATA and, in any event, the Court's prior dismissal *with prejudice* precludes their claims as a matter of law.  Those claims should once again be dismissed.[12]

---

[12] In response to CAB's motion to dismiss his claims for lack of standing, Plaintiff Arie Miller—an Israeli citizen— "voluntarily dismissed his claim." *Averbach*, 2020 WL 486860, at *9 n.10.  Despite that representation, Mr. Miller is named as a Plaintiff in both the caption and body of the Amended Complaint and appears to be asserting a claim on his own behalf.  *See* Am. Compl. ¶¶ 454, 456.  Because he is not a U.S. national, he lacks statutory standing.  *Id.*, at 9-10.  His claims must be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice because Plaintiffs fails to state a claim for primary or secondary liability under the ATA, as amended by JASTA. Furthermore, the claims asserted by Plaintiffs Julie Averbach, Matanya Nathansen, Nevenka Gritz and Arie Miller must also be dismissed with prejudice for lack of standing.

Dated: May 22, 2020                              Respectfully submitted,

                                                 **DLA PIPER LLP (US)**

                                                 By: /s/ *Jonathan Siegfried*
                                                 Jonathan D. Siegfried
                                                     jonathan.siegfried@us.dlapiper.com
                                                 Douglas W. Mateyaschuk II
                                                     douglas.mateyaschuk@us.dlapiper.com
                                                 1251 Avenue of the Americas,
                                                 27th Floor New York, NY 10020-1104
                                                 (212) 335-4500

                                                 *Counsel for Cairo Amman Bank*

**APPENDIX A:**
**THE TWELVE TERRORIST ATTACKS**

| **Attack** | **Date** | **"Person Who Committed" The Attacks** |
|---|---|---|
| Ben Yehuda Street Bombings | Dec. 1, 2001 | • Nabil Halabiya (Compl. ¶ 409)<br>• Osama Bahar (Compl. ¶ 409)<br>• Unknown bomber(s) (Compl. ¶ 410) |
| Park Hotel Bombing | Mar. 27, 2002 | • Abd al-Baset Odeh (Compl. ¶ 403) |
| Sheffield Club Bombing | May 7, 2002 | • Muhammad Muammar (Compl. ¶ 386) |
| Patt Junction Bus #32A Bombing | June 18, 2002 | • Muhamad al-Ghoul (Compl. ¶ 482) |
| Hebrew University Bombing | July 31, 2002 | • Mohammad Odeh (Compl. ¶ 335) |
| Ariel Bombing | Oct. 27, 2002 | • Muhammad Kazid Faysal al-Bustami (Compl. ¶ 487) |
| Shooting Attack on Route #60 | Jan. 29, 2003 | • Farah Hamad (Compl. ¶ 314)<br>• Yasser Hamad (Compl. ¶ 314) |
| Mike's Place Bombing | April 30, 2003 | • Asif Muhammad Hanif (Compl. ¶ 295) |
| Commuter Bus #6 Bombing | May 18, 2003 | • Basem Takruri (Compl. ¶ 9) |
| Jaffa Road Bus #14A Bombing | June 11, 2003 | • Abd el-Mu'ati Shabana (Compl. ¶ 262) |
| Shooting Attack on Route #60 | June 20, 2003 | • Ahmad Najjar (Compl. ¶ 199)<br>• Farah Hamad (Compl. ¶ 199) |
| Egged Bus #2 Bombing | Aug. 19, 2003 | • Ra'ed Abdul Hamid Misk (Compl. ¶ 68) |

## APPENDIX B:
## THE CHARITIES ALLEGED TO BE CAB CUSTOMERS

| Name | Alleged Role in Attack | U.S. Designation[13] |
|---|---|---|
| Al-Ansar Charitable Society | None | No |
| Holy Land Foundation | None | SDGT (Dec. 4, 2001) |
| Al-Ihsan Charitable Society | None | SDGT (May 4, 2005) (for being a charitable front for Palestinian Islamic Jihad, not Hamas) |
| Islamic Charitable Society – Hebron | None | No |
| Al Jam'iya Al-Islamiya (Islamic Society – Gaza) | None | No |
| Jenin Zakat Committee | None | No |
| Al Mujama Al Islami (The Islamic Center – Gaza) | None | No |
| Muslim Youth Association – Hebron | None | No |

[13] The U.S. Designation refers to the following:

*Foreign Terrorist Organization ("FTO")*: an organization declared a terrorist organization by the United States Secretary of State in accordance with section 219 of the United States Immigration and Nationality Act. 8 U.S.C. §§ 1189(a)(1), (d)(4).

*Specially Designated Global Terrorist ("SDGT")*: an individual or organization found by OFAC, pursuant to Executive Order 13224, to have committed or to pose a significant risk of committing acts of global terrorism. *See* 31 C.F.R 515.305 *et seq.*; Exec. Order 13224, 66 Fed.Reg. 49079 (Sept. 23, 2001).

*Specially Designated Terrorist ("SDT")*: an individual or organization determined by OFAC, pursuant to Executive Order 12947, to be a threat to the Middle East peace process. *See* 31 C.F.R. 595.311 *et seq.*; Exec. Order 12947, 60 Fed.Reg. 5097 (Jan. 23, 1995), *amended by* Exec. Order 13099, 63 Fed.Reg. 45167 (Aug. 20, 1998).

| Name | Alleged Role in Attack | U.S. Designation[13] |
|---|---|---|
| Nablus Zakat Committee | None | No |
| Qalqilya Zakat Committee | None | No |
| Quran and Sunnah Society Qalqiya | None | No |
| Ramallah – Al Bireh Zakat Committee | None | No |
| Al Salah Islamic Society in the Gaza Strip | None | SDGT (Aug. 7, 2007) |
| Al-Tadamun Charitable Society (in Nablus) | None | No |
| Tulkarem Zakat Committee | None | No |
| Al-Wafa Charitable Society | None | No |
| Welfare Association for Palestinian and Lebanese Families (Al Waqfiya) | None | SDGT (Oct. 4, 2012) |
| Beit Fajar Zakat Committee | None | No |

App. 3

**APPENDIX C:**
**THE INDIVIDUALS ALLEGED TO BE CAB CUSTOMERS**

| Name | Alleged Role in Attack | U.S. Designation |
|---|---|---|
| Sayed Salem Abu Musameh | None | NS-PLC[14] (Sept. 16, 2016) |
| Ghazi Ahmad Hamad | None | No |
| Abbas Mohamed al-Sayed | Planner of the Park Hotel Bombing (Compl. ¶ 765). | No |
| Mohamed Saleh Taha | None | No |

---

[14] Non-Specially Designated National and Blocked Person elected to the Palestinian Legislative Council ("NS-PLC"): members of the Palestinian Legislative Council ("PLC") "elected to the PLC on the party slate of Hamas," and not necessarily designated by the OFAC List. Section (b) of General License 4, issued pursuant to the Global Terrorism Sanctions Regulations (31 C.F.R. Part 594), the Terrorism Sanctions Regulations (31 C.F.R. Part 595), and the Foreign Terrorist Organizations Sanctions Regulations (31 C.F.R. Part 597), authorizes (but does not require) U.S. financial institutions to reject transactions with NS-PLCs.