

190 Moore Street, Suite 272, Hackensack, New Jersey 07601
T: 201 265 6400 F: 201 265 0303

1441 Broadway, New York, New York 10018
T: 212 354 0111
www.osenlaw.com

May 9, 2022

**VIA ECF**

Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2260
New York, NY 10007

    Re:    *Averbach, et al. v. Cairo Amman Bank,* No. 1:19-cv-00004-GHW-KHP

Dear Judge Woods:

    Plaintiffs respectfully write to notify the Court that pursuant to Rule 41(a)(1)(A)(i) they are voluntarily dismissing their Second Claim for Relief, "Committing Acts of International Terrorism in Violation of 18 U.S.C. § 2339B(a)(1) and 18 U.S.C. § 2333(a)" (*i.e.*, "primary liability") from their Second Amended Complaint, ECF No. 96 ("SAC").[1]

    Plaintiffs are **maintaining** their First Claim for Relief, "Aiding and Abetting HAMAS, a Foreign Terrorist Organization, in Violation of 18 U.S.C. § 2333(d)" (*i.e.*, "secondary liability"). In her Report and Recommendation, ECF No. 114 ("R&R"), Magistrate Judge Parker correctly recommended denying Defendant Cairo Amman Bank's ("CAB") motion to dismiss Plaintiffs' First Claim for Relief. Insofar as that claim is a sufficient basis for liability, Plaintiffs see no reason to complicate the litigation by attempting to maintain the Second Claim for Relief.[2]

    However, Plaintiffs note for the record that they respectfully disagree with the R&R's primary liability analysis, which distinguishes *Linde v. Arab Bank, PLC,* 882 F.3d 314 (2d Cir. 2018) and *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33 (E.D.N.Y. 2019) because "there was evidence that certain transfers of money made to charities known to funnel money to Hamas were 'explicitly identified as payments for suicide bombings,'" R&R at 45-46 (quoting *Linde*, 882 F.3d at 321), whereas here the magistrate found "there are no allegations that CAB processed payments

---

[1]     *See Azkour v. Haouzi*, No. 11-cv-5780 (RJS)(KNF), 2013 WL 3972462, at *3 (S.D.N.Y. Aug. 1, 2013) ("the Court joins other courts in this Circuit in interpreting Rule 41(a)(1)(A) as permitting the withdrawal of individual claims") (citations omitted). *See also Nix v. Off. of Comm'r of Baseball*, No. 17-cv-1241 (RJS), 2017 WL 2889503, at *3 n.2 (S.D.N.Y. July 6, 2017) (calling the interpretation "clear"); *Burgos v. City of N.Y.*, No. 18-cv-1150 (JPO), 2019 WL 1299461, at *2 (S.D.N.Y. Mar. 21, 2019) ("follow[ing] the numerous other courts in this Circuit" that agree).

[2]     Primary liability differs from secondary liability in some respects that may be essential to certain claims under the Anti-Terrorism Act but, given the secondary liability analysis in the R&R, that is not the case here.

explicitly identified as payments for suicide bombings," *id.* at 48.³ But *Linde* was a post-trial jury instruction case *following discovery*, and the *Miller* complaint was fashioned from the *Linde* evidence. *Cf. Henkin v. Kuveyt Turk Katilim Bankasi, A.S.,* 495 F. Supp. 3d 144, 158 (E.D.N.Y. 2020) (cautioning against relying on "the *Linde* Court's discussion of evidentiary sufficiency after years of discovery and a fully contested trial" on a motion to dismiss).

Accordingly, a court's analysis of the sufficiency of pleadings is necessarily somewhat different than a post-verdict review. Here, for example, the SAC cited contemporaneous news articles and a published Israeli government report identifying CAB *by name* as the source of checks distributed at public ceremonies in the Palestinian Territories rewarding the families of suicide bombings. SAC ¶¶ 1223, 1228, 1230 & n.78. In Plaintiffs' view, such allegations along with others about CAB's customers making martyrs payments or otherwise supporting terrorism more than satisfy the pleading requirements for primary liability.⁴

But again, given that those same allegations are sufficient (along with many others) to sustain Plaintiffs' secondary liability claim, in the interest of judicial efficiency, Plaintiffs will proceed solely on the basis of the First Claim for Relief and will not therefore file any Rule 72 objections to the R&R.

Respectfully submitted,

/s/ Gary M. Osen

cc:     All Counsel

---

³       The *Linde* court held that whether any "financial services to Hamas should not be viewed as routine," "raises questions of fact for a jury to decide." 992 F.3d at 327. Thus, were the SAC lacking allegations that CAB administered martyr payments (which it alleged), the knowing provision of millions of dollars of assistance to an FTO should not be decided on motion to dismiss.

⁴       The R&R also states that Plaintiffs failed to meet the proximate cause standard for primary liability set forth in *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), because there were no allegations stating "that CAB was on actual notice that funds its [sic] was processing were in fact going to Hamas operatives" or, where it was on such notice, that the funds were used "to plan that terrorist attack or other attacks." R&R at 52. But *Rothstein* does not require payments for operatives or attacks—it only required allegations that "UBS provided money to Hizbollah or Hamas," or that "U.S. currency UBS transferred to Iran was given to Hizbollah or Hamas." 708 F.3d at 97. Plaintiffs alleged at length that CAB knowingly held accounts and performed transfers for *Hamas leaders*—including operatives—and Hamas institutional alter egos. Appendix A to Plaintiffs' Opposition Brief lists in detail how CAB's customers were *themselves* Hamas entities. For example, *Al-Mujama Al-Islami* "transitioned into the central headquarters of [Hamas] in the Gaza Strip and was widely identified as being synonymous with HAMAS." SAC ¶ 512. Appendix B to Plaintiffs' Opposition Brief lists CAB's Hamas operative customers, including Abdel Khaleq Natshe, a Hamas representative who was "behind" a terror attack and "provid[ed] funding and coordination for" Hamas's operational terrorist wing, SAC ¶ 915; Abbas al-Sayed, one of the planners of the Park Hotel attack, *id.* ¶¶ 1142, 1144; and Mohamad Taha, a "senior figure" in Hamas's "military wing[]." *id.* ¶ 1156.