

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 01/17/2023

90 Moore Street, Suite 272, Hackensack, New Jersey  07601
T: 201 265 6400 F: 201 265 0303

1441 Broadway, New York, New York  10018
T: 212 354 0111
www.osenlaw.com

January 12, 2023

**VIA ECF**

| The parties' proposed revisions to the transcript from the December 13, 2022 Conference are APPROVED. |

Hon. Katharine H. Parker
United States Magistrate Judge
United States District Court, Southern District of New

**SO ORDERED:**

Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

HON. KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE   01/17/2023

      Re:   *Averbach et al. v. Cairo Amman Bank*, 19-cv-00004-GHW-KHP
           **Letter Motion Requesting Approval of December 13, 2022, Transcript Errata**

Dear Magistrate Judge Parker:

     At the request of the transcription service that prepared the transcript for the December 13, 2022, case management conference, we write jointly on behalf of the parties to request that the Court approve the proposed changes to the transcript attached hereto as a clean document in **Exhibit A** and a redline in **Exhibit B**.

                   Respectfully submitted,

                   /s/ Dina Gielchinsky

cc:    All Counsel

# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                               :
                                         Docket #19cv0004
AVERBACH, et al.,                    : 19-cv-00004-GHW-KHP

                    Plaintiffs,      :

  - against -                        :

CAIRO AMMAN BANK,                    : New York, New York
                                       December 13, 2022
                    Defendant.        :

------------------------------------ :
```

                        PROCEEDINGS BEFORE
               THE HONORABLE KATHARINE H. PARKER,
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:          OSEN LLC
                         BY:  GARY OSEN, ESQ.
                              DINA GIELCHINSKY, ESQ.
                         190 Moore Street, Suite 272
                         Hackensack, New Jersey 07601

For Defendant:           DLA PIPER US LLP
                         BY:   JONATHAN SIEGFRIED, ESQ.
                               ANDREW PECK, ESQ.
                         1251 Avenue of the Americas
                         New York, New York 10020

For Third Party          WHITMAN BREED ABBOTT & MORGAN LLC
Defendants:              BY:  RICHARD LAWLER, ESQ.
                              MICHAEL THOMASON, ESQ.
                         500 West Putnam Avenue
                         Greenwich, Connecticut 06930


Transcription Service:   Carole Ludwig, *Transcription Services*
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-<br>Direct**</u> | <u>**Re-<br>Cross**</u> |
|---|---|---|---|---|
| None | | | | |

<u>**E X H I B I T S**</u>

| <u>**Exhibit<br>Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir<br>Dire**</u> |
|---|---|---|---|---|
| None | | | | |

                                                          3

          THE CLERK:  Calling case 19cv004, Averbach

versus Cairo Amman Bank.  Beginning with the counsel

for the plaintiffs, please make your appearance for

the record.

          MR. GARY OSEN:  Good morning, Your Honor, this

is Gary Osen from Osen LLC, together with my

colleague, Dina Gielchinsky, on behalf of the

plaintiffs.

          THE COURT:  Okay, nice to see you.

          THE CLERK:  And counsel for the defendants,

please make your appearance for the record.

          MR. JONATHAN SIEGFRIED:  Good morning, Your

Honor, Jonathan Siegfried for DLA, along with my

colleague, Andrew Peck.

          THE COURT:  Hello.

          THE CLERK:  And counsel for the third party

defendants, please make your appearance.

          MR. RICHARD LAWLER:  Good morning, Your Honor,

Richard Lawler, Whitman Breed Abbott & Morgan, for

Arab Bank New York, and Michael Thomason, good

morning, Your Honor.

          THE COURT:  Good morning.  Okay, welcome,

everyone. The principal purpose of today's proceeding

I think is to address the subpoena and the motion to

1   compel that plaintiffs have filed seeking certain

2   information from Arab Bank.  And what I wanted to do

3   was talk about that motion, hear from plaintiffs on

4   that and then I'll hear from Arab Bank's counsel who

5   are here today. I did read the *Spetner* case which was

6   cited in the, in the briefs, but the principal thing

7   that I want plaintiffs to address is why what you are

8   seeking is proportional to the needs of the case and,

9   of course, any other points that you want to raise.

10  So I'll hear first from plaintiffs' counsel.

11          MR. OSEN:  Thank you, Your Honor.  As I read

12  the defendant's brief I think there are really only

13  two open issues of dispute. The first is whether Arab

14  Bank's, I'll call it Arab Bank-New York for simplicity

15  purposes, has to search for, in addition to the

16  individuals and entities listed in the complaint, an

17  additional 11 individuals and entities that were not

18  listed in the complaint by name, 9 individuals and 2

19  entities.  And the second issue still in dispute is

20  whether they should have the burden of searching for

21  variations and transliterations of the names of the

22  individuals and entities listed.

23          THE COURT:  Well, aren't they also saying that

24  they don't have any, that CAB didn't have an account

```
 1
 2   and that they just don't have any documents?
 3           MR. OSEN:  I don't think that's correct, Your
 4   Honor.
 5           THE COURT:  Okay.
 6           MR. OSEN:  Arab Bank clearly does have
 7   responsive records because we already have records
 8   from Arab Bank-New York that involve Cairo Amman
 9   Bank's New York transactions. The question is, as they
10   frame it, is that they are not a correspondent bank
11   for CAB, which is true, but the transactions that we
12   have seen already are ones in which Arab Bank is the
13   correspondent bank for the other side of the
14   transaction. So, in any correspondent account
15   transactions there are at least four parts to it,
16   there's the originator bank and its correspondent
17   bank, and the recipient bank's correspondent bank, and
18   then the recipient bank, itself. So in a transaction,
19   and I can give you an example and present one to you
20   if that's helpful, Arab Bank, for the sake of
21   argument, Arab Bank in Beirut or in Jordan has a
22   customer, sends a US dollar-denominated transaction to
23   a Cairo Amman Bank customer in the Palestinian
24   Territories; that transaction flows from Arab Bank in
25   Jordan, credited to Arab Bank's correspondent account
```

6

in New York, and then to, for example, Citibank as the

correspondent for CAB and then on to CAB in the

Palestinian Territories.  That's a typical sort of

wire transfer.

        So, we already have examples of Arab Bank

transactions for relevant entities and parties that,

where Arab Bank is the originating bank and,

therefore, the customer's correspondent is Arab Bank-

New York and then the recipient is Cairo Amman Bank

with, in most of the cases we've seen Citibank as the

correspondent for Cairo Amman --

        THE COURT:  So, the only examples, you're

conceding then that the only examples that you're

expecting to find are examples where a customer of

Arab Bank is originating the transaction?

        MR. OSEN:  Technically, it doesn't have to be

a customer of Arab Bank, Arab Bank could be the,

simply the correspondent for another bank but, yes,

there are going to be cases where the originator is

not Cairo Amman, but only the recipient is.

        THE COURT:  So, you're looking for

transactions where CAB is a recipient?

        MR. OSEN:  Right, but where they are using, of

course, New York as the basis to receive the dollars.

So, there are many examples of CAB receiving

transactions from say entities in Europe where it

doesn't flow or at least we can't see visibly that it

went through New York. Here, we're talking about

transactions – definitionally because it's Arab Bank-

New York – that flowed through Arab Bank-New York to

CAB in the territories.

THE COURT:  Okay.

MR. OSEN:  If it will help Your Honor, I can

give you an example that's already in the public

record.

THE COURT:  Sure.

MR. OSEN:  Your Honor, with permission I'll

approach.

THE COURT:  Yes.

THE CLERK:  Thank you.

MR. OSEN:  So, for the record, this is Bates

stamped AV-PL000016 and, again, also for the record,

Your Honor, the highlighting is done by counsel and

not in the original document.

THE COURT:  Um-hmm.

MR. OSEN:  So, this is a year 2000 transaction

for over $8,000 that was initiated by an individual

named Mr. Youssef El-Hayek (phonetic), he's identified

8

below as the originating party and --

THE COURT:  And he has an account at Arab
Bank.

MR. OSEN:  Presumably.  It's not entirely
clear from this document whether he simply used Arab
Bank or had an account there but, in any event, he
used Arab Bank Amman as the originating bank to send
this transfer.  And the beneficiary is Ghazi Hamad, G-
H-A-Z-I, Hamad, who is a, the complaint alleges, a
prominent Hamas leader in the Gaza Strip and he had an
account at the credit bank, Cairo Amman Bank, with the
address listed there in Amman, Jordan. And the
transfer was credited, you can see four lines down,
through Citibank, that's for their routing. So, the
transfer would have gone essentially from the books of
Arab Bank Jordan, which had an account with Arab Bank
New York, then the correspondent banking credit goes
to Citibank and then Citibank's correspondent account
which Cairo Amman then credits the account holder
listed.

So, it's this kind of transaction and others
like it that are of interest in --

THE COURT:  Right, so this goes from this guy
in Amman, Jordan, he walks into Arab Bank, he says I

9

want to send this money to Hamad, also in Jordan, and
the bank sends the money to its Arab Bank-New York,
which then sends it to Citibank New York, which then
sends it to the CAB account in Jordan of this guy,
Hamad, is that what you're saying?

            MR. OSEN:  More or less, it's really a --

            THE COURT:  Are there any other steps in that,
four steps?

            MR. OSEN:  Yeah, there are no additional
steps, I would just say that these are all sort of
book entries, correspondent banking is basically a
series of IOUs between the banks so there is really
never any money physically changing hands and a
correspondent banking example is just credits and
debits by the banks.

            THE COURT:  Okay.

            MR. OSEN:  And that's standard --

            THE COURT:  And you're saying this is relevant
to jurisdiction?

            MR. OSEN:  Sure.

            THE COURT:  Okay, why don't we talk about
that?

            MR. OSEN:  Well, because this is a
paradigmatic example of a funds transfer that

10

1  purposely avails the use of the US and New York

2  correspondent banking system to effectuate the

3  transfer.  And just to frame it again --

4      THE COURT:  And how is CAB, the recipient,

5  fourth step along the line, how is the recipient

6  purposely availing itself of jurisdiction in New York

7  under your theory?

8      MR. OSEN:  It's not, it's not my theory, Your

9  Honor, it's the Second Circuit and the New York Court

10  of Appeals in *Licci*. To just take this same

11  transaction and frame it in *Licci* terms, in that case

12  the bank was Lebanese Canadian Bank in Beirut, it was

13  receiving transfers to an organization called The

14  Martyrs Foundation in Lebanon and, again, the

15  transfers were going through Amex, in that case the

16  New York correspondent bank for LCB, for Lebanese

17  Canadian Bank, and were being credited to the account

18  of LCB in Beirut.

19      THE COURT:  But in *Licci*, LCB was on both ends

20  of the transaction, isn't that correct?

21      MR. OSEN:  No, Your Honor.

22      THE COURT:  All right, so tell me why that's

23  not the case.

24      MR. OSEN:  In *Licci* the only allegation was

that LCB held accounts for The Martyrs Foundation and received funds transfers through its New York correspondent account. I believe the term was dozens of transfers.

THE COURT: So, are you saying that in that case there was another bank, could have been Arab Bank that was an originating party, that all, that the jurisdiction in *Licci* was based on receipt as part of -- in the same way that you're saying CAB received donations or transfers?

MR. OSEN: Exactly the same, Your Honor.

THE COURT: Okay. And that's purposeful availment by CAB under your theory because they open themselves up to receiving US dollar transfers which are predominantly only going through New York or is that, is there a choice to get it from somewhere other than through New York?

MR. OSEN: Actually, that was discussed in *Licci* and because in that case LCB, the bank in question, chose to have correspondent banking accounts in New York, in that case through American Express at the time, it purposefully availed itself of the use of the New York banking system. Actually, it was Mr. Siegfried, I believe, who argued in *Licci* that LCB was

12

merely the passive recipient of funds through its correspondent account, wasn't initiating the transfers in question.  And the Court and the Court of Appeals, both the Second Circuit and the Court of Appeals, rejected that distinction. Once you maintain a correspondent banking account or accounts in New York --

THE COURT:  It means you're open for business for receiving US dollars wherever you are elsewhere in the world.

MR. OSEN:  Well, it's also, there's an additional component, you're absolutely right, Your Honor, but they're also choosing to provide US dollar denominated accounts to their customers. So, it's not a happenstance, the whole purpose of maintaining US dollar denominated accounts overseas is to provide that service to your clients and customers and if you do that through US correspondent banking and US correspondent bank accounts, you are purposefully availing yourself of the New York and US banking system.

THE COURT:  And presumably that helps the bank get more customers who they want, who want US dollar --

1

2          MR. OSEN:  It's certainly important to most

3   international banks, there are some – as Your Honor

4   noted, the *Spetner* case – where they don't maintain a

5   direct correspondent accounting relationship but,

6   instead, use another foreign bank that does, that's

7   the so-called nested account strategy. But for the

8   most part, most international banks try to maintain a

9   US correspondent account if they can.

10          THE COURT:  So, the example that you gave me

11  here involving Arab Bank and CAB, is not concerning

12  any nested accounts, this is just a straight out,

13  straight out transfer?

14          MR. OSEN:  Correct, Your Honor.

15          THE COURT:  Okay.  Okay, so you've already

16  subpoenaed or obtained documents from Arab Bank, in

17  other litigations they've conducted many, many, many

18  searches and now this is another litigation involving

19  some of the same plaintiffs seeking more information.

20  Why do you think you're likely to find anything more

21  given the intense discovery that you've already

22  received and used in your pleading?

23          MR. OSEN:  It's a good question, Your Honor,

24  let me walk through that for a moment. So, the list

25  that we have that we've moved to compel on are persons

14

1    or entities that were not sought in Arab Bank

2    discovery in either the *Linde* or *Miller* cases.  And so

3    the question is whether, first of all, whether those

4    specific requests which have not been the subject of

5    prior requests, may yield additional information.

6          The Arab Bank litigation obviously has gone on

7    for, well now almost 20 years --

8          THE COURT:  Right.

9          MR. OSEN:  So it's very complicated and

10   there's a lot of backstory to that, but most of the

11   requests in that case were not formulated in the way

12   they are here for a variety of reasons, one being that

13   they focused on primarily transfers to the Saudi

14   Committee for the Support of the Intifada Al-Quds,

15   they were not focused as this complaint is on the Arab

16   Liberation Front and payments by Saddam Hussein which

17   are featured here but not in that case.  And also,

18   there's a different history going back to how

19   documents were produced in that case.  Your Honor may

20   recall that in 2005 the Office of the Comptroller of

21   the Currency entered into a consent decree with Arab

22   Bank-New York which converted it from a branch to an

23   agency and so forth.

24         THE COURT:  Um-hmm.

1

2          MR. OSEN:  And so a lot of the dispute about

3    discovery of the New York branch in that case focused

4    on asking the defendant in that case to produce the

5    records it had produced to the OCC.

6          THE COURT:  I see.

7          MR. OSEN:  And so those requests were largely,

8    not exclusively, but largely framed around what

9    documents were given to the OCC and many records such

10   as the one I handed up to Your Honor were then

11   produced in response to that discovery dispute.  And

12   as a result of the way this process played out, the

13   names that appear in the motion to compel were not

14   specifically requested in that form back in 2006 when

15   this, when this dispute was resolved.

16         THE COURT: But yet they still yielded

17   documents.

18         MR. OSEN:  Oh, it yielded documents because

19   these documents --

20         THE COURT:  Involving CAB.

21         MR. OSEN:  Right, because they happened to

22   have been included in the documents that were produced

23   to the OCC.

24         THE COURT:  But you believe that the documents

25   you already have are sufficient to state jurisdiction,

16

1   do you not?

2       MR. OSEN:  I do --

3       THE COURT:  So why is there more, why is it

4   proportional to have even more, look for more, what

5   Arab Bank calls needle in a haystack, why is that

6   proportional?

7       MR. OSEN:  It's proportional because sitting

8   here today we do not know what the basis for the

9   defendant's motion on jurisdiction is. As far as we

10  can tell, Your Honor, it appears to be a motion for

11  reconsideration because, you know, just to give you

12  some of the statistics, the complaint that Your Honor

13  ruled on, there were 23 transactions alleged through

14  New York, sitting here today, setting aside the ones

15  that are disputed about whether they cleared through

16  New York, the ones that are undisputed, 114

17  transactions for over $6 million, and there are

18  actually more than that but that's generally the

19  range, over 100 --

20      THE COURT:  One-hundred-and-fourteen don't

21  involve nested accounts?

22      MR. OSEN:  Correct, or anything else, they're

23  standard correspondent banking transactions --

24      THE COURT:  The kind that the Second Circuit

said in *Licci* were sufficient.

       MR. OSEN:  Correct.  And as I read, and this is more addressed to Mr. Siegfried, obviously, than Arab Bank's counsel, but as I read their proposed motion, it's a challenge to due process, not to purposeful availment, but because we're at a loss as to what evidentiary issues are implicated by that distinction in this case, we don't know whether there's something we're missing in this process.

       THE COURT:  Well but that lack of knowledge, I mean all you're seeking are more of the same so if 114 -- 114 is more than 23, why is more of the same of maybe, you know, a small handful of transactions that you might find, why is that even, why is that going to materially impact your opposition to a challenge, whether it's due process or purposeful availment?

       MR. OSEN:  Well, there are two points to that, Your Honor.

       THE COURT:  Um-hmm.

       MR. OSEN:  The first is that depending on which person or entity there's responsive records for, it is at least theoretically possible that and, again, I can't speak for the defendant and what they intend to do, but at least possible that their position is

18

that there's a qualitative distinction between
transfers made, for example, to or from the Holy Land
Foundation or other Hamas controlled entities, versus
transactions to Hamas leaders or those who are
implicated directly in violent activities.

Now Your Honor certainly didn't hold that in
your report and recommendation, it's nowhere in *Licci*,
but I think, I think that may be the argument, in
which case obviously having the additional records
could moot that point.  Secondly, to be clear, these
records which we're seeking are relevant both
jurisdictionally and ultimately to merits discovery.
So even if Your Honor concluded today and said we're
good on jurisdiction, there's no need for more motion
practice on that, we would still at some point be
subpoenaing the same records because any evidence that
CAB provided material support, held accounts for,
processed funds transfers for Hamas leaders, for Hamas
controlled entities obviously goes straight to
liability.

THE COURT:  Okay.  Are there other points you
want to make before I hear from Arab Bank?

MR. OSEN:  I think that's it, Your Honor.

THE COURT:  Okay, I'll hear next from Arab

1   Bank.

2       MR. LAWLER:  Good morning, Your Honor. In the

3   discussion that I just heard there were, I think most

4   of those, the transfers we're talking about, have

5   nothing to do with Arab Bank-New York. They, I'm not

6   sure where the 114 number comes from but I don't think

7   it has anything to do with Arab Bank-New York, I don't

8   think Arab Bank-New York was involved in that.

9       The plaintiffs have identified 32 transactions

10  which they think, of the 15,600 transactions that were

11  produced in *Linde* and in *Miller* they've identified 32

12  that arguably involved in some way Arab Bank-New York.

13  And in our papers, and we can go into it further now,

14  we've said that 19 of those, I believe were, involved

15  so-called nesting which we believe the Court has said

16  are not relevant to the issue of jurisdiction. So now

17  we're down to approximately 13 transactions out of,

18  again, 15,600.

19      So our, even if those 13 transactions turn out

20  in some way to have some relevance, we're talking

21  about a miniscule .0083, I don't even know, I'm not

22  sure how you say that percentage --

23      THE COURT:  Right.

24      MR. LAWLER:  But it's miniscule.

20

THE COURT: Well, how do you address counsel's, plaintiffs' counsel's point that it was only that miniscule, as relevant to this case, because the documents produced were another matter and these names that they've requested in their subpoena aren't the names that you were looking for?

MR. LAWLER: I have a couple of responses to that.

THE COURT: Okay.

MR. LAWLER: One, we're talking about the very same incidents that make up, in *Linde* and in *Miller* the same events that took place. We are talking about the vast majority, and I have to say I haven't checked to see if the individuals identified in *Linde* and *Miller* are the same as people identified in the current case in *Averbach,* but it's all, it's all the same events and basically the same people. I don't know, I cannot say, tell the Court that I know that they're exactly the same but they have said that, agreed in their request of the 40, and it's not really 40, it's really 160 -- 190 names --

THE COURT: Because of all the variations?

MR. LAWLER: Because of all the variations, and it's not just the 190 names, because if you, if

21

you look at the variations of the individual names,
we're talking about literally thousands of possible
permutations for all of these entities.  It is not
just 40 and it's --

THE COURT:  Well, why couldn't it just be cut
down by having a search for Cairo Amman Bank, isn't
that, I mean why do you have to have all of these
names at all, why couldn't you just search for Cairo
Amman Bank, that's really, that's the key --

MR. LAWLER:  I don't --

THE COURT:  Why would we get, why would there
be nothing?

MR. LAWLER:  Well, first of all, it's
important, and we make a point and I'm sure, we had no
correspondent relationship with Cairo Amman Bank.  And
where the program that we're searching and using to
search, is one that is 20, it's almost 20 years old
and it has not been updated, it's not been maintained.
And it's hard to understand today what something, what
things were like 22 years ago as far as computers go
but it's, we, I'm told we cannot just put in Cairo
Amman Bank and press a button and have any
transactions in which Cairo Amman Bank might have been
in a chain, whether it's a nest, so-called nested

```
 1
 2   chain or otherwise, I'm told that we can't do that.
 3          So it --
 4          THE COURT:  So, CAB just comes up by virtue of
 5   putting in different customers' names, is that what
 6   you're saying?
 7          MR. LAWLER:  Well I'm assuming what happened
 8   is of the tens, probably hundreds of thousands of
 9   documents that were produced in the other, in Linde
10   and Miller, they can because they're probably --
11          THE COURT:  Like a Relativity database, yes.
12          MR. LAWLER:  A real database.
13          THE COURT:  Yep.
14          MR. LAWLER:  They can put in a name --
15          THE COURT:  Right.
16          MR. LAWLER:  And they can put in Arab Bank
17   New-York and they know they can come up with any
18   transactions that involve Arab Bank-New York, I'm
19   assuming that, but I'm told that we don't have the
20   ability to do that. And I should also just point out
21   our ability to do anything, now we can always get,
22   presumably we can get the third party or outside
23   vendor here, but currently Arab Bank-New York takes
24   about as much space as in the jury box. And there are
25   three employees, there will be two employees as of
```

23

1  January 1ˢᵗ, the person who did, because one is

2  retiring, and the person who did the original work in

3  *Linde* passed away some time ago.

4  THE COURT:  And what about, what about, I

5  understand your arguments that this isn't proportional

6  in part because of the costs and burdens --

7  MR. LAWLER:  Yes.

8  THE COURT:  On your client, which has got

9  three employees working with this rickety old system,

10  what if the, what if the costs were shifted and

11  plaintiffs bore the cost of this search, is that

12  something that would be acceptable to your client?

13  MR. LAWLER:  I don't know the answer to that,

14  Your Honor.

15  THE COURT:  Do you know what the costs are, I

16  mean just the dollar costs?

17  MR. LAWLER:  I do not know. I do not know the

18  answer to that. The -- what else, I think, unless the

19  Court has additional questions I think that I've made

20  the points. I mean we have tried, we have tried to put

21  forth what we believe are reasonable accommodations

22  and solutions here --

23  THE COURT:  Right, so you're thinking doing

24  fewer, you would be willing to do something by doing

                                                              24

1

2   fewer variations in the names.

3            MR. LAWLER:  Fewer variations and any

4   transfers that were made outside of Palestine or

5   Jordan or Israel would not, would not be included.

6   What we have already produced has, we would not have

7   to reproduce it.

8            THE COURT:  Okay.

9            MR. LAWLER:  I think actually, I think that

10  plaintiffs agree to that. But the, so variations that

11  -- oh, if they're not named, and if entities are not

12  named in the complaint then we would also not be

13  required to search for those.

14           THE COURT:  Okay, thank you. Mr. Osen, why

15  aren't the suggestions that Arab Bank has suggested

16  reasonable and what about this issue of cost shifting,

17  what's your position on that

18           MR. OSEN:  Taking the first issue, we agreed

19  with the bank that they could limit their search to

20  CAB Palestine, Jordan. I think at one point they had a

21  branch in Lebanon, but certainly to those

22  jurisdictions.

23           THE COURT:  Palestine, Jordan and Lebanon?

24           MR. OSEN:  Right, so we had no issue with that

25  and we also agreed in principle to try and reduce the

25

number of transliteration variables although even with

the ones that were produced there sometimes the same

party is spelled differently --

          THE COURT:  In the same document.

          MR. OSEN:  By the same bank because each time

they're entering the data they're transliterating it

from Arabic so it depends on who is typing in the word

Mohammad for example, it could be spelled with a U or

an O an E at the end or an A.  So, there is no perfect

solution to that, but we've offered to work with them

on that. The one thing that is at the crux of this

dispute is that we didn't want to be limited to

individuals or entities listed in the complaint --

          THE COURT:  Well why shouldn't you be?

          MR. OSEN:  Because that's not the limits of

Rule 26 discovery and, for example, just to give you a

concrete one, the, let me get this in front of me --

          THE COURT:  Well, if you were limited to the

people and entities named in the second amended

complaint, how many would that be?

          MR. OSEN:  Twenty-nine.

          THE COURT:  Twenty-nine and plus the alternate

spellings which would --

          MR. OSEN:  Right.

```
 1
 2              THE COURT:  Increase that at least three-fold.
 3              MR. OSEN:  Correct.
 4              THE COURT:  Right?  Okay, and why isn't, why
 5    wouldn't that be sufficient and proportional?
 6              MR. OSEN:  Well, let me give you an example.
 7    One of the names here, three of them, of those who are
 8    not listed by name in the complaint, are individuals
 9    who are part of leadership of the Arab Liberation
10    Front which was Saddam Hussein's --
11              THE COURT:  Yes, but why does that matter if
12    those people don't have accounts with CAB? I mean
13    there's not, there's -- you don't have any knowledge
14    as to whether or not these other people or entities
15    have any relationship with CAB, isn't that correct?
16    Isn't it just a fishing expedition as to whether or
17    not, maybe possibly some of these people who are
18    named, you're going to discover some terrorists that
19    you know maybe got a transfer of money from CAB, you
20    don't know it, but maybe Arab Bank if they produce
21    thousands and thousands and thousands and thousands of
22    transactions you'll find one, isn't that really what
23    you're trying to do?
24              MR. OSEN:  No, Your Honor, the Arab Liberation
25    Front distributed checks and payments to the families
```

27

of suicide bombers through Cairo Amman Bank, that's in
the complaint, and we have evidence to support that.
The Arab Liberation Front operated both formally as an
entity to the extent it was one, and through its
leadership, which is how most, if not all, terrorist
organizations do.  And so, therefore, it is completely
plausible and reasonable to assume that when Cairo
Amman Bank provided services to Saddam Hussein's Arab
Liberation Front, they did so through and with the
instructions of the senior leaders of ALF. I don't
know whether it was those three individuals or it was
Mr. Rakad Salem, the head of the ALF, but it's not a
fishing expedition, it's ordinary routine discovery.

One more point, Your Honor, about cost
shifting. To be clear, with the exception of the ALF
individuals, everybody on that list is someone we
could serve a document request in *Miller* tomorrow and
the bank would be obligated to do the same searches
and for all I know, as Your Honor mentioned
Relativity, for all I know, all of the materials
belonging to Arab Bank-New York that are relevant are
sitting in a Relativity database by Arab Bank's
counsel. So it may very well be that the individual
left in their office does not have the capability to

28

```
 1
 2   search their systems anymore, but Arab Bank, which is
 3   actively litigating a case in the Eastern District of
 4   New York and which has to respond to these very same
 5   kinds of requests as a non-third party, as a party to
 6   the proceeding, would and will have to produce the
 7   same records in that case.
 8           THE COURT:  Well, what is the status of
 9   discovery in those cases?
10           MR. OSEN:  The status of discovery is it's
11   ongoing, there's a pending motion to compel on bank
12   secrecy but otherwise discovery proceeds in that case.
13   So we could serve a document request tomorrow on Arab
14   Bank New York, actually we'd serve it obviously on Mr.
15   Siegfried and counsel, they would then have to make an
16   argument to the Court that unlike the thousands of
17   other records they've produced, somehow these are less
18   relevant than the others they have produced records
19   and just to take a name at random, these are senior
20   Hamas leaders, that request is going to be responded
21   to and they are going to search records for it.
22           So, what we could do is serve that request and
23   then when the documents are produced under the
24   protective order, introduce them here under seal in
25   this case.  It's just a different way of coming to the
```

                                                              29

1

2    same result, we think it's appropriate to do so

3    because of the discovery deadline in this case.  We

4    served discovery when Your Honor directed it to third

5    parties back in the summer and that's why we're here

6    today. But we would get these same records. We won't

7    get them obviously --

8              THE COURT:  Well shouldn't there be some

9    limiting principle on these 190 names and all of the

10   variations, I mean that has thousands of possible

11   permutations, wouldn't you accept some limitation on

12   that?

13             MR. OSEN:  Of course --

14             THE COURT:  Well, what do you think is a

15   reasonable limitation?

16             MR. OSEN:  We went through the list and tried

17   to cull variations --

18             THE COURT:  Resulting in how many?

19             MR. OSEN:  I think we were able to cut off

20   about 50 or 60, I don't recall.

21             THE COURT:  Leaving how many permutations?

22             MR. OSEN:  We didn't do a count on it, Your

23   Honor.

24             THE COURT:  Still thousands?

25

1

2          MR. OSEN:  It's not thousands, Your Honor,

3    that's not correct, it's probably, if you count it all

4    up it's probably close to 300. But look, I don't know

5    how to search their systems. It may very well be, Your

6    Honor, that if you type in, for example, a last name

7    like the one we have here for Mohammad Taha, that if

8    you search Taha there aren't many spellings of Taha,

9    it's a fairly straightforward one.  Sorry, the one you

10   have --

11          THE COURT:  I have Hayek.

12          MR. OSEN:  Is Ghazi Hamad.  So, on this name,

13   the variations are pretty limited, the only possible

14   variation I could think of off the top are Ghazi with

15   an R or Hamed with an E, but that's just the nature of

16   this process and it's a process that Arab Bank has

17   undertaken hundreds of times, maybe thousands of times

18   in the course of the *Linde* and *Miller* litigation.

19          So, there's no doubt that there's a burden,

20   it's a burden we encounter with every bank when we're

21   dealing with Arabic transliteration, but that's

22   intrinsic, that's not the plaintiffs' fault, that's

23   just the way --

24          THE COURT:  But plaintiffs have to deal with

25   Rule 26 and Rule 45 which does cabin discovery to

31

things that are relevant to the claims and defenses

and proportional to the needs of the case.

MR. OSEN:  Absolutely.

THE COURT:  And so in terms of the cost

shifting I don't think that you finished your answer

on why shouldn't costs be shifted or at least shared?

MR. OSEN:  Because Arab Bank through its

counsel can and will do these searches regardless.

THE COURT:  How do you know that? In the other

case you have, first of all, here the Court is bound

by the Rule 45 constraint which is somewhat more

protective of a nonparty. I understand that in *Linde*

and *Miller,* Arab Bank is a direct party but still why

would these names be relevant in that case if you

didn't search for those names before in that case?

MR. OSEN:  Because, Your Honor, they weren't

searched due to the fact that the requests were formed

and formulated in the context of the dispute over OCC

production. So we're perfectly content if Your Honor

says to us why don't you serve, I'm not going to, I'm

not going to compel them in this case, serve your

document request in *Miller* if you so choose, any

documents you get in response to that you can then do

what you've done previously with other documents

1

2    previously produced by Arab Bank which is to say

3    they'll be subject to the protective order, you'll

4    produce them to CAB in this case. That's fine with us.

5    The result is the same, it's just procedurally a

6    question of timing. This all came about because we

7    were in jurisdictional discovery and we served third

8    party requests. You know, if I had to do it all over

9    again, I would have just served a document request for

10   the relevant records, I might lose a couple for the

11   ALF, but otherwise I'm going to get those records, and

12   then I'd just transfer them over.

13        THE COURT:  Okay, so let me ask Arab Bank if

14   you have any responses to or additional things that

15   you'd like to add based on the conversation I've just

16   had with plaintiffs' counsel?

17        MR. LAWLER:  What I heard Mr. Osen say in

18   response to your question was really confirmation that

19   this is a fishing expedition. This is, he's thrown out

20   the names of a lot of bad people in the hopes that

21   perhaps they will, they will come up in the search.

22        With respect to the, what's going on in

23   *Miller*, I'm going to defer to, because I'm not up to

24   date as to what's going on in *Miller* and the

25   discovery, it's, as I understand it there is some

33

```
 1   restriction on what they, what they can do, but I'm
 2   going to ask Mr. Siegfried to respond to that because
 3   I'm really not up to date.
 4
 5           THE COURT:  All right, so although CAB doesn't
 6   necessarily have standing to contest this subpoena, I
 7   would like to hear an update on and a response, to the
 8   extent you have better knowledge of what's going on in
 9   Miller and Linde and plaintiffs' position that these
10   same requests can be served in that, in those cases
11   and obtained that way.
12           MR. SIEGFRIED:  Thank you, Your Honor, I will
13   answer that question --
14           THE COURT:  Yep.
15           MR. SIEGFRIED:  But lest my memory forget, I'd
16   just like to make a couple of comments.
17           THE COURT:  All right, and keep it, I do have
18   to leave by ten so, I mean by eleven, so, yes, keep it
19   short, thanks.
20           MR. SIEGFRIED:  Very short. I understand that
21   Your Honor now has inherited the Kaplan case
22           THE COURT:  Yes.
23           MR. SIEGFRIED:  And the Court is familiar with
24   it, and I'm not surprised by your comment about what
25   were the transactions in Kaplan because you are
```

34

1  absolutely correct, one of the main arguments made by
2  the plaintiffs' counsel in the jurisdictional argument
3  was that LCB actually took dollars, Lebanese dollars
4  and routed them through New York to come back to LCB
5  and, therefore, they were originating transfers. And I
6  think in both *Spetner* and in *Vasquez*, if I recall
7  correctly, there is a more extensive discussion about
8  passive receipt, I just wanted to say that.
9         It is also the case, having lived through
10 *Linde* and *Miller* discovery, that it is an
11 extraordinary task to try to produce documents off of
12 this software. I think it was very wise for counsel to
13 say he couldn't estimate the cost because I will tell
14 you it is a very expensive proposition because of the
15 limitations on the ability to search which ends up
16 driving everything to be a hand viewed situation.
17        The proposition that, oh, well, plaintiffs
18 could have just simply served another document
19 request, well I believe that might technically be true
20 but the magistrate judge there required the parties to
21 complete their document discovery and the motion is
22 tied up on issues in that case of bank secrecy and
23 issue, frankly, that you have more indirectly, or
24 maybe you have directly raised here, namely the

35

relevancy of a number of these names. So it's true, I
guess, if the Court would even entertain a document
demand at this point, that they can add 10 names, 20
names, 30 names which will then end up in the same
question as to the relevancy of those names. And the
discovery in that case was not limited to some OCC
related documents, the discovery in that case was
actually broader than the discovery in this case
because there were claims involving funding not just
of the Hamas attacks that are the same attacks as
here, there were claims about funding other attacks.
And it wasn't limited to a particular bank, it was any
transfer that touched upon Arab Bank and actually Mr.
Osen started with an example of that. So you actually
- the fact that, I think, it's actually telling that
when you do a broader request that isn't limited to a
specific bank, and basically would require Arab Bank
to produce everything in terms of the universe of
banks that could possibly have been involved and
touched a transfer somewhere along the lines, you have
all of these 13 or 19 transactions. So --

            THE COURT:  And is that, I'm just speculating,
and I don't know whether you would agree that if that
search was so broad that it would cover many, the

1

2     reason why so few transactions came up involving CAB

3     was that CAB had its own correspondent bank at the

4     time?

5           MR. SIEGFRIED:  Well they have now, plaintiffs

6     have now conceded that Arab Bank-New York was not a

7     correspondent bank of CAB.

8           THE COURT:  Right.

9           MR. SIEGFRIED:  So, therefore, to the extent

10    Arab Bank-New York had to produce documents in *Linde*

11    and *Miller*, it wasn't that it looked at any particular

12    bank, it looked at all names and wherever those,

13    wherever those transactions might have originated from

14    or the recipients have been receiving them or the

15    beneficiaries, it had to do that.

16          So I think the needle in a haystack point is

17    exactly, is exactly -- is exactly right and I think

18    there's a very good reason that Mr. Osen has not

19    served a document request to try to reopen at this

20    point discovery in Arab Bank, *Miller*. Although

21    listening to him I think it raises some concern, if I

22    put a different hat on for a second, that this idea of

23    using one Court to obtain discovery that may then be

24    used in another case is concerning. But I come back to

25    your point which is the proportionality of the

37

1  request, your point that if they don't think, and they

2  may perhaps are realizing it, that they don't have a

3  good jurisdictional argument based upon what they've

4  already produced, then the fact that they can get 5

5  more, or 10 more, or 15 more of the same transactions

6  doesn't really advance the ball. Our concern, putting

7  my CAB hat back on, is that we are at the end of

8  discovery and we would like to get, start moving

9  forward with this motion and, therefore, we'd hope

10  that Your Honor would grant the request --

11  THE COURT:  Okay.

12  MR. SIEGFRIED:  Requested by ABNY.

13  THE COURT:  All right, because I have

14  something that I have to do at eleven I'm going to end

15  the conference now, I want to thank everybody for

16  their arguments, I'm going to take it under

17  advisement. And depending on the outcome, to the

18  extent a schedule needs to be slightly adjusted I can,

19  I can do that.

20  All right, thank you, everyone --

21  MR. LAWLER:  Thank you very much, Your Honor.

22  MR. SIEGFRIED:  Your Honor, can I ask one

23  question?

24  THE COURT:  Sure.

```
 1                                                              38
 2              MR. SIEGFRIED:  I thought one of the things
 3    that you wanted, and I realize we're not going to do
 4    it today, but one of the issues I think that we had
 5    here was setting up, that you wanted a conference to
 6    discuss the motion or the form of the motion --
 7              THE COURT:  Right.
 8              MR. SIEGFRIED:  And I don't know we have
 9    another date --
10              THE COURT:  Right, so after this, because I
11    have, I'm just mindful of the time, I will set up
12    another conference. I am going to ask though that you
13    all meet and confer about, since plaintiffs have said
14    they don't really understand the basis for your
15    motion, that you, that they think it's a motion for
16    reconsideration, I don't understand that to be the
17    basis of your motion. But you're here now together,
18    you can use my jury room, if you would just have a
19    communication about that and just be better informed
20    about what that is going to involve, I think that can
21    only inure to everybody's benefit, so I'd ask that you
22    have that conversation, okay?  Thank you, everyone.
23              (Whereupon the matter was adjourned.)
24
25
```

39

<u>C E R T I F I C A T E</u>

     I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, Averbach, et al. versus Cairo Amman Bank, Docket No. 19cv0004, was prepared using digital electronic transcription equipment and is a true and accurate record of the proceedings.

Signature **_____**

             CAROLE LUDWIG

Date:  December 27, 2022

# EXHIBIT B

```
                      UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF NEW YORK

In re:                             :
                                       Docket #19cv0004
AVERBACH, et al.,                  : 19-cv-00004-GHW-KHP

              Plaintiffs,          :

  - against -                      :

CAIRO AMMAN BANK,                  : New York, New York
                                     December 13, 2022
              Defendant.           :

------------------------------------ :

                    PROCEEDINGS BEFORE
            THE HONORABLE KATHARINE H. PARKER,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:        OSEN LLC
                       BY:  GARY OSEN, ESQ.
                            DINA GIELCHINSKY, ESQ.
                       190 Moore Street, Suite 272
                       Hackensack, New Jersey 07601


For Defendant:         DLA PIPER US LLP
                       BY:  JONATHAN SIEGFRIED, ESQ.
                            ANDREW PECK, ESQ.
                       1251 Avenue of the Americas
                       New York, New York 10020


For Third Party        WHITMAN BREED ABBOTT & MORGAN LLC
Defendants:            BY:  RICHARD LAWLER, ESQ.
                            MICHAEL THOMASON, ESQ.
                       500 West Putnam Avenue
                       Greenwich, Connecticut 06930


Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None    |        |       |           |          |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None           |             |    |    |           |

```
 1                                                3

 2              THE CLERK:  Calling case 19cv004, Averbach

 3    versus Cairo Amman Bank.  Beginning with the counsel

 4    for the plaintiffs, please make your appearance for

 5    the record.

 6              MR. GARY OSEN:  Good morning, Your Honor, this

 7    is Gary Osen from Osen LLC, together with my

 8    colleague, Dina Gielchinsky, on behalf of the

 9    plaintiffs.

10              THE COURT:  Okay, nice to see you.

11              THE CLERK:  And counsel for the defendants,

12    please make your appearance for the record.

13              MR. JONATHAN SIEGFRIED:  Good morning, Your

14    Honor, Jonathan Siegfried for DLA, along with my

15    colleague, Andrew Peck.

16              THE COURT:  Hello.

17              THE CLERK:  And counsel for the third party

18    defendants, please make your appearance.

19              MR. RICHARD LAWLER:  Good morning, Your Honor,

20    Richard Lawler, Whitman Breed Abbott & Morgan, for

21    Arab Bank New York, and Michael Thomason, good

22    morning, Your Honor.

23              THE COURT:  Good morning.  Okay, welcome,

24    everyone. The principal purpose of today's proceeding

25    I think is to address the subpoena and the motion to
```

```
 1                                              4
 2   compel that plaintiffs have filed seeking certain
 3   information from Arab Bank.  And what I wanted to do
 4   was talk about that motion, hear from plaintiffs on
 5   that and then I'll hear from Arab Bank's counsel who
 6   are here today. I did read the Spetner case which was
 7   cited in the, in the briefs, but the principal thing
 8   that I want plaintiffs to address is why what you are
 9   seeking is proportional to the needs of the case and,
10   of course, any other points that you want to raise.
11   So I'll hear first from plaintiffs' counsel.
12          MR. OSEN:  Thank you, Your Honor.  As I read
13   the defendant's brief I think there are really only
14   two open issues of dispute. The first is whether Arab
15   Bank's, I'll call it Arab Bank--New York for
16   simplicity purposes, has to search for, in addition to
17   the individuals and entities listed in the complaint,
18   an additional 11 individuals and entities that were
19   not listed in the complaint by name, 9 individuals and
20   2 entities.  And the second issue still in dispute is
21   whether they should have the burden of searching for
22   variations and transliterations of the names of the
23   individuals and entities listed.
24          THE COURT:  Well, aren't they also saying that
25   they don't have any, that CAB didn't have an account
```

5

```
1
2  and that they just don't have any documents?
3       MR. OSEN:  I don't think that's correct, Your
4  Honor.
5       THE COURT:  Okay.
6       MR. OSEN:  Arab Bank clearly does have
7  responsive records because we already have records
8  from Arab Bank--New York that involve Cairo Amman
9  Bank's New York transactions. The question is, as they
10 frame it, is that they are not a correspondent bank
11 for CAB, which is true, but the transactions that we
12 have seen already are ones in which Arab Bank is the
13 correspondent bank for the other side of the
14 transaction. So, in any correspondent account
15 transactions there are at least four parts to it,
16 there's the originator bank and its correspondent
17 bank, and the recipient bank's correspondent bank, and
18 then the recipient bank, itself. So in a transaction,
19 and I can give you an example and present one to you
20 if that's helpful, Arab Bank, for the sake of
21 argument, Arab Bank in Beirut or in Jordan has a
22 customer, sends a US dollar--denominated transaction
23 to a Cairo Amman Bank customer in the Palestinian
24 Territories; that transaction flows from Arab Bank
25 in Jordan, credited to Arab Bank's correspondent
```

6

account in New York, and then to, for example,

Citibank as the correspondent for CAB and then on to

CAB in the Palestinian Territories.  That's a typical

sort of wire transfer.

So, we already have examples of Arab Bank

transactions for relevant entities and parties that,

where Arab Bank is the originating bank and,

therefore, the customer's correspondent is Arab Bank-

New York and then the recipient is Cairo Amman Bank

with, in most of the cases we've seen Citibank as the

correspondent for Cairo Amman --

THE COURT:  So, the only examples, you're

conceding then that the only examples that you're

expecting to find are examples where a customer of

Arab Bank is originating the transaction?

MR. OSEN:  Technically, it doesn't have to be

a customer of Arab Bank, Arab Bank could be the,

simply the correspondent for another bank but, yes,

there are going to be cases where the originator is

not Cairo Amman, but only the recipient is.

THE COURT:  So, you're looking for

transactions where CAB is a recipient?

MR. OSEN:  Right, but where they are using, of

course, New York as the basis to receive the dollars.

7

2  So, there are many examples of CAB receiving

3  transactions from say entities in Europe where it

4  doesn't flow or at least we can't see visibly that it

5  went through New York. Here, we're talking about

6  transactions - definitionally because it's Arab Bank-

7  New York - that flowed through Arab Bank--New York to

8  CAB in the territories.

9         THE COURT:  Okay.

10        MR. OSEN:  If it will help Your Honor, I can

11 give you an example that's already in the public

12 record.

13        THE COURT:  Sure.

14        MR. OSEN:  Your Honor, with permission I'll

15 approach.

16        THE COURT:  Yes.

17        THE CLERK:  Thank you.

18        MR. OSEN:  So, for the record, this is Bates

19 stamped AV-PL000016 and, again, also for the record,

20 Your Honor, the highlighting is done by counsel and

21 not in the original document.

22        THE COURT:  Um-hmm.

23        MR. OSEN:  So, this is a year 2000 transaction

24 for over $8,000 that was initiated by an individual

25 named Mr. Youssef El-Hayek (phonetic), he's identified

8

2  below as the originating party and --

3  THE COURT:  And he has an account at Arab

4  Bank.

5  MR. OSEN:  Presumably.  It's not entirely

6  clear from this document whether he simply used Arab

7  Bank or had an account there but, in any event, he

8  used Arab Bank Amman as the originating bank to send

9  this transfer.  And the beneficiary is Ghazi Hamad, G-

10  H-A-Z-I, Hamad, who is a, the complaint alleges, a

11  prominent Hamas leader in the Gaza Strip and he had an

12  account at the credit bank, Cairo Amman Bank, with the

13  address listed there in Amman, Jordan. And the

14  transfer was credited, you can see four lines down,

15  through Citibank, that's for their routing. So, the

16  transfer would have gone essentially from the books of

17  Arab Bank Jordan, which had an account with Arab Bank

18  New York, then the correspondent banking credit goes

19  to Citibank and then Citibank's correspondent account

20  ~~with~~ which Cairo Amman then credits the account holder

21  listed.

22  So, it's this kind of transaction and others

23  like it that are of interest in --

24  THE COURT:  Right, so this goes from this guy

25  in Amman, Jordan, he walks into Arab Bank, he says I

9

want to send this money to Hamad, also in Jordan, and

the bank sends the money to its Arab Bank New York,

which then sends it to Citibank New York, which then

sends it to the CAB account in Jordan of this guy,

Hamad, is that what you're saying?

      MR. OSEN:  More or less, it's really a --

      THE COURT:  Are there any other steps in that,

four steps?

      MR. OSEN:  Yeah, there are no additional

steps, I would just say that these are all sort of

book entries, correspondent banking is basically a

series of IOUs between the banks so there is really

never any money physically changing hands and a

correspondent banking example is just credits and

debits by the banks.

      THE COURT: Okay.

      MR. OSEN: And that's standard --

      THE COURT:  And you're saying this is relevant

to jurisdiction?

      MR. OSEN: Sure.

      THE COURT:  Okay, why don't we talk about

that?

      MR. OSEN:  Well, because this is a power

dynamic paradigmatic example of a funds transfer that

```
1                                                    10
2   purposely avails the use of the US and New York
3   correspondent banking system to effectuate the
4   transfer.  And just to frame it again --
5           THE COURT:  And how is CAB, the recipient,
6   fourth step along the line, how is the recipient
7   purposely availing itself of jurisdiction in New York
8   under your theory?
9           MR. OSEN:  It's not, it's not my theory, Your
10  Honor, it's the Second Circuit and the New York Court
11  of Appeals in Licci.  To just take this same
12  transaction and frame it in Licci terms, in that case
13  the bank was Lebanese Canadian Bank in Beirut, it was
14  receiving transfers to an organization called The
15  Martyrs Foundation in Lebanon and, again, the
16  transfers were going through Amex, in that case the
17  New York correspondent bank for LCB, for Lebanese
18  Canadian Bank, and were being credited to the account
19  of LCB in Beirut.
20          THE COURT:  But in Licci, LCB was on both ends
21  of the transaction, isn't that correct?
22          MR. OSEN:  No, Your Honor.
23          THE COURT:  All right, so tell me why that's
24  not the case.
25          MR. OSEN:  In Licci the only allegation was
```

11

that LCB held accounts for The Martyrs Foundation and
received funds transfers through its New York
correspondent account. I believe the term was dozens
of transfers.

THE COURT: So, are you saying that in that
case there was another bank, could have been Arab Bank
that was an originating party, that all, that the
jurisdiction in *Licci* was based on receipt as part of
-- in the same way that you're saying CAB received
donations or transfers?

MR. OSEN: Exactly the same, Your Honor.

THE COURT: Okay. And that's purposeful
availment by CAB under your theory because they open
themselves up to receiving US dollar transfers which
are predominantly only going through New York or is
that, is there a choice to get it from somewhere other
than through New York?

MR. OSEN: Actually, that was discussed in
*Licci* and because in that case LCB, the bank in
question, chose to have correspondent banking accounts
in New York, in that case through American Express at
the time, it purposefully availed itself of the use of
the New York banking system. Actually, it was Mr.
Siegfried, I believe, who argued in *Licci* that LCB was

12

2  merely the passive recipient of funds through its

3  correspondent account, wasn't initiating the transfers

4  in question.  And the Court and the Court of Appeals,

5  both the Second Circuit and the Court of Appeals,

6  rejected that distinction. Once you maintain a

7  correspondent banking account or accounts in New York

8  --

9          THE COURT:  It means you're open for business

10 for receiving US dollars wherever you are elsewhere in

11 the world.

12         MR. OSEN:  Well, it's also, there's an

13 additional component, you're absolutely right, Your

14 Honor, but they're also choosing to provide US dollar

15 denominated accounts to their customers. So, it's not

16 a happenstance, the whole purpose of maintaining US

17 dollar denominated accounts overseas is to provide

18 that service to your clients and customers and if you

19 do that through US correspondent banking and US

20 correspondent bank accounts, you are purposefully

21 availing yourself of the New York and US banking

22 system.

23         THE COURT:  And presumably that helps the bank

24 get more customers who they want, who want US dollar

25 --

```
 1                                          13
 2            MR. OSEN:  It's certainly important to most
 3     international banks, there are some - as Your Honor
 4   noted, the Spetner case -, where they don't maintain a
 5   direct correspondent accounting relationship but,
 6   instead, use another foreign bank that does, that's
 7   the so-called nested account strategy. But for the
 8   most part, most international banks try to maintain a
 9   US correspondent account if they can.
10            THE COURT:  So, the example that you gave me
11   here involving Arab Bank and CAB, is not concerning
12   any nested accounts, this is just a straight out,
13   straight out transfer?
14            MR. OSEN:  Correct, Your Honor.
15            THE COURT:  Okay.  Okay, so you've already
16   subpoenaed or obtained documents from Arab Bank, in
17   other litigations they've conducted many, many, many
18   searches and now this is another litigation involving
19   some of the same plaintiffs seeking more information.
20   Why do you think you're likely to find anything more
21   given the intense discovery that you've already
22   received and used in your pleading?
23            MR. OSEN:  It's a good question, Your Honor,
24   let me walk through that for a moment. So, the list
25   that we have that we've moved to compel on are persons
```

                                                            14

1
2   or entities that were not sought in Arab Bank
3   discovery in either the *Linde* or *Miller* cases.  And
4   so the question is whether, first of all, whether
5   those specific requests which have not been the
6   subject of prior requests, may yield additional
7   information.
8           The Arab Bank litigation obviously has gone on
9   for, well now almost 20 years --
10          THE COURT:  Right.
11          MR. OSEN:  So it's very complicated and
12  there's a lot of backstory to that, but most of the
13  requests in that case were not formulated in the way
14  they are here for a variety of reasons, one being that
15  they focused on primarily transfers to the Saudi
16  Committee for the support of the Intifada Al-Quds,
17  they were not focused as this complaint is on the Arab
18  Liberation Front and payments by Saddam Hussein which
19  are featured here but not in that case.  And also,
20  there's a different history going back to how
21  documents were produced in that case.  Your Honor may
22  recall that in 2005 the Office of the Comptroller of
23  the Currency entered into a consent decree with Arab
24  Bank-New York which converted it from a branch to an
25  agency and so forth.

1

2          THE COURT:  Um-hmm.

3          MR. OSEN:  And so a lot of the dispute about

4  discovery of the New York branch in that case focused

5  on asking the defendant in that case to produce the

6  records it had produced to the OCC.

7          THE COURT:  I see.

8          MR. OSEN:  And so those requests were largely,

9  not exclusively, but largely framed around what

10  documents were given to the OCC and many records such

11  as the one I handed up to Your Honor were then

12  produced in response to that discovery dispute.  And

13  as a result of the way this process played out, the

14  names that appear in the motion to compel were not

15  specifically requested in that form back in 2006 when

16  this, when this dispute was resolved.

17          THE COURT: But yet they still yielded

18  documents.

19          MR. OSEN:  Oh, it yielded documents because

20  these documents --

21          THE COURT:  Involving CAB.

22          MR. OSEN:  Right, because they happened to

23  have been included in the documents that were produced

24  to the OCC.

25          THE COURT:  But you believe that the documents

1                                              16

2   you already have are sufficient to state jurisdiction,

3   do you not?

4          MR. OSEN:  I do --

5          THE COURT:  So why is there more, why is it

6   proportional to have even more, look for more, what

7   Arab Bank calls needle in a haystack, why is that

8   proportional?

9          MR. OSEN:  It's proportional because sitting

10  here today we do not know what the basis for the

11  defendant's motion on jurisdiction is. As far as we

12  can tell, Your Honor, it appears to be a motion for

13  reconsideration because, you know, just to give you

14  some of the statistics, the complaint that Your Honor

15  ruled on, there were 23 transactions alleged through

16  New York, sitting here today, setting aside the ones

17  that are disputed about whether they cleared through

18  New York, the ones that are undisputed, 114

19  transactions for over $6 million, and there are

20  actually more than that but that's generally the

21  range, over 100 --

22          THE COURT:  One-hundred-and-fourteen don't

23  involve nested accounts?

24          MR. OSEN:  Correct, or anything else,

25  they're standard correspondent banking transactions

```
 1                                            17
 2  --
 3          THE COURT:  The kind that the Second Circuit
 4  said in Licci were sufficient.
 5          MR. OSEN:  Correct.  And as I read, and this
 6  is more addressed to Mr. Siegfried, obviously, than
 7  Arab Bank's counsel, but as I read their proposed
 8  motion, it's a challenge to due process, not to
 9  purposeful availment, but because we're at a loss as
10  to what evidentiary issues are implicated by that
11  distinction in this case, we don't know whether
12  there's something we're missing in this process.
13          THE COURT:  Well but that lack of knowledge, I
14  mean all you're seeking are more of the same so if 114
15  -- 114 is more than 23, why is more of the same of
16  maybe, you know, a small handful of transactions that
17  you might find, why is that even, why is that going to
18  materially impact your opposition to a challenge,
19  whether it's due process or purposeful availment?
20          MR. OSEN:  Well, there are two points to that,
21  Your Honor.
22          THE COURT:  Um-hmm.
23          MR. OSEN:  The first is that depending on
24  which person or entity there's responsive records for,
25  it is at least theoretically possible that and, again,
```

18

1 I can't speak for the defendant and what they intend
2 to do, but at least possible that their position is
3 that there's a qualitative distinction between
4 transfers made, for example, to or from the Holy Land
5 Foundation or other Hamas controlled entities, versus
6 transactions to Hamas leaders or those who are
7 implicated directly in violent activities.
8
9       Now Your Honor certainly didn't hold that in
10 your report and recommendation, it's nowhere in *Licci*,
11 but I think, I think that may be the argument, in
12 which case obviously having the additional records
13 could moot that point.  Secondly, to be clear, these
14 records which we're seeking are relevant both
15 jurisdictionally and ultimately to merits discovery.
16 So even if Your Honor concluded today and said we're
17 good on jurisdiction, there's no need for more motion
18 practice on that, we would still at some point be
19 subpoenaing the same records because any evidence that
20 CAB provided material support, held accounts for,
21 processed funds transfers for Hamas leaders, for Hamas
22 controlled entities obviously goes straight to
23 liability.
24       THE COURT:  Okay.  Are there other points you
25 want to make before I hear from Arab Bank?

```
 1                                        19

 2            MR. OSEN:  I think that's it, Your Honor.

 3            THE COURT:  Okay, I'll hear next from Arab

 4   Bank.

 5            MR. LAWLER:  Good morning, Your Honor. In the

 6   discussion that I just heard there were, I think most

 7   of those, the transfers we're talking about, have

 8   nothing to do with Arab Bank--New York. They, I'm

 9   not sure where the 114 number comes from but I don't

10   think it has anything to do with Arab Bank--New York,

11   I don't think Arab Bank--New York was involved in

12   that.

13            The plaintiffs have identified 32 transactions

14   which they think, of the 15,600 transactions that were

15   produced in *Linde* and in *Miller* they've identified 32

16   that arguably involved in some way Arab Bank--New

17   York. And in our papers, and we can go into it further

18   now, we've said that 19 of those, I believe were,

19   involved so-called nesting which we believe the Court

20   has said are not relevant to the issue of

21   jurisdiction. So now we're down to approximately 13

22   transactions out of, again, 15,600.

23            So our, even if those 13 transactions turn out

24   in some way to have some relevance, we're talking

25   about a miniscule .0083, I don't even know, I'm not
```

```
1                                        20
2  sure how you say that percentage --
3             THE COURT:  Right.
4             MR. LAWLER:  But it's miniscule.
5             THE COURT:  Well, how do you address
6  counsel's, plaintiffs' counsel's point that it was
7  only that miniscule, as relevant to this case, because
8  the documents produced were another matter and these
9  names that they've requested in their subpoena aren't
10 the names that you were looking for?
11            MR. LAWLER:  I have a couple of responses to
12 that.
13            THE COURT:  Okay.
14            MR. LAWLER:  One, we're talking about the very
15 same incidents that make up, in Linder and in Miller
16 the same events that took place. We are talking about
17 the vast majority, and I have to say I haven't checked
18 to see if the individuals identified in Linder and
19 Miller are the same as people identified in the
20 current case in Averbach, but it's all, it's all the
21 same events and basically the same people. I don't
22 know, I cannot say, tell the Court that I know that
23 they're exactly the same but they have said that,
24 agreed in their request of the 40, and it's not really
25 40, it's really 160 -- 190 names --
```

```
 1                                          21

 2          THE COURT:  Because of all the variations?

 3          MR. LAWLER:  Because of all the variations,

 4   and it's not just the 190 names, because if you, if

 5   you look at the variations of the individual names,

 6   we're talking about literally thousands of possible

 7   permutations for all of these entities.  It is not

 8   just 40 and it's --

 9          THE COURT:  Well, why couldn't it just be cut

10   down by having a search for Cairo Amman Bank, isn't

11   that, I mean why do you have to have all of these

12   names at all, why couldn't you just search for Cairo

13   Amman Bank, that's really, that's the key --

14          MR. LAWLER:  I don't --

15          THE COURT:  Why would we get, why would there

16   be nothing?

17          MR. LAWLER:  Well, first of all, it's

18   important, and we make a point and I'm sure, we had no

19   correspondent relationship with Cairo Amman Bank.  And

20   where the program that we're searching and using to

21   search, is one that is 20, it's almost 20 years old

22   and it has not been updated, it's not been maintained.

23   And it's hard to understand today what something, what

24   things were like 22 years ago as far as computers go

25   but it's, we, I'm told we cannot just put in Cairo
```

```
 1                                                    22
 2   Amman Bank and press a button and have any
 3   transactions in which Cairo Amman Bank might have been
 4   in a chain, whether it's a nest, so-called nested
 5   chain or otherwise, I'm told that we can't do that.
 6           So it --
 7           THE COURT:  So, CAB just comes up by virtue of
 8   putting in different customers' names, is that what
 9   you're saying?
10           MR. LAWLER:  Well I'm assuming what happened
11   is of the tens, probably hundreds of thousands of
12   documents that were produced in the other, in Linde,
13   and Miller, they can because they're probably --
14           THE COURT:  Like a relativity Relativity
15   database, yes.
16           MR. LAWLER:  A real database.
17           THE COURT:  Yep.
18           MR. LAWLER:  They can put in a name --
19           THE COURT:  Right.
20           MR. LAWLER:  And they can put in Arab Bank
21   New-—York and they know they can come up with any
22   transactions that involve Arab Bank-—New York, I'm
23   assuming that, but I'm told that we don't have the
24   ability to do that. And I should also just point out
25   our ability to do anything, now we can always get,
```

```
 1                                                  23
 2  presumably we can get the third party or outside
 3  vendor here, but currently Arab Bank--New York takes
 4  about as much space as in the jury box. And there are
 5  three employees, there will be two employees as of
 6  January 1st, the person who did, because one is
 7  retiring, and the person who did the original work in
 8  Linde passed away some time ago.
 9           THE COURT:  And what about, what about, I
10  understand your arguments that this isn't proportional
11  in part because of the costs and burdens --
12           MR. LAWLER:  Yes.
13           THE COURT:  On your client, which has got
14  three employees working with this rickety old system,
15  what if the, what if the costs were shifted and
16  plaintiffs bore the cost of this search, is that
17  something that would be acceptable to your client?
18           MR. LAWLER:  I don't know the answer to that,
19  Your Honor.
20           THE COURT:  Do you know what the costs are, I
21  mean just the dollar costs?
22           MR. LAWLER:  I do not know. I do not know the
23  answer to that. The -- what else, I think, unless the
24  Court has additional questions I think that I've made
25  the points. I mean we have tried, we have tried to put
```

1                                                    24

2   forth what we believe are reasonable accommodations

3   and solutions here --

4          THE COURT:  Right, so you're thinking doing

5   fewer, you would be willing to do something by doing

6   fewer variations in the names.

7          MR. LAWLER:  Fewer variations and any

8   transfers that were made outside of Palestine or

9   Jordan or Israel would not, would not be included.

10  What we have already produced has, we would not have

11  to reproduce it.

12         THE COURT:  Okay.

13         MR. LAWLER:  I think actually, I think that

14  plaintiffs agree to that. But the, so variations that

15  -- oh, if they're not named, and if entities are not

16  named in the complaint then we would also not be

17  required to search for those.

18         THE COURT:  Okay, thank you. Mr. Osen, why

19  aren't the suggestions that Arab Bank has suggested

20  reasonable and what about this issue of cost shifting,

21  what's your position on that

22         MR. OSEN:  Taking the first issue, we agreed

23  with the bank that they could limit their search to

24  CAB Palestine, Jordan. I think at one point they had

25  a branch in Lebanon, but certainly to those

25

1

2  jurisdictions.

3          THE COURT:  Palestine, Jordan and Lebanon?

4          MR. OSEN:  Right, so we had no issue with that

5  and we also agreed in principle to try and reduce the

6  number of transliteration variables although even with

7  the ones that were produced there sometimes the same

8  party is spelled differently --

9          THE COURT:  In the same document.

10          MR. OSEN:  By the same bank because each time

11  they're entering the data they're transliterating it

12  from Arabic so it depends on who is typing in the word

13  Mohammad for example, it could be spelled with a U or

14  an O an E at the end or an A.  So, there is no perfect

15  solution to that, but we've offered to work with them

16  on that. The one thing that is at the crux of this

17  dispute is that we didn't want to be limited to

18  individuals or entities listed in the complaint --

19          THE COURT:  Well why shouldn't you be?

20          MR. OSEN:  Because that's not the limits of

21  Rule 26 discovery and, for example, just to give you a

22  concrete one, the, let me get this in front of me --

23          THE COURT:  Well, if you were limited to the

24  people and entities named in the second amended

25  complaint, how many would that be?

```
 1                                          26

 2          MR. OSEN:  Twenty-nine.

 3          THE COURT:  Twenty-nine and plus the alternate

 4   spellings which would --

 5          MR. OSEN:  Right.

 6          THE COURT:  Increase that at least three-fold.

 7          MR. OSEN:  Correct.

 8          THE COURT:  Right?  Okay, and why isn't, why

 9   wouldn't that be sufficient and proportional?

10          MR. OSEN:  Well, let me give you an example.

11   One of the names here, three of them, of those who are

12   not listed by name in the complaint, are individuals

13   who are part of leadership of the Arab Liberation

14   Front which was Saddam Hussein's --

15          THE COURT:  Yes, but why does that matter if

16   those people don't have accounts with CAB?  I mean

17   there's not, there's -- you don't have any knowledge

18   as to whether or not these other people or entities

19   have any relationship with CAB, isn't that correct?

20   Isn't it just a fishing expedition as to whether or

21   not, maybe possibly some of these people who are

22   named, you're going to discover some terrorists that

23   you know may be got a transfer of money from CAB, you

24   don't know it, but maybe Arab Bank if they produce

25   thousands and thousands and thousands and thousands of
```

```
1                                              27
2  transactions you'll find one, isn't that really what
3  you're trying to do?
4         MR. OSEN:  No, Your Honor, the Arab Liberation
5  Front distributed checks and payments to the families
6  of suicide bombers through Cairo Amman Bank, that's in
7  the complaint, and we have evidence to support that.
8  The Arab Liberation Front operated both formerly
9  formally as an entity to the extent it was one, and
10 through its leadership, which is how most, if not all,
11 terrorist organizations do.  And so, therefore, it is
12 completely plausible and reasonable to assume that
13 when Cairo Amman Bank provided services to Saddam
14 Hussein's Arab Liberation Front, they did so through
15 and with the instructions of the senior leaders of
16 ALF. I don't know whether it was those three
17 individuals or it was Mr. Rakad Salem, the head of the
18 ALF, but it's not a fishing expedition, it's ordinary
19 routine discovery.
20         One more point, Your Honor, about cost
21 shifting. To be clear, with the exception of the ALF
22 individuals, everybody on that list is someone we
23 could serve a document request in Miller tomorrow and
24 the bank would be obligated to do the same searches
25 and for all I know, as Your Honor mentioned
```

28

2  Re-elativity, for all I know, all of the materials

3  belonging to Arab Bank--New York that are relevant are

4  sitting in a Re-elativity database by Arab Bank's

5  counsel. So it may very well be that the individual

6  left in their office does not have the capability to

7  search their systems anymore, but Arab Bank, which is

8  actively litigating a case in the Eastern District of

9  New York and which has to respond to these very same

10  kinds of requests as a non-third party, as a party to

11  the proceeding, would and will have to produce the

12  same records in that case.

13          THE COURT:  Well, what is the status of

14  discovery in those cases?

15          MR. OSEN:  The status of discovery is it's

16  ongoing, there's a pending motion to compel on bank

17  secrecy but otherwise discovery proceeds in that case.

18  So we could serve a document request tomorrow on Arab

19  Bank New York, actually we'd serve it obviously on Mr.

20  Siegfried and counsel, they would then have to make an

21  argument to the Court that unlike the thousands of

22  other records they've produced, somehow these are less

23  relevant than the others, they have produced records

24  and just to take a name at random, these are senior

25  Hamas leaders, that request is going to be responded

1

2  to and they are going to search records for it.

3          So, what we could do is serve that request and

4  then when the documents are produced under the

5  protective order, introduce them here under seal in

6  this case. It's just a different way of coming to the

7  same result, we think it's appropriate to do so

8  because of the discovery deadline in this case.  We

9  served discovery when Your Honor directed it to third

10 parties back in the summer and that's why we're here

11 today. But we would get these same records. We won't

12 get them obviously --

13         THE COURT:  Well shouldn't there be some

14 limiting principle on these 190 names and all of the

15 variations, I mean that has thousands of possible

16 permutations, wouldn't you accept some limitation on

17 that?

18         MR. OSEN:  Of course --

19         THE COURT:  Well, what do you think is a

20 reasonable limitation?

21         MR. OSEN:  We went through the list and tried

22 to cull variations --

23         THE COURT:  Resulting in how many?

24         MR. OSEN:  I think we were able to cut off

25 about 50 or 60, I don't recall.

```
1                                                    30

2              THE COURT:  Leaving how many permutations?

3              MR. OSEN:  We didn't do a count on it, Your

4    Honor.

5              THE COURT:  Still thousands?

6

7              MR. OSEN:  It's not thousands, Your Honor,

8    that's not correct, it's probably, if you count it all

9    up it's probably close to 300. But, look, I don't know

10   how to search their systems. It may very well be, Your

11   Honor, that if you type in, for example, a last name

12   like the one we have here for Mohammad Taha, that if

13   you search Taha there aren't many spellings of Taha,

14   it's a fairly straightforward one.  Sorry, the one you

15   have --

16             THE COURT:  I have Hayek.

17             MR. OSEN:  Is Ghazi Hamad.  So, on this name,

18   the variations are pretty limited, the only possible

19   variation I could think of off the top are Ghazi with

20   an R or Ahmed Hamed with an E, but that's just the

21   nature of this process and it's a process that Arab

22   Bank has undertaken hundreds of times, maybe thousands

23   of times in the course of the *Linde* and *Miller*

24   litigation.

25             So, there's no doubt that there's a burden,
```

it's a burden we encounter with every bank when we're

dealing with Arabic transliteration, but that's

intrinsic, that's not the plaintiffs' fault, that's

just the way --

      THE COURT:  But plaintiffs have to deal with

Rule 26 and Rule 45 which does cabin discovery to

things that are relevant to the claims and defenses

and proportional to the needs of the case.

      MR. OSEN:  Absolutely.

      THE COURT:  And so in terms of the cost

shifting I don't think that you finished your answer

on why shouldn't costs be shifted or at least shared?

      MR. OSEN:  Because Arab Bank through its

counsel can and will do these searches regardless.

      THE COURT:  How do you know that? In the other

case you have, first of all, here the Court is bound

by the Rule 45 constraint which is somewhat more

protective of a nonparty. I understand that in *Linde*

and *Miller,* Arab Bank is a direct party but still why

would these names be relevant in that case if you

didn't search for those names before in that case?

      MR. OSEN:  Because, Your Honor, they weren't

searched due to the fact that the requests were formed

and formulated in the context of the dispute over OCC

32

production. So we're perfectly content if Your Honor

says to us why don't you serve, I'm not going to, I'm

not going to compel them in this case, serve your

document request in *Miller* if you so choose, any

documents you get in response to that you can then do

what you've done previously with other documents

previously produced by Arab Bank which is to say

they'll be subject to the protective order, you'll

produce them to CAB in this case. T, that's fine with

us. The result is the same, it's just procedurally a

question of timing. This all came about because we

were in jurisdictional discovery and we served third

party requests. You know, if I had to do it all over

again, I would have just served a document request for

the relevant records, I might lose a couple for the

ALF, but otherwise I'm going to get those records, and

then I'd just transfer them over.

THE COURT:  Okay, so let me ask Arab Bank if

you have any responses to or additional things that

you'd like to add based on the conversation I've just

had with plaintiffs' counsel?

MR. LAWLER:  What I heard Mr. Osen say in

response to your question was really confirmation that

this is a fishing expedition. This is, he's thrown out

33

the names of a lot of bad people in the hopes that
perhaps they will, they will come up in the search.

            With respect to the, what's going on in
*Miller*, I'm going to defer to, because I'm not up to
date as to what's going on in *Miller* and the
discovery, it's, as I understand it there is some
restriction on what they, what they can do, but I'm
going to ask Mr. Siegfried to respond to that because
I'm really not up to date.

            THE COURT:  All right, so although CAB doesn't
necessarily have standing to contest this subpoena, I
would like to hear an update on and a response, to the
extent you have better knowledge of what's going on in
*Miller* and *Linde* and plaintiffs' position that these
same requests can be served in that, in those cases
and obtained that way.

            MR. SIEGFRIED:  Thank you, Your Honor, I will
answer that question --

            THE COURT:  Yep.

            MR. SIEGFRIED:  But lest my memory forget, I'd
just like to make a couple of comments.

            THE COURT:  All right, and keep it, I do have
to leave by ten so, I mean by eleven, so, yes, keep it
short, thanks.

34

MR. SIEGFRIED:  Very short.  I understand that

Your Honor now has inherited the *Kaplan* case.

THE COURT:  Yes.

MR. SIEGFRIED:  And the Court is familiar with

it, and I'm not surprised by your comment about what

were the transactions in *Kaplan* because you are

absolutely correct, one of the main arguments made by

the plaintiffs' counsel in the jurisdictional

argument was that LCB actually took dollars, Lebanese

dollars and routed them through New York to come back

to LCB and, therefore, they were originating

transfers.  And I think in both *Spetner* and in *Vasquez*,

if I recall correctly, there is a more extensive

discussion about passive receipt, I just wanted to say

that.

It is also the case, having lived through

*Linde* and *Miller* discovery, that it is an

extraordinary task to try to produce documents off of

this software.  I think it was very wise for counsel to

say he couldn't estimate the cost because I will tell

you it is a very expensive proposition because of the

limitations on the ability to search which ends up

driving everything to be a hand viewed situation.

The proposition that, oh, well, plaintiffs

35

1
2  could have just simply served another document
3  request, well I believe that might technically be true
4  but the magistrate judge there required~~moved~~ the
5  parties to complete their document discovery and the
6  motion ~~that is one of the motions which~~ is tied up on
7  issues in that case of bank secrecy~~, involves~~ and_
8  issue, frankly, that you have more indirectly, or
9  maybe you have directly raised here, namely the
10 relevancy of a number of these names. So it's true, I
11 guess, if the Court would even entertain a document
12 demand at this point, that they can add 10 names, 20
13 names, 30 names which will then end up in the same
14 question as to the relevancy of those names._ ~~a~~And the
15 discovery in that case was not limited to some OCC
16 related documents, the discovery in that case was
17 actually broader than the discovery in this case
18 because there were claims involving funding not just
19 of the Hamas attacks that are the same attacks _as_
20 _here_, there were claims about funding other attacks._
21 ~~a~~And it wasn't limited to a particular bank, it was
22 any transfer that touched upon Arab Bank and actually
23 Mr. Osen started with an example of that. So you
24 actually _-~~,~~_ _t~~T~~_he fact that, I think_,_ it's actually
25 telling that when you do a broader request that isn't

```
 1                                        36
 2   limited to a specific bank, and basically would
 3   require Arab Bank to produce everything in terms of
 4   the universe of banks that could possibly have been
 5   involved and touched a transfer somewhere along the
 6   lines, you have all of these 13 or 19 transactions. So
 7   --
 8            THE COURT:  And is that, I'm just speculating,
 9   and I don't know whether you would agree that if that
10   search was so broad that it would cover many, the
11   reason why so few transactions came up involving CAB
12   was that CAB had its own correspondent bank at the
13   time?
14            MR. SIEGFRIED:  Well they have now, plaintiffs
15   have now conceded that Arab Bank--New York was not a
16   correspondent bank of CAB.
17            THE COURT:  Right.
18            MR. SIEGFRIED:  So, therefore, to the extent
19   Arab Bank--New York had to produce documents in Linde,
20   and Miller, it wasn't that it looked at any particular
21   bank, it looked at all names and wherever those,
22   wherever those transactions might have originated from
23   or the recipients have been receiving them or the
24   beneficiaries, it had to do that.
25            So I think the needle in a haystack point is
```

37

exactly, is exactly -- is exactly right and I think
there's a very good reason that Mr. Osen has not
served a document request to try to reopen at this
point discovery in Arab Bank, *Miller*. aAlthough

Formatted: Font: Italic, Complex Script Font: Italic

listening to him I think it raises some concern, if I
put a different hat on for a second, that this idea of
using one Court to obtain discovery that may then be
used in another case is concerning. but But I come
back to your point which is the proportionality of the
request, your point that if they don't think, and they
may perhaps are realizing it, that they don't have a
good jurisdictional argument based upon what they've
already produced, then the fact that they can get 5
more, or 10 more, or 15 more of the same transactions
doesn't really advance the ball. Our concern, putting
my CAB hat back on, is that we are at the end of
discovery and we would like to get, start moving
forward with this motion and, therefore, we'd hope
that Your Honor would grant the request --

      THE COURT:  Okay.

      MR. SIEGFRIED:  Requested by ABNY.

      THE COURT:  All right, because I have
something that I have to do at eleven I'm going to end
the conference now, I want to thank everybody for

```
1                                          38

2   their arguments, I'm going to take it under

3   advisement. And depending on the outcome, to the

4   extent a schedule needs to be slightly adjusted I can,

5   I can do that.

6           All right, thank you, everyone --

7           MR. LAWLER:  Thank you very much, Your Honor.

8           MR. SIEGFRIED:  Your Honor, can I ask one

9   question?

10          THE COURT:  Sure.

11          MR. SIEGFRIED:  I thought one of the things

12  that you wanted, and I realize we're not going to do

13  it today, but one of the issues I think that we had

14  here was setting up, that you wanted a conference to

15  discuss the motion or the form of the motion --

16          THE COURT:  Right.

17          MR. SIEGFRIED:  And I don't know we have

18  another date --

19          THE COURT:  Right, so after this, because I

20  have, I'm just mindful of the time, I will set up

21  another conference. I am going to ask though that you

22  all meet and confer about, since plaintiffs have said

23  they don't really understand the basis for your

24  motion, that you, that they think it's a motion for

25  reconsideration, I don't understand that to be the
```

```
 1                                        39
 2  basis of your motion. But you're here now together,
 3  you can use my jury room, if you would just have a
 4  communication about that and just be better informed
 5  about what that is going to involve, I think that can
 6  only inure to everybody's benefit, so I'd ask that you
 7  have that conversation, okay?  Thank you, everyone.
 8            (Whereupon the matter was adjourned.)
 9
10
```

```
1                                              40
2                    C E R T I F I C A T E
3
4         I, Carole Ludwig, certify that the foregoing
5    transcript of proceedings in the United States
6    District Court, Southern District of New York,
7    Averbach, et al. versus Cairo Amman Bank, Docket No.
8    19cv0004, was prepared using digital electronic
9    transcription equipment and is a true and accurate
10   record of the proceedings.
11
12
13
14
15   Signature _____
16                    CAROLE LUDWIG
17   Date:  December 27, 2022
18
19
20
21
22
23
24
25
```