

190 Moore Street, Suite 272, Hackensack, New Jersey 07601
T: 201 265 6400 F: 201 265 0303

144

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  01/27/2023
```

January 26, 2023

**VIA ECF**

Hon. Katharine H. Parker
United States Magistrate Judge
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

> Re:   ***Averbach et al. v. Cairo Amman Bank***, 19-cv-00004-GHW-KHP
> **Letter Motion Requesting Approval of January 19, 2023, Transcript Errata**

Dear Magistrate Judge Parker:

At Chambers' instruction, and at the request of the transcription service that prepared the transcript for the January 19, 2023, case management conference, we write jointly on behalf of the parties to request that the Court approve the proposed changes to the transcript attached hereto as a clean document in **Exhibit A** and a redline in **Exhibit B**.

Respectfully submitted,

/s/ Dina Gielchinsky

Encls.

cc:    All Counsel

> The parties' proposed revisions to the transcript from the January 19, 2023 case management conference are APPROVED.  The parties shall send a copy of this order to the transcription service that prepared the transcript to request the revisions be implemented.

**SO ORDERED:**

*Katharine H Parker*

**HON. KATHARINE H. PARKER**
**UNITED STATES MAGISTRATE JUDGE** 1/27/2023

# Exhibit A

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                        Docket #1:19-cv-00004-
 AVERBACH, et al.,                  : GHW-KHP

                    Plaintiffs,     :

  - against -                       :

 CAIRO AMMAN BANK,                  : New York, New York
                                      January 19, 2023
                    Defendant.      :
                                      TELEPHONIC CASE
----------------------------------- : MANAGEMENT CONFERENCE

                    PROCEEDINGS BEFORE
            THE HONORABLE KATHARINE H. PARKER,
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:          OSEN LLC
                         BY:  DINA GIELCHINSKY, ESQ.
                              GARY M. OSEN, ESQ.
                              MICHAEL J. RADINE, ESQ.
                         190 Moore Street, Suite 272
                         Hackensack, New Jersey 07601


For Defendant:           DLA PIPER LLP (US)
                         BY:  JONATHAN D. SIEGFRIED, ESQ.
                              ANDREW J. PECK, ESQ.
                              ERIN COLLINS, ESQ.
                              MARGARET CIVETTA, ESQ.
                         1251 Avenue of the Americas
                         New York, New York 10020


Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> |
|---|---|---|---|---|
| None | | | | |

<u>**E X H I B I T S**</u>

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                          PROCEEDINGS                    3

 2            THE CLERK:  Calling 19-cv-004, Averbach vs.

 3   Cairo Amman Bank; the Honorable Katharine H. Parker,

 4   presiding.

 5            Beginning with counsel for the plaintiff,

 6   please make your appearance for the record.

 7            MS. DINA GIELCHINSKY:   Good morning, Your

 8   Honor.  This is Dina Gielchinsky from Osen LLC on behalf

 9   of the plaintiffs.  I'm joined by my colleagues, Gary

10   Osen and Michael Radine.

11            THE CLERK:  And, counsel for the defendant,

12   please make your appearance for the record.

13            MR. JONATHAN D. SIEGFRIED:  Good morning, Your

14   Honor;  Jonathan Siegfried appearing for CAB.  I'm

15   joined by Andrew Peck, Erin Collins and Margaret

16   Civetta.

17            HONORABLE KATHARINE H. PARKER (THE COURT):

18   Good morning.  Thank you for your flexibility in

19   switching to phone today.  Because we are on the phone,

20   I ask that you keep your phones on mute unless you're

21   speaking and state your name before speaking.  Also, I

22   remind you that the Court's conference line is open to

23   the press and public on a listen-only basis and that

24   court rules prohibit others from recording and

25   rebroadcasting court proceedings.
```

1

2      So I think there's not too much to report based

3 on your recent letter to the Court, but I did want to

4 get an update on the jurisdictional discovery and also

5 talk about the anticipated motion that defendants want

6 to make.

7      So where are you on the discovery?

8      MS. GIELCHINSKY:   Your Honor, I can start --

9 Dina Gielchinsky for the plaintiffs.  We received -- as

10 we stated in our last status report, we received Arab

11 Bank's response to our subpoena advising us that they

12 were not able to locate responsive documents.  That was

13 basically it under jurisdictional discovery.

14      With respect to Your Honor's second point, we

15 held a meet-and-confer with the defendant on January

16 13th, and we just restated our position that

17 jurisdictional briefing should wait until the District

18 Court issues its order on the R & R.  And that remains

19 our position.

20      THE COURT:  Okay.  Let me hear what the defense

21 position is on the motion to dismiss.  Why should it be

22 filed now, as opposed to waiting for a decision on the

23 R & R?

24      MR. SIEGFRIED:  Certainly, Your Honor.  Thanks

25 very much.  This is Jonathan Siegfried speaking.  Your

```
1                        PROCEEDINGS              5

2   Honor, last June at our first conference we raised

3   questions as to whether plaintiffs could actually

4   support the jurisdictional allegations in their Second

5   Amended Complaint.  Recognizing that jurisdiction is a

6   threshold issue,  you directed the parties to engage in

7   jurisdictional discovery and have overseen that

8   discovery for the last seven months.  As plaintiffs

9   acknowledge that discovery is now completed and we are

10  prepared to proceed on our motion, which brings us to

11  the issue that plaintiffs now raise, which is that the

12  Court should wait for the District Court to rule on the

13  Report and Recommendation.  Simply put, Your Honor,

14  plaintiffs are wrong on the law about that, and they're

15  asking the District Court to either ignore or rule on

16  the issue of specific jurisdiction without regard to the

17  facts.

18          Let me start with the law, because their legal

19  position is based on a fundamental misapprehension of

20  where we are.  A renewed motion to dismiss under

21  12(b)(2), Your Honor, following jurisdictional discovery

22  is not simply addressed to the pleadings and involves an

23  entirely different legal standard than the pre-discovery

24  legal standard the Court applied in the R & R.  Prior to

25  jurisdictional discovery, Your Honor, under well-
```

 1

 2  established Second Circuit precedent, a plaintiff's

 3  showing of jurisdiction may be established solely by

 4  allegations in the pleading, which are deemed to be true

 5  by the Court.  It's quite clear, from what you precisely

 6  state in the R & R.

 7          THE COURT:  Right.

 8          MR. SIEGFRIED:  It's the standard you applied.

 9  You found that plaintiffs had made a prima facie showing

10  of personal jurisdiction based on the allegations in the

11  Complaint, which are deemed to be true, and from which

12  you drew all favorable inferences to plaintiffs.  That

13  is not the legal standard following jurisdictional

14  discovery.  The Second Circuit and numerous Courts in

15  this district have made clear that, following

16  jurisdictional discovery, a plaintiff's showing must be

17  factually supported.  I think perhaps Judge Engelmayer

18  put it most succinctly in a couple of cases

19  (indiscernible) -- I'd refer you perhaps to *Paroni vs.*

20  *GE UK Holdings*, quote, "After jurisdictional discovery,

21  admissible evidence, not a party's pleading or say-so,

22  controls."  So we begin with the fact that, given the

23  procedural posture of the case, we are dealing with an

24  entirely different legal standard than the legal

25  standard you applied, which frankly at the moment, Judge

1
2  Woods has before him.
3          That brings -- as I said, they're wrong on the
4  law and I said they're wrong on the facts -- and that
5  brings us to the facts.  The evidentiary record that has
6  been established in discovery, as we will show in our
7  motion, shows or provides evidence that directly
8  contradicts the allegations of the pleading, and in
9  other cases does not support it.  And Your Honor is very
10 aware of one example in particular because it's been the
11 subject of several conferences.  The Complaint alleges
12 that there were 21 transfers to four individuals through
13 CAB's correspondent account at Citibank, including six
14 transfers to one individual who was alleged to have
15 planned one of the attacks.  The jurisdictional
16 discovery showed those allegations, which Your Honor
17 expressly referred to in the R & R and deemed to be
18 true, as you were required to, in fact could not be
19 factually supported and were indeed untrue.  And you
20 have seen as a result that plaintiffs then changed their
21 entire argument about those transfers and came up with
22 what they call the nesting theory.
23          And of course that nesting -- they're putting
24 this -- it was not before you when you did the R & R,
25 it's not before Judge Woods.  And we also know that the

1

2  nesting theory has been rejected, at least by one Court

3  in this district.  And we further know, from the

4  jurisdictional discovery, that it wouldn't even apply in

5  this case even were the Second Circuit to uphold it.

6          So I know we're not going to get -- I don't

7  want to go too deep into the merits here, but basically

8  -- basically, Your Honor, what that argument means is

9  that plaintiffs would have Your Honor stand aside,

10  ignore what is now the evidentiary record and allow the

11  District Court perhaps to adopt findings and conclusions

12  in the R & R which you now know to be incorrect, such as

13  the allegations regarding those transfers.  And it would

14  have the District Court rule on a motion based on a pre-

15  discovery legal standard that is no longer relevant to

16  the procedural posture of the case now and to do so

17  without the evidentiary record that now exists and which

18  is relevant to properly deciding whether personal

19  jurisdiction exists.

20          The idea, Your Honor, that's behind plaintiffs'

21  argument, that Your Honor should stand aside under these

22  circumstances therefore is not only wrong on the law but

23  would result in a total waste of the District Court's

24  time and resources in ruling on that portion of the R &

25  R, where as I said, both the legal standard is no longer

PROCEEDINGS                                    9

1
2   the applicable legal standard under Second Circuit
3   precedent and where the facts are different.  And
4   plaintiffs even acknowledge, at least with respect to a
5   number of the nesting transactions, that the facts are
6   different because they no longer claim that those
7   transactions even went through Citibank.
8            Now, I say we're not -- unless you want me to,
9   I'm not going further into the merits regarding all of
10  the other transactions, but the same types of issues
11  arise when you apply the facts that we now have through
12  jurisdictional discovery to the minimum contacts
13  analysis and the full minimum contacts analysis that is
14  to be applied under the due process clause but, again,
15  not on the basis of the allegations, the jurisdictional
16  allegations in the Complaint, which are at paragraphs
17  five through eight, but on the evidentiary record that
18  has been developed through the jurisdictional discovery
19  that you ordered and supervised and brings us to today.
20           So our argument and our position is that we
21  should proceed with the motion under the proper
22  standard, under the full evidentiary record, and that
23  Your Honor should rule on that, decide that, and then
24  what Judge Woods would have before him is a ruling on
25  jurisdiction that is made under both the proper legal

1

2   standard and upon full evidentiary record rather than

3   ignoring all of that and ruling on something, as I said,

4   that the Second Circuit says is no longer procedurally

5   relevant.

6            One last point, if I might, Your Honor.  And

7   that is -- I might also refer Your Honor to Judge

8   Engelmayer's decision in *Vasquez vs. HSBC* -- it's at 477

9   F.Supp. 3d 241.  There, as here, Your Honor, the Court

10  denied an initial 12(b)(2) motion to dismiss direct to

11  the pleadings.  There, as here, the Court ordered

12  jurisdictional discovery.  There, as here,

13  jurisdictional discovery was completed.  And there, as

14  here, upon completion of jurisdictional discovery, Judge

15  Engelmayer heard a renewed motion to dismiss under

16  12(b)(2), specifically distinguished between the pre-

17  and post-discovery standards and what he was to look at,

18  and then granted the jurisdictional motion to dismiss

19  that he had previously denied, applying the proper

20  standard applicable to the motion that was made at the

21  time.  That is what we are suggesting that we do so that

22  we can engage in an efficient process for resolving the

23  threshold jurisdictional issue.

24            THE COURT:  Okay.  So if there's no

25  jurisdiction, that moots the remainder of the objection

```
 1                      PROCEEDINGS                    11
 2   on the R & R or any decision on that remainder of the R
 3   & R, as well.
 4        MR. SIEGFRIED:  Absolutely, which is another
 5   reason for having it, that threshold issue, correctly
 6   decided.  It doesn't mean that -- I may have disagreed
 7   and filed objections to your prior conclusion, but it
 8   doesn't mean that you didn't apply the proper standards
 9   to the pleadings as alleged and issued your reasoned
10   opinion.  But what it does mean that we are -- you
11   obviously had the authority to order the jurisdictional
12   discovery.  We are at that point in time, and so you
13   should have the opportunity to make that decision.  If
14   you rule that way, if you rule in our favor this time,
15   then that is the issue that will go before Judge Woods;
16   and if you ruled in our favor, the defendant's favor, he
17   would not reach the 12(b)(6) issues.  If you ruled
18   against us and he affirmed your ruling, then of course,
19   he would have to reach it.  But he certainly wouldn't go
20   on right now -- not only is he (indiscernible) but would
21   be deciding on the wrong legal -- on the not
22   procedurally relevant legal standard and ignoring the
23   evidence with regard to jurisdiction, but he might also
24   then go on to just rule on the 12(b)(6) motion part that
25   he wouldn't even need to or properly reach.  It cannot
```

1

2  be that that is anything other than a waste of judicial

3  resources.

4          THE COURT:  Right.  Okay, so I agree that the

5  briefing should commence.  When will defendant be in a

6  position to file a moving brief?

7          MR. SIEGFRIED:  Your Honor, you may recall that

8  the plaintiffs gave us a chart, and they gave that same

9  chart to Your Honor, listing all of their transactions.

10 I don't believe that any of the discovery that occurred

11 subsequent to that chart resulted or would have resulted

12 in any additions to that chart.  If that is the chart,

13 then we would be prepared to move forward with our

14 moving brief on, say, if you gave us a few weeks to --

15          THE COURT:  (Indiscernible)

16          MR. SIEGFRIED:  I'm sorry?

17          THE COURT:  Could you do it by January 31?

18          MR. SIEGFRIED:  We could, Your Honor.  I think

19 that's a -- what is that, two weeks, I think, from where

20 we are today.  I think I'd prefer three weeks, just

21 because we have a foreign client and therefore,

22 obviously, we would want to be able to draft and be able

23 to have them see what we're doing.  So I'd prefer three

24 weeks; but if you wanted -- you know, required us to do

25 it by the 31st, we would do it.

|     | PROCEEDINGS                                      13 |
| --- | --- |
| 1 | |
| 2 | THE COURT:  Are there any changes to the chart |
| 3 | that plaintiffs wanted to make? |
| 4 | MS. GIELCHINSKY:   Yes, Your Honor.  We can |
| 5 | send an updated chart. |
| 6 | And if I could just be heard also on |
| 7 | Mr. Siegfried's points?  Because he brought up *Vasquez*, |
| 8 | which has a significant distinction from the procedural |
| 9 | posture here in that Judge Engelmayer denied the motion |
| 10 | to dismiss without prejudice and authorized |
| 11 | jurisdictional discovery.  So a renewed 12(b)(2) motion |
| 12 | in that case procedurally is the way to go.  Here, the |
| 13 | Report and Recommendation recommended denial but without |
| 14 | jurisdictional discovery.  Jurisdictional discovery was |
| 15 | eventually ordered, but we have a Report and |
| 16 | Recommendation denying the defendant's motion to dismiss |
| 17 | on personal jurisdiction grounds.  So, this would be a |
| 18 | successive motion to dismiss.  What I'm hearing and what |
| 19 | I think would have to happen now is that the defendant |
| 20 | would need to move to vacate the Report and |
| 21 | Recommendation that's outstanding or somehow it would |
| 22 | need to be withdrawn for this to be procedurally |
| 23 | appropriate. |
| 24 | THE COURT:  Well, they could also move for |
| 25 | summary judgment, couldn't they? |

1

2          MS. GIELCHINSKY:   They could move for summary

3  judgment, yes; yes, they could --

4          THE COURT:  Under Rule 56.

5          MS. GIELCHINSKY:   Yes.

6          MR. SIEGFRIED:  Your Honor, two points.  First

7  of all, the 12(b)(2) motion post jurisdictional

8  discovery applies under, again, Second Circuit

9  precedent; and, again, Judge Engelmayer has this in his

10 decision, as do other courts.  It applies the Rule 56

11 legal standards in terms of that the motion must be --

12 the plaintiffs are required to actually support the

13 allegations, affidavits are supposed to be -- are to be

14 on the basis of personal knowledge, documents have to be

15 authenticated.  So the legal standard, the Rule 56 legal

16 standards is to admissibility of evidence and the like,

17 are all applicable.  It doesn't have to be Rule 56

18 motions.  Number two, the --

19         THE COURT:  But in this case, if the Court

20 doesn't have subject matter jurisdiction, that can be

21 raised at any time.

22         MR. SIEGFRIED:  Yes.  I'm just simply saying

23 the point that Your Honor -- I didn't see that Your

24 Honor issued the Report and Recommendation with

25 prejudice, either.

```
 1                        PROCEEDINGS              15
 2            THE COURT:  No.  No, no.
 3            MR. SIEGFRIED:  Your Honor obviously ordered
 4   jurisdictional discovery, so I fail to grasp the legal
 5   significance of counsel's point.  Jurisdictional
 6   discovery was ordered by you.  It is now concluded, and
 7   you can always issue a supplemental Report and
 8   Recommendation so that the -- indeed, the whole purpose
 9   of the Federal Magistrates Act is to enforce and
10   conserve judicial resources and to do things
11   efficiently.  So here we are.  You had moved
12   efficiently.  You took the case, you ordered the
13   discovery.  We're applying for a motion, we can have our
14   motion up in two or three weeks, whichever you decide,
15   and then you can issue a supplemental Report and
16   Recommendation if you choose.
17            THE COURT:  Well, I want to hear the remainder
18   of the plaintiffs' counsel's point.
19            MS. GIELCHINSKY:  Are we --
20            THE COURT: (Indiscernible)
21            MS. GIELCHINSKY:  Well, I would also -- I
22   mean, besides procedurally, this affects his motion to
23   dismiss, unless the Report and Recommendation is somehow
24   withdrawn.  It's just not the proper vehicle right now
25   for the defendant to use until we have an order from the
```

```
 1                        PROCEEDINGS                16
 2   District Court.
 3          I'd also just point out that the Report and
 4   Recommendation didn't rely for personal jurisdiction
 5   purposes in finding personal jurisdiction on any of the
 6   transactions that are now, you know, proposed under
 7   nesting theories.  The Report and Recommendation found
 8   that, you know, the properly - plaintiffs properly
 9   alleged that the aid provided to Hamas came about via
10   money transfers through CAB's New York correspondent
11   accounts.  The defendant made the argument already that
12   the 23 transfers initially alleged were decidedly not
13   the proximate cause of plaintiffs' injuries.
14          But that wasn't the standard; the Court said
15   that's not the standard.  And, in any event, it doesn't
16   change -- the jurisdictional discovery under which now
17   we have 113 transfers totaling $7.5 million dollars, as
18   opposed to 23 transfers totaling $135,000, doesn't
19   change the jurisdictional analysis on the specific
20   customers; that's not what the personal jurisdiction
21   analysis is contingent on.  This Court rightly conducted
22   an analysis comparing the number of transfers to *Licci's*
23   dozens of transfers and *Indosuez*'s six transfers and
24   came up with its conclusion that plaintiff had made a
25   prima facie showing of personal jurisdiction.  So the
```

1
2   facts don't change it.

3          So it's not -- the 12(b)(2) motion, this is not

4   the right vehicle right now.  What plaintiffs propose

5   the state of play would be is that the District Court

6   issue an order on the Report and Recommendation.  If the

7   Court determines, if the District Court determines that

8   the plaintiffs have failed to state a claim under JASTA

9   or to satisfy personal jurisdiction elements, then we

10  might need to amend.  And if not, the Court's actual

11  holding I think will make it much clearer what

12  defendant's motion should be, whether it is a motion to

13  reconsider or a Rule 56 motion or maybe -- maybe it

14  would be appropriate at that point for defendant to

15  submit a Rule 12(b)(2) motion.  But, you know, at that

16  point defendant can submit a pre-motion letter outlining

17  what it's going to do.

18          MR. SIEGFRIED:  If Your Honor wants me to

19  respond, I will, but I think --

20          THE COURT:  I don't -- well, we're getting into

21  some of the merits.  I don't see a reason procedurally

22  why this motion shouldn't be teed up.  It can be teed up

23  either as -- it can be teed up as a Rule 12 and/or Rule

24  56 motion, frankly.  And I'm not making any decisions on

25  the merits.  Both sides are making reasoned arguments,

```
 1                        PROCEEDINGS                    18
 2   and I'm going to have to consider them both carefully
 3   after it's briefed.  But procedurally, I don't see why
 4   we can't set a schedule because these are
 5   (indiscernible) that are briefed, anyway.  Plaintiffs
 6   have to add the transactions that you found during --
 7   the additional transactions and provide that list.  Can
 8   you do that in a week from today?
 9            MS. GIELCHINSKY:   Yes, Your Honor.
10            THE COURT:  Okay.  So it --
11            MS. GIELCHINSKY:   Your Honor --
12            THE COURT:  If you provide --
13            MS. GIELCHINSKY:   I'm so sorry to interrupt.
14            THE COURT:  Yes, go ahead.
15            MS. GIELCHINSKY:   I'm so sorry, Your Honor.
16   This is difficult on the phone.  I'm just -- I'm here
17   with my colleague Gary Osen, and he was just hoping to
18   make a point to add.
19            THE COURT:  Okay.
20            MR. GARY OSEN:  Yes, Your Honor.  Gary Osen for
21   the plaintiff.  Do I understand firstly that Your Honor
22   is issuing an order vacating the R & R?
23            THE COURT:  No, absolutely not.  I'm just
24   ordering briefing on post-jurisdictional discovery.
25   Judge Woods, I don't know when he's going to rule on the
```

objections to the R & R. He may rule on it before this is even fully briefed.

MR. OSEN: Well, then, Your Honor --

THE COURT: So this may be a completely moot point.

MR. OSEN: So, but, Your Honor, here's the question procedurally in terms of the schedule. Ordinarily, again, because this is a strange procedural animal, the defendant has not cited any case (indiscernible) -- and *Vasquez* is not on point -- on what happens in a case where jurisdiction has been found sufficient, as the R & R indicates. And then there's discovery subsequent to that where it's a 12(b)(2) motion as opposed to a Rule 56. But the issue is even more complex here, and this is why I wanted to interject for a moment, because the nature of the claim, that is, the transactional record here, is intrinsically tied up with the merits. And the defendants' arguments and their objections, for example, raise issues of proximate cause, which of course is directly -- goes to the merits of the case.

So, I don't know how in a circumstance like this we would be able to respond to a brief that didn't have an operative Complaint that incorporated not just

```
 1
 2  the transactions that are reflected in the chart but
 3  also reflect the corresponding allegations that tie the
 4  transactions to unlawful conduct.  So, it's just a
 5  procedural question as to how they move under 12(b)(2)
 6  against a Complaint that doesn't have not just all the
 7  transactions but also the factual allegations that
 8  connect those transactions to the arising-from element
 9  of personal jurisdiction.
10          THE COURT:  Well, look, that -- what you're
11  arguing there is that can't be decided because of its
12  inter -- one, you're saying it's Rule 56; that if it
13  is -- I mean, I think defendants would be wise to
14  characterize it as either/or -- but what I'm hearing is
15  plaintiffs are arguing that under Rule 56(f) you would
16  need more discovery because it's intertwined.  I don't
17  know if that's the case or not; I'm not making a
18  decision on that in this call.  What I'm saying -- and
19  I'm not aware of any reason why this motion can't be
20  teed up.  So I'm going to start a briefing schedule.
21  And under --
22          MR. OSEN:  But, Your Honor, again -- Your
23  Honor, the question isn't about the briefing schedule;
24  the question is about what Complaint they're moving
25  against.
```

2          THE COURT:  And you want to amend the Complaint

3    to add additional information for jurisdiction?  I don't

4    know if that's required, given that you've had discovery

5    and you will be able to submit the additional

6    transactions by affidavit.  I think both sides are going

7    to be in agreement about the transactions that you

8    found, what they are.  And then you'll argue about the

9    significance of the nested transaction and so forth.

10          MR. OSEN:  Your Honor, this is Gary Osen again.

11    I think there's a missing component here.  And let me

12    give you a concrete example.  There are multiple

13    entities in the transactional record that are

14    jurisdictionally relevant from the plaintiffs'

15    standpoint but for which there are no allegations in the

16    Complaint about them.  And I don't mean the transactions

17    themselves; I mean who the counterparties to the

18    transactions are.  So, for example, just to take one at

19    random, the Halhul (ph) Zakat Committee, which was on

20    the list of HLF unindicted co-conspirators.  That's not

21    in the Complaint currently, the operative version, but

22    there are transactions to an account for Cairo Amman

23    Bank for that entity.  There are no allegations in the

24    Complaint setting forth the relationship of the Halhul

25    Zakat Committee to Hamas.  So, it's not simply a

1

2    question of putting in an affidavit as to the

3    transactions; it's holistic.  The Complaint and the

4    transactions can only be evaluated together because the

5    transactions themselves are the *actus reus*, if you will,

6    the act of material support or substantial assistance

7    that gives rise to the plaintiffs' claim.

8                MR. SIEGFRIED:  Your Honor, if I might --

9                THE COURT:  So you want to -- what you want to

10   do is amend the Complaint to shore up and add the

11   information that you found during jurisdictional

12   discovery; is that what you're saying?

13               MR. OSEN:  In order -- yes, in order to -- of

14   course, we oppose any -- just so the record's clear, we

15   think it's an improper motion, but if Your Honor's going

16   to entertain it, then it should be against an operative

17   Complaint that contains both the transactional record,

18   which of course, will be reflected in the chart, but

19   also reflect --

20               THE COURT:  I mean, the Complaint is already

21   like --

22               MR. OSEN:  -- the allegation --

23               THE COURT:  Mr. Osen, the Complaint's already

24   like 250 pages.  It's really long.  I mean, what --

25               MR. OSEN:  Your Honor, that's a function --

1

2          THE COURT:  -- you're now going to add

3   additional entities?  That's sort of changing the

4   target, isn't it?

5          MR. OSEN:  It's what comes about as a result of

6   discovery.  I mean --

7          MR. SIEGFRIED:  Your Honor, may I -- I'm sorry.

8          MR. OSEN:  Let me just conclude.  Your Honor,

9   if defendant is going to be permitted, as we think it's

10  wholly improper procedurally, but if the defendant is

11  going to be permitted to proceed in this fashion, then

12  it must be against an operative Complaint that contains

13  the plaintiffs' allegations in full and which reflect

14  the discovery that has been yielded in this case.

15         THE COURT:  Okay, I'm just not sure that's the

16  case because we have a notice pleading standard; and to

17  the extent there is additional facts that demonstrate,

18  in your view, that the defendant was engaging in serving

19  a customer to aid terrorism, I don't understand why all

20  of those transactions have to be in the Complaint.

21  That's not the way it normally works.  Normally, there's

22  notice pleading and then there's discovery and then

23  additional facts are brought to bear without amending

24  the Complaint.  So I'm not sure that I agree with you,

25  Mr. Osen, that it's necessary to be in the Complaint.

1

2   I'd like to hear from defendants on that.

3          MR. OSEN:  Your Honor, may I, Your Honor?

4   Apologies.  One last point on that before you hear from

5   defendant?

6          To be clear, on a 12(b)(2) motion, the

7   allegations in the Complaint, even on a renewed 12(b)(2)

8   are deemed to be true for purposes of the motion, with

9   the exception of the jurisdictional component, which is

10  based on the facts produced or the evidence produced.

11  So the issue isn't whether we append or integrate 100-

12  plus transactions into the Complaint; it's the

13  allegations concerning the entities who are the

14  customers of the bank that are germane.  And there are

15  only two ways that that can be accomplished, either by

16  amending the Complaint and treating those allegations as

17  true, or doing this at summary judgment after completion

18  of fact and expert discovery.  And if the defendants

19  want to move under -- without full discovery, then it

20  has to be procedurally against an operative Complaint

21  that incorporates those allegations.  Otherwise, we say

22  in our papers, well, look, there's a transaction for the

23  Halhul Zakat Committee, and the defendant says, "Who is

24  that?  They're not the Complaint; that has no

25  jurisdictional relevance."

| | |
|---|---|
| 1 | PROCEEDINGS                              25 |

2      MR. SIEGFRIED:  Your Honor, would you like me

3 to comment at this point?

4      THE COURT:  Yes.  Go ahead.

5      MR. SIEGFRIED:  Briefly, Mr. Osen needs to

6 refer to the law, (indiscernible).  I do not know of any

7 case that supports a good bit of what he said, but he

8 will make those arguments in response to the motion, I

9 guess.

10      With respect to this whole idea of amending the

11 Complaint, Your Honor has it precisely correct.  There

12 is nothing -- he has -- you have allowed three

13 amendments -- not you've allowed -- there was an initial

14 Complaint; you have permitted two amendments of the

15 Complaint already.  So we have versions 1.0, 2.0 and

16 3.0.  He now says I want to amend the Complaint again

17 based upon the jurisdictional discovery.  That is what

18 the plaintiffs are contending.  The jurisdictional

19 discovery that he refers to is the jurisdictional

20 discovery that he and the plaintiffs produced to us

21 specifically.  Documents that were produced by Arab Bank

22 in *Linde* -- you're quite familiar with those, I know,

23 because you had the whole subpoena issue about that; and

24 of course, it was unsurprising that Arab Bank has now

25 come back and said we don't have any additional

1

2   documents beyond those that we previously provided to

3   plaintiffs.  They are the documents -- and those were

4   produced back in 2006 or something like that, '07.  He

5   has documents from the HLF criminal trial which were in

6   his possession that he produced to us, that were

7   produced and therefore in his possession since, I

8   believe, around 2008.  And he has documents from the

9   NatWest proceedings where Mr. Osen was the counsel and

10  where the documents produced in NatWest; and those -- I

11  don't know exactly when they were produced, but they

12  were certainly produced prior to 2016, I assume some

13  point between 2007 and 2016.

14          So for Mr. Osen -- and Mr. Osen drafted in

15  2019, so anywhere from six to 10 years after these

16  documents were in his possession -- he drafted the CAB

17  Complaint.  And he now says, oh, I should be allowed to

18  now do a fourth amendment of the Complaint to allege

19  facts that I have in my possession that I could have

20  asserted previously and therefore let me first go and

21  amend my Complaint.  This argument is also different

22  than what the plaintiff said in court to you two or

23  three months ago, where they referred to amending the

24  Complaint to add transactions they learned about after

25  filing the Amended Complaint.  There were no

1

2  transactions thus far that I'm aware of that they found

3  about after filing the Amended Complaint.  All of the

4  transactions occurred before.  If they have something

5  that they want to do under the 12(b)(2) motion -- and

6  perhaps we will restate it as an alternative, as you

7  suggest -- and a Rule 56 -- they have the ability to put

8  in factual evidence in support of an allegation.  But

9  other than -- other than giving this -- the chart, the

10  jurisdictional allegations in this Complaint are in

11  paragraphs five through eight.  We are obviously not

12  going to move on -- I assume he has changed his theory,

13  we'll see his chart, assuming this chart is the chart

14  we're moving under.  Those are the allegations, he has

15  the facts, we will make our arguments.  He will have an

16  opportunity to put in his factual support for the

17  allegations.  It's a 12(b)(2) post-jurisdictional

18  motion.  Again, I don't emphasize a distinction between

19  that and the legal standard under Rule 56 because the

20  Court says it's really the same.  It is by definition a

21  motion outside of the pleadings.  So as long as he has

22  factual evidence to support his assertion that the

23  transaction that the claims arise out of or relate to

24  the transaction, he is entitled to put that in.  It's

25  not --

```
 1                          PROCEEDINGS                    28
 2              THE COURT:  Okay.  I've --
 3              MR. SIEGFRIED:  -- he cannot -- and he can't
 4   prevail on an allegation, so there's no reason for --
 5              THE COURT:  Okay.  Thank you.
 6              MR. SIEGFRIED:  -- for that.
 7              THE COURT:  I have heard enough from both
 8   sides.  I am going to allow the motion.  Plaintiffs
 9   should provide an updated chart by January 27th.
10   Defendants should then file their motion by February 17.
11   It should be a motion under Rule 12; or, in the
12   alternative, under 56.  And the plaintiffs should file
13   their opposition -- let's see, I said the 17th --
14   opposition due March 10; reply due March 24.
15              And you can make whatever procedural -- to the
16   extent plaintiffs want to make a procedural argument and
17   you think it's 56 versus Rule 12, go right ahead; I'll
18   take a look at that.  And, you know, I'll evaluate
19   everybody's arguments carefully once it's fully briefed.
20              MR. OSEN:  This is Gary Osen, Your Honor.  Two
21   points, if I may?  One on the schedule.  I think, if I
22   heard correctly, we get a week less time than the
23   defendant for our --
24              THE COURT:  No.  I'm giving them three weeks
25   after you give them the renewed charts.
```

| | |
|---|---|
| 1 | PROCEEDINGS                    29 |
| 2 | MR. OSEN:  Right.  And then we have until when? |
| 3 | THE COURT:  So I was going to give you three |
| 4 | weeks.  Is that -- |
| 5 | MR. OSEN:  What was the date for our response? |
| 6 | THE COURT:  So theirs was going to be due |
| 7 | February 17, and I was going to have yours due |
| 8 | March 10th. |
| 9 | MR. OSEN:  Okay, that's fine, Your Honor. |
| 10 | THE COURT:  And then reply due the 24th. |
| 11 | MR. OSEN:  The other issue, Your Honor, is, is |
| 12 | it possible if you can set forth in your minute order so |
| 13 | that we have a record that you denied leave to amend? |
| 14 | THE COURT:  Well, there has not been a formal |
| 15 | motion to amend, so I have not ruled on such a motion. |
| 16 | If you want to make a motion to amend, you have to |
| 17 | prepare an Amended Complaint, you have to seek the |
| 18 | defendant's permission to make that amendment.  If they |
| 19 | don't agree, then you have to make a motion.  So I have |
| 20 | not ruled on a motion to amend; I have not denied a |
| 21 | motion to amend.  That has not been briefed.  I haven't |
| 22 | seen an Amended Complaint, nor has defendant.  So I'm |
| 23 | not going to include that in the minute entry. |
| 24 | MR. OSEN:  Okay, Your Honor, I understand.  My |
| 25 | question, then, is this:  To the extent that the |

1

2   defendant is moving on February 17th, they'll be moving

3   against the operative Complaint plus the chart, as I

4   understand that; is that correct?

5           THE COURT:  That's what I understand.

6           MR. OSEN:  Okay.  And so depending -- I mean,

7   one way, of course, that would clarify this further is

8   if the defendant actually filed a pre-motion letter that

9   set forth exactly what the basis of the motion is.  Then

10  we could at least ascertain whether we're proceeding

11  under one theory or another and what the evidentiary

12  standard is.

13          THE COURT:  I don't know that that is

14  necessary.  I'm going to -- I'm waiving the requirement

15  of a pre-motion letter because we've been talking about

16  this for every single court conference since we've been

17  doing jurisdictional discovery.  I don't think it's any

18  secret as to what the defendant's theory is.

19          MR. OSEN:  I still don't understand what the

20  theory is, but perhaps Your Honor can enlighten us.

21          THE COURT:  Well, I think the defendant is in

22  the best position to do that.  But the basic thing that

23  they've described is that the allegations in the

24  Complaint are not true, that your theory of jurisdiction

25  has changed; and they're moving on that basis.  That's

| 1 | PROCEEDINGS | 31 |

2  my understanding.  I don't know if that's correct or

3  not.  I'll take a look at the briefing.  And I

4  understand you to be saying jurisdictional discovery has

5  only increased the jurisdictional basis to be here

6  because you've got more transactions.  That is the

7  dispute, as I understand it.

8         MR. OSEN:  Okay.  I guess the question is,

9  then, just for us, because I don't want the Court to,

10  you know, be blindsided here, but obviously, depending

11  on what we receive on January 20 -- I'm sorry, on

12  February 17th from the defendant, we may very well move

13  to amend the Complaint or move to convert it to a Rule

14  56 motion, depending on what we see --

15         THE COURT:  Sure, absolutely.

16         MR. OSEN:  -- and that might affect the

17  schedule, of course.

18         THE COURT:  Okay.

19         MR. OSEN:  All right.  Thank you.

20         THE COURT:  That's within your right, if you

21  think that's appropriate.

22         Anything else?

23         MR. SIEGFRIED:  Not from defendant.  Thank you,

24  Your Honor.

25         THE COURT:  Okay.  Well, thanks, everybody.

| | |
|---|---|
| 1 | PROCEEDINGS                                    32 |
| 2 | I'll look forward to reviewing your papers. |
| 3 | MR. SIEGFRIED:  Your Honor, actually -- I'm |
| 4 | sorry, I just feel like -- are we still following your - |
| 5 | - are we -- |
| 6 | THE COURT:  My schedule?  Yes. |
| 7 | MR. SIEGFRIED:  No, no, no, the page limit, the |
| 8 | page limit to 25 pages. |
| 9 | THE COURT:  Yes, definitely the page limit. |
| 10 | Yes. |
| 11 | MR. SIEGFRIED:  Okay.  Thank you, Your Honor. |
| 12 | THE COURT:  Okay.  Thank you.  I'll issue a |
| 13 | Scheduling Order.  Thank you.  Bye-bye. |
| 14 | (Whereupon, the matter is adjourned.) |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

C E R T I F I C A T E

    I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of Averbach et al v. Cairo Amman Bank, Docket #19-cv-00004-GHW-KHP, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature_____

                  Carole Ludwig

Date:    January 23, 2023

# Exhibit B

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                        Docket #1:19-cv-00004-
 AVERBACH, et al.,                  : GHW-KHP

                    Plaintiffs,     :

   - against -                      :

 CAIRO AMMAN BANK,                  : New York, New York
                                      January 19, 2023
                    Defendant.      :
                                      TELEPHONIC CASE
----------------------------------- : MANAGEMENT CONFERENCE


                    PROCEEDINGS BEFORE
              THE HONORABLE KATHARINE H. PARKER,
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:          OSEN LLC
                         BY:  DINA GIELCHINSKY, ESQ.
                              GARY M. OSEN, ESQ.
                              MICHAEL J. RADINE, ESQ.
                         190 Moore Street, Suite 272
                         Hackensack, New Jersey 07601


For Defendant:           DLA PIPER LLP (US)
                         BY:  JONATHAN D. SIEGFRIED, ESQ.
                              ANDREW J. PECK, ESQ.
                              ERIN COLLINS, ESQ.
                              MARGARET CIVETTA, ESQ.
                         1251 Avenue of the Americas
                         New York, New York 10020


Transcription Service: Carole Ludwig, *Transcription Services*
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

## <u>INDEX</u>

## <u>E X A M I N A T I O N S</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

## <u>E X H I B I T S</u>

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                        PROCEEDINGS                    3

 2            THE CLERK:  Calling 19-cv-004, Averbach vs.

 3   Cairo Amman Bank; the Honorable Katharine H. Parker,

 4   presiding.

 5            Beginning with counsel for the plaintiff,

 6   please make your appearance for the record.

 7            MS. DINA GIELCHINSKY:  Good morning, ~~your~~

 8   ~~Honor~~Your Honor.  This is Dina Gielchinsky from Osen LLC

 9   on behalf of the plaintiffs.  I'm joined by my

10   colleagues, Gary Osen and Michael Radine.

11            THE CLERK:  And, counsel for the defendant,

12   please make your appearance for the record.

13            MR. JONATHAN D. SIEGFRIED:  Good morning, ~~your~~

14   ~~Honor~~Your Honor;  Jonathan Siegfried appearing for CAB.

15   I'm joined by Andrew Peck, Erin Collins and Margaret

16   Civetta.

17            HONORABLE KATHARINE H. PARKER (THE COURT):

18   Good morning.  Thank you for your flexibility in

19   switching to phone today.  Because we are on the phone,

20   I ask that you keep your phones on mute unless you're

21   speaking and state your name before speaking.  Also, I

22   remind you that the Court's conference line is open to

23   the press and public on a listen-only basis and that

24   court rules prohibit others from recording and

25   rebroadcasting court proceedings.
```

```
 1                        PROCEEDINGS                    4
 2            So I think there's not too much to report based
 3    on your recent letter to the Court, but I did want to
 4    get an update on the jurisdictional discovery and also
 5    talk about the anticipated motion that defendants want
 6    to make.
 7            So where are you on the discovery?
 8            MS. GIELCHINSKY:   Your Honor, I can start --
 9    Dina Gielchinsky for the plaintiffs.  We received -- as
10    we stated in our last status report, we received the
11    Arab Bbank's response to our subpoena advising us that
12    they were not able to locate responsive documents.  That
13    was basically it under jurisdictional discovery.
14            With respect to your HonorYour Honor's second
15    point, we held a meet-and-confer with the defendant on
16    January 13th, and we just restated our position that
17    jurisdictional briefing should wait until the District
18    Court issues its order on the R & R.  And that remains
19    our position.
20            THE COURT:   Okay.  Let me hear what the defense
21    position is on the motion to dismiss.  Why should it be
22    filed now, as opposed to waiting for a decision on the
23    R & R?
24            MR. SIEGFRIED:   Certainly, your HonorYour
25    Honor.  Thanks very much.  This is Jonathan Siegfried
```

1

2  speaking.  Your Honor, last June at our first conference

3  we raised questions as to whether plaintiffs could

4  actually support the jurisdictional allegations in their

5  Second Amended Complaint.  Recognizing that~~e~~

6  jurisdiction is a threshold issue,~~.~~  ~~Y~~you directed the

7  parties to engage in jurisdictional discovery and have

8  overseen that discovery for the last seven months.  As

9  plaintiffs acknowledge that discovery is now completed

10  and we are prepared to proceed on our motion, which

11  brings us to the issue that plaintiffs now raise, which

12  is that the Court should wait for the District Court to

13  rule on the Report and Recommendation.  Simply put, ~~your~~

14  ~~Honor~~Your Honor, plaintiffs are wrong on the law about

15  that, and they're asking the District Court to either

16  ignore or rule on the issue of specific jurisdiction

17  without regard to the facts.

18       Let me start with the law, because their legal

19  position is based on a fundamental misapprehension of

20  where we are.  A renewed motion to dismiss under

21  12(b)(2), ~~your Honor~~Your Honor, following jurisdictional

22  discovery is not simply addressed to the pleadings and

23  involves an entirely different legal standard than the

24  pre-discovery legal standard the Court applied in the R

25  & R.  Prior to jurisdictional discovery, ~~your Honor~~Your

```
 1                    PROCEEDINGS                    6
 2   Honor, under well-established Second Circuit precedent,
 3   a plaintiff's showing of jurisdiction may be established
 4   solely by allegations in the pleading, which are deemed
 5   to be true by the Court.  It's quite clear, from what
 6   you precisely state in the R & R.
 7            THE COURT:  Right.
 8            MR. SIEGFRIED:  It's the standard you applied.
 9   You found that plaintiffs had made a prima facie showing
10   of personal jurisdiction based on the allegations in the
11   Complaint, which are deemed to be true, and from which
12   you drew all favorable inferences to plaintiffs.  That
13   is not the legal standard following jurisdictional
14   discovery.  The Second Circuit and numerous Courts in
15   this district have made clear that, following
16   jurisdictional discovery, a plaintiff's showing must be
17   factually supported.  I think perhaps just as Judge
18   Engelmayer put it most succinctly in a couple of cases
19   (indiscernible) -- I'd refer you perhaps to Paerroni vs.
20   GE UK Holdings, quote, "After jurisdictional discovery,
21   admissible evidence, not a party's pleading or say-so,
22   controls."  So we begin with the fact that, given the
23   procedural posture of the case, we are dealing with an
24   entirely different legal standard than the legal
25   standard you applied, which frankly at the moment, Judge
```

Woods has before him.

That brings -- as I said, they're wrong on the law and I said they're wrong on the facts -- and that brings us to the facts. The evidentiary record that has been established in discovery, as we will show in our motion, shows or provides evidence that directly contradicts the allegations of the pleading, and in other cases does not support it. And Your Honor is very aware of one example in particular because it's been the subject of several conferences. The Complaint alleges that there were 21 transfers to four individuals through CAB's correspondent account at Citibank, including six transfers to one individual who was alleged to have planned one of the attacks. The jurisdictional discovery showed those allegations, which Your Honor expressly referred to in the R & R and deemed to be true, as you were required to, in fact could not be factually supported and were indeed untrue. And you have seen as a result that plaintiffs then changed their entire argument about those transfers and came up with what they call the nesting theory.

And of course that nesting -- they're putting this -- it was not before you when you did the R & R,

1
2  it's not before Judge Woods.  And we also know that the
3  nesting theory has been rejected, at least by one Court
4  in this district.  And we further know, from the
5  jurisdictional discovery, that it wouldn't even apply in
6  this case even were the Second Circuit to uphold it.
7          So I know we're not going to get -- I don't
8  want to go too deep into the merits here, but basically
9  -- basically, Your Honor, what that argument means and
10 what -- is that plaintiffs would have Your Honor stand
11 aside, ignore what is now the evidentiary record and
12 allow the District Court perhaps to adopt findings and
13 conclusions in the R & R which you now know to be
14 incorrect, such as the allegations regarding those
15 transfers.  And it would have the District Court rule on
16 a motion based on a pre-discovery legal standard that is
17 no longer relevant to the procedural posture of the case
18 now and to do so without the evidentiary record that now
19 exists and which is relevant to properly deciding
20 whether personal jurisdiction exists.
21         The idea, Your Honor, that's behind
22 plaintiffs' argument, that Your Honor should stand
23 aside under these circumstances therefore is not only
24 wrong on the law but would result in a total waste of
25 the District Court's time and resources in ruling on

PROCEEDINGS                                        9

1
2    that portion of the R & R, where as I said, both the
3    legal standard is no longer the applicable legal
4    standard under Second Circuit precedent and where the
5    facts are different.  And plaintiffs even acknowledges,
6    at least with respect to a number of the nesting
7    transactions, that the facts are different because they
8    no longer claim that those transactions even went
9    through Citibank.
10          Now, I say we're not -- unless you want me to,
11   I'm not going further into the merits regarding all of
12   the other transactions, but the same types of issues
13   arise when you apply the facts that we now have through
14   jurisdictional discovery to the Minimum Contacts
15   Analysis and the full Minimum Contacts Analysis
16   that is to be applied under the due process clause but,
17   again, not on the basis of the allegations, the
18   jurisdictional allegations in the Complaint, which are
19   at paragraphs five through eight, but on the evidentiary
20   record that has been developed through the
21   jurisdictional discovery that you ordered and supervised
22   and brings us to today.
23          So our argument and our position is that we
24   should proceed with the motion under the proper
25   standard, under the full evidentiary record, and that

Your Honor should rule on that, decide that, and then
what Judge Woods would have before him is a ruling on
jurisdiction that is made under both the proper legal
standard and upon full evidentiary record rather than
ignoring all of that and ruling on something, as I said,
that the Second Circuit says is no longer procedurally
relevant.

One last point, if I might, Your
Honor. And that is -- I might also refer Your Honor
to Judge Engelmayer's decision in *Vasquez vs. HSBC* --
it's at 477 F.Supp. 3d 241. There, as here, Your
Honor, the Court denied an initial 12(b)(2)
motion to dismiss direct to the pleadings. There, as
here, the Court ordered jurisdictional discovery.
There, as here, jurisdictional discovery was completed.
And there, as here, upon completion of jurisdictional
discovery, Judge Engelmayer heard a renewed motion to
dismiss under 12(b)(2), specifically distinguished
between the pre- and post-discovery standards and what
he was to look at, and then granted the jurisdictional
motion to dismiss that he had previously denied,
applying the proper standard applicable to the motion
that was made at the time.  That is what we are
suggesting that we do so that we can engage in an

1
2 efficient process for resolving the threshold
3 jurisdictional issue ~~(indiscernible)~~.
4          THE COURT:  Okay.  So if there's no
5 jurisdiction, that moots the remainder of the objection
6 on the R & R or any decision on that remainder of the R
7 & R, as well.
8          MR. SIEGFRIED:  Absolutely, which is another
9 reason for having it, that threshold issue, correctly
10 decided.  It doesn't mean that -- I may have disagreed
11 and filed objections to your prior conclusion, but it
12 doesn't mean that you didn't apply the proper standards
13 to the pleadings as alleged and issued your reasoned
14 opinion.  But what it does mean that we are -- you
15 obviously had the authority to order the jurisdictional
16 discovery.  We are at that point in time, and so you
17 should have the opportunity to make that decision.  If
18 you rule that way, if you rule in our favor this time,
19 then that is the issue that will go before Judge Woods;
20 and if you ruled in our favor, the defendant's favor, he
21 ~~it~~ would not reach the 12(b)(6) issues.  If you ruled
22 against us and he affirmed your ruling, then of course,
23 he would have to reach it.  But he certainly wouldn't go
24 on right now -- not only is he (indiscernible) but would
25 be deciding on the wrong legal -- on the not

1
2   procedurally relevant legal standard and ignoring the
3   evidence with regard to jurisdiction, but he might also
4   then go on_to just rule on the 12(b)(6) motion part that
5   he wouldn't even need to or properly reach.  It cannot
6   be that that is anything other than a waste of judicial
7   resources.
8         THE COURT:  Right.  Okay, so I agree that the
9   briefing should commence.  When will defendants be in a
10  position to file a moving brief?
11        MR. SIEGFRIED:  Your Honor, you may recall that
12  the plaintiffs gave us a chart, and they gave that same
13  chart to your Honor Your Honor, listing all of their
14  transactions.  I don't believe that any of the discovery
15  that occurred subsequent to that chart resulted or would
16  have resulted in any additions to that chart.  If that
17  is the chart, then we would be prepared to move forward
18  with our moving brief on, say, if you gave us a few
19  weeks to --
20        THE COURT:  —(Indiscernible)
21        MR. SIEGFRIED:  I'm sorry?
22        THE COURT:  Could you do it by January 31?
23        MR. SIEGFRIED:  We could, your Honor Your Honor.
24  I think that's a -- what is that, two weeks, I think,
25  from where we are today.  I think I'd prefer three

 1

 2   weeks, just because we have a foreign client and

 3   therefore, obviously, we would want to be able to draft

 4   and be able to have them see what we're doing.  So I'd

 5   prefer three weeks; but if you wanted -- you know,

 6   required us to do it by the 31st, we would do it.

 7           THE COURT:  Are there any changes to the chart

 8   that plaintiffs wanted to make?

 9           MS. GIELCHINSKY:   Yes, ~~your Honor~~ Your Honor.

10   We can send an updated chart.

11           And if I could just be heard also on

12   Mr. Siegfried's points?  Because he brought up *Vasquez*,

13   which has a significant distinction from the procedural

14   posture here in that Judge Engelmayer denied the motion

15   to dismiss without prejudice and authorized

16   jurisdictional discovery.  So a renewed 12(b)(2) motion

17   in that case procedurally is the way to go.  Here, the

18   Report and Recommendation recommended denial but without

19   jurisdictional discovery.  Jurisdictional discovery was

20   eventually ordered, but we have a Report and

21   Recommendation denying the defendant's motion to dismiss

22   on personal jurisdiction grounds.  So, this would be a

23   successive motion to dismiss.  What I'm hearing and what

24   I think would have to happen now is that the defendant

25   would need to move to vacate the Report and

```
 1                        PROCEEDINGS              14
 2   Recommendation that's outstanding or somehow it would
 3   need to be withdrawn for this to be procedurally
 4   appropriate.
 5             THE COURT:  Well, they could also move for
 6   summary judgment, couldn't they?
 7             MS. GIELCHINSKY:   They could move for summary
 8   judgment, yes; yes, they could --
 9             THE COURT:  Under Rule 56.
10             MS. GIELCHINSKY:   Yes.
11             MR. SIEGFRIED:  Your Honor, two points.  First
12   of all, the 12(b)(2) motion post jurisdictional
13   discovery applies under, again, Second Circuit
14   precedent; and, again, Judge Engelmayer has this in his
15   decision, as do other courts.  It applies the Rule 56
16   legal standards in terms of that the motion must be --
17   the plaintiffs are required to actually support the
18   allegations, affidavits are supposed to be -- are to be
19   on the basis of personal knowledge, documents have to be
20   authenticated.  So the legal standard, the Rule 56 legal
21   standards is to admissibility of evidence and the like,
22   are all applicable.  It doesn't have to be Rule 56
23   motions.  Number two, the --
24             THE COURT:  But in this case, if the Court
25   doesn't have subject matter jurisdiction, that can be
```

PROCEEDINGS                    15

1

2    raised at any time.

3           MR. SIEGFRIED:  Yes.  I'm just simply saying

4    the point that ~~your Honor~~ Your Honor -- I didn't see that

5    ~~your Honor~~ Your Honor issued the Report and

6    Recommendation with prejudice, either.

7           THE COURT:  No.  No, no.

8           MR. SIEGFRIED:  Your Honor obviously ordered

9    jurisdictional discovery, so I fail to grasp the legal

10   significance of counsel's point.  Jurisdictional

11   discovery was ordered by you.  It is now concluded, and

12   you can always issue a supplemental Report and

13   Recommendation so that the -- indeed, the whole purpose

14   of the Federal Magistrates Act is to enforce and

15   conserve judicial resources and to do things

16   efficiently.  So here we are.  You had moved

17   efficiently.  You took the case, you ordered the

18   discovery.  We're applying for a motion, we can have our

19   motion up in two or three weeks, whichever you decide,

20   and then you can issue a supplemental Report and

21   Recommendation if you choose.

22          THE COURT:  Well, I want to hear the remainder

23   of the plaintiffs' counsel's point.

24          MS. GIELCHINSKY:  Are we --

25          THE COURT:  —(Indiscernible)

```
 1
 2          MS. GIELCHINSKY:   Well, I would also -- I
 3   mean, besides procedurally, this affects his motion to
 4   dismiss, unless the Report and Recommendation is somehow
 5   withdrawn.  It's just not the proper vehicle right now
 6   for the defendant to use until we have an order from the
 7   District Court.
 8          I'd also just point out that the Report and
 9   Recommendation didn't rely for personal jurisdiction
10   purposes in finding personal jurisdiction on any of the
11   transactions that are now, you know, proposed under
12   (indiscernible) nesting theories.  The Report and
13   Recommendation found that, you know, the properly -- ,
14   plaintiffs (indiscernible) properly alleged that the aid
15   provided to Hamas came about via money transfers through
16   CAB's New York correspondent accounts.  The defendant
17   made the argument already that the 23 transfers
18   initially alleged were decidedly not the proximate cause
19   of plaintiffs' injuries.
20          But that wasn't the standard; the Court said
21   that's not the standard.  And, in any event, it doesn't
22   change -- the jurisdictional discovery under which now
23   we have 113 transfers totaling $7.5 million dollars, as
24   opposed to 23 transfers totaling $135,000, doesn't
25   change the jurisdictional analysis on the specific
```

1
2    customers; that's not what the personal jurisdiction
3    analysis is contingent on.  This Court rightly conducted
4    an analysis comparing the number of transfers to *Licci's*
5    dozens of transfers and *Indosuez*'s six (indiscernible)
6    transfers and came up with its conclusion that plaintiff
7    had made a prima facie showing of personal jurisdiction.
8    So the facts don't change it.
9            So it's not -- the 12(b)(2) motion, this is not
10   the right vehicle right now.  What plaintiffs propose
11   the state of play would be is that the District Court
12   issue an order on the Report and Recommendation.  If the
13   Court determines, if the District Court determines that
14   the plaintiffs have failed to state a claim under
15   JASTA *Jasko* or to satisfy personal jurisdiction elements,
16   then we might need to amend.  And if not, the Court's
17   actual holding I think will make it much clearer what
18   defendant's motion should be, whether it is a motion to
19   reconsider or a Rule 56 motion or maybe -- maybe it
20   would be appropriate at that point for defendant to
21   submit a Rule 12(b)(2) motion.  But, you know, at that
22   point defendant can submit a pre-motion letter outlining
23   what it's going to do.
24           MR. SIEGFRIED:  If your Honor Your Honor wants
25   me to respond, I will, but I think --

```
 1
 2              THE COURT:  I don't -- well, we're getting into
 3     some of the merits.  I don't see a reason procedurally
 4     why this motion shouldn't be teed up.  It can be teed up
 5     either as -- it can be teed up as a Rule 12 and/or Rule
 6     56 motion, frankly.  And I'm not making any decisions on
 7     the merits.  Both sides are making reasoned arguments,
 8     and I'm going to have to consider them both carefully
 9     after it's briefed.  But procedurally, I don't see why
10     we can't set a schedule because these are
11     (indiscernible) that are briefed, anyway.  Plaintiffs
12     have to add the transactions that you found during --
13     the additional transactions and provide that list.  Can
14     you do that in a week from today?
15              MS. GIELCHINSKY:  Yes, your Honor Your Honor.
16              THE COURT:  Okay.  So it --
17              MS. GIELCHINSKY:  Your Honor --
18              THE COURT:  If you provide --
19              MS. GIELCHINSKY:  I'm so sorry to interrupt.
20              THE COURT:  Yes, go ahead.
21              MS. GIELCHINSKY:  I'm so sorry, your Honor Your
22     Honor.  This is difficult on the phone.  I'm just -- I'm
23     here with my colleague Gary Osen, and he was just hoping
24     to make a point to add.
25              THE COURT:  Okay.
```

1

2          MR. GARY OSEN:  Yes, ~~your Honor~~ Your Honor.

3  Gary Osen for the plaintiff.  Do I understand firstly

4  that ~~your Honor~~ Your Honor is issuing an order vacating

5  the R & R?

6          THE COURT:  No, absolutely not.  I'm just

7  ordering briefing on post-jurisdictional discovery.

8  Judge Woods, I don't know when he's going to rule on the

9  objections to the R & R.  He may rule on it before this

10 is even fully briefed.

11         MR. OSEN:  Well, then, ~~your Honor~~ Your Honor --

12         THE COURT:  So this may be a completely moot

13 point.

14         MR. OSEN:  So, but, ~~your Honor~~ Your Honor,

15 here's the question procedurally in terms of the

16 schedule.  Ordinarily, again, because this is a strange

17 procedural animal, the defendant has not cited any case

18 (indiscernible) -- and *Vasquez* is not on point -- on

19 what happens in a case where jurisdiction has been found

20 sufficient, as the R & R indicates.  And then there's

21 discovery subsequent to that where it's a 12(b)(2)

22 motion as opposed to a Rule 56.  But the issue is even

23 more complex here, and this is why I wanted to interject

24 for a moment, because the nature of the claim, that is,

25 the transactional record here, is intrinsically tied up

```
 1                     PROCEEDINGS                    20
 2  with the merits.  And the defendants' arguments and
 3  their objections, for example, raise issues of proximate
 4  cause, which of course is directly -- goes to the merits
 5  of the case.
 6         So, I don't know how in a circumstance like
 7  this we would be able to respond to a brief that didn't
 8  have an operative Complaint that incorporated not just
 9  the transactions that are reflected in the chart but
10  also reflect the corresponding allegations that tie the
11  transactions to unlawful conduct.  So, it's just a
12  procedural question as to how they move under 12(b)(2)
13  against a Complaint that doesn't have not just all the
14  transactions but also the factual allegations that
15  connect those transactions to the arising-from element
16  of personal jurisdiction.
17         THE COURT:  Well, look, that -- what you're
18  arguing there is that can't be decided because of its
19  intner -- one, you're saying it's Rule 56; that if it
20  is -- I mean, I think defendants would be wise to
21  characterize it as either/or -- but what I'm hearing is
22  plaintiffs are arguing that under Rule 56(f) you would
23  need more discovery because it's intertwined.  I don't
24  know if that's the case or not; I'm not making a
25  decision on that in this call.  What I'm saying -- and
```

1

2  I'm not aware of any reason why this motion can't be

3  teed up.  So I'm going to start a briefing schedule.

4  And under --

5          MR. OSEN:  But, ~~your Honor~~Your Honor, again --

6  ~~your Honor~~Your Honor, the question isn't about the

7  briefing schedule; the question is about what Complaint

8  they're moving against.

9          THE COURT:  And you want to amend the Complaint

10  to add additional information for jurisdiction?  I don't

11  know if that's required, given that you've had discovery

12  and you will be able to submit the additional

13  transactions by affidavit.  I think both sides are going

14  to be in agreement about the transactions that you

15  found, what they are.  And then you'll argue about the

16  significance of the nested transaction and so forth.

17          MR. OSEN:  Your Honor, this is Gary Osen again.

18  I think there's a missing component here.  And let me

19  give you a concrete example.  There are multiple

20  entities in the transactional record that are

21  jurisdictionally relevant from the plaintiffs'

22  standpoint but for which there are no allegations in the

23  Complaint about them.  And I don't mean the transactions

24  themselves; I mean who the counterparties to the

25  transactions are.  So, for example, just to take one at

1
2  random, the Halhul (ph) Zakat Committee, which was on

3  the list of HL~~O~~F unindicted co-conspirators.  That's not

4  in the Complaint currently, the operative version, but

5  there are transactions to an account for Cairo Amman

6  Bank for that entity.  There are no allegations in the

7  Complaint setting forth the relationship of the Halhul

8  Zakat Committee to Hamas.  ~~So~~So, it's not simply a

9  question of putting in an affidavit as to the

10  transactions; it's holistic.  The Complaint and the

11  transactions can only be evaluated together because the

12  transactions themselves are the *actus reus*, if you will,

13  the act of material support or substantial assistance

14  that gives rise to the plaintiffs' claim.

15          MR. SIEGFRIED:  Your Honor, if I might --

16          THE COURT:  So you want to -- what you want to

17  do is amend the Complaint to shore up and add the

18  information that you found during jurisdictional

19  discovery; is that what you're saying?

20          MR. OSEN:  In order -- yes, in order to -- of

21  course, we oppose any -- just so the record's clear, we

22  think it's an improper motion, but if ~~your Honor~~Your

23  Honor's going to entertain it, then it should be against

24  an operative Complaint that contains both the

25  transactional record, which of course, will be reflected

 1    in the chart, but also reflect --

 2            THE COURT:  I mean, the Complaint is already

 3    like --

 4            MR. OSEN:  -- the allegation --

 5            THE COURT:  Mr. Osen, the Complaint's already

 6    like 250 pages.  It's really long.  I mean, what --

 7            MR. OSEN:  Your Honor, that's a function --

 8            THE COURT:  -- you're now going to add

 9    additional entities?  That's sort of changing the

10    target, isn't it?

11            MR. OSEN:  It's what comes about as a result of

12    discovery.  I mean --

13            MR. SIEGFRIED:  Your Honor, may I -- I'm sorry.

14            MR. OSEN:  Let me just conclude.  Your Honor,

15    if defendant is going to be permitted, as we think it's

16    wholly improper procedurally, but if the defendant is

17    going to be permitted to proceed in this fashion, then

18    it must be against an operative Complaint that contains

19    the plaintiffs' allegations in full and which reflect

20    the discovery that has been yielded in this case.

21            THE COURT:  Okay, I'm just not sure that's the

22    case because we have a notice pleading standard; and to

23    the extent there is additional facts that demonstrate,

24    in your view, that the defendant was engaging in serving

PROCEEDINGS                    24

1    a customer to aid terrorism, I don't understand why all

2    of those transactions have to be in the Complaint.

3    That's not the way it normally works.  Normally, there's

4    notice pleading and then there's discovery and then

5    additional facts are brought to bear without amending

6    the Complaint.  So I'm not sure that I agree with you,

7    Mr. Osen, that it's necessary to be in the Complaint.

8    I'd like to hear from defendants on that.

9        MR. OSEN:  Your Honor, may I, ~~your Honor~~ Your

10   Honor?  Apologies.  One last point on that before you

11   hear from defendant?

12       To be clear, on a 12(b)(2) motion, the

13   allegations in the Complaint, even on a renewed 12(b)(2)

14   are deemed to be true for purposes of the motion, with

15   the exception of the jurisdictional component, which is

16   based on the facts produced or the evidence produced.

17   So the issue isn't whether we append or integrate 100-

18   plus transactions into the Complaint; it's the

19   allegations concerning the entities who are the

20   customers of the bank that are germane.  And there are

21   only two ways that that can be accomplished, either by

22   amending the Complaint and treating those allegations as

23   true, or doing this at summary judgment after completion

24   of fact and expert discovery.  And if the defendants

PROCEEDINGS                25

1  want to move under -- without full discovery, then it

2  has to be procedurally against an operative Complaint

3  that incorporates those allegations.  Otherwise, we say

4  in our papers, well, look, there's a transaction for the

5  Halhul Zakat Committee, and the defendant says, "Who is

6  that?  They're not the Complaint; that has no

7  jurisdictional relevance."

8       MR. SIEGFRIED:  Your Honor, would you like me

9  to comment at this point?

10      THE COURT:  Yes.  Go ahead.

11      MR. SIEGFRIED:  Briefly, Mr. Osen needs to

12 refer to the law, (indiscernible).  I do not know of any

13 case that supports~~puts~~ a good bit of what he said, but

14 he will make those arguments in response to the motion,

15 I guess.

16      With respect to this whole idea of amending the

17 Complaint, ~~your Honor~~Your Honor has it precisely

18 correct.  There is nothing -- he has -- you have allowed

19 three amendments -- not you've allowed -- there was an

20 initial Complaint; you have permitted two amendments of

21 the Complaint already.  So we have versions 1.0, 2.0 and

22 3.0.  He now says I want to amend the Complaint again

23 based upon the jurisdictional discovery.  That is what

24 the plaintiffs are contending.  The jurisdictional

 1
 2  discovery that he refers to is the jurisdictional
 3  discovery that he and the plaintiffs produced to us
 4  specifically.  Documents that were produced by Arab Bank
 5  in *Linde* -- you're quite familiar with those, I know,
 6  because you had the whole subpoena issue about that; and
 7  of course, it was unsurprising that Arab Bank has now
 8  come back and said we don't have any additional
 9  documents beyond those that we previously provided to
10  plaintiffs.  They are the documents -- and those were
11  produced back in 2006 or something like that, '07.  He
12  has documents from the HLF criminal trial which were in
13  his possession that he produced to us, that were
14  produced and therefore in his possession since, I
15  believe, around 2008.  And he has documents from the
16  NatWest proceedings where Mr. Osen was the counsel and
17  where the documents produced in NatWest; and those -- I
18  don't know exactly when they were produced, but they
19  were certainly produced prior to 2016, I assume some
20  point between 2007 and 2016.
21          So for Mr. Osen -- and Mr. Osen drafted in
22  2019, so anywhere from six to 10 years after these
23  documents were in his possession -- he drafted the ~~DAD~~
24  CAB Complaint.  And he now says, oh, I should be allowed
25  to now do a fourth amendment of the Complaint to allege

| | |
|---|---|
| 1 | PROCEEDINGS 27 |

2  facts that I have in my possession that I could have

3  asserted previously and therefore let me first go and

4  amend my Complaint.  This argument is also different

5  than what the plaintiff said in court to you two or

6  three months ago, where they referred to amending the

7  Complaint to add transactions they learned about after

8  filing the Amended Complaint.  There were no

9  transactions thus far that I'm aware of that they found

10  about after filing the Amended Complaint.  All of the

11  transactions occurred before.  If they have something

12  that they want to do under the 12(b)(2) motion -- and

13  perhaps we will restate it as an alternative, as you

14  suggest -- and a Rule 56 -- they have the ability to put

15  in factual evidence in support of an allegation.  But

16  other than -- other than giving this -- the chart, the

17  jurisdictional allegations in this Complaint are in

18  paragraphs five through eight.  We are obviously not

19  going to move on -- I assume he has changed his theory,

20  we'll see his chart, assuming this chart is the chart

21  we're moving under.  Those are the allegations, he has

22  the facts, we will make our arguments.  He will have an

23  opportunity to put in his factual support for the

24  allegations.  It's a 12(b)(2) post-jurisdictional

25  motion.  Again, I don't emphasize a distinction between

1

2  that and the legal standard under Rule 56 because the

3  Court says it's really the same.  It is by definition a

4  motion outside of the pleadings.  So as long as he has

5  factual evidence to support his assertion that the

6  transaction that the claims arise out of or relate to

7  the transaction, he is entitled to put that in.  It's

8  not --

9          THE COURT:  Okay.  I've --

10          MR. SIEGFRIED:  -- he cannot -- and he can't

11  prevail on an allegation, so there's no reason for --

12          THE COURT:  Okay.  Thank you.

13          MR. SIEGFRIED:  -- for that.

14          THE COURT:  I have heard enough from both

15  sides.  I am going to allow the motion.  Plaintiffs

16  should provide an updated chart by January 27th.

17  Defendants should then file their motion by February 17.

18  It should be a motion under Rule 12; or, in the

19  alternative, under 56.  And the plaintiffs should file

20  their opposition -- let's see, I said the 17th --

21  opposition due March 10; reply due March 24.

22          And you can make whatever procedural -- to the

23  extent plaintiffs want to make a procedural argument and

24  you think it's 56 versus Rule 12, go right ahead; I'll

25  take a look at that.  And, you know, I'll evaluate

1

2   everybody's arguments carefully once it's fully briefed.

3          MR. OSEN:  This is Gary Osen, ~~your Honor~~Your

4   Honor.  Two points, if I may?  One on the schedule.  I

5   think, if I heard correctly, we get a week less time

6   than the defendant~~s~~ for our --

7          THE COURT:  No.  I'm giving them three weeks

8   after you give them the renewed charts.

9          MR. OSEN:  Right.  And then we have until when?

10          THE COURT:  So I was going to give you three

11   weeks.  Is that --

12          MR. OSEN:  What was the date for our response?

13          THE COURT:  So theirs was going to be due

14   February 17, and I was going to have yours due

15   March 10th.

16          MR. OSEN:  Okay, that's fine, ~~your Honor~~Your

17   Honor.

18          THE COURT:  And then reply due the 24th.

19          MR. OSEN:  The other issue, ~~your Honor~~Your

20   Honor, is, is it possible if you can set forth in your

21   minute order so that we have a record that you denied

22   leave to amend?

23          THE COURT:  Well, there has not been a formal

24   motion to amend, so I have not ruled on such a motion.

25   If you want to make a motion to amend, you have to

1

2  prepare an Amended Complaint, you have to seek the

3  defendants's permission to make that amendment.  If they

4  don't agree, then you have to make a motion.  So I have

5  not ruled on a motion to amend; I have not denied a

6  motion to amend.  That has not been briefed.  I haven't

7  seen an Amended Complaint, nor hasve defendants.  So I'm

8  not going to include that in the minute entry.

9          MR. OSEN:  Okay, your HonorYour Honor, I

10  understand.  My question, then, is this:  To the extent

11  that the defendant is moving on February 17th, they'll

12  be moving against the operative Complaint plus the

13  chart, as I understand that; is that correct?

14          THE COURT:  That's what I understand.

15          MR. OSEN:  Okay.  And so depending -- I mean,

16  one way, of course, that would clarify this further is

17  if the defendant actually filed a pre-motion letter that

18  set forth exactly what the basis of the motion is.  Then

19  we could at least ascertain whether we're proceeding

20  under one theory or another and what the evidentiary

21  standard is.

22          THE COURT:  I don't know that that is

23  necessary.  I'm going to -- I'm waiving the requirement

24  of a pre-motion letter because we've been talking about

25  this for every single court conference since we've been

PROCEEDINGS                    31

1

2    doing jurisdictional discovery.  I don't think it's any

3    secret as to what the defendants's theory is.

4         MR. OSEN:  I still don't understand what the

5    theory is, but perhaps your HonorYour Honor can

6    enlighten us.

7         THE COURT:  Well, I think the defendants isare

8    in the best position to do that.  But the basic thing

9    that they've described is that the allegations in the

10   Complaint are not true, that your theory of jurisdiction

11   has changed; and they're moving on that basis.  That's

12   my understanding.  I don't know if that's correct or

13   not.  I'll take a look at the briefing.  And I

14   understand you to be saying jurisdictional discovery has

15   only increased the jurisdictional basis to be here

16   because you've got more transactions.  That is the

17   dispute, as I understand it.

18        MR. OSEN:  Okay.  I guess the question is,

19   then, just for us, because I don't want the Court to,

20   you know, be blindsided here, but obviously, depending

21   on what we receive on January 20 -- I'm sorry, on

22   February 17th from the defendant, we may very well move

23   to amend the Complaint or move to convert it to a Rule

24   56 motion, depending on what we see --

25        THE COURT:  Sure, absolutely.

|    |                                                                |
|----|----------------------------------------------------------------|
| 1  | PROCEEDINGS                                    32              |
| 2  | MR. OSEN:  -- and that might affect the                        |
| 3  | schedule, of course.                                           |
| 4  | THE COURT:  Okay.                                              |
| 5  | MR. OSEN:  All right.  Thank you.                              |
| 6  | THE COURT:  That's within your right, if you                  |
| 7  | think that's appropriate.                                      |
| 8  | Anything else?                                                 |
| 9  | MR. SIEGFRIED:  Not from defendant.  Thank you,               |
| 10 | ~~your Honor~~Your Honor.                                      |
| 11 | THE COURT:  Okay.  Well, thanks, everybody.                   |
| 12 | I'll look forward to reviewing your papers.                   |
| 13 | MR. SIEGFRIED:  Your Honor, actually -- I'm                   |
| 14 | sorry, I just feel like -- are we still following your -      |
| 15 | - are we --                                                    |
| 16 | THE COURT:  My schedule?  Yes.                                 |
| 17 | MR. SIEGFRIED:  No, no, no, the page limit, the              |
| 18 | page limit to 25 pages.                                        |
| 19 | THE COURT:  Yes, definitely the page limit.                  |
| 20 | Yes.                                                           |
| 21 | MR. SIEGFRIED:  Okay.  Thank you, ~~your~~              |
| 22 | ~~Honor~~Your Honor.                                           |
| 23 | THE COURT:  Okay.  Thank you.  I'll issue a                   |
| 24 | Scheduling Order.  Thank you.  Bye-bye.                        |
| 25 | (Whereupon, the matter is adjourned.)                         |

PROCEEDINGS                                    33

1

2

3

4

5

6

7

8

9

10

11

12

1

2 C E R T I F I C A T E

3

4 I, Carole Ludwig, certify that the foregoing

5 transcript of proceedings in the case of Averbach et al

6 v. Cairo Amman Bank, Docket #19-cv-00004-GHW-KHP, was

7 prepared using digital transcription software and is a

8 true and accurate record of the proceedings.

9

10

11

12 Signature_____

13 Carole Ludwig

14 Date: January 23, 2023

15

16

17

18

19

20

21

22

23

24

25