UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

JULIE AVERBACH FOR THE ESTATE OF STEVEN : 
AVERBACH, *et al.*,                                                    : 
                                                                                   : 
                               Plaintiffs,                              : 
                                                                                   :        No. 19-cv-00004-GHW-KHP
                -against-                                               : 
                                                                                   : 
CAIRO AMMAN BANK,                                             : 
                                                                                   : 
                               Defendant.                             : 

-------------------------------------------------------------------------x

**PLAINTIFFS' OPPOSITION TO DEFENDANT CAIRO AMMAN BANK'S
OBJECTIONS TO REPORT & RECOMMENDATION OF JUNE 30, 2023**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

STANDARD OF REVIEW ..................................................................................................... 5

BACKGROUND .................................................................................................................. 5

ARGUMENT ...................................................................................................................... 12

    I.    CAB Has Invented a Relatedness Test that Finds No Support in New York or Federal
        Law. ................................................................................................................... 13

    II.   CAB Has Improperly Raised a Merits Question After Successfully Objecting to Merits
        Discovery Proceeding in This Case. ...................................................................... 18

    III.  CAB's "Analysis" of Specific Transactions Simply Repackages Merits Issues ........... 20

CONCLUSION ................................................................................................................... 22

## **TABLE OF AUTHORITIES**

**Cases**

*Averbach v. Cairo Amman Bank*,
  19-cv-0004-GHW-KHP, 2020 U.S. Dist. LEXIS 10902 (S.D.N.Y. Jan. 21, 2020) .................. 6

*Averbach v. Cairo Amman Bank*,
  19-cv-0004-GHW-KHP, 2022 U.S. Dist. LEXIS 66799 (S.D.N.Y. Apr. 11, 2022) ................. 6

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ...................................................................................................... 15

*Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013) ............................................................................................ 19

*Energy Brands Inc. v. Spiritual Brands, Inc.*,
  571 F. Supp. 2d 458 (S.D.N.Y. 2008) ........................................................................... 15

*Henkin v. Kuveyt Turk Katilim Bankasi*,
  19-cv-05394-BMC, 2023 U.S. Dist. LEXIS 131135 (E.D.N.Y. July 28, 2023) ............... 17, 18

*Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*,
  495 F. Supp. 3d 144 (E.D.N.Y. 2020) ........................................................................... 18

*Honickman v. BLOM Bank SAL*,
  6 F.4th 487 (2d Cir. 2021) ............................................................................................ 20

*In re Rationis Enterprises, Inc. of Panama*,
  261 F.3d 264 (2d Cir. 2001) .......................................................................................... 18

*Kaplan v. Lebanese Canadian Bank, SAL*,
  999 F.3d 842 (2d Cir. 2021) .......................................................................................... 14

*Licci v Lebanese Canadian Bank, SAL*,
  20 N.Y.3d 327 (2012) .................................................................................................... 15, 19

*Licci v. Lebanese Canadian Bank*,
  732 F.3d 161 (2d Cir. 2013) ................................................................................... 2, 13, 15

*Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012) ........................................................................................... 4

*Miller v. Arab Bank, PLC*,
  372 F. Supp. 3d 33 (E.D.N.Y. 2019) ............................................................................. 16

*Przewozman v. Qatar Charity*,
No. 20-cv-6088 (NGG) (TAM), 2023 U.S. Dist. LEXIS 45499 (E.D.N.Y. Mar. 16, 2023).... 17

*Spetner v. Palestine Investment Bank*,
70 F.4th 632 (2d Cir. 2023) ................................................................................ *passim*

*Strauss v. Crédit Lyonnais, S.A.*,
175 F. Supp. 3d 3 (E.D.N.Y. 2016) ................................................................. 3, 16

*United States v. Montreal Trust Co.*,
358 F.2d 239 (2d Cir. 1966) ...................................................................................... 15

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016) ...................................................................................... 17

*Weiss v. Nat'l Westminster Bank*,
993 F.3d 144 (2d Cir. 2021) ................................................................................ 3, 21

*Weiss v. National Westminster Bank PLC*,
176 F. Supp. 3d 264 (E.D.N.Y. 2016) .............................................................. 3, 16

*Wiltz v. New York University*,
No. 19-cv-3406 (GHW) (SDA), 2020 WL 614658 (S.D.N.Y. Feb. 10, 2020) ........................ 5

## PRELIMINARY STATEMENT

Cairo Amman Bank ("CAB") argues for the fifth time that Plaintiffs have not met its wholly invented interpretation of the "arise out of or relate to" prong of the due process element of personal jurisdiction. CAB Objections ("Obj.") at 2; Magistrate Judge Parker's Report and Recommendation of June 30, 2023, ECF No. 209 ("Third R&R") at 15, 16 (describing CAB's "arise out of or relate to" argument). The Magistrate Judge has rejected Defendant's disputation in its various iterations three times, including in her first R&R, which was adopted by this Court (and to which CAB did not object). CAB now argues that only the transactions that facially indicate that they "were related to a terroristic purpose" are jurisdictionally sufficient to satisfy constitutional due process. Obj. at 15; Third R&R at 16-17.

But while CAB's argument has always been contrary to controlling law and the law of this case, it is now simply frivolous because it is *directly* precluded by a recent Second Circuit decision relating to claims brought by many of the *same* plaintiffs against a similarly situated bank arising from transfers it processed for one of the *same* Hamas-linked customers that are at issue here (with *no* additional indicia of purpose).

In *Spetner v. Palestine Investment Bank*, 70 F.4th 632 (2d Cir. 2023), the plaintiffs (many of whom are plaintiffs here), alleged that Palestine Investment Bank ("PIB") aided and abetted Hamas attacks (including some of the same ones at issue here) by processing transfers for the Holy Land Foundation ("HLF"), a now defunct "charity" that was designated as a Specially Designated Global Terrorist ("SDGT") in 2001 because it was controlled by and provided material support to Hamas (HLF and members of its U.S. leadership were convicted in Texas of violating the Anti-Terrorism Act, resulting in multi-decade sentences). As set forth in *Spetner,* HLF was a customer of PIB, just as it was a customer of CAB. The Second Circuit found that transfers from HLF accounts in Texas (through New York) to HLF's account at PIB in the Palestinian Territories

satisfied the personal jurisdiction standard, *including* the due process element. *See id.* at 645 ("We are also satisfied that PIB's use of [an intermediary bank's] correspondent account in New York was sufficiently related to plaintiffs' injuries because it was 'an instrument to achieve the very wrong alleged.'") (citing the due process relatedness standard from *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) ("*Licci IV*")). The Circuit even rejected an argument on relatedness similar to CAB's here, explaining that the "argument reflects a fundamental misunderstanding of the 'arising from' requirement." *Id.* at 644. These elements are the same post-discovery, where only the evidentiary burden changes.

Indeed, there is only one relevant difference between *Spetner* and this case: in *Spetner*, the plaintiffs only "point[ed] to at least one transfer from August 2001" for HLF, whereas here, Plaintiffs have provided undisputed evidence of **55** transfers CAB performed for HLF through its New York correspondent bank accounts during the relevant period, along with 59 *additional* New York transfers CAB performed for other Hamas entities and individuals. *See* Third R&R at 15 (discussing *Spetner*).

**And yet CAB does not even *mention* the *Spetner* decision in its objections.**

CAB's objections are also erroneous in other ways. As the R&R explained at length, CAB's argument "relies on circular logic in an effort to conflate the merits of Plaintiffs' case with the threshold issue of personal jurisdiction." Third R&R at 17. The R&R concluded that "CAB's misleading articulation of the due process standard implies that a plaintiff must prove its case on the merits before jurisdiction can be found and before merits discovery has been taken." *Id.*

Worse yet, CAB's objections attempt to paper over its prior erroneous arguments, suggesting the Court simply misunderstood them. During briefing on its motion, Plaintiffs argued that CAB's merits-based argument was especially inappropriate after the Court ordered limited

jurisdictional discovery rather than merits discovery—*at CAB's insistence.* Realizing that it had blocked its own merits-based argument for dismissal, CAB argued to the Magistrate Judge that *Plaintiffs* should have demanded merits discovery anyway, and brazenly told the Magistrate Judge that *she* had in fact suggested Plaintiffs do so. The Third R&R makes clear that none of that was true. *See* Third R&R at 24-25 & n.9.

Now, in its objections, CAB denies it ever made a merits-based argument, *see* Obj. at 14 ("But that is not the case …. [c]ontrary to the R&R's suggestions")—and yet it still relies largely on cases discussing liability, not jurisdiction. In addition to entirely ignoring *Spetner* (now the leading Second Circuit case on personal jurisdiction under the Justice Against Sponsors of Terrorism Act ("JASTA")), it barely mentions the *Licci* family of cases, which form the seminal authorities on personal jurisdiction in the Anti-Terrorism Act ("ATA") context. Instead, Defendant chiefly relies on a liability decision, *Weiss v. Nat'l Westminster Bank*, 993 F.3d 144 (2d Cir. 2021), while omitting that in *Weiss* the Circuit left in place the lower court's post-discovery holding that *it had personal jurisdiction over the defendant*. *See Weiss v. National Westminster Bank PLC*, 176 F. Supp. 3d 264 (E.D.N.Y. 2016), and its companion case, *Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3 (E.D.N.Y. 2016)). Liability, of course, is definitionally a merits issue.

In the first motion to dismiss, CAB argued that Plaintiffs failed to *allege* facts supporting a variation on its urged due process standard. The Magistrate Judge, in a report and recommendation ("First R&R") adopted by this Court, rejected this argument, finding that allegations that CAB processed 23 transfers for Hamas-linked customers through New York is sufficient to satisfy the due process and other elements of personal jurisdiction. Because the Court granted its motion to dismiss, CAB did not object to that analysis, which was adopted by this Court and is the law of the case (again, after discovery, the evidentiary burden changes, but *not* the

elements of personal jurisdiction). Nevertheless, CAB raised its due process theory again in support of its motion to dismiss the Second (and operative) Amended Complaint ("SAC"), and the Magistrate Judge rejected it again in her second report and recommendation ("Second R&R"). CAB objected to the Second R&R, ECF No. 121, and those objections are also *sub judice* before this Court.

In the interim, Defendant persuaded the Magistrate Judge to proceed with jurisdictional discovery—principally of the Plaintiffs—since Defendant claimed it no longer possessed any responsive documents from the relevant time period. Thereafter, Plaintiffs produced ***114 transfers that CAB processed for Hamas customers through its New York correspondent bank accounts***. Notwithstanding the fact that even a single transaction could satisfy due process, *see Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 62 (2d Cir. 2012) ("*Licci II*"), and that the law of the case here found 23 alleged New York transactions sufficient, CAB doggedly filed yet another motion to dismiss—while its objections to the Second R&R remained pending—repeating that Plaintiffs have failed to meet its invented due process standard.

The Third R&R found CAB's substantive argument, *inter alia*, "misstates Plaintiffs' burden at this stage," 'misstates the procedural posture of this case and the applicable law," "misstates both Plaintiffs' legal theory" and controlling law, and "drastically overstates what factual averments are necessary to support a *prima facie* showing of personal jurisdiction." Third R&R at 18, 19, 22, 24. CAB's current objections only add to this litany of legerdemain by mischaracterizing the Third R&R and the parties' arguments on its motion to dismiss/for partial summary judgment. This Court should again adopt the Magistrate Judge's finding that the Court has personal jurisdiction over CAB as to Plaintiffs' claims.

## STANDARD OF REVIEW

In *Wiltz v. New York University*, this Court recently articulated the standard of review

applicable to this motion:

> When a party timely objects to a magistrate's report and recommendation, a district
> court reviews, *de novo*, "those portions of the report or specified proposed findings
> or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "To the
> extent, however, that the party makes only conclusory or general arguments, or
> simply reiterates the original arguments, the Court will review the Report strictly
> for clear error." *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07 Civ.
> 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); *see also
> Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts
> should review a report and recommendation for clear error where objections are
> merely perfunctory responses, argued in an attempt to engage the district court in a
> rehashing of the same arguments set forth in the original petition.") (citation and
> internal quotation marks omitted). "Objections of this sort are frivolous, general
> and conclusory and would reduce the magistrate's work to something akin to a
> meaningless dress rehearsal. The purpose of the Federal Magistrates Act was to
> promote efficiency of the judiciary, not undermine it by allowing parties to
> relitigate every argument which it presented to the Magistrate Judge." *Vega v.
> Artuz*, No. 97 Civ. 3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept.
> 30, 2002) (citations and internal quotation marks omitted). Finally, "it is established
> law that a district judge will not consider new arguments raised in objections to a
> magistrate judge's report and recommendation that could have been raised before
> the magistrate but were not." *Sci. Components Corp. v. Sirenza Microdevices, Inc.*,
> No. 03 Civ. 1851 (NGG) (RML), 2006 WL 2524187, at *2 (E.D.N.Y. Aug. 30,
> 2006).

No. 19-cv-3406 (GHW) (SDA), 2020 WL 614658, at *2 (S.D.N.Y. Feb. 10, 2020) (Woods, J.).

CAB's objections repackage largely the same arguments it unsuccessfully presented to

Magistrate Judge Parker and this Court—repeatedly. Not only has the Magistrate Judge rejected

the arguments, so has this Court, in adopting the First R&R. Accordingly, the Court should review

Magistrate Judge Parker's thorough and well-reasoned Third R&R for clear error.

## BACKGROUND

The Third R&R is also the third time the Magistrate Judge has recommended denying

CAB's motions to dismiss on the basis of personal jurisdiction. In the first, subsequently adopted

by the Court, the Magistrate Judge found that Plaintiffs sufficiently pleaded personal jurisdiction

by alleging that CAB processed 23 New York transfers for Hamas entities and individuals. Plaintiffs did not previously allege that the transfers facially indicated a terrorist purpose, nor has CAB suggested otherwise. In its motion to dismiss, CAB raised a version of the due process argument regurgitated here, which the First R&R rejected: "CAB argues that, even if the Court were to find that the requirements of New York's long-arm statute are met, the Court should refuse to exercise personal jurisdiction for due process reasons. CAB offers no on-point case authority supporting this argument." First R&R, 2020 U.S. Dist. LEXIS 10902, at *25-26 (S.D.N.Y. Jan. 21, 2020).

Despite the Court's adoption of the First R&R, CAB raised personal jurisdiction again in its motion to dismiss the SAC. Again, it raised a version of its due process argument, contending that Plaintiffs did not allege a "relationship between the transfers identified and the Attacks," and that "the proper analytic framework for analyzing long arm jurisdiction under the Due Process Clause is that set out in *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018), not the one set forth in *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013)." Second R&R, 2022 U.S. Dist. LEXIS 66799, at *25 (S.D.N.Y. Apr. 11, 2022). The Second R&R correctly rejected that argument as well, pointing out that CAB misconstrued *SPV Osus* (and pointing out that one Circuit panel cannot overrule another). *Id.* at *26-27. The Magistrate Judge thus again recommended denying the motion (this time on personal jurisdiction and liability grounds), concluding: "Put simply, nothing has changed from the FAC to the SAC that affects the personal jurisdiction analysis this Court already undertook." *Id.* at *6. CAB objected to the Second R&R, yet again raising its invented due process standard.

Following that Second R&R, Plaintiffs sought to proceed with merits discovery. CAB, however, insisted on limiting discovery to jurisdictional discovery, arguing: "I understand that

plaintiffs would like to go to merits discovery. We believe there is a very, very, very serious jurisdictional issue here." Aug. 25, 2022, Conference Transcript at 24:14-16. Although jurisdictional discovery generally proceeds against defendants, CAB argued it should proceed against *Plaintiffs*, because it claimed it had no relevant records from the time period (a fact that a Rule 30(b)(6) deposition later proved to be untrue, requiring CAB to disgorge documents). The Court therefore instructed Plaintiffs to serve "an initial tranche of third-party subpoenas" and for *CAB* to serve *Plaintiffs* with jurisdictional discovery by July 29, 2022. *See* ECF No. 129.

Despite CAB's initial refusal to produce any records, Plaintiffs located evidence from third parties of 114 transactions that CAB processed for its Hamas-linked customers. *See* Exhibit 8 to CAB's Current Motion to Dismiss or for Partial Summary Judgment ("CAB Motion to Dismiss"), ECF No. 187-2 (chart prepared by Plaintiffs detailing the 114 transactions). As the Third R&R explained, "CAB has not submitted controverting evidence showing that these transfers did not occur or that they were not routed through New York, and in fact CAB concedes that these transfers occurred and were routed through New York." Third R&R at 14. However, during a deposition of CAB's Rule 30(b)(6) corporate designee, Khalid Mahmoud al-Qassem, CAB admitted to relying on records for its jurisdictional arguments that it had withheld from Plaintiffs and the Court. During that deposition, Plaintiffs asked Mr. Qassem to "confirm [that] all account statements and relevant records from the relevant period in the Palestinian Territories have been destroyed[.]" Mr. Qassem answered "Yes." Exhibit D to the Declaration of Michael Radine, ECF 197-4, at 52.

Plaintiffs then noted that in CAB's October 8, 2021, brief in support of its prior motion to dismiss, it wrote that "CAB closed the [HLF] account on December 5, 2001," *id.* at 77-78 (citing CAB Brief, ECF No. 100 at 12 n.4), in support of its argument it did not knowingly assist Hamas through its account for HLF. Plaintiffs asked, given Mr. Qassem's prior testimony that CAB

7

retained no "account statements and relevant records," "what other depositories at the bank of records from 2001 to 2003 exists that would provide the bank with this information that it closed the Holy Land Foundation account on December 5, 2001?" *Id.* at 78. Mr. Qassem admitted that CAB had in fact retained "**account statements**" for its customer HLF as part of a 2004 request for records from the U.S. made through the Central Bank of Jordan. *Id.* He further admitted that CAB still possessed the HLF records requested in 2004 and that they related not just to one "account," as suggested in CAB's brief, but "three accounts." *Id.* at 80.

On December 7, 2022, Plaintiffs served a document request on CAB for "All Documents Concerning the three Holy Land Foundation accounts referenced and identified in the deposition testimony of Khalid Al-Qassem on December 5, 2022." Exhibit E to the Declaration of Michael Radine, ECF No. 197-5. CAB produced records in response to the request on January 11, 2023. These records included, as Mr. Qassem stated, account statements for three HLF U.S. dollar-denominated accounts—and they indicate that the three accounts remained open well after the December 4, 2001, U.S. designation of HLF, as discussed further below. Incredibly, CAB not only relied on these records in its prior motion to dismiss, but it did so *again* (repeatedly) in its current motion—including to attack *Plaintiffs*, claiming incorrectly that the discovery it withheld "proved" that SAC allegations that HLF accounts remained open after its December 4, 2001, designation "to be false as well." CAB Opening Brief in Support of Motion to Dismiss, ECF No. 187. at 4 n.4. *See also id.* at 3 n.2, 22 & n.16.

After the close of jurisdictional discovery, CAB brought the current motion, which it styled variously as a Rule 12(b)(2) motion to dismiss or a Rule 56 motion for (partial) summary judgment. *See* ECF No. 187. And, once again, CAB relied on its invented due process standard. In this iteration, CAB argued that Plaintiffs' evidence failed to satisfy due process requirements because

the 114 transactions did not bear indicia on their face that they were intended for terroristic

purposes. CAB argued that thus the transactions did not give CAB "notice" of their purpose and

perhaps were not even used for that purpose. CAB divided the 114 transactions into three

categories[1]—transactions for the Palestinian Relief and Development Fund ("Interpal") (an

SDGT), transactions for HLF (an SDGT), and transactions for other Hamas-affiliated entities and

individuals—and argued that none of them gave CAB notice of their terroristic purpose:

- "There is simply no evidence … that the transfers gave notice to CAB that they were for any purpose other than the purpose explicitly stated on the Interpal transfer requests" and thus "their claims [do not] arise out of or relate to these transfers."

- "The HLF transfers similarly are insufficient to subject CAB to JASTA liability and are thus likewise jurisdictionally irrelevant. That is because, like the Interpal transfers discussed above, they were explicitly earmarked for charitable purposes."

- "Plaintiffs have produced no documents or evidence that any of these [Remaining Thirteen] transfers gave notice of a terroristic purpose to CAB or that the funds were used for an unlawful purpose."

CAB Opening Brief in Support of Motion to Dismiss, ECF No. 187, at 20, 23.

Plaintiffs argued in their opposition brief, "as they did in conferences before the Court,"

that CAB's arguments were in fact merits issues. CAB Reply Br., ECF No. 201, at 4. CAB in its

reply brief did not contest Plaintiffs' characterization of CAB's argument or their assertion that

those merits issues "can only be addressed after merits discovery," *id.* at 4—it simply blamed

Plaintiffs for not fighting the Court's order, *demanded by CAB*, that the parties proceed only with

jurisdictional discovery. *Id.* at 4. *See also* Third R&R at 24-26 (describing CAB's argument). In

---

[1]     CAB also created a fourth category relating to additional transactions CAB processed *indirectly* on behalf of other Hamas entities and individuals (bring the total documented transfers to 133). Those transactions cleared through another bank's correspondent account in New York and the jurisdictional significance of these transactions therefore remains unclear even after *Spetner*, but Plaintiffs do not rely on them, as the Third R&R explained. *See* Third R&R at 7 n.2. CAB's discussion of these transactions is thus entirely pointless. *See* Obj. at 5.

support of its argument that Plaintiffs *should have* sought merits discovery, it manufactured instructions from the Magistrate Judge to that effect, claiming "the Court informed Plaintiffs last October that any merits-related inquiry relevant to the transfers and jurisdiction could be made during the jurisdictional discovery process and a dispositive motion on jurisdiction could be 'teed up' before the end of merits discovery." CAB Reply Br. at 4. During oral argument, CAB's counsel again stated falsely that the Magistrate Judge "gave [Plaintiffs] the opportunity to take that [merits] discovery, to take whatever discovery they wanted to provide admissible evidentiary support to rebut, ultimately, the information that we provided." June 29, 2023, Transcript at 6:22-7:6.

The Third R&R rejected all these arguments, the last of them because it was factually untrue.

First, the Third R&R correctly assessed CAB's repackaged due process argument as a merits argument: "This argument relies on circular logic in an effort to conflate the merits of Plaintiffs' case with the threshold issue of personal jurisdiction. CAB's misleading articulation of the due process standard implies that a plaintiff must prove its case on the merits before jurisdiction can be found and before merits discovery has been taken." R&R at 17. It further explained:

> The question whether CAB had notice that the 114 transfers may have been made to facilitate terrorism is squarely a merits issue that goes to the *mens rea* element of a JASTA aiding and abetting claim—that is, the JASTA requires a showing that the defendant had "general awareness" that its actions were aiding and abetting terrorism.

*Id.* at 18 (citing *Spetner*, 70 F.4th at 646). The Third R&R further pointed out that it had previously rejected the same argument, *id.* (citing First R&R, 2020 WL 486860, at *12) as had the Second Circuit in *Spetner*, *id.* As the Third R&R concluded, "[i]n arguing to the contrary, CAB drastically overstates what factual averments are necessary to support a prima facie showing of personal jurisdiction." *Id.*

Second, the Third R&R flatly rejected CAB's attempt to reimagine the Court's own orders to proceed with jurisdictional discovery only:

> CAB also argues that to the extent relevant merits-based evidence is "intertwined" with jurisdiction, Plaintiffs should have sought such evidence during the limited jurisdictional discovery phase and must prove the merits-based issues now rather than waiting for merits discovery. (Reply 4.) This misstates the procedural posture of this case and the applicable law. To start, it was CAB that requested to take jurisdictional discovery before merits discovery, and the Court granted that request. Accordingly, Plaintiffs appropriately did not seek discovery as to CAB's general awareness or other merits issues during the jurisdictional discovery phase…. To the extent CAB argues that this Court permitted or directed Plaintiffs to take merits discovery during the limited jurisdictional discovery phase, this assertion is belied by the various case management conference transcripts and Court orders on the docket.

R&R at 24-25.

The Court also rejected CAB's attempt during oral argument to misrepresent the Court's instructions on discovery:

> For example, at the oral argument, CAB directed the Court's attention to page 27 of the transcript from the November 16, 2022 case management conference, which is available on the docket at ECF No. 158. In that portion of the transcript, the Court was addressing Plaintiffs' argument that CAB's anticipated motion to dismiss would be more appropriately brought at the end of merits discovery as a motion for summary judgment. The Court explained to Plaintiffs' counsel that CAB's anticipated motion did not need to wait until the end of merits discovery, but rather could be brought following jurisdictional discovery. *This discussion certainly was not a direction by the Court to Plaintiffs to conduct merits discovery.* As discussed at length in this R&R, it is now clear that merits discovery is needed in order to address the key issues CAB has raised here.

*Id.* at 25 n.9.

Faced with this thorough rejection of its argument, CAB now just denies ever having made it. Instead, it faults the Magistrate Judge for suggesting its theory was in fact "'squarely a merits issue,'" Obj. at 14 (citing R&R at 18)—but its prior argument and brazen attempt to convince the

11

Magistrate Judge that she had invited Plaintiffs to engage in merits discovery discredit this argument.

Doubling down on its misrepresentations, Defendant now argues that the Third R&R erred in suggesting CAB's theory "implicat[ed] CAB's 'mens rea,'" arguing that "[t]he question is whether, after being given the opportunity to engage in jurisdictional discovery, Plaintiffs could show that the correspondent bank transfers at issue were related to a terroristic purpose." *Id.* The denial is baseless—CAB argued both the "notice" and "actual use" aspects of its due process standard, and the Magistrate Judge correctly rejected both as raising merits issues. As the Third R&R succinctly observes, "the question of whether or not these transfers actually aided and abetted terrorism in violation of the JASTA is clearly a merits issue." R&R at 18.

## ARGUMENT

Plaintiffs' purported failure to satisfy the due process element of personal jurisdiction is Defendant's constant theme throughout this litigation. *See supra* at 3-4 (describing CAB's prior motions and their rejection). Along the way, CAB has dropped aspects of its due process argument, including its *mens rea* requirement from its current motion. CAB focuses now entirely on its invented requirement that Plaintiffs show that "the correspondent bank transfers at issue were related to a terroristic purpose." Obj. at 14. It argues that the transfer records either did not state a purpose or stated an ostensibly charitable purpose, which Plaintiffs failed to rebut. But as the Magistrate Judge correctly pointed out (and CAB essentially acknowledged in its misrepresentations about merits discovery), the relatedness prong does not require any such showing.

## I.       CAB Has Invented a Relatedness Test that Finds No Support in New York or Federal Law.

Under the federal due process test, relatedness is satisfied if "the correspondent account at issue is alleged to have been used as an instrument to achieve the very wrong alleged," which here is "the allegedly unlawful provision of banking services of which the wire transfers are a part…." *Licci IV*, 732 F.3d at 171. *See also Spetner*, 70 F.4th at 645-46 (same). To allege that transfers were the instrument to achieve the wrong alleged in a JASTA case, it is sufficient to allege the transfers were made for an entity "linked" to an FTO: "By … knowingly providing material support to a customer linked to Hamas, a designated Foreign Terrorist Organization, PIB facilitated the attacks that are at the heart of this litigation. At this stage, we accept plaintiffs' allegations as true and find that they make out an articulable nexus between PIB's alleged conduct and their injuries." *Id.* at 643-44. No further connection between transfer and attack must be shown.

Thus, the Second Circuit in *Spetner* found that a bank's knowing provision of material support (in the form of processing transfers from and to HLF) for the benefit of Hamas met the due process standard: "We are also satisfied that PIB's use of [an intermediary bank's] correspondent account in New York was sufficiently related to plaintiffs' injuries because it was 'an instrument to achieve the very wrong alleged.'" *Id.* at 645.[2] In that case, the plaintiffs—many of whom are Plaintiffs here—alleged that PIB held an account and processed transfers for HLF. *Id.* at 637. The plaintiffs in *Spetner* did not allege that the transfers in any way indicated their purpose as CAB insists they must—and of course the relatedness standard does not change post-discovery (nor does CAB suggest otherwise, as is clear from its pre-discovery relatedness arguments).

---

[2]       Indeed, because PIB did not maintain its own correspondent account in New York, unlike CAB, the bank's connection to New York was less direct than CAB's—and yet the Circuit found personal jurisdiction was satisfied.

In fact, the Circuit relied entirely on a single "transfer from August 2001" that the *Spetner* plaintiffs attached to their complaint, finding it sufficient to support the personal jurisdiction claim. That transfer record did not state its purpose at all. Plaintiffs here provided a copy of that exhibit to the Court, *see* June 29, 2023, Transcript at 14, which shows that HLF wired funds from its account in Texas with instructions that the transfer route through a correspondent account with Chase Manhattan in New York, for further credit to PIB and HLF's account at that bank.

Likewise, the complaint in *Licci* did not allege that the transfers at issue in that case indicated any terroristic purpose (CAB never suggests otherwise; it largely ignores the *Licci* cases despite their centrality to jurisdiction in ATA claims). The complaint instead alleged (without elaboration) that Hezbollah committed the rocket attacks at issue in that case "utilizing" the transfers or "funds received by H[e]zbollah in exchange or consideration for" the transfers, or funds "freed up" by the transfers. Amended Complaint, *Licci*, No. 08-cv-07253-GBD (S.D.N.Y. filed Jan. 22, 2009), ECF No. 23 ¶ 117. The bank's alleged customer in that case, a Hezbollah-controlled "charity" called Shahid (*i.e.*, the "Martyrs Foundation," which, among other things, runs several hospitals in Lebanon) was alleged to make suicide bombing incentive payments generally, but *none* of those incentive payments were alleged to have flowed through New York or to have been *relevant to the Licci plaintiffs' injuries*: the plaintiffs were injured by rockets fired over Israel's border with Lebanon, not by suicide bombings. *See Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 845, 858 (2d Cir. 2021). The Second Circuit did not require that the New York transfers directly cause the attacks or that they be earmarked for violence (indeed, the *Licci* jurisdictional decisions say very little about the transfers) because personal jurisdiction only asks if transfers are the "instrument" of the wrong alleged.

Indeed, the Circuit in *Spetner* rejected a relatedness argument materially similar to one that CAB makes here:

> PIB also argues that plaintiffs omit a "causal connection" between the funds transferred from HLF's Texas-based account to its account at PIB and plaintiffs' injuries from Hamas's terrorist operations. PIB's argument reflects a fundamental misunderstanding of the "arising from" requirement. The nexus element simply ensures that the transaction is "not completely unmoored" from the claim. Plaintiffs' allegations are sufficient: by directing the transfers to AJIB's account in New York, PIB used New York's financial system to facilitate financial support for Hamas that is the basis of certain of plaintiffs' claims.

70 F.4th at 644.

The same result obtains under the *narrower* New York standard. *Compare, e.g., Licci II*, 673 F.3d at 60 (New York law requires showing claims "arise from" the in-forum conduct) *with Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (due process requires showing the claims "arise out of or relate to" the in-forum conduct). *See also Licci IV*, 732 F.3d at 170 (noting that a case that met the New York standard but not the due process standard would be "rare," and "we have been pointed to no such decisions in this Circuit."); *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 468-69 (S.D.N.Y. 2008) ("Therefore, as a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard.") (citing *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 (2d Cir. 1966)).

New York law requires "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Licci v Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 339-40 (2012) ("*Licci III*"). Plaintiffs must show that its "claims [are] in some way arguably connected to the transaction." *Id.* A claim for injuries from a Hamas terrorist attack is clearly more than "in some way arguably connected to [a] transaction" the defendant processed for a "customer linked to" Hamas.

15

Plaintiffs here have alleged that CAB's customers and their transactional counterparties are "customers linked to Hamas," as required in *Spetner*. Because Plaintiffs claim CAB aided and abetted Hamas terrorist attacks by processing transfers for Hamas entities and individuals, the transfers are the "instrument to achieve the very wrong alleged," as required by the Second Circuit in *Licci IV*. *See* R&R at 15 ("In this case, as in *Licci*, 732 F.3d at 171, the correspondent accounts at issue are alleged to have been used 'as an instrument to achieve the very wrong alleged'—that is aiding and abetting terrorism by facilitating Hamas's access to money, including U.S. dollars."). Plaintiffs' claims are thus far more than "in some way arguably connected to the transaction," as required by the New York Court of Appeals in *Licci III*.

Other courts have agreed that personal jurisdiction for JASTA claims against banks only requires showing transfers for a "customer linked to" an FTO. For example, the court in companion cases *Weiss v. Nat'l Westminster Bank* and *Strauss v. Crédit Lyonnais* found personal jurisdiction *after* discovery despite documentary evidence showing the transfers bore indicia of "charitable" purposes or none at all, *Strauss*, 175 F. Supp. 3d at 29, *Weiss*, 176 F. Supp. 3d at 264, as discussed in *Weiss*, 993 F.3d at 166. *See also Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 43 (E.D.N.Y. 2019) (holding that personal jurisdiction in ATA cases may "rest upon the millions of dollars [d]efendant allegedly transferred to Hamas front organizations in close temporal proximity to the ... attacks in which Plaintiffs were injured'") (quoting *Strauss*, 175 F. Supp. 3d at 24). As the Third R&R shows, CAB made the eyebrow-raising argument that the finding of personal jurisdiction in *Weiss* and *Strauss* collaterally estopped Plaintiffs from arguing for jurisdiction here. Third R&R at 26-27. *See also* discussion in Pls. Opp. Br., ECF No. 195, at 21-22. CAB maintains a version of this argument in its objections and, although it criticizes the R&R for disagreeing, the insistence on this obviously frivolous argument remains mystifying. *See* Obj. at 16-17.

No case requires that transactions show on their face that they are intended for terrorism, especially for personal jurisdiction purposes. As the Third R&R pointed out, "it is not surprising that CAB's customers did not list 'funding Hamas' as the stated purpose of these transfers, as this would likely have caused such transfers to be flagged by the U.S. banks processing the transfers in light of the fact that Hamas was a designated terrorist organization throughout the Relevant Period." Third R&R at 20-21.

CAB points to three cases in support of its theory, but each is unhelpful to it. In the first, *Waldman v. Palestine Liberation Organization*, the only contact the defendant had to the United States were diplomatic missions wholly unrelated to its support for terrorism. 835 F.3d 317, 335 (2d Cir. 2016). CAB omits that *Waldman*—an "effects test" case—specifically distinguished *Licci*—a "purposeful availment" case—because *Waldman* involved no banking activity in the United States. *See id.* at 342-43.

In the second, *Przewozman v. Qatar Charity*, the plaintiffs simply failed to "allege that the transactions using the correspondent account transferred money to and from New York or the United States ...." No. 20-cv-6088 (NGG) (TAM), 2023 U.S. Dist. LEXIS 45499, at *27 (E.D.N.Y. Mar. 16, 2023). Finally, *Henkin v. Kuveyt Turk Katilim Bankasi*, No. 19-cv-05394-BMC, 2023 U.S. Dist. LEXIS 131135 (E.D.N.Y. July 28, 2023), an 8-page unpublished opinion, is at odds with controlling law—and its own prior findings: the *Henkin* court previously held that allegations that "the bank transferred at least hundreds of thousands of Eurodollars in the name of IUG, a Hamas-controlled institution .... are sufficient at this stage" to state a claim under JASTA, much less to plead personal jurisdiction. *Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, 495 F. Supp.

3d 144, 161 (E.D.N.Y. 2020), *defendant's interlocutory appeal dismissed*, No. 21-513, 2022 U.S.

App. LEXIS 36933 (2d. Cir. Oct. 20, 2022).[3]

## II.     CAB Has Improperly Raised a Merits Question After Successfully Objecting to Merits Discovery Proceeding in This Case.

CAB's objections rely on assuming the absence of evidence on multiple merits questions,

including whether CAB's 114 New York transfers for Hamas "actually" supported terrorism or

whether CAB had the requisite *mens rea* under JASTA. *See* Third R&R at 16 ("the only factual

disputes that CAB raises are questions going to the merits of Plaintiffs' claims, specifically (i)

whether any of these transfers actually funded the Attacks, and (ii) whether CAB knew the

transfers may have funded the Attacks."). CAB argued that Plaintiffs must prove in-forum

"conduct that could have subjected [a foreign defendant] to liability under" JASTA, putting

"liability" *before* jurisdiction. *Id.* at 16 (quoting CAB Opening Brief in Support of Motion to

Dismiss, ECF No. 187, at 12, 16), 26. As the Third R&R explained:

> This argument relies on circular logic in an effort to conflate the merits of Plaintiffs' case with the threshold issue of personal jurisdiction. CAB's misleading articulation of the due process standard implies that a plaintiff must prove its case on the merits before jurisdiction can be found and before merits discovery has been taken. This contradicts the well-established principle that personal jurisdiction is a threshold question that is separate from, and must be resolved before, the merits.

*Id.* 17 (citing *In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 268 (2d Cir. 2001)).

The *Licci* and *Spetner* cases make clear that whether a transfer is alone sufficient to

establish "liability" is not at issue in the personal jurisdiction analysis: "whether or not these

allegations state a claim under the various statutes, the pleadings establish the 'articulable nexus'

or 'substantial relationship' necessary for purposes of personal jurisdiction." *Licci III*, 20 N.Y.3d

---

[3]     In any event, the plaintiffs in that case had not "connected the IUG Eurodollar transfers to New York, except to claim that '[t]he vast majority of Eurodollar funds transferred from bank to bank are cleared and settled in New York.'" 2023 U.S. Dist. LEXIS 131135, at *9. The contrast to the *114 transfers* CAB processed for Hamas customers through its New York correspondent bank accounts is obvious.

at 340. For example, whether the defendant actually knew of that customer's links to the FTO "is more properly raised in a Rule 12(b)(6) challenge." *Spetner*, 70 F.4th at 632. Thus, merits arguments are inappropriate at this stage: "[O]n a post-jurisdictional discovery 12(b)(2) motion, the plaintiff need only aver 'jurisdictional facts' and the court does not consider the 'underlying merits.'" Third R&R at 15 (quoting *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 87 (2d Cir. 2013)). As the Third R&R accordingly found, "CAB's evidence of underlying transfer documentation does not change the equation because such documents go to the merits issues of whether these transfers actually aided terrorism, and whether CAB was generally aware of such aid. Because the evidence goes to the merits, there is no need for Plaintiffs to 'rebut' the evidence at this stage." *Id.* at 22.

As explained above, CAB in its reply brief did not contest Plaintiffs' argument that it was raising merits issues. Instead, it argued both in its reply brief and at the June 29, 2023, oral argument that Plaintiffs should have demanded merits discovery, even though the Court limited discovery to personal jurisdiction at CAB's insistence. It even argued that the Magistrate Judge instructed the Plaintiffs to seek merits discovery. The Magistrate Judge made clear CAB was misrepresenting the Court's statements: "To the extent CAB argues that this Court permitted or directed Plaintiffs to take merits discovery during the limited jurisdictional discovery phase, this assertion is belied by the various case management conference transcripts and Court orders on the docket." *Id.* at 24-25. *See also id.* at 25 n.9 ("This discussion [during a case management conference, cited by CAB] certainly was not a direction by the Court to Plaintiffs to conduct merits discovery.").

To be clear, CAB's jurisdictional argument also misstates the liability standard. As the Third R&R explained, "JASTA does not require that money transfers be specifically earmarked as

being for a terroristic purpose in order for jurisdiction *or liability* to lie." Third R&R at 19. Rather,

CAB's argument "misstates both Plaintiffs' legal theory and *Honickman v. BLOM Bank SAL*, 6

F.4th 487, 500 (2d Cir. 2021)," which CAB relied on and is the latest treatment of JASTA liability

from the Second Circuit. *Id.* at 18 (citation expanded). *See also id.* (reviewing *Honickman*). Indeed,

the Second Circuit has made clear that tracing transactions to specific attacks (though sufficient)

is not necessary, especially at the pleading stage. *See Honickman*, 6 F.4th at 500 ("Plaintiffs did

not need to allege the funds 'actually went to Hamas.'"). In fact, *Honickman* makes clear that a

bank's "[customers] do not themselves need to be 'engaged in ... violent or terrorist acts.'" 6 F.4th

at 499 n.15 (citation omitted).

## III.   CAB's "Analysis" of Specific Transactions Simply Repackages Merits Issues

CAB's analysis of the 114 specific New York transactions simply repackages its erroneous

merits arguments as jurisdictional ones.

**HLF Transactions.** CAB argues that the transactions it processed for HLF do not suffice

for personal jurisdiction because they do not state on their face that they are for a terroristic

purpose. Unable to distinguish the Second Circuit's finding in *Spetner* that an essentially identical

transfer a similar bank made for HLF is sufficient to establish personal jurisdiction, CAB ignores

the case altogether.

Instead, CAB argues that it "presented admissible evidence from the U.N. Office for the

Coordination of Humanitarian Affairs confirming that HLF engaged in humanitarian work,"

referring to a document it *described* in a single sentence in its motion to dismiss briefing, *see* ECF

No. 187 at 21 & n.15 (providing a URL) and that Plaintiffs failed to rebut it. Again, the "report"

would only address a merits issue—but the Third R&R explained that Plaintiffs in fact did present

evidence in the form of an FBI memorandum attached to the SAC, which found "that funds raised

by HLF 'are clearly being used by' Hamas and that HLF 'is acting for or on behalf of' Hamas."

Third R&R at 3 (citing SAC ¶¶ 645-49, 648 and SAC Exhibit G). As the Third R&R explained, the FBI report "notes that HLF sent money to ostensibly charitable committees in the West Bank and Gaza that were controlled by Hamas, and that Hamas used these committees to indoctrinate the populace, recruit suicide bombers, support the families of Hamas prisoners and suicide bombers, and siphon money for terrorist attacks." *Id.* (citing SAC Exhibit G). *See also id.* (describing other SAC allegations showing "that money raised by HLF was used by Hamas to support its terrorist activities, including through recruitment of suicide bombers.").

In the face of this evidence, CAB responds that the FBI's findings do not count because that information "does not bear on the purpose of the transactions at issue," Obj. at 18. Of course, the UN report cited in CAB's footnote *also* does not refer to the transactions at issue in this case.

**Interpal Transactions.** CAB argues that some of the 42 transfers it processed through its New York correspondent accounts from Interpal to CAB's Hamas-linked customers facially indicated non-terroristic purposes. Obj. at 15-17. It cites this Circuit's *merits* decision in *Weiss*, which found insufficient evidence adduced in discovery that the British bank NatWest, which executed Interpal's transfers (including to CAB customers), had the requisite *mens rea* to be found liable under JASTA. Specifically, absent other supporting evidence, it found the fact that the transfers did not indicate a "terroristic purpose" "was material to an assessment of what a rational juror could find what NatWest knew." *Weiss*, 993 F.3d at 161.

As explained above, the district court in *Weiss* found that the plaintiffs in that case *did* establish personal jurisdiction, on the same evidentiary record. When the plaintiffs appealed dismissal on merits grounds, NatWest cross-appealed the jurisdiction decision, but the Second Circuit dismissed the appeal as moot. *Id.* at 159.

21

In any event, NatWest's knowledge is, to put it mildly, not interchangeable with CAB's knowledge, and although Interpal was designated by Israel as a terrorist organization in 1998 and as an SDGT by the U.S. in 2003, *see* SAC ¶ 827, the ultimate merits issue here is what CAB knew about its own customers who *received* funds from Interpal. As the FBI concluded:

> GOI [Government of Israel] analysis, as well as open source reporting, has identified that the civilian population is aware that the services being provided by the zakat committees, whether it's the distribution of food, medical services or other social services, are being provided by HAMAS.

SAC Ex. G at 27-28. Whether the mountain of circumstantial evidence of CAB's knowledge identified in the SAC is borne out is a matter for merits discovery, but it is not an issue properly resolved here.

**Other Transactions.** Finally, CAB discounts 14 other New York transactions because none of them "involve individuals or entities that had been designated by the United States as terrorists or terrorist organizations at the time of these transfers." Obj. at 19. That is, of course, once again a knowledge issue, notwithstanding CAB's insistence that it has not argued *mens rea* in this motion. But the argument is also directly contrary to *Spetner*: "At this juncture, we are interested only in the question of personal jurisdiction and the nature of the contacts that would support such exercise. PIB's argument that HLF was not designated a terrorist organization until several months into the relevant period is more properly raised in a Rule 12(b)(6) challenge." 70 F.4th at 646.[4] Once again, faced with directly contrary controlling law, CAB just ignores the case entirely.

## CONCLUSION

For the reasons set forth above, the Court should adopt the Third R&R in its entirety.

---

[4]     In fact, it is not even a merits requirement. *See Kaplan*, 999 F.3d at 864 ("The court cited no authority for such a prerequisite for knowledge, and we know of none; and it would defy common sense to hold that such knowledge could be gained in no other way."

Date:  August 11, 2023
       Hackensack, NJ

Respectfully submitted,

By:      /s/ Michael Radine

**OSEN LLC**
Michael Radine, Esq.
Gary M. Osen, Esq.
Ari Ungar, Esq.
Dina Gielchinsky, Esq.
Aaron Schlanger, Esq.
190 Moore Street, Suite 272
Hackensack, NJ 07601
Telephone (201) 265-6400

**TURNER & ASSOCIATES, P.A.**
C. Tab Turner, Esq.
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
Telephone (501) 791-2277

**KOHN, SWIFT & GRAF, P.C.**
Stephen H. Schwartz, Esq.
Neil L. Glazer, Esq.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone (215) 238-1700

**ZUCKERMAN SPAEDER LLP**
Shawn P. Naunton, Esq.
485 Madison Avenue
10th Floor
New York, NY 10022
Telephone (212) 704-9600

*Attorneys for Plaintiffs*