IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIE AVERBACH, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>CAIRO AMMAN BANK,<br><br>    Defendant. | Case No. 19-cv-4 (KMK) |

**DEFENDANT CAIRO AMMAN BANK'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CAIRO AMMAN BANK'S PRODUCTION OF ALL INFORMATION AND DOCUMENTS RELATED TO THE 66 ACCOUNTS REFERENCED IN <u>KHALID AL-QASSEM'S SUPPLEMENTAL DECLARATION</u>**

**Table of Contents**

Preliminary Statement ................................................................................................................. 1

Argument ..................................................................................................................................... 2

    *Aerospatiale*'s Comity Factors Require Denial of Plaintiffs' Requested Order. ........................ 2

        1.    Plaintiffs' Request Seeks Documents That Are Not Vital to this Litigation. ................. 2

        2.    Plaintiffs' Request is Overbroad and Lacks Specificity. ................................................ 4

        3.    The Information Originates Abroad, Weighing Against Production. ............................ 4

        4.    Alternative Means Exist Which Would Avoid Violating Bank Secrecy. ....................... 4

        5.    Foreign Economic and Regulatory Interests Outweigh the U.S.'s Interest. ................... 5

        6.    The Hardship of Compliance is Severe. ........................................................................ 8

        7.    CAB Has Acted in Good Faith to Furnish Available Information. ............................... 8

Conclusion ................................................................................................................................. 10

Defendant Cairo Amman Bank ("**CAB**") submits this Memorandum and the accompanying Declarations of Jordanian and Palestinian banking law experts in opposition to Plaintiffs' motion for an order compelling CAB to produce "all information and documents related to the 66 accounts referenced in Khalid Al-Qassem's March 28, 2024 supplemental declaration."

**PRELIMINARY STATEMENT**

This Court should deny Plaintiffs' Motion, which seeks an unduly broad swath of files—including "all information and documents" years after the attacks at issue in this case took place. Plaintiffs attempt to justify their approach with the *ipse dixit* that combating terrorism justifies subjecting CAB to criminal and civil sanctions from Jordanian and Palestinian authorities. This is not sufficient to support the relief it seeks. Rather, this Court must engage in a particularized inquiry balancing the competing interests of the different sovereigns in the context of the dispute.

Plaintiffs cannot establish that the documents requested will materially advance Plaintiffs' case. As this Court is aware, except for documents related to the Holy Land Foundation ("**HLF**") that CAB preserved at the direction of the Central Bank of Jordan in response to a request by the U.S. Government, CAB's preexisting, ten-year document retention policy means copies of bank-records from the relevant period had been destroyed long before Plaintiffs commenced this suit. The minimal utility of the documents CAB does possess cannot be ignored and weighs against compelling production. Similarly, the untailored, overbroad nature of Plaintiffs' request, which seeks documents that post-date the attacks at issue or bear no connection to anyone in Plaintiffs' complaint, counsels against compelling production. The other factors guiding this inquiry—the alternative means available to Plaintiffs, the respect entitled to foreign sovereigns in maintaining bank secrecy, the hardships CAB would face if it complied, and CAB's good faith—all weigh in favor of CAB. This Court should accordingly deny Plaintiffs' Motion.

1

## ARGUMENT

***AEROSPATIALE*'S COMITY FACTORS REQUIRE DENIAL OF PLAINTIFFS' REQUESTED ORDER.**

Supreme Court precedent requires this Court to consider five comity factors in determining whether it should compel CAB to violate foreign law:

> (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Société Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 544 n.28 (1987) (cleaned up). This Court has also considered "the hardship of compliance" and the non-movant's "good faith." *Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, 2021 WL 4596561, at *9 (S.D.N.Y. Oct. 6, 2021) (citation omitted). Here, as we explain, these favors counsel against an order compelling the violation of foreign law.

### 1. Plaintiffs' Request Seeks Documents That Are Not Vital to this Litigation.

Plaintiffs must demonstrate the importance of the records they seek. *See Aerospatiale*, 482 U.S. at 544 n.28. "Where *the outcome of the litigation does not stand or fall on the present discovery order*, or where the evidence sought is cumulative of existing evidence, courts have generally been unwilling to override foreign secrecy laws." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) (internal quotations and citation omitted) (emphasis added). Here, Plaintiffs merely assert that the importance of these records is "self-evident." ECF 290 at 9. CAB should not be required to violate foreign law on that conclusory

2

basis.[1] Plaintiffs have not shown that the additional information they might obtain is "critical to litigating this action." *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 420 (S.D.N.Y. 2016).

Plaintiffs make no effort to establish the relevance, much less the *important* nature, of account records from *years* after the relevant period. They identify no precedent to support the breadth of their request, nor could they. To the contrary, the district court in *Bartlett v. Société Générale de Banque au Liban SAL*, another JASTA dispute, denied all requests for discovery of records more than one year after the last alleged attack in that case. 2023 WL 2734641, at *8 (E.D.N.Y. Mar. 31, 2023) (noting plaintiffs' requests for discovery "nine years of records *after* [the last alleged attack] is not sufficiently relevant or proportional," even under Rule 26).

For the relevant period, the information that exists was addressed in detail by Mr. Al Qassem at his July 2024 deposition: CAB holds no transactional records beyond the Holy Land Foundation ("**HLF**") documents already in Plaintiffs' possession. Given the absence of transaction records for the relevant period, it is far from "self-evident" that Plaintiffs' request could yield any information critical to the litigation. Confirmation that particular persons or entities held accounts would not materially advance Plaintiffs' case, as merely holding an account for a given person or entity "does not render a bank liable for civil aiding and abetting." *Honickman v. BLOM Bank SAL*, 432 F. Supp. 3d 253, 264 (E.D.N.Y. 2020), *aff'd sub nom.*, 6 F.4th 487 (2d Cir. 2021); *see Twitter, Inc. v. Taamneh*, 598 U.S. 471, 502–03 (2023) ("The fact that *some* bad actors took advantage of these platforms is insufficient to state a claim that defendants knowingly gave substantial assistance and thereby aided and abetted those wrongdoers' acts."); *Weiss v. Nat'l*

---

[1] Even under an ordinary Rule 26 analysis, this Court must reject a request to compel production if the "[p]laintiff has not explained why [the documents] are relevant to her [] claims." *Richards v. Kallish*, 2024 WL 1833920, at *2 (S.D.N.Y. Apr. 26, 2024). And merely claiming a conclusion is "self-evident" does not constitute such an explanation. *Cf.*, *e.g.*, *Catalano v. MarineMax*, 690 F. Supp. 3d 123, 132 n.8 (E.D.N.Y. 2023) (concluding that an argument that a claim was "self-evident" was not sufficient to establish the claim).

3

*Westminster Bank PLC*, 453 F. Supp. 2d 609, 621 (E.D.N.Y. 2006) (citing *Williams v. Bank Leumi Tr. Co.*, 1997 WL 289865, *5 (S.D.N.Y. May 30, 1997)) ("The mere maintenance of a bank account and the receipt or transfer of funds do not, however, constitute substantial assistance.").

Finally, the accounts at issue were identified based on two lists supplied by Plaintiffs. Their Motion assumes the importance of the records of all those named on those lists, but that has ***not*** been established. Plaintiffs' lists include names that plainly do not warrant production—names excluded from the Third Amended Complaint,[2] as well as persons for whom Plaintiffs have not identified evidence of involvement with Hamas terrorism, much less the attacks at issue.[3] For example, they include persons on the sole ground that they are related to alleged martyrs—even though CAB has confirmed, in declarations and a deposition, the absence of evidence of martyr or prisoner payments. *See, e.g.*, ECF 291-1 ¶ 10.

### 2. Plaintiffs' Request is Overbroad and Lacks Specificity.

The second factor this Court must consider is whether the present request seeks "*only* documents that are important to litigating [the] claims." *Laydon*, 183 F. Supp. 3d at 421 (emphasis added). For the reasons described *supra*, Plaintiffs' request lacks the requisite specificity.

### 3. The Information Originates Abroad, Weighing Against Production.

It is undisputed that the requested documents originated and exist outside of the United States, and Plaintiffs concede that this third factor weighs against compelling production. Mot. 9.

### 4. Alternative Means Exist Which Would Avoid Violating Bank Secrecy.

Even if the production request met the other criteria (it does not), Plaintiffs do not address

---

[2] The TAC, filed after the lists were produced, makes no mention of 73 of the 89 individuals included in the so-called attack-related list, and excludes four persons (Khalil Khader Mustafa Abu Khader, Kheir al-Din Awda Farah Dik, Muhammad Eid Misk, and Nizar Ramadan) included on the complaint-related list.

[3] The 163 names on the complaint-related list are not alleged to be linked to the attacks. And any evidence of Hamas leadership is wanting. For example, the only allegation against Ibrahim Farjallah is that he was the director of a ranch that was owned by the Islamic Charitable Society – Hebron, which in turn is alleged to be linked to Hamas. TAC ¶¶ 971, 979.

the mechanisms available to obtain the requested information that would not require the violation of foreign law.[4] Consistent with procedures adopted in other cases (*e.g.*, *Bartlett*, 2023 WL 2734641, at *5 (E.D.N.Y. Mar. 31, 2023); *Miller v. Arab Bank, PLC*, 2023 WL 2731681, at *2 (E.D.N.Y. Mar. 31, 2023)), CAB has proposed to seek waivers so that it may lawfully produce unredacted documents. *See* Decl. of Aimen Odeh ("**Odeh Decl.**") ¶¶ 33–34; Decl. of Lubna Katbeh ("**Katbeh Decl.**") ¶ 30. CAB has also offered to submit a letter rogatory to Jordanian and Palestinian regulators requesting authorization to produce. Plaintiffs complain that these processes are time-consuming and not certain to yield every document they desire. Mot. 9. But Plaintiffs misconceive the standard: The alternative means need only be "available," not certain or expedient. *Laydon*, 183 F.3d at 417. And the recent response of another Middle East-based regulator suggests that if Plaintiffs were to provide clear and specific evidence of the grounds for their request, it may be granted. *See Bartlett*, No. 19-cv-7, ECF 421-1 (E.D.N.Y. July 19, 2004) (confirming Lebanese regulators "would be willing to look into [] allegations" of "money laundering or terrorism financing"). Finally, to the extent that Plaintiffs claim their objective is to understand CAB's account opening procedures during the relevant period, they are in possession of HLF's account opening documents, and Plaintiffs have not shown how the production of additional unredacted documents is important to the litigation.

     **5.**    **Foreign Economic and Regulatory Interests Outweigh the U.S.'s Interest.**

Plaintiffs argue the "balancing of national interests" is the "most important" factor, Mot. 8, but offer no binding precedent on this point. They ask this Court (1) to accept as paramount their contention that the U.S. interest in combating terrorism will be served by production and (2) to hold that this overrides any foreign interests. They err in both respects.

---

[4] Plaintiffs' production reflects documents they received from other litigations, third-party subpoenas, Israeli intelligence sources and raids—raising real questions about the added value of the information they seek to compel.

As Justice Blackmun's concurring opinion in *Aerospatiale* observed, "courts are generally ill equipped to assume the role of balancing interests of foreign nations with that of our own," and should be skeptical of assertions of U.S. interests, as "pro-forum bias is likely to creep into the supposedly neutral balancing process." 482 U.S. at 552–53. Balancing national interests, which requires deciphering "the broader international and foreign interests that are relevant," is particularly difficult given the absence of either "the Federal Government or the foreign state." *Id.* at 553–54. This is particularly true here, as the United States has long recognized that it "has no closer ally than Jordan in the war on terror." Odeh Decl. ¶ 21 (quoting Remarks by Secretary of State Rice on the Terrorist Bombings in Jordan, Nov. 9, 2005). And in briefs filed in the United States Supreme Court, both the United States and Jordan objected to the implications of overriding Jordan's bank secrecy laws in private Anti-Terrorism Act ("**ATA**") litigation. *See* Amicus Br. of United States, *Arab Bank PLC v. Linde*, No. 12-1485, at 6, 14 (May 2014) (explaining that sanctioning Jordanian banks for complying with Jordanian law threatens "the United States' vital interest in maintaining close cooperative relationships with Jordan"); Odeh Decl. ¶ 36 n.9 (citing amicus brief of Jordan in *Arab Bank v. Linde*). The sovereigns' understanding—not Plaintiffs'— of how best to balance national interests in this context should control. *Cf. Aerospatiale*, 482 U.S. at 546 (recognizing the "demand of comity").

Even so, Plaintiffs argue that the U.S. interest in "combating terrorism . . . diminishes any competing interests of the foreign state." Mot. 8 (quoting *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 559 (S.D.N.Y. 2012)). Even accepting that combating terrorism is a strong U.S. interest, production *here* is unlikely to advance those interests. Unlike the *Wultz* litigation, which involved *continuing* assertions of primary liability under the ATA, *see, e.g.*, *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 29, 34–35 (D.D.C. 2012) (combating terrorism implicated where

defendant allegedly "continue[d]" to provide direct support to terrorists' activities), this case presents a secondary liability JASTA claim that rests on allegations of banking services provided more than twenty years ago. Plaintiffs cannot dispute that anti-money laundering and counter terrorism practices and requirements in Jordan and Palestine have evolved significantly since the relevant period, and make no attempt to explain how this production (at best, based on names allegedly affiliated with Hamas more than 20 years ago) would prospectively combat terrorism.

Plaintiffs fail to demonstrate that production in their suit for private civil damages for long past injuries is of strong "national interest." It is well established that less deference is owed to U.S. interests in private litigation than in criminal or administrative enforcement proceedings. *See, e.g.*, *Reinsurance Co. of Am. Inc. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1280 (7th Cir. 1990) (holding foreign secrecy law outweighed U.S. interest in enforcing private judgment). This difference is also recognized by the Jordanian and Palestinian authorities, which provide a separate avenue for requests from foreign sovereigns. *See* Odeh Decl. ¶ 37; Katbeh Decl. ¶¶ 44-45.[5] To the extent that Plaintiffs suggest that the foreign bank secrecy laws are "not absolute" (Mot. 8), it is because there are discrete avenues where the foreign state has weighed its interests differently. But Plaintiffs have not satisfied any of the criteria for exceptions under Jordanian or Palestinian law. *See* Odeh Decl. ¶ 25.3(a)-(d); Katbeh Decl. ¶¶ 30(2)(a)-(b), 32. And these are no fleeting interests: Palestinian authorities are concerned about this due to their interests in maintaining and regulating a credible and functioning banking system. Katbeh Decl. ¶¶ 22–25.

Thus, by ordering CAB to violate the laws of Jordan and Palestine, this Court would unquestionably obstruct Jordan's and Palestine's interest in regulating their economic affairs,

---

[5] If the request for documents came from the United States—as opposed to a private party—in connection with a criminal proceeding, Jordanian regulators generally comply with state-to-state requests and CAB could produce the documents, as occurred when the U.S. requested documents concerning HLF for use in the criminal litigation. Odeh Decl. ¶¶ 18-20; Dec. 5, 2022 Al-Qassem Dep. Tr. 78:10-25 (Al Qassem).

7

*United States v. First Nat. City Bank*, 396 F.2d 897, 902 (2d Cir. 1968), and contravene "a fundamental principle of international comity." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 60 (2d Cir. 2004) (citations omitted); *accord In re Sealed Case*, 825 F.2d 494, 498–99 (D.C. Cir. 1987) ("[O]ur government and our people would be affronted if a foreign court tried to compel someone to violate our laws within our borders."). Given the particular circumstances of this case, the U.S.'s interest in compelling the production of these non-critical documents for Plaintiffs' potential use in civil litigation pales in comparison. *Laydon*, 183 F. Supp. 3d at 409 (recognizing that independent sovereigns have fundamental "interest[s] in the enforcement of [their] financial privacy and data protection laws").

6. **The Hardship of Compliance is Severe.**

"It is hardly debatable that fear of criminal prosecution constitutes a weighty excuse for nonproduction." *Société Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 211 (1958). Complying with Plaintiffs' request exposes CAB to both criminal and civil penalties: serious fines (each improper disclosure would bear a penalty of up to roughly $700K USD under Jordanian Law and $250K USD under Palestinian law); potential revocation of CAB's banking licenses; and civil suits against the Bank by its customers. Odeh Decl. ¶ 25.4; Katbeh Decl. ¶ 33. Plaintiffs ignore these risks, deeming them "purely speculative." Mot. 10. But there is good reason why foreign banks routinely refuse to comply with discovery requests even when threatened with adverse consequences: The stakes of violating bank secrecy laws are too high. *See Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 551 (E.D.N.Y. 2012) (finding that foreign bank secrecy law was "a reasonable ground" for the defendant bank not to produce evidence because the law exposed the bank to "serious detriment").

7. **CAB Has Acted in Good Faith to Furnish Available Information.**

Plaintiffs' suggestions of bad faith are wholly unwarranted. There is no dispute that the

8

production of records in response to their Motion would violate bank secrecy laws. *See, e.g.*, *Doubleline Capital*, 2021 WL 4596561 at *14 (recognizing good faith in withholding production to avoid violating foreign law).

In 2022, Mr. Al Qassem testified as CAB's Rule 30(b)(6) witness on topics including the Bank's records retention and collection policies during the relevant period; the 2005 sale of CAB's Islamic branches;[6] and the Jordanian Central Bank's 2004 request to CAB for records relating to three closed HLF accounts to be provided to the U.S. Government for use in a criminal trial.[7] *See* Qassem Dep., Dec. 5, 2022, Tr. 78:13–25. CAB produced those records to Plaintiffs.

Over a year later, Plaintiffs requested evidence of alleged prisoner or martyr payments. Dec. 11, 2024 CMC, Tr. 23:24–24:4 (Osen). In cooperation with Plaintiffs and the Court, Mr. Al Qassem issued a declaration explaining that (1) CAB's earliest available transaction records are from 2009 (long after the relevant period), and (2) after searching CAB's records for 315 names, CAB found no evidence of prisoner or martyr payments. Plaintiffs then asked the Court to order CAB to reveal the total number of account holders. *See* Feb. 26, 2024 CMC, Tr. 29:8–22 (M.J. Parker). CAB again complied, searching two new lists from Plaintiffs and accurately reporting the number of accounts identified. ECF 291-1 ¶¶ 8–10 (reporting 66 held CAB accounts from 2000–2003, 34 remained open in 2009, and none contained evidence of prisoner or martyr payment).[8]

At his subsequent fact deposition, Mr. Al Qassem explained the process he used to check

---

[6] Given the absence of records for the branches sold to Palestine Investment Bank ("**PIB**"), CAB offered to write to PIB to request records the relevant time period. PIB confirmed for Plaintiffs that it had "no physical or electronic records in [its] possession" from the relevant period. Chaifetz Decl., Ex. A, Letter from PIB to CAB, Nov. 29, 2022.

[7] CAB closed the HLF accounts at the time of the Foundation's designation by OFAC in December 2001.

[8] After receiving this information, Plaintiffs acknowledged that motion practice to compel CAB to violate the bank secrecy law of Jordan and Palestine likely was not important to their case: "[A]bsent some further issues raised or in response to our inquiries of Mr. Qassaem, I think we would stand on the declaration in terms of not proceeding with bank secrecy briefing to either obtain those names or have the defendant withhold them and go through the whole sort of Bank Secrecy Rule 37 process." CMC of May 1, 2024, Tr. 5:3–9 (Osen).

the names about which Plaintiffs inquired, Qassem Depo. July 31, 2024, Tr. 148:13–149:5, and reiterated that CAB had no account statements from the relevant period. *See id.* Tr. 158:4–10. As to the sale of CAB's Islamic branches, Mr. Al-Qassem reiterated that, as he testified at his Rule 30(b)(6) deposition, CAB retained no records after the sale. *See* Chaifetz Decl., Ex. B, Letter to Plaintiffs (Aug. 27, 2024). Plaintiffs, of course, already knew this; they were aware that in 2022, CAB, with their involvement, had voluntarily asked the purchaser of the Islamic branches, PIB, to search its records for relevant information. *Id.*

Plaintiffs seek to justify their request for an order compelling CAB to breach the banking laws of Jordan and Palestine on the grounds that Mr. Qassem made bank secrecy objections at his fact deposition, and because the Supplemental Declaration did not (yet again) explain the circumstances of the 2005 sale of the Islamic branches. These are meritless attempts to justify their Motion. The record does not support any finding other than that CAB has acted in good faith and sought to cooperate with Plaintiffs in connection with discovery in this proceeding.

CAB has gone above and beyond to answer Plaintiffs' inquiries, but no answer will be enough. Plaintiffs will perpetually request disclosures until they obtain sanctions to fill the gaps in their evidence. This tactic must end. CAB has no interest in obstructing Plaintiffs' discovery— only in complying with foreign law.

## CONCLUSION

For these reasons, Plaintiffs' Motion should be denied.

Dated: November 14, 2024                                Respectfully submitted,

/s/ *Samantha Chaifetz*

DLA PIPER LLP (US)
Samantha Chaifetz
500 Eighth Street, NW

10

Washington, DC 20004
(202) 799-4000
samantha.chaifetz@us.dlapiper.com

Anthony Coles
Margaret Civetta
Erin Collins
1251 Avenue of the Americas
New York, NY 10020-1104
(212) 335-4500
anthony.coles@us.dlapiper.com
margaret.civetta@us.dlapiper.com
erin.collins@us.dlapiper.com

*Counsel for Cairo Amman Bank*

11