IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIE AVERBACH, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>CAIRO AMMAN BANK,<br><br>   Defendant. | Case No. 19-cv-4 (KMK) |

**CAIRO AMMAN BANK'S REPLY IN SUPPORT OF OBJECTIONS
TO ORDER ON MOTION TO COMPEL (ECF 325)**

**TABLE OF CONTENTS**

Argument ................................................................................................................................. 1

    I.       The Requested Production Is Not Important to this Litigation. ............................... 1

    II.      The Order Misapplies the National Interest Analysis and Disregards the Hardship CAB Faces in Being Compelled to Violate Local Law. ......................................... 5

    III.     The Other Comity Factors Weigh Against Compelling Production. ...................... 8

Conclusion ............................................................................................................................. 10

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bartlett v. Societe Generale de Banque au Liban SAL*,
  2023 WL 2734641 (E.D.N.Y. Mar. 31, 2023) ................................................................................8

*Desarrolladora Farallon S. de R.L. de C.V. v. Cargill Fin. Servs. Int'l, Inc.*,
  666 F. App'x 17 (2d Cir. 2016) ...................................................................................................10

*Laydon v. Mizuho Bank, Ltd.*,
  183 F. Supp. 3d 409 (S.D.N.Y. 2016) ...........................................................................................8

*Linde v. Arab Bank, PLC*,
  269 F.R.D. 186, 197 (E.D.N.Y. 2010) ..........................................................................................8

*Miller v. Arab Bank, PLC*,
  2023 WL 2731681 (E.D.N.Y. Mar. 31, 2023) ..........................................................................1, 9

*Strauss v. Credit Lyonnais, S.A.*,
  842 F. App'x 701 (2d Cir. 2021) ...................................................................................................3

*Twitter, Inc. v. Taamneh*,
  598 U.S. 471 (2023) ...................................................................................................................2, 3

*Weiss v. Nat'l Westminster Bank PLC*,
  993 F.3d 144 (2d Cir. 2021) .........................................................................................................3

**Other Authorities**

Amicus Br. of United States, *Arab Bank, PLC v. Linde*,
  2014 WL 2191224 (S. Ct. May 23, 2014) .....................................................................................7

Fed. R. Civ. P. 44.1, Advisory Comm. Note (1966) .........................................................................10

Magistrate Judge Parker's February 13, 2025 Order (ECF 325) ("**Order**") compelling production clearly errs in its analysis of the importance and relevance of the information Plaintiffs seek from CAB. This and other errors led to a flawed comity analysis. Plaintiffs' Response (ECF 346) ("**Response**") boils down to the following: the errors do not matter because Plaintiffs allege a Jordanian bank aided and abetted terrorism, rendering the comity analysis effectively superfluous. That is wrong. Plaintiffs' allegations against CAB are conclusory and threadbare, and unlike the cases Plaintiffs cite, the limited information CAB possesses would not materially advance Plaintiffs' claims or a U.S. interest in combatting terrorism. It is hard to imagine a clearer case for declining to order a bank to violate foreign law. This Court should reject the Order or, at a minimum, narrow it.

## ARGUMENT

**I.     THE REQUESTED PRODUCTION IS NOT IMPORTANT TO THIS LITIGATION.**

Plaintiffs do not dispute that any production would be—at most—limited to (1) a dataset that identifies accountholders whose names appear on Plaintiffs' list, and (2) account-opening documents for the subset of those accountholders who still had open accounts as of 2009. And Plaintiffs do not dispute that the limited nature of any possible production by CAB presents a different fact pattern than the decisions Plaintiffs and Judge Parker relied on. For example, in *Miller v. Arab Bank, PLC*, 2023 WL 2731681 (E.D.N.Y. Mar. 31, 2023)—cited repeatedly by Plaintiffs—the court found that the evidence the plaintiffs were seeking included transaction records, account statements, communications concerning the transactions, death certificates, photographic identification, and certificates of martyrdom, which were "critical" to the plaintiffs' case, and ordered production of same. *Id.* at 10. Such documents ***are not in CAB's records***.

Recognizing this reality, Plaintiffs attempt to shift blame to CAB, erroneously implying that CAB spoliated evidence by disposing of documents pursuant to routine document destruction

1

policies and that this somehow "*heightens*" the import of the remaining documents. Resp. 7. But no spoliation occurred. Plaintiffs waited more than 15 years to sue CAB, at which point the documents were long gone pursuant to CAB's normal document retention policy. *See, e.g.*, ECF 308, Nov. 18, 2024 Hearing Tr. 28:19–20 (Osen) (acknowledging documents were disposed of "in the *routine process* of [CAB's] retention policies" (emphasis added)). Plaintiffs' argument also fails as a matter of logic. The limited information in CAB's files has "heighten[ed]" import to Plaintiffs' case only in a relative sense, *i.e.*, because Plaintiffs' other evidence against CAB is particularly weak. According to Plaintiffs, the weaker their case, the more "important" the information and the stronger the U.S. interest in it. That is wrong. Plaintiffs have failed to identify any persuasive support for the Order's conclusion that the limited information and documents that remain in CAB's files are "important."

*First*, "obtaining the precise identities" of who had CAB accounts will not meaningfully advance Plaintiffs' case. Resp. 8. Merely having an account for a particular customer is not aiding and abetting terrorism. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 491, 493 (2023) (JASTA requires "conscious, voluntary, and culpable participation in another's wrongdoing" and a "definable nexus between the defendant's assistance and th[e] attack" at issue, "lest mostly passive actors like banks become liable for all of their customers' crimes by virtue of carrying out routine transactions"). Because CAB has no transaction records for these customers, the mere association of accounts with specific names will not, and *cannot*, prove any money flowed through those accounts, let alone any improper purpose(s) for which such money was used. That evidence must come from other sources. To the extent Plaintiffs have gathered such evidence, identification of these accountholders by CAB would be cumulative. To the extent Plaintiffs have *not* gathered such evidence, identifying these accountholders would not help to prove Plaintiffs' claims.

In fact, the mere identities of accountholders would not even establish JASTA's "general awareness" element, the centerpiece of Plaintiffs' argument. As the Second Circuit has repeatedly held, "[e]vidence that Defendant knowingly provided banking services to a terrorist organization, without more, ***is insufficient***" as the defendant must be "aware" that, by doing so, "it is itself assuming a 'role' in terrorist activities." *Weiss v. Nat'l Westminster Bank PLC*, 993 F.3d 144, 158 (2d Cir. 2021) (emphasis added) (citation omitted).[1] And Plaintiffs cannot prevail by proving "general awareness"; they must also prove that CAB "knowingly provid[ed] substantial assistance." *Twitter*, 598 U.S. at 495. Proving knowing, substantial assistance will necessarily also prove "general awareness," rendering evidence used ***solely*** to prove "general awareness" cumulative and redundant. Plaintiffs' reliance on "general awareness" reveals the extraordinarily limited import of the evidence.

Plaintiffs contend that for persons "designated by the United States as a Specially Designated Terrorist," "[e]stablishing the existence of the account would be the predicate for all other evidence that would establish CAB's liability." Resp. 8. (emphasis omitted). But the Second Circuit has repeatedly rejected the argument—advanced by these ***same*** Plaintiffs—that showing a bank was aware its customer had been named a SDGT and continued to service that customer can establish JASTA liability. *See Weiss v*, 993 F.3d at 152; *Strauss v. Credit Lyonnais, S.A.*, 842 F. App'x 701, 703 (2d Cir. 2021). The existence of an account is not evidence of how it was used; any such evidence must come from other sources, and Plaintiffs either already have that evidence or they do not. In any event, if it mattered, none of the customers on Plaintiffs' list that held CAB accounts during the relevant period were designated by OFAC as SDGTs during that time.

---

[1] In *Weiss*, the bank provided services to Interpal, which was designated as an SDGT. The Second Circuit explained that, even then, the client's identity alone was not enough to "create[e] a jury question as to whether [the defendant] generally was aware that it played a role in any of Hamas's or even Interpal's violent or life-endangering activities." 993 F.3d at 158 (citation omitted).

3

Ordering CAB to produce information which merely confirms that CAB held accounts for certain *undesignated* individuals is not "important" to the litigation.

*Second*, Plaintiffs argue that the evidence they seek is important because the "account-opening documentation may also contain relevant information supporting an inference as to what CAB knew about these customers at the time the accounts were opened, which would be relevant to CAB's general awareness of its role in assisting Hamas." Resp. 9. Plaintiffs do not, and cannot, dispute that their argument is inapplicable to the accountholders for whom CAB lacks account opening documents. And as to those accountholders for whom CAB does have account opening documents, as discussed above, Plaintiffs cannot prove "general awareness"—or any other element of their claims—simply by showing CAB suspected its customers were affiliated with Hamas or terrorism, without transactions showing, or allowing a court to infer, that the bank was aware it was playing a role in terrorism. And it is misleading for Plaintiffs to suggest that statements regarding "employment" in these account opening materials would even materially help to prove that much. Resp. 9. As Plaintiffs well know, no one applies for a bank account claiming they are employed at "Hamas" or work as a "terrorist."

*Third*, Plaintiffs assert that knowing the identity of the accountholders "may also help authenticate documents Plaintiffs have produced in discovery" by enabling Plaintiffs to match account numbers to documents. Resp. 9. But Plaintiffs identify no documents which they believe need to—and can be—authenticated in this way, nor do they cite any case law to support such a method of authentication. As a matter of common sense, merely showing that a document has a name and account number that matches a known name and account number does not establish the document "is what [Plaintiffs] claim[] it is." Fed. R. Evid. 901. If Plaintiffs obtained the document from a credible source, then that source should be able to authenticate it without the need for any

4

production by CAB. And if Plaintiffs did not obtain the document from a credible source, the information Plaintiffs seek from CAB will not solve their authentication problem.

***Finally***, Plaintiffs do not even attempt to defend the Order's error in "wrongly assum[ing] that all individuals and entities on Plaintiffs' lists . . . are 'associated with terrorist activity.'" Obj. 12 (quoting Order 9) (cleaned up). Instead, Plaintiffs gloss over the issue, repeating their own overbroad, vague, and unsupported assertion that all accountholders are "individuals and entities linked to Hamas." Resp. 1. Some accountholders are not even mentioned in Plaintiffs' Third Amended Complaint or any documents in Plaintiffs' production—meaning Plaintiffs have adduced ***no allegations or evidence about them whatsoever***. Others are individuals who Plaintiffs merely allege are related to other people who committed terrorist attacks. *See* Obj. 12. Genetic association alone is not a valid basis to assume that these individuals are "associated with terrorist activity."

II. **THE ORDER MISAPPLIES THE NATIONAL INTEREST ANALYSIS AND DISREGARDS THE HARDSHIP CAB FACES IN BEING COMPELLED TO VIOLATE LOCAL LAW.**

The Order also errs in failing to perform a case-specific national interest analysis and determining that the potential harms CAB faces are speculative. Order 13; *see also* Obj. 19.

***First***, Plaintiffs make the conclusory assertion that the Order contains a case-specific analysis of the U.S. national interests but offer no support for that proposition (because there is none). Resp. 9. Instead, they immediately pivot to arguing that the Order considers "two . . . cases [that] involved objections ***by Arab Bank***" (a different and unrelated bank), and pointing out the irrelevant fact that undersigned counsel also currently represents that bank. *Id.* (emphasis added). This case is not about Arab Bank. It is inappropriate for Plaintiffs to suggest that undersigned counsel's separate and independent representation of Arab Bank in other matters should influence this Court's determination as to what is the appropriate outcome here.

Further, Plaintiffs are wrong that because CAB and Arab Bank are governed by the same

5

Jordanian and Palestinian laws, all Plaintiffs need do is *allege* CAB aided and abetted terrorism for the U.S. to have a greater interest than Jordan or Palestine in any discovery requests Plaintiffs may opt to serve. *See* Resp. 9. That is the Order's error as well: accepting the generalized importance of combatting terrorism without engaging in a case-specific analysis of Plaintiffs' allegations against CAB, the specific production requests at issue, and the extent to which ordering CAB to violate Palestinian and Jordanian law by producing these particular records would advance U.S. interests. *See* Obj. 15. Neither Plaintiffs nor the Order addressed how discovery of ***the information Plaintiffs seek from CAB***—decades old, basic information about who had an account, not how the account was used—will sufficiently advance the U.S.'s interest such that it outweighs foreign governments' interests in bank secrecy.

***Second***, Plaintiffs fail to explain why it is appropriate to require direct evidence of prior enforcement to establish hardship, particularly where, as here, the request is coming from private litigants and the records are of minimal value. Instead, Plaintiffs once again erroneously pivot to Arab Bank, arguing that nearly two decades ago, Arab Bank produced documents to the U.S. government in response to a grand jury subpoena in violation of bank secrecy laws and did not suffer any consequences. Resp. 13–14. Plaintiffs did not fairly raise this argument in their Motion to Compel,[2] and CAB disputes their account of what occurred. In fact, CAB understands that Arab Bank's HLF production was made in connection with a state-to-state request from U.S. to Jordanian authorities and with the support of the Jordanian government.[3] When the U.S.

---

[2] In a footnote, Plaintiffs asserted that "[a]s far as Plaintiffs are aware, Arab Bank has never been prosecuted for the unauthorized disclosures it made to U.S. governmental authorities," but provided no explanation until now as to what alleged "unauthorized disclosure[]" they were referring to. ECF 290 at 10, n. 3.

[3] *See, e.g.*, Petitioner's Reply Br. on Petition for a Writ of Certiorari, *Arab Bank, PLC v. Linde*, 2013 WL 5436660 (S. Ct. Oct. 1, 2013), at *2 (stating Arab Bank provided HLF documents "to U.S. officials with permission and under mutual aid treaties" and "with the consent of its regulators").

6

government similarly requested CAB's account records relating to HLF, that request likewise went through the Central Bank of Jordan, CAB's regulator. *See* ECF 322-4 at 4 (Dec. 5, 2022 Al-Qassem Dep. Tr. 78:10-25 (Al Qassem)). In any event, whatever a different bank may or may not have decided to do two decades ago in a different context is not determinative here.[4]

The available evidence shows that CAB ***does*** face substantial potential hardship if it violates bank secrecy laws. CAB put forward experts' declarations regarding the very real risks to which CAB would be exposed (ECF 301 ¶ 42; ECF 302 ¶ 45), and Plaintiffs responded with no evidence whatsoever—not even an expert declaration. Other than the above-described speculation about Arab Bank, Plaintiffs have not identified ***any*** instance where a bank produced documents in violation of Jordanian or Palestinian bank secrecy laws. *See* Obj. 19–20. And Plaintiffs simply ignore the Kingdom of Jordan's amicus brief before the Supreme Court in *Linde*, which articulated Jordan's position regarding the importance of bank secrecy compliance. *See* Obj. 13. The Jordanian government even threatened to act against Arab Bank if it violated bank secrecy. *See Linde*, 2013 WL 5436660, at *1 (explaining that "the Lebanese and Jordanian governments say they will institute legal action against Arab Bank and its employees if it attempts to comply with the discovery orders." (quotation marks omitted)). And Arab Bank was sued by a Jordanian accountholder to prevent it from disclosing his account information. Decl. of Samantha Chaifetz, May 8, 2025, Ex. 1 at 14. The Jordanian Appellate Court forcefully took the accountholder's side, criticizing the *Linde* decision as "abat[ing] the authority of the Jordanian judicial system,

---

[4] The U.S. took the position in *Linde* that the district court erred by relying on actions Arab Bank took in response to U.S. government requests in the HLF matter. As the U.S. explained in its amicus brief before the Supreme Court, "[t]he balance of relevant interests is materially different when a private party seeks documents located in foreign jurisdictions" than when the U.S. government seeks those materials, including because "[p]rivate requests may intrude more deeply on foreign sovereign interests because private parties often do not 'exercise the degree of self-restraint and consideration of foreign governmental sensibilities generally exercised by the U.S. Government.'" Amicus Br. of United States, *Arab Bank, PLC v. Linde*, 2014 WL 2191224 (S. Ct. May 23, 2014), at *14.

7

constitut[ing] an infringement on the sovereignty of the state," and ordering that "the bank may not provide any information." *Id.* at 13, 15. Violating that order would have subjected the bank to severe penalties. *See* ECF 302 at 6. This evidence debunks Plaintiffs' claim that "there is nothing in the record indicating" hardship. Resp. 14 (quoting *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 197 (E.D.N.Y. 2010)).

### III. THE OTHER COMITY FACTORS WEIGH AGAINST COMPELLING PRODUCTION.

***Specificity***: Plaintiffs do not meaningfully respond to CAB's arguments as to why the Order does not conduct a proper "specificity" analysis. In fact, Plaintiffs appear to agree with CAB that it was erroneous to support that analysis by comparing the mere number of accounts at issue here to the number at issue in *Bartlett v. Societe Generale de Banque au Liban SAL*, 2023 WL 2734641 (E.D.N.Y. Mar. 31, 2023). *See* Resp. 10–11 (arguing *Bartlett* is "simply not analogous").

Further, as CAB previously explained, "specificity" requires considering ***why*** the names were included in the first place, and whether the "plaintiff request[ed] only documents that are important to litigating his claims." *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 421 (S.D.N.Y. 2016) (emphasis added). Plaintiffs once again falsely assert (in conclusory fashion and without any supporting evidence) that all the accountholders "are associated with Hamas terrorism in the complaint or with the specific attacks at issue." Resp. 10. But Plaintiffs undermine that assertion when they then argue that they "do not know the names" of the customers and that "the degree to which the identities" would "ultimately support[] CAB's liability is a question of fact for the jury, not discovery." Resp. 11. All of the accountholders were identified using lists provided by Plaintiffs, and Plaintiffs can and should be expected to articulate as part of the comity analysis why the evidence they seek ***as to every one of the names on those lists*** is "important to litigating [their] claims." *Laydon*, 183 F. Supp. 3d at 421. Ordering CAB to violate bank secrecy and produce documents relating to accountholders who Plaintiffs cannot establish are "terrorists, martyrs,

8

operatives, FTO leaders, [etc.]" would be inappropriate. *Miller*, 2023 WL 2731681, at *11 (limiting the production order to bank records for "terrorists, martyrs, operatives, FTO leaders, [etc.]").

*Alternatives*: The Order's lack of specificity also injures the alternatives CAB is pursuing. CAB is in the process of obtaining customer waivers[5] and is simultaneously undertaking the letters rogatory process. CAB has been tailoring its proposed letters rogatory with the goal of submitting letters that CAB believes are more likely to result in the Jordanian and Palestinian Authorities lifting bank secrecy. To that end, CAB has now circulated a proposal to Plaintiffs, so that the parties may meet and confer. CAB is not seeking to delay this process; however, as explained in CAB's Objections, the letters rogatory process is more likely to succeed if the requests to lift bank secrecy are specific and narrowly tailored. *Cf., e.g.*, *Bartlett v. Societe Generale de Banque au Liban SAL*, No. 19-cv-7 ("*Bartlett*"), ECF 421-1 at 6 (E.D.N.Y. July 19, 2004) (order from Lebanese authorities denying the court's letter rogatory request but expressing willingness to reconsider if the court "is able to provide . . . additional details concerning money laundering or terrorism financing allegations that are specific to each alleged account"); *see also Bartlett*, ECF 320 at 32 n.23 (recalling the importance of devising a "manageable list of accountholders" to present in letters rogatory).

*Location*: Plaintiffs appear to suggest that, in the context of ATA cases, the location factor is effectively irrelevant. Resp. 11 (arguing that in "***every*** bank secrecy case brought under the ATA considered information located outside the United States" and "it has ***never*** outweighed the important interests of the United States. . . ." (emphasis in original)). By that logic, the Court need not consider the comity factors at all. Plaintiffs' suggestion that the Court is merely a rubber stamp for a foregone conclusion is inconsistent with controlling case law and should be rejected.

---

[5]   CAB has had surprising success so far in obtaining customer waivers and is continuing its efforts.

9

*Good faith*: Even though Magistrate Judge Parker found that there is "insufficient evidence to ascribe bad faith to CAB," Order 14, Plaintiffs take it upon themselves to again misstate facts and malign CAB. As explained in ECF 303 and 341, CAB has accurately and consistently described its document retention and collection policies, as well as the documents it holds, making every effort to volunteer as much information as it can without violating its customers' rights. CAB has acted in, and continues to act in, good faith.

Finally, Plaintiffs' insinuation that CAB violated Rule 44.1 is unfounded. Rule 44.1 merely requires that "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." *See* Fed. R. Civ. P. 44.1, Advisory Comm. Note (1966). Plaintiffs do not—and cannot—suggest that they have not long been on notice of CAB's intent to raise foreign bank secrecy laws. *See, e.g.*, ECF 234 at 52, Dec. 11, 2023 Hearing Tr. 52:13–17 (Parker, J.) (asking Plaintiffs for their position "about the Bank Secrecy law"). Plaintiffs' argument is no more than a hypertechnical—and incorrect—assertion that CAB was required to serve some sort of document titled "Rule 44.1 notice." *See, e.g.*, *Desarrolladora Farallon S. de R.L. de C.V. v. Cargill Fin. Servs. Int'l, Inc.*, 666 F. App'x 17, 24 (2d Cir. 2016) (observing "Rule 44.1's notice requirement is highly flexible" and party "need only give sufficient notice to avoid unfair surprise" (internal quotation marks omitted)). Plaintiffs cannot credibly allege CAB's assertion of foreign bank secrecy has caused them any unfair surprise.

**CONCLUSION**

CAB respectfully urges this court to vacate the Order dated February 14, 2025, and to deny Plaintiffs' request to override bank secrecy. In the alternative, this Court should narrow the Order, directing CAB to seek authorization to disclose, and to disclose if authorized, account-opening documents for persons or entities alleged in the Third Amended Complaint to be involved with Hamas terrorist activity or the attacks at issue.

Dated: May 8, 2024

Respectfully Submitted,

*/s/ Samantha Chaifetz*
**DLA Piper LLP (US)**

Samantha Chaifetz
David Horniak
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4000
samantha.chaifetz@us.dlapiper.com
david.horniak@us.dlapiper.com

Anthony Coles
Margaret Civetta
Erin Collins
1251 Avenue of the Americas
New York, NY 10020-1104
(212) 355-4500
anthony.coles@us.dlapiper.com
margaret.civetta@us.dlapiper.com
erin.collins@us.dlapiper.com

*Counsel for Cairo Amman Bank*