USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/18/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
JULIE AVERBACH, *et al.*,                                     :
                                                              :
                                          Plaintiffs,         :     MEMORANDUM OPINION &
                                                              :            ORDER
                               -v -                           :
                                                              :
CAIRO AMMAN BANK,                                             :     1:19-cv-4-GHW-KHP
                                                              :
                                          Defendant.          :
                                                              :
------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Before the Court are Defendant Cairo Amman Bank's objections to an order by the Honorable Judge Kathryn H. Parker compelling Defendant to produce documents that are protected by foreign bank-secrecy laws. The Court has reviewed Judge Parker's determination for clear error or misapplication of law and found none. Accordingly, Defendant's objections are OVERRULED.

## II. BACKGROUND

Familiarity with this case is presumed. The reader is referred to the Judge Parker's three reports and recommendations for a comprehensive description of the facts and procedural history in this case, Dkt. No. 53; Dkt. No. 114; Dkt. No. 209, and to Judge Parker's order granting Plaintiffs' motion to compel for a description of the procedural history specific to Plaintiffs' motion, Dkt. No. 325 (the "Order"). Plaintiffs are United States nationals injured in a series of terrorist attacks (the "Attacks") between 2000 and 2004, as well as their estates, heirs, and families. Order at 1; Dkt. No. 280 ("TAC") ¶ 1217. Defendant Cairo Amman Bank ("Defendant" or "CAB") is a bank incorporated and headquartered in Amman, Jordan. TAC ¶ 500. Plaintiffs allege that Defendant aided and abetted the Attacks by facilitating the flow of money used by the terrorists to finance the

Attacks. *Id.* ¶¶ 1469–1500. They bring claims pursuant to the Anti-Terrorism Act ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), 18 U.S.C. § 2333(d). *Id.*

Plaintiffs seek the production of documents related to 66 accounts maintained by Defendant near the time of the Attacks. Dkt. No. 341 ("Objections") at 4; *see* Dkt. No. 291-1 ("Supplemental Al Qassem Declaration") ¶ 10. 57 of the accounts were opened between 2000 and 2003 by individuals or entities named in Plaintiffs' Second Amended Complaint. Supplemental Al Qassem Declaration ¶¶ 6, 8. 9 of the accounts were opened between 2000 and 2003 by individuals or relatives of individuals that Plaintiffs allege were associated with the Attacks but that were not named in Plaintiffs' Second Amended Complaint. *Id.* ¶¶ 6, 9.

On March 28, 2024, Defendant's Chief Executive Officer submitted a declaration stating that Defendant has retained minimal documentation on any accounts that were closed before 2009. *See id.* ¶ 7. The declaration also states that Defendant "does not possess any transaction records prior to 2009," other than certain documents "already produced to Plaintiffs." *Id.*

According to the declaration, 32 of the 66 accounts for which Plaintiff seeks documentation were closed before 2009. *See id.* ¶ 10. "[T]he only data [Defendant] possesses" for those accounts are the names of the accountholders and the dates on which the accounts were opened and closed. *Id.* ¶ 7. The remaining 34 accounts "remained open after 2009." *Id.* ¶ 10. The declaration states that Defendant possesses "account-opening documents" for those accounts, though it reiterates that Defendant does not possess transaction records for those accounts during the time period when the Attacks took place. *Id.* ¶¶ 7, 10; *see also* Objections at 7. According to Defendant, the account-opening documents contain, among other things, "know your customer ('KYC') materials," including certain "ID information" on the accountholders. Objections at 7 n.8.

On October 10, 2024, Plaintiffs moved before Judge Parker to compel the production of "all information and documents related to the 66 accounts" referenced in the declaration. Dkt. No. 289

2

("Motion"); Dkt. No. 290 ("Compel Memorandum"); Dkt. No. 291 ("Gielchinsky Declaration"). Defendant opposed the motion on November 14, 2024. Dkt. No. 303 ("Compel Opposition"); Dkt. No. 301 ("Katbeh Declaration"); Dkt. No. 302 ("Odeh Declaration"); Dkt. No. 304 ("Chaifetz Compel Declaration"). Defendant argued principally that the production of documents related to the 66 accounts would violate bank-secrecy laws in Jordan and Palestine, *see* Dkt. No. 299 (Notice of Intent to Raise Issues of Jordanian and Palestinian Law); Compel Memorandum at 1, and that principles of international comity weighed against compelling Defendant to produce the documents in violation of foreign law, *see* Compel Memorandum at 2.

On February 14, 2025, Judge Parker issued an order granting Plaintiffs' motion to compel. Order at 14–15. The Order first observed that there was no dispute that "the discovery sought by Plaintiffs would require violation of the bank secrecy laws of Jordan and Palestine." *Id.* at 5. It then identified and balanced the seven international-comity factors that courts in this Circuit have considered when determining whether to compel the "disclosure of information protected by foreign bank secrecy laws." Order at 4–6 (quoting *Linde v. Arab Bank, PLC*, 463 F. Supp. 2d 310, 314 (E.D.N.Y. 2006)). After assessing those factors, *id.* at 6–14, the Order concluded that production of the information sought by Plaintiffs was warranted despite the foreign bank-secrecy laws. *Id.* at 14. It set an extended production deadline of August 15, 2025, *id.* at 15, in order to allow Defendant the opportunity to submit letters rogatory to the Jordanian and Palestinian authorities requesting a waiver of their bank-secrecy laws before producing the documents, *id.* at 14–15.

Defendant filed objections to the Order before this Court on March 20, 2025. Dkt. No. 431 (Objections); Dkt. No. 339 ("Chaifetz Declaration"); Dkt. No. 350 ("Reply"); Dkt. No. 351 ("Supplemental Chaifetz Declaration"). Plaintiffs filed an opposition to the objections on April 21, 2025. Dkt. No. 346 ("Opposition"); Dkt. No. 347 ("Schlanger Declaration").

### III. LEGAL STANDARD

#### A. Aiding and Abetting under the Anti-Terrorism Act

As discussed, Plaintiffs bring aiding-and-abetting claims against Defendant pursuant to the ATA and JASTA, 18 U.S.C. § 2333. The ATA provides a cause of action for damages to "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs." 18 U.S.C. § 2333(a). In 2016, JASTA amended the ATA to permit U.S. nationals "injured by an act of international terrorism to recover from a person who aided and abetted or conspired in that act." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021). After JASTA, the ATA provides that "liability may be asserted as to any person who aids and abets, by knowingly or providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d)(2). "Person" for the purposes of Section 2333(d)(2) "include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 18 U.S.C. § 2333(d)(1); 1 U.S.C. § 1.

There are three elements to an aiding-and-abetting claim: "(1) that the person whom the defendant aided must have performed a wrongful act that caused injury, (2) that the defendant must have been 'generally aware of his role as part of an overall illegal or tortious activity at the time that he provided the assistance,' and (3) 'the defendant must have knowingly and substantially assisted the principal violation." *Kaplan*, 999 F.3d at 863 (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)) (alterations omitted); *accord Twitter, Inc. v. Taamneh*, 598 U.S. 471, 486 (2023) (citing *Halberstam*, 705 F.2d at 477). In the ATA context, the "general awareness" element, which is disputed here, requires that the defendant "knew that [it was] playing some sort of role in [the alleged terrorists'] enterprise." *Taamneh*, 598 U.S. at 497. This is "less demanding than a requirement that" defendant was fully aware of its role in enterprise, as the "attachment of the

4

'generally' modifier imparts . . . a connotation of something less than full, or fully focused, recognition." *Kaplan*, 999 F.3d at 863. Moreover, "[t]he defendant need not be generally aware of its role in the specific act that caused the plaintiff's injury; instead, it must be generally aware of its role in an overall illegal activity from which the act that caused the plaintiff's injury was foreseeable." *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 496 (2d Cir. 2021) (emphasis omitted).

### B. Objections to a Magistrate Judge's Order on a Nondispositive Matter

Defendant's Objections ask the Court to modify or set aside Judge Parker's Order granting Defendants' motion to compel discovery. "A magistrate judge's ruling on a motion to compel discovery is nondispositive." *United States ex rel. Integra Med Analytics LLC v. Laufer*, No. 17-cv-9424 (CS) (JCM), 2023 WL 4200865, at *1 (S.D.N.Y. June 27, 2023).

When a party objects to a magistrate judge's nondispositive ruling, the district court must consider the objection and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "[M]agistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Williams v. Rosenblatt Securities, Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (quoting *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013)). "A magistrate's ruling is contrary to law if it 'fail[s] to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Thai Lao Lignite*, 924 F. Supp. 2d at 512 (quoting *Moore v. Publicis Groupe*, No. 11-cv-1279 (ALC) (AJP), 2012 WL 1446534, at *1 (S.D.N.Y. Apr. 26, 2012)). A magistrate judge's order is clearly erroneous where "'on the entire evidence,' [the district court] is 'left with the definite and firm conviction that a mistake has been committed.'" *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). This is a "highly deferential standard" which "imposes a heavy burden on the objecting party." *Molnlycke Health Care US, LLC v. Greenwood Mktg., LLC*, No. 22-cv-3719 (CS) (JCM), 2024 WL

5

2048644, at *1 (S.D.N.Y. May 7, 2024) (quotations omitted). "The fact that reasonable minds may differ on the wisdom of granting [a party's] motion is not sufficient to overturn a magistrate judge's decision." *Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, No. 04-cv-3531 (LTS) (SLC), 2023 WL 8112804, at *1 (S.D.N.Y. Nov. 21, 2023) (quotation omitted).

### IV.   DISCUSSION

Defendant argues that two determinations in the Order were clearly erroneous or contrary to law. It argues that the Order improperly compelled the production of documents that are not "relevant to [Plaintiffs'] claim" as required by Fed. R. Civ. P. 26(b)(1) ("Rule 26(b)(1)"), Objections at 10, and that the Order improperly compelled the production of documents that are protected by foreign bank-secrecy laws, *id.* at 8. Neither determination is a basis for modifying or setting aside the Order.

### A. The Order's Determination That the Documents Are Relevant to Plaintiffs' Claim Was Not Clearly Erroneous or Contrary to Law

The Court finds no clear error or misapplication of law in the Order's determination that the compelled documents are "relevant" to Plaintiffs' claim for purposes of Rule 26(b)(1). Rule 26(b)(1) provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows:"

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "A district court has wide latitude to determine the scope of discovery" under Rule 26(b)(1). *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008). Moreover, "[a]lthough not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004) (collecting cases). Information is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence;

6

and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

The Order's determination that the compelled documents are relevant fell "within its discretion under Rule 26." *In re Agent Orange*, 517 F.3d at 103. The Order concluded that the documents are relevant to the second element of Plaintiff's aiding-and-abetting claim—the "general awareness" element—because "they may tend to show CAB's general awareness that it was providing financial services to individuals or entities involved in terrorism." Order at 10. It reasoned that while "the existence of any particular account would not render a bank liable for aiding and abetting terrorism, cumulative evidence showing CAB held many accounts for individuals known to be involved in terrorist activity may tend to demonstrate CAB's general awareness," particularly if CAB kept the accounts open after being made aware that the accountholders were involved in terrorism. *Id.* The Order correctly observed that other courts in this Circuit have found account-opening documents like the ones Plaintiffs seek here to be relevant to ATA claims because they "can . . . shed light on what [the defendant bank] did or did not know about its customers" who are alleged to have "engage[d] in terrorism." *Id.* at 10–11 (quoting *Miller v. Arab Bank, PLC*, No. 18-cv-2192 (HG) (PK), 2023 WL 2731681, at *5 (E.D.N.Y. Mar. 31, 2023)); *see also Schansman v. Sberbank of Russia PJSC*, 768 F. Supp. 3d 619, 640 (S.D.N.Y. 2025); *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 205–06 (E.D.N.Y. 2007).

Defendant has not demonstrated that the Order's determination was clearly erroneous or contrary to law. Defendant disputes the relevance of the accountholder identities corresponding to the 32 accounts for which account-opening documents are no longer available, Objections at 11–12, but it was not an abuse of discretion to conclude that if a multitude of the accountholders were designated or known to be members of the same international terrorist organization, that may tend to show Defendant's general awareness of its role as part of a terrorist enterprise. *See Miller*, 2023 WL 2731681, at *5; *see also United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985)

7

(observing that the "standard of relevance established by the Federal Rules of Evidence is not high"). Defendant also disputes the level of involvement in the Attacks of certain of the individuals identified in Plaintiff's discovery requests, Objections at 3–4; *see also* Dkt. No. 291-1 ("Supplemental Al Qassem Declaration") ¶ 10, but the involvement of those individuals is a fact question that the Order was not required to resolve in Defendant's favor in determining whether the documents Plaintiffs seek fall within the scope of discovery. *See Schansman*, 768 F. Supp. 3d at 639 (compelling production of bank documents implicated by foreign bank-secrecy laws, noting that the relevance standard applicable to the scope of discovery "normally does not require the evaluation of the merits of the case"). The Court observes that Defendant's principal argument against the relevance of those individuals' account information—that many of the individuals are "mere relatives of the alleged terrorists"—is not supported by the cases it cites. Objections at 12; *see Miller*, 2023 WL 2731681, at *11 (compelling production of account and transaction information corresponding to individuals plaintiff identified as, among other things, "terrorists, martyrs, operatives, . . . or *the family members of those individuals*" (emphasis added)); *Bartlett v. Société Générale de Banque au Liban SAL*, No. 19-cv-7 (CBA) (TAM), 2023 WL 2734641, at *8 n.13 (E.D.N.Y. Mar. 31, 2023) (contemplating discovery regarding individuals not named in pleading if plaintiff proffered information about their relevance). Plaintiffs proffered that the relatives on the lists are "close family members of those implicated in the attacks" and that "there is reason to believe they received reward payments based on the death or imprisonment of their close relative." Opposition at 5; *see also* Supplemental Al Qassem Declaration ¶ 6 n.2 (describing Plaintiffs' earlier proffer regarding these relatives as relatives of "individuals associated with the attacks and therefore potential beneficiaries of prisoner or martyr payments"). The Order did not abuse its discretion in determining, based on Plaintiffs' proffers, that account information corresponding to those relatives falls within the scope of discovery in this case. *See Miller*, 2023 WL 2731681, at *11; *Bartlett*, 2023 WL 2734641, at *8 n.13.

Having found no clear error or misapplication of law in the Order's determination that the documents at issue are relevant, the Court declines to modify or set aside that determination.

### B. The Order's Application of the International Comity Factors Was Not Clearly Erroneous or Contrary to Law

The Court also finds no abuse of discretion in the Order's determination that foreign bank-secrecy laws do not militate against the production of the documents in this case. "[T]he operation of foreign law does not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that law." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 109 (2d Cir. 2013) (quotations and alterations omitted); *accord Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court*, 482 U.S. 522, 544 n.29 (1987). "[W]here, as here, a party claims that foreign law prevents disclosure,"[1] the district court "'possesses wide discretion to proceed in whatever manner it deems most effective.'" *Linde*, 706 F.3d at 109 (quoting *Société Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 213 (1958)). "In exercising that discretion," courts in this Circuit consider the five factors provided in Section 442 of the Restatement (Third) of Foreign Relations Law of the United States (the "Restatement"):

> [T]he importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located."

*Id.* at 109–10 (quoting Restatement § 442(1)(c)). Courts also often consider "the hardship of compliance on the party or witness from whom discovery is sought" and "the good faith of the party resisting discovery." *King v. Habib Bank Ltd.*, No. 20-cv-4322 (LGS) (OTW), 2025 WL 965809,

---

[1] The party resisting discovery on the basis of foreign law bears the initial "burden of proving what that law is and . . . why it impedes production." *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 413 (S.D.N.Y. 2016) (quotation omitted; collecting cases). As discussed, there is no dispute that Defendant has carried its burden of demonstrating that the discovery Plaintiffs seek "would require violation of the bank secrecy laws of Jordan and Palestine." Order at 5.

9

at *3 (S.D.N.Y. Mar. 31, 2025); *accord, e.g.*, *In re Terrorist Attacks on September 11, 2001*, 03-mc-1570 (GBD) (SN), 2021 WL 5449825, at *10–11 (S.D.N.Y. Nov. 22, 2021); *Miller*, 2023 WL 2731681, at *10.

The Order correctly identified the seven factors to consider and concluded that they weighed in favor of compelling discovery. Order at 14. The Court finds no abuse of discretion in the Order's balancing of these factors. First, the Order appropriately gave special weight to the fifth Restatement factor, which weighs the competing interests of the United States and the foreign country whose laws would be implicated by an order compelling discovery. *Id.* at 6–9. That factor is widely considered to be "the most important" because "it directly addresses the relations between sovereign nations." *Laydon*, 183 F. Supp. 3d at 422 (quoting *S.E.C. v. Gibraltar Glob. Sec., Inc.*, No. 13-cv-2575 (GBD) (JCF), 2015 WL 1514746, at *5 (S.D.N.Y. Apr. 1, 2015)); *accord, e.g.*, *King*, 2025 WL 965809, at *4; *Schansman*, 768 F. Supp. 3d at 641; *Miller*, 2023 WL 2731681, at *11; *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 206 (S.D.N.Y. 2013); *Madanes v. Madanes*, 186 F.R.D. 279, 286 (S.D.N.Y. 1999). The United States has "'a substantial interest in fully and fairly adjudicating matters before its courts,'" *Schansman*, 768 F. Supp. 3d at 641 (quoting *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 46 (E.D.N.Y. 2007), and "a strong interest in combating terrorism and compensating victims of terrorist attacks," *Miller*, 2023 WL 2731681, at *12; *accord, e.g.*, *King*, 2025 WL 965809, at *4. Multiple courts have held that, taken together, these interests elevate the United States' interest in compelling discovery in ATA cases "to nearly its highest point." *King*, 2025 WL 965809, at *4 (quoting *Miller*, 2023 WL 2731681, at *11); *Schansman*, 768 F. Supp. 3d at 641; *Weiss*, 242 F.R.D. at 46; *Bartlett*, 2023 WL 2734641, at *11.

Jordan, for its part, has a strong interest in enforcing its bank-secrecy laws. Order at 8. But as the Second Circuit explained in *Linde*, the international comity analysis "invites a weighing of *all* of the relevant interests" of "the nations affected by the court's decision," not just those that militate

10

against discovery. 706 F.3d at 111 (emphasis in original). The Order correctly observed, as has the Second Circuit, that "Jordan . . . ha[s] expressed a strong interest in deterring the financial support of terrorism," and that this interest has "often outweighed the enforcement of [its] bank secrecy laws." *Id.* at 111–12; *see* Order at 8. Multiple courts have concluded that "where foreign bank secrecy laws conflict with international commitments to combatting terrorism," a country's interest in "'maintaining bank secrecy . . . must yield to the interests of combating terrorism and compensating its victims.'" *Schansman*, 768 F. Supp. 3d at 642 (quoting *Linde*, 463 F. Supp. 2d at 315); *see also Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 452–53 (E.D.N.Y. 2008).

The Order's analysis of the first Restatement factor—the importance of the documents to the litigation—was also not clearly erroneous or contrary to law. Defendant's primary objection is that the Order failed to conclude that the importance factor militates strongly against compelling production. *See* Objections at 9–11. The importance factor, however, weighs less heavily than the competing-interests factor discussed above. *See, e.g., Schansman*, 768 F. Supp. 3d at 642. In any event, multiple courts in this district have concluded that in evaluating the importance of the requested documents, "the Court need only consider [their] relevancy." *Reino De Espana v. Am. Bureau of Shipping*, No. 03-cv-3573 (LTS) (RLE), 2005 WL 1813017, at *7 (S.D.N.Y. Aug. 1, 2005); *accord Schansman*, F. Supp. 3d at 638 ("Courts in the Second Circuit have assessed the importance of the requested production by examining whether the requested production is relevant to plaintiffs' claims." (collecting cases)). As discussed, the Order did not abuse its discretion in determining that the documents are relevant, *supra* Part IV.A, and accordingly, the Order's determination that the importance factor weighed in favor of production has support in the relevant case law. *See Reino De Espana*, 2005 WL 1813017, at *7. The Order did not clearly err or misapply the law in its analysis of the first Restatement factor.

The Court has reviewed the Order's analysis and balancing of the remaining international-

comity factors and has found no clear error or misapplication of law.[2] The Court notes that while Defendant views Plaintiffs' motion to compel as mere "gamesmanship"—a play for sanctions by making an impossible demand and seeking sanctions when that demand is not met—Plaintiffs are plainly entitled to make demands for discovery of documents relevant to their claims, *see, e.g.*, *Laydon*, 183 F. Supp. 3d at 423 (observing that "the United States has an obvious interest in having its own procedural rules applied to discovery" (quotations omitted)), and in any event, the Order is clear that it has made no determinations regarding what sanctions, if any, would be appropriate if Defendant fails to comply with its order compelling discovery, *see* Order at 8 (distinguishing case law "made in the context of opposing sanctions ordered against the bank for failure to comply with discovery orders, rather than with the discovery orders themselves"). Any determination regarding sanctions, if made at all, would be made separately. *See Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 550–51 (E.D.N.Y. 2012) (determining whether to grant adverse inference after failure to produce discovery pursuant to ATA claims on foreign bank-secrecy law grounds); *see also Schansman*, 768 F. Supp. 3d at 630 (distinguishing between analysis of motions to compel discovery and motions for sanctions in ATA cases).

Because the Court finds that the Order's comity analysis was not clearly erroneous or contrary to law, Defendant's objections are overruled.

## V.     CONCLUSION

For these reasons, Defendant's objections to Judge Parker's February 14, 2025 Order are

---

[2] In a footnote, Defendant objects to the Order's choice to analyze the importance and specificity factors under the same heading. Objections at 16 n.17. The Order's analyses of the importance of the documents and the specificity of Plaintiffs' document requests are easily discernible. *See* Order at 9–11 (analyzing importance of documents); *id.* at 11 (analyzing specificity of Plaintiffs' request). And despite Defendant's arguments, the Order did not hold or imply that the importance and specificity factors are not distinct. Objections at 16 n.17. The Order made clear that it was considering the factors under the same heading "because the parties ma[d]e overlapping arguments that relate to both" factors in their briefing. Order at 9 n.1.

OVERRULED.

    SO ORDERED.

Dated: June 18, 2025
       New York, New York

_____
GREGORY H. WOODS
United States District Judge