UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVERBACH et al., | |
| Plaintiffs, | **ORDER ON MOTION TO EXCLUDE EXPERTS** |
| -against- | |
| CAIRO AMMAN BANK, | **19-CV-0004-GHW-KHP** |
| Defendant. | |

**HON. KATHARINE H. PARKER, United States Magistrate Judge:**

This case arises out of a series of terrorist attacks in Israel perpetrated by *Harakat al-Muqawama al-Islamiya* ("Hamas"), designated by the United States as a Palestinian terrorist organization, during the Second Intifada—a period of intense Israeli-Palestinian violence between 2000 and 2004 that included attacks on Israeli civilian centers, military installations, and buses.  Plaintiffs include United States nationals injured in the attacks, as well as the estates, heirs, and families of U.S. nationals killed or injured in the attacks.

Before this Court is Defendant Cairo Amman Bank's ("CAB") motion to preclude Plaintiffs from relying on the reports and/or testimony of three (3) expert witnesses.  This motion seeks to exclude all reports and proposed testimony of one expert, Ms. Lara Burns, and portions of the reports and proposed testimony of two others, arguing that the challenged evidence is inadmissible under the Federal Rules of Evidence and related case law.  The Court recently ruled that Plaintiffs' similar motion to exclude a number of CAB's experts was largely premature, though it granted the motion in part on a number of grounds. *See generally Averbach v. Cairo Amman Bank*, 802 F. Supp. 3d 605 ("*Averbach II*") (S.D.N.Y. 2025).  For the following reasons, Plaintiffs' motion is GRANTED in part and DENIED in part.

1

**BACKGROUND**

The Court previously set forth the operative facts in detail in its Report and

Recommendation on Defendant's Motion to Dismiss the Second Amended Complaint (ECF No.

114), which it now incorporates by reference. *Averbach v. Cairo Amman Bank*, No. 19-cv-0004

(GHW) (KHP), 2022 WL 2530797, at *2-5 (S.D.N.Y. April 11, 2022), *report and recommendation

adopted in part and deferred in part*, 2024 WL 3677339 (S.D.N.Y. Aug. 6, 2024).[1]  The Court

further incorporates its summary of Defendants' proposed expert testimony as set forth in its

prior order. *Averbach II*, 802 F. Supp. at 619-25.

Additionally, the Court incorporates by reference its discussion of the expert reports of

Ms. Martha Myers and Mr. Jonathan Benthall, *id.* at 648-51, whose expert opinions play a

central role in this motion.  This Court largely denied as premature the motion to exclude the

two experts in part but granted the motion in part as to a few points of their proffered opinion

evidence.  First, the Court prohibited the two experts from referring to Hamas as a "political

movement." *Id.*  Second, the Court prohibited Ms. Myers from opining on the views of the

international community regarding aid and martyr payments. *Id.*  Further, the Court prohibited

Mr. Benthall from opining as to "what individuals actually thought of [an] organization during

the relevant period," finding such testimony would veer impermissibly into state of mind

testimony. *Id.*  Finally, the Court prohibited the two experts from opining as to the

requirements of international and foreign law, as well as "the sufficiency of evidence of funding

---

[1] Although it was filed after the Report and Recommendation, the Third Amended Complaint filed on August 27, 2024, by Plaintiffs did not substantively alter the factual nucleus at the heart of this case.  Rather, it dropped the Anti-Terrorism Act ("ATA") claims for primary liability, focusing on the Justice Against Sponsors of Terrorism Act claims for aiding and abetting.  (*See generally* ECF No. 280.)  Accordingly, there is no need to modify the essential facts in the April 11, 2022 Report and Recommendation.

diversion." *Id.*  The Court deferred on whether the proffered opinion evidence from these two experts was "duplicative, cumulative, or bolstering," finding such a ruling was premature. *Id.*

The Court adds the following facts for the purposes of this motion.

### A.  Dr. Matthew Levitt

Dr. Levitt is the Fromer-Wexler Senior Fellow at The Washington Institute for Near East Policy and director of its Jeanette and Eli Reinhard Program on Counterterrorism and Intelligence.  He received a Bachelor of Arts in Political Science from Yeshiva University in 1992, and a Master of Arts in Law and Diplomacy and PhD in International Relations from Tufts University in 1995 and 2005, respectively.  He has extensive experience working in international relations and counterterrorism. (ECF No. 322-7, Exh. 1.)

He is offered to opine as to the history and ideology of Hamas, its structure, its leadership, its funding and financial support for its operations, and—most relevantly—the organizations it controls and/or dominates. (ECF No. 322-7, at 2-4.)

### B.  Mr. Arieh Spitzen

While the Court has generally reprised the relevant qualifications of the experts, Mr. Spitzen's resume has not been provided in connection with this (or, to the Court's knowledge and understanding, any other) motion.  There is no challenge to his qualifications on this motion.[2]

---

[2]  The Spitzen Report references his qualifications summarized at Appendix 1, but it was not provided to the Court. (ECF No. 322-6, at 1.)

He is offered to opine as to the establishment and organizational structure of Hamas, as well as its control of various entities and the profiles of three senior Hamas leaders. (ECF No. 322-6.)

### C. Ms. Lara Burns

Ms. Burns is the Head of Terrorism Research at the George Washington University's Program on Extremism. Previously, she was a Federal Bureau of Investigation ("FBI") Special Agent with more than twenty-three years of experience working on complex counterterrorism matters. She also trains local, state, and federal law enforcement on Hamas. (ECF No. 379-1, at 1.)

She is offered chiefly to rebut the testimony of Defendants humanitarian experts—Ms. Myers and Mr. Benthall. She opines that Hamas had a single goal of replacing Israel with "an Islamic state," utilizing charitable organizations and civilian infrastructure such as the Holy Land Foundation to raise funds for its terrorist activities and to "win the hearts and minds" of the Palestinian population. Further, she opines that Hamas's designation as a Foreign Terrorist Organization ("FTO") makes no distinction between its terror apparatus and its political bureau or civilian infrastructure. (ECF No. 379-1, at 1-3.)

As to the challenges she inveighs against Ms. Myers and Mr. Benthall, she notes they (1) ignore documentary and video evidence available from the criminal prosecution of HLF and its officials; (2) accept statements of HLF and/or *zakat* committee "functionaries" at face value; (3) ignore the findings of Israeli security agencies; (4) ignore or discount the findings of Palestinian security agencies; (5) emphasize "form over substance in assessing how these institutions functioned" leading up to and during the Second Intifada; and (6) (wrongly) emphasize the

4

significance of grants made by the United States Agency for International Development

("USAID"). (ECF No. 379-1, at 1-3.)

**LEGAL STANDARDS**

The Court incorporates by reference its discussion of the relevant legal standards

applicable to JASTA cases and motions to exclude experts by reference to its prior decision.

*Averbach II*, 802 F. Supp. 3d, at 625-30. It adds the following standards pertinent to the instant

motion.

### I.       Hearsay and Experts

"Hearsay is any out-of-court statement offered to prove the truth of the matter asserted

in the statement." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (citing Fed. R. Evid.

801(c)). Hearsay evidence is inadmissible unless another rule or law provides otherwise. Fed. R.

Evid. 802; *United States v. Glover*, No. 24-cr-370 (VSB), 2025 WL 1580848, at *3 (S.D.N.Y. June 3,

2025).

Pertinent here, Federal Rule of Evidence 703 provides:

> An expert may base an opinion on facts or data in the case that
> the expert has been made aware of or personally observed. . . .
> But if the facts or data would be otherwise inadmissible, the
> proponent of the opinion may disclose them to the jury only if
> their probative value in helping the jury evaluate the opinion
> substantially outweighs their prejudicial effect.

Consistent with this rule, an expert report "may not be used as a conduit for the inadmissible

hearsay of another, but an expert may rely on hearsay sources that she used in forming her

opinion." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 980 F. Supp. 2d 425, 442

(S.D.N.Y. 2013); *accord Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013).

**DISCUSSION**

CAB seeks to exclude (1) Ms. Burns's opinions in full and (2) similar portions of Dr. Levitt's and Mr. Spitzen's opinions.  The Court addresses each in turn.

1. **Ms. Burns**

CAB raises four grounds why Ms. Burns's opinions must be excluded:  (1) they fail to comply with Rule 702; (2) they are prohibited by the rule against hearsay; (3) their probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury; and (4) her proposed testimony and rebuttal report exceed the scope of rebuttal.  Because the Rule 702 arguments are a threshold issue, the Court addresses them first.  Further, because an analysis of the scope of rebuttal will clarify the issues on the subsequent questions, the Court addresses that argument second.  The others are addressed in the order they are raised.

A.  Rule 702

CAB argues that Ms. Burns's reliance on reciting the proceedings of the HLF criminal trial renders her report without a reliable methodology and without a discernible connection between her testimony and her expertise.

"[R]ebuttal experts must still meet *Daubert*'s threshold standards regarding the qualifications of the expert, sufficiency of the data, reliability of the methodology, and relevance of the testimony." *Franchitti v. Cognizant Tech. Sols. Corp.*, No. 21-cv-2174 (JMF), 2025 WL 2123655, at *5 (S.D.N.Y. July 29, 2025) (cleaned up).

CAB's chief objection on this point relates to Ms. Burns's discussion of evidence gathered during the criminal investigation and prosecution of HLF.  They argue her "recitation of the HLF

trial record is inadmissible because she is not bringing to bear any expertise, or applying any methodology, that would assist the trier of fact." (ECF No. 373, at 6.)  Plaintiffs respond that Ms. Burns is well qualified and applies a reliable and appropriate methodology. (ECF No. 377, at 9-11.)

The Court does not find any defect in Ms. Burns's qualifications or methodology.  She is well qualified to opine as to intelligence about Hamas's relationship with the subject entities and *zakat* committees because she has over two decades of experience working on complex counterterrorism matters, including while at the FBI where she gathered intelligence on Hamas and its funders, and trains local, state, and federal law enforcement on Hamas.

The Court likewise rejects CAB's argument that Ms. Burns's report is suffused with advocacy. *See In re M/V MSC FLAMINIA*, No. 12-cv-8892 (KBF), 2017 WL 3208598, at *8 (S.D.N.Y. July 28, 2017) (noting a report "embedded with advocacy is not what" courts look for from experts).  First, HLF is not on trial in this case, as CAB acknowledges.  Second, Ms. Burns does not "purport to 'opine' on the ultimate fact issues that this Court must find only after trial." *Id.* Rather, she offers opinions based on evidence gathered in the investigation and prosecution of HLF in an attempt to rebut CAB's experts' assertions regarding the relationships between Hamas and the subject entities and zakat committees, which might also bear on the perception of those relationships.

Further, the Court is not persuaded that Ms. Burns merely recites "what is or is not in a document," or acts "simply as a narrator of the facts," as CAB asserts. *See LaSalle Bank Nat'l Ass'n v. CIBC Inc.*, No. 08-cv-8426 (WHP) (HBP), 2012 WL 466785, at *16 (S.D.N.Y. Feb. 14, 2012); *Scentsational Tech., LLC v. Pepsi, Inc.*, No. 13-cv-8645 (KBF), 2018 WL 1889763, at *4, *8 (S.D.N.Y.

April 18, 2018).  CAB points to no specific portions of her report where she is purportedly acting simply as a narrator of the percipient facts in *this* case.  Rather, they point to embedded factual statements she makes while opining that Defendants' experts omitted key factual context from their opinions.  Nor can CAB argue that Ms. Burns is unqualified to opine as an expert simply because she has personal knowledge of what happened at the HLF trial; Rule 703 expressly permits opinions based on personal observation (of evidence, for example), and regardless, experts are not prohibited from giving lay testimony, which is permissible so long as the Court appropriately guards the reliability of the expert testimony and takes appropriate steps to avoid prejudicial effect from the dual capacity of the witness. *See United States v. Dukagjini*, 326 F.3d 45, 53-56 (2d Cir. 2003) (noting that witnesses serving in a dual capacity as fact and expert witnesses is permissible provided courts remain "vigilant" about ensuring expert testimony remains reliable); *see also United States v. Velissaris*, No. 22-cr-105 (DLC), 2022 WL 17076747, at *3 (S.D.N.Y. Nov. 18, 2022).  The Court found the same on the prior motion, which operated in CAB's favor. *See, e.g.*, *Averbach II*, 802 F. Supp. 3d at 637 (noting the opinions of Drs. Abed and Haddad were not excludable solely because they offered lay testimony).  Here, there are no clearly articulated concerns sufficient to raise doubts about the reliability of Ms. Burns's methods, and the risk of unfair prejudice is low since HLF's relationship to Hamas is a pertinent fact at issue in this trial and Ms. Burns's testimony generally addresses that issue.

Nor does the fact that she formed her opinions by relying on academic research, articles, and government information in creating her report render her methodology suspect, given that experts such as "security officials, social scientists, accountants or historians" are subject to different standards of reliability than those in the "hard sciences." *In re Terrorist Attacks on Sept.*

8

*11, 2001*, No. 03-md-1570 (GBD) (SN), 2023 WL 3116763, at *2-3 (S.D.N.Y. Apr. 27, 2023).  While it may be true that her "opinion was developed expressly for the purposes of testifying," *id.*, this alone is not a basis for excluding her.  The Court does not accept that Ms. Burns' review of the HLF record was inadequate (particularly because, as CAB admits, Ms. Burns was personally involved in the HLF investigation and trial).  And CAB's argument that she "cherry-pick[s] data that supports her conclusions and disregard[s] contrary data that is highly relevant to her conclusions" are cross-examination points going to the weight of her testimony, not the admissibility.  *See Daniels-Feasel v. Forest Pharm., Inc.*, No. 17-cv-4188 (LTS) (JLC), 2021 WL 4037820, at *16 (S.D.N.Y. Sept. 3, 2021).  Contrary to CAB's suggestions, Ms. Burns is not offered to opine whether HLF was or was not criminally convicted (it ultimately was, as both sides admit), or even whether it should or should not have been, but to opine that the trial involved evidence that CAB's experts failed to consider in rendering their opinions, which touch on the relationship between Hamas and the *zakat* committees.

However, for this same reason, the Court is concerned about the extent to which Ms. Burns's opinions could be construed to simply point to facts and evidence not considered by CAB's experts – something that can be brought out on cross-examination by attorneys and that does not necessarily go to CAB's experts' methodology.  To be sure, Ms. Burns is qualified to explain how terrorism experts evaluate information to ascertain if an organization is affiliated with a group such as Hamas, and that necessarily involves weighing information such as reports from foreign intelligence agencies and governmental agencies, something not within the ken of a typical juror.  The central potential defect in the Burns report, therefore, is not that Ms. Burns is unqualified or merely recites the HLF record, but the purpose for which it is offered.

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596 (1993).  "A 'reliability assessment does not require, although it does permit, explicit identification of a relevant scientific community and an express determination of a particular degree of acceptance within that community.'" *Id.* (quoting *United States v. Downing*, 753 F.2d 1224, 1238 (3d Cir. 1985)). "The trial court's task is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (Bankr. S.D.N.Y. 2003) (citation omitted).  "Speculative or conjectural" testimony should be omitted, as well as that "based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' or to be in essence an 'apples and oranges comparison[.]'" *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996).  However, "other contentions that the assumptions are unfounded 'go to the weight, not the admissibility, of the testimony.'" *Id.*  Regarding the weight of the testimony, "[i]n general, expert opinions which assess or critique another expert's substantive testimony are relevant, but opinions which attack an expert's credibility (*e.g.*, tha[t] an expert is lying) are not." *Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420, 481 (E.D.N.Y. 2011).

Here, large parts of Ms. Burns's report seem to suggest that CAB's experts are in some way biased—not that their reports are or were based on an unreliable methodology.  Proving bias is an essential purpose of cross-examination. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 51-52 (1987) (citing *United States v. Abel*, 469 U.S. 45, 50 (1984)) ("[T]he right to cross-examine

10

includes the opportunity to show that a witness is biased[.]").  Critically, this issue is animated by the uneven nature of how the parties have stacked their witnesses.  Plaintiffs seek to introduce evidence of Hamas control over various entities to prove, at least in part, that CAB was generally aware of its role in the subject attacks.  To rebut this general awareness, CAB then introduces witnesses to say, essentially, that irrespective of who actually controlled the relevant entities, the general public was unaware that these entities were controlled by Hamas, making it less likely that CAB was aware.  Plaintiffs then offer Ms. Burns to support their view of Hamas's actual control and elucidate a purpose behind Hamas's use of civilian infrastructure and charitable organizations—to "win hearts and minds," which presumably could only work if people, in fact, knew about Hamas's involvement in the subject charities.

The second point—that Hamas's involvement in these charities was open and notorious as part of a strategy to win support of the Palestinian people—is admissible and indisputably within Ms. Burns's expertise as a counterterrorism expert.  However, the first point—that HLF was actually controlled by Hamas as shown through evidence introduced at the HLF trial (which, relevantly, post-dated the subject attacks)—is more tenuous in how it is connected to the relevant experts' methods (and the scope of the rebuttal).  It is not immediately clear why this point responds to the claims of Plaintiffs' experts, who chiefly if not exclusively opine on whether the Palestinian public knew of the Hamas connection to various subject charities.  This proffer may thus be more appropriate for cross-examination.

Thus, CAB finds firmer footing when it argues—expressly for the first time on reply, though it could perhaps be inferred from their arguments regarding the scope of Ms. Burns's rebuttal in their initial brief—that Ms. Burns's testimony is a substitute for attorney cross-

11

examination.  The opinions for which Ms. Burns is offered each generally attempt to undermine the opinions of the opposing experts on the grounds that they failed to consider key information.  There may be substantial overlap between her opinions offered at trial and questioning properly within the scope of Plaintiffs' attorneys' cross-examination.  While it is theoretically possible that Plaintiffs must offer pieces of Ms. Burns's testimony to serve as a foundation for any such cross-examination, that has not yet been argued—especially since CAB expressly raises this argument for the first time on reply.  Indeed, it may be that some portions of Ms. Burns' testimony do impermissibly violate the boundary of judging expert credibility rather than methodology, while other portions do not.  At this point, given her nature as a rebuttal witness, the Court has no occasion to consider how the evidence will be offered at trial or whether it will take the form more of permissible "contrary evidence" or potentially prejudicial evidence substituting for "vigorous cross-examination."  Thus, while there is some persuasive effect of CAB's argument on this point, the Court finds it is pre-mature to decide whether any of her testimony dips impermissibly into attorney cross-examination.

Accordingly, the motion is denied without prejudice as to the Rule 702 challenge.[3]

B.  <u>Scope of Rebuttal</u>

CAB raises that Ms. Burns should be excluded for exceeding the scope of a rebuttal opinion.

---

[3]  CAB has made only a general challenge to her qualifications and reliability, focused chiefly on her general discussion of the HLF trial and evidence.  Thus, as with the prior motion, the Court's opinion shall be limited to the specific arguments expressly raised in this motion and without prejudice to other objections that may be raised at trial. *See Averbach II*, 802 F. Supp. 3d, at 651.

Federal Rule of Civil Procedure 26 contemplates that parties may wish to submit "expert testimony that is 'intended solely to contradict or rebut evidence on the same subject matter identified by another party.'" *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)). "The function of rebuttal evidence is to explain or rebut evidence offered by an opponent." *United States v. Tejada*, 956 F.2d 1256, 1266 (2d Cir. 1992); *accord Sci. Components Corp. v. Sirenza Microdevices, Inc.*, 03-cv-1851 (NGG) (RML), 2008 WL 4911440, at *2 (E.D.N.Y. Nov. 13, 2008) ("Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party.") (quoting *Crowley v. Chait*, 322 F. Supp. 2d 530, 531 (D.N.J. 2004)). "'The scope of a rebuttal is limited to the same subject matter encompassed in the opposing party's expert report," though what constitutes the "same subject matter" is not necessarily narrowly construed. *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 138-39 (quoting *Scott*, 315 F.R.D. at 44). District courts have wide discretion to determine whether to permit rebuttal evidence. *Tejada*, 956 F.2d at 1266.

CAB asserts that Ms. Burns offers "affirmative evidence under the guise of rebutting Myers and Benthall, who opined only on the ***perception*** of charities, not their ***actual*** affiliation or control." (ECF No. 373, at 11.) Plaintiffs respond that their opinions regarding perception rely upon evidence "concerning the *actual* organizational independence of these same institutions," requiring Ms. Burns's correction. (ECF No. 377, at 14.)

CAB's argument is difficult to square with the way that it has presented Ms. Myers and Mr. Benthall. While these experts will opine chiefly as to public perception of the pertinent charities, they are offered in large part to dispute the contentions made by Plaintiffs' experts,

Dr. Levitt and Mr. Spitzen.  As CAB acknowledges, Dr. Levitt and Mr. Spitzen are offered in large part to opine on the *actual* relationship of control between Hamas and the pertinent charities and *zakat* committees. (ECF No. 378-2 ¶ 2; ECF No. 378-4 ¶ 2; ECF No. 373, at 14-21.) Moreover, the portion of Ms. Burns's opinions that deals with Hamas's strategy to win public support does respond, at least in part, to the public perception evidence offered by Ms. Myers and Mr. Benthall.  And Plaintiffs may wish to argue that the evidence of Hamas's control over the entities makes it more likely that CAB had the requisite general awareness (among potentially proving other elements of the JASTA standard).

Indeed, there are at least portions of the opinions offered by Ms. Myers and Mr. Benthall which address, on some level, the issue of whether Hamas controlled the subject entities.  Ms. Myers, for example, opines about the funding sources of the relevant entities, the governmental oversight of those entities, IDF action taken against the entities, the founding and leadership of some entities, and the business procedures which had been used at some of them (*See, e.g.*, ECF No. 378-2 ¶¶ 70, 103, 135, 191.)  Mr. Benthall opines about the evidence for whether *zakat* committees were "*actually* dominated" by Hamas-affiliated or sympathetic individuals, whether individuals were told that about Hamas "actually controll[ing]" the *zakat* committees, and the availability of evidence among the Palestinian population which might show Hamas's control or domination of the committees. (ECF No. 373-4 ¶¶ 82, 103, 152.)  While the Court appreciates the fine distinction that CAB wishes to draw regarding this testimony, it may also have the effect of tending to prove whether a given charity was, in fact, controlled or dominated by Hamas.  In other words, the line between the perceptions of Hamas control and the reality of that control blur together and cannot be clarified except through evidence and then legal argument.  CAB's

14

argument that Ms. Burns' proposed testimony is not in the nature of rebuttal is thus not fully persuasive.

In sum, much of the question regarding scope cannot be determined at this juncture. The Court concludes it is premature to determine that Ms. Burns's testimony exceeds the scope of the opinions presented by Ms. Myers and Mr. Benthall.  Simply put, if they are presented in such a way that could give the impression of disputing the *actual* control of an entity or *zakat* committee, then Plaintiffs must have the opportunity to rebut such an inference.  This conclusion applies with equal force to the other grounds on which CAB challenges Ms. Burns, namely that she "impliedly concedes in her report that she is attacking a straw man" because she criticizes their characterization of intelligence information.  Thus, on this ground, the motion is denied as premature.[4]

C.  Hearsay & Rule 403

CAB argues that Ms. Burns's opinions rely extensively on repeating hearsay, specifically (i) the recitation of the HLF trial record, and (ii) the statements of Hamas leaders in 1993 FBI wiretaps.  They also allege that her testimony regarding the HLF trial and related caselaw will require a "trial-within-a-trial" on HLF, resulting in unfair prejudice, misleading the jury, and confusion of the issues.

---

[4]  Under its arguments about rebuttal scope, CAB also seems to raise an issue of duplicative or needlessly cumulative evidence presented by Ms. Burns, saying her opinions duplicate Mr. Spitzen's and Dr. Levitt's.  Ruling on that question is also premature, though the Court's analysis in this Opinion of the use of "control," "alter ego," and similar terms applies with equal force to all three experts.

CAB calls Ms. Burns's recitation of hearsay "egregious and pervasive." (ECF No. 373, at 9.) Plaintiffs reply this argument "fundamentally mischaracterize[s] the nature of Ms. Burns's testimony and the applicable evidentiary rules." (ECF No. 377, at 11.)

CAB points to two specific parts of her report.  First, they note that her report states, "The Fifth Circuit Court of Appeals, reviewing the HLF trial record, ultimately agreed that this evidence was credible and compelling." (ECF No. 378-1, at 9.)  Second, they note she "quotes Hamas leaders from 1993 FBI wiretaps as saying: 'we gave the Islamists $100,000 and we gave the others 5,000.'" (ECF No. 378-1, at 12.)  Plaintiffs supply further examples of potential "hearsay" to demonstrate how these statements are used not to offer the truth of the matters asserted in the out-of-court statements but to critique the methodologies of CAB's experts. Specifically, they cite an early Hamas publication calling for "Jihad and Martyrdom" and soliciting donations for the predecessor entity to HLF. (ECF No. 378-1, at 6 n.20.)  They also point to a 1991 memorandum recovered by the FBI during a search of a U.S.-based Hamas official's home, which they say shows Hamas's control over "various" *zakat* committees. (ECF No. 378-1, at 10 & n.33.)

It is difficult to see how this testimony veers into inadmissible recitation of hearsay. Indeed, in similar cases regarding liability for international terrorist acts, courts have found "proposed testimony" of experts like Ms. Burns (specifically, of Dr. Levitt and Mr. Spitzen themselves) to be "generally" admissible, since they "bring to bear their terrorism expertise, and the types of sources they use are reasonably relied upon by experts in the field." *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 439 (E.D.N.Y. 2013).  Such is also the case here. Certainly, to critique the methodology of CAB's experts as unreliable, Ms. Burns has pointed to

evidence that she says they have ignored (wrongly, in her view), including some testimonial and documentary evidence which contains statements she recites in her report. The documentary and other evidence she references are well within the types relied upon by experts in her field, and there can be no question that her report does not merely "regurgitate" the hearsay, but assesses it in view of Ms. Burns's experience. *See id.*

But it is premature, at this stage, to determine whether any specific statement in her proposed testimony violates the rule against hearsay because it is unclear at this juncture to what extent it is offered to prove the truth of the matter asserted in the statement (among other issues that may be argued at an appropriate time). Certainly, the chief purpose of this evidence is to show what CAB's experts overlooked, and Ms. Burns could not opine on overlooked evidence that arguably renders CAB's experts' methodologies unreliable if she could not discuss what the evidence shows in at least some cases. Further, both parties have failed to address the various exceptions to hearsay which might apply to these statements under Federal Rule of Evidence 803. More fulsome argument is required as to each particular statement. At least some of the statements mentioned in the briefs appear to contain some indicia of reliability, which may permit her to testify to them. At this stage, however, the Court cannot exclude Ms. Burns's opinions in their entirety simply because she may recite some statements in her report which may constitute impermissible hearsay.

CAB next asserts that it will not be able "to cross-examine any of the declarants of the statements" Ms. Burns cites. It further argues that "some evidence she wishes to repeat ***was not even admissible at the HLF trial***."

17

CAB's arguments are not persuasive.  The Court agrees, of course, that "[t]he principal vice of hearsay evidence is that it offers the opponent no opportunity to cross examine the declarant on the statement that establishes the declared fact." *United States v. Reyes*, 18 F.3d 65, 69 (2d Cir. 1994).  Even so, CAB's argument is difficult to understand.  First, as the Court has noted, HLF is not on trial in this case—CAB is on trial for allegedly providing substantial assistance to Hamas in connection with the subject attacks that injured or killed Plaintiffs and/or their relatives by providing Hamas-affiliated individuals and supposed charities like HLF with banking services that may have ultimately benefitted Hamas' terror activities.  There is no dispute that the U.S. designated HLF a Specially Designated Global Terrorist ("SDGT") in 2001 or that the US prosecuted HLF and certain individuals associated with it for providing material support to Hamas (including by laundering money for it) and secured a conviction against HLF in 2008. *See United States v. Holy Land Foundation for Relief and Dev.*, No. 04-cr-0240-P, 2010 WL 11541819, at *1, *10 (N.D. Tex. May 24, 2010).  Second, the critique Ms. Burns raises is not that Ms. Myers and Mr. Benthall incorrectly opine on the admissibility of evidence in or outcome of the HLF trial—which they could not do, anyway, as such opinions would constitute testimony about the law—but that they ignored available evidence which might give a different impression of Hamas's control of various entities and *zakat* committees, and specifically of HLF.

Moreover, the Court rejects CAB's suggestion that if Ms. Burns testifies to evidence available from the investigation and prosecution of HLF of which she has personal knowledge, CAB must necessarily relitigate the entirety of the HLF trial.  The Court agrees that relitigation of this sort is not relevant, appropriate, or necessary to this case.  And while it is indisputable that CAB's potential civil liability under JASTA differs from HLF's criminal conviction under 18 U.S.C. §

18

2339B, *see, e.g.*, *Weiss v. Nat'l Westminster Bank, PLC*, 993 F.3d 144, 165-66 (2d Cir. 2021), the Court does not read Ms. Burns's report as confusing those issues.  Indeed, there is no dispute about HLF's conviction.  CAB thus inadequately explains how Ms. Burns's testimony will mislead the jury, confuse the issues, or result in unfair prejudice.  They fail to cite to any opinions in her report which expressly state or impliedly suggest that CAB should be liable simply because HLF was found liable (a suggestion which, for the avoidance of doubt, likely would be irrelevant, misleading, confusing, and unfairly prejudicial).  Ms. Burns's proffered opinion evidence will therefore not be excluded in its entirety on the basis that it contains some hearsay.  The motion is therefore denied on this point, without prejudice to raising hearsay challenges to specific statements to which she may seek to testify at trial as a rebuttal witness.[5]

On the other hand, although CAB does not raise this argument in their brief, Plaintiffs argued persuasively in their own motion to exclude CAB's experts that no expert should be permitted to testify as to the specifics of U.S. law.  The job of explaining the law belongs to the Court, not the experts. *See Averbach II*, 802 F. Supp. 3d at 641-44 (collecting authorities and applying these precedents to CAB's proposed experts).  Thus, it would be inappropriate for Ms. Burns to testify to what the Fifth Circuit concluded regarding the evidence at the HLF trial.  While she may note certain facts about the trial in her report—including the ultimate verdict, which CAB says it is not disputing—and discuss what evidence was collected, she may not say

---

[5] To the extent that CAB challenges Ms. Burns on the grounds that she impermissibly bolsters Dr. Levitt and Mr. Spitzen, a ruling on this issue is premature.  The Court does not yet know how these three witnesses' opinions will be introduced at trial.  However, the Court does note that it is unusual for a different witness to be called in rebuttal.  Since the parties have not briefed the question whether this practice is permissible, the Court does not decide it on this motion.

what the law of that case is or characterize the holdings of the courts.  The motion to exclude

Ms. Burns's proffered opinion evidence is granted to this limited extent.

### 2. "Control," "Alter Ego," and "Other Legal Terms of Art"

CAB argues that the Court should preclude all three of Plaintiffs' challenged experts (Ms.

Burns, Mr. Spitzen and Dr. Levitt) from using certain legal terms of art, including "control" and

"alter ego," which it claims are (1) improper legal conclusions, and (2) applied inconsistently

between Plaintiffs' experts.[6]  Plaintiffs say their experts do not provide legal conclusions and

courts have repeatedly approved Dr. Levitt's and Mr. Spitzen's materially similar testimony.

"[U]nder Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403

provides for exclusion of evidence which wastes time.  These provisions afford ample

assurances against the admission of opinions which would merely tell the jury what result to

reach … [and] *also stand ready to exclude legal opinions phrased in terms of inadequately*

*explored legal criteria.*" *United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988) (citing 1972

Advisory Comm. Note to Fed. R. Evid. 704).  "Since 'alter ego' is a legal term of art," courts have

determined use of the term in expert testimony to constitute "in effect a legal conclusion, at

least in part." *In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 115 (S.D.N.Y. 2020).

However, courts assessing claims of liability for acts of international terrorism have allowed

---

[6] As an initial point, the Court does not in this Opinion endorse CAB's articulation of the legal standard applicable to JASTA claims, an articulation that Plaintiffs dispute.  It argues that "Plaintiffs must establish that CAB aided and abetted Hamas—not that it merely provided banking services to some other entity that had ties to Hamas," and that Plaintiffs seek "[t]o close this gap . . . [by] offer[ing] expert testimony that these entities are controlled by, alter egos of, or agents of Hamas and may therefore be treated as interchangeable aliases of Hamas for the purposes of" JASTA. (ECF No. 373, at 14-15.)  The Court's Opinion herein, while referencing the standard, does so solely in evaluating the challenges to the experts under *Daubert*.  The parties will have the opportunity to litigate disputes about the articulation of the legal standard at summary judgment and/or trial.

testimony using the term "alter ego" where they do not usurp the Court's function of instructing the jury on the law because they do not utilize the legal definition or track courts' definition of the term. *Strauss, S.A.*, 925 F. Supp. 2d at 442.  Indeed, the court in *Strauss* specifically approved of substantially similar testimony offered by the experts in this case: Dr. Levitt and Mr. Spitzen. *Id.*

The Court agrees with Plaintiffs and finds the *Strauss* case to be on point and persuasive. The use of the terms "control," "alter ego," and "agent" in Plaintiffs' experts' reports sounds in the common usage of the terms, not the legal usage.[7]  The Court's conclusion is strengthened by the *Strauss* court's reliance on the persuasive opinion of Judge Weinstein in *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523, 534 (E.D.N.Y 2012).  This Court previously concluded Judge Weinstein's analysis was well reasoned and persuasive as to some of CAB's experts, *see Averbach II*, 802 F. Supp. 3d at 630-32, and finds it to be equally persuasive regarding Plaintiffs' experts.  Of note— though not controlling on this limited motion—Judge Weinstein permitted Dr. Levitt and Mr. Spitzen to testify on similar subject matter and found them qualified. *Gill*, 893 F. Supp. 2d at 533-34.

CAB's arguments to the contrary are unpersuasive.  In straining to make the argument that Plaintiffs' experts use legal terms of art, CAB acknowledges that the experts supply non-legal definitions of these terms while simultaneously presuming Plaintiffs offer this testimony to usurp the judge's role of explaining the law.  For example, CAB acknowledges that Dr. Levitt

---

[7] In one key way, *Strauss* differs from the case at bar:  *Strauss* was decided in the summary judgment phase.  This Court has attempted to isolate the portions of *Strauss* which assess only the admissibility of evidence, and ignored the portions connected to the merits, since the parties have not yet filed summary judgment motions.

discusses a "spectrum of control" and Mr. Spitzen uses an "eighteen-factor test for control [which] is a creation of his own devise." It follows, then, that these are not legal terms. They are common terms used by proposed expert witnesses—the qualifications of whom CAB has *not* expressly challenged[8]—who will opine on the relationship between Hamas and the subject entities and *zakat* committees. And these common terms are in fact needed because Plaintiffs are attempting to prove, among other things, that CAB's customers were helping Hamas and were intertwined with Hamas' terror activities, thus, Hamas' control over a CAB customer is a relevant fact. Nor is there any reason to believe at this juncture that the legal terms will be defined in the jury instructions in this case. If such terms of art were defined in legal terms in the jury instructions, the Court would have to revisit this ruling. But given that the only party on trial is CAB for allegedly providing knowing and substantial assistance to the Second Intifada attacks which injured Plaintiffs, there is no clear reason why the legal definitions of these terms would be supplied by the Court.

Thus, this case differs from those cited by Plaintiff. For instance, in *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-md-2542 (VSB), 2025 WL 354671 (S.D.N.Y. Jan. 30, 2025), the Court excluded evidence of alleged overcharges on the grounds that the expert's view of the overcharges was reached under "the wrong legal standard." *Id.* at *43. Such reasoning does not apply where, as here, the relevant opinions are not reached under the "wrong legal standard" but under a permissible and non-legal expert analysis. Further, as a

---

[8] CAB's challenge to Mr. Spitzen's "eighteen-factor test" for "control" on the grounds that "it has not been used or tested by any other expert" *could* be read as an argument that Mr. Spitzen is not qualified to opine on this test (or that his methodology is unreliable). But the Court finds *Strauss* and *Gill* persuasive on this point, and overrules the objection to the extent it is being made. There is no issue with Mr. Spitzen's qualifications or methodology. (*See* ECF No. 322-6, at 4-5.)

consequence of this Court's analysis, the legal standards cited by CAB for demonstrating alter ego liability and the existence of a joint venture relationship are inapt to this case. *See Platina Bulk Carriers Pte Ltd. V. Praxis Energy Agents DMCC*, No. 20-cv-4892 (NRB), 2024 WL 1194778, at *4 (S.D.N.Y. March 20, 2024); *DIRECTV Grp., Inc. v. Darlene Invests., LLC*, No. 05-cv-5819 (WHP), 2006 WL 2773024, at *5 (S.D.N.Y. Sept. 27, 2006). Nor does the Court read the Plaintiffs' expert reports to opine that there was a parent-subsidiary relationship between Hamas and the relevant charities and *zakat* committees it allegedly and admittedly used for multiple purposes, including some potentially legitimate charitable purposes.

Accordingly, for the purposes of determining the use of the terms "control," "agent," and "alter ego," this Court concludes that the assessment of the *Strauss* court is correct as it pertains to the relevant witnesses. The Court in *Strauss* clearly explained its reasoning, and contrary to CAB's arguments, its narrower ask to exclude only these terms does not change the essential persuasiveness of the *Strauss* decision. As a result, the motion is denied with prejudice as to these three terms with the understanding that the witnesses will make clear that they are using the terms only as they have defined them, and not as legal terms.

### Conclusion

In sum, CAB's motion is granted in part such that Ms. Burns may not opine as to U.S. law. The motion is otherwise denied, with prejudice as to prohibiting use of "control," "agent," and "alter ego," but otherwise without prejudice. The Clerk is respectfully directed to terminate the motion at ECF No. 372.

**SO ORDERED.**

Dated:    February 9, 2026
          New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge