OSEN LLC
ATTORNEYS AT LAW

190 Moore Street, Suite 272, Hackensack, New Jersey 07601
T: 201 265 6400 F: 201 265 0303

44 South Broadway, White Plains, NY 10601
T: 212 354 0111
www.osenlaw.com

October 13, 2026

**VIA ECF**

Hon. Katharine H. Parker
United States Magistrate Judge
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:** ***Averbach et al. v. Cairo Amman Bank*, 19-cv-00004-GHW-KHP**
**September 16, 2026, Order (Dkt. No. 498)**
**Unlocked Excel Spreadsheet of Mr. Gottlieb's Charts**

Dear Magistrate Judge Parker:

In response to the Court's September 16, 2026, Order ("Sept. 16 Order"), Plaintiffs have submitted their Excel spreadsheet to Chambers by email and are filing this letter on the docket, which also responds briefly to CAB's October 9, 2026, letter, Dkt. No. 505.[1]

The Sept. 16 Order directed the parties to submit via email to Chambers:

> an unlocked excel spreadsheet of Mr. Gottlieb's charts (with each chart being a separate excel page/tab) with two additional columns added as follows: One additional column shall, on a transaction-by-transaction basis, indicate the correction and/or clarification to the details of each such transaction (if any) that Mr. Alfaro identified in his report; and a second additional column identifying evidence produced in this litigation for each transaction, if any, as to whether the transaction was cancelled, blocked, or processed with a citation to that evidence.

In response, after obtaining a brief extension from the Court consented to by defense counsel, Plaintiffs converted Mr. Gottlieb's charts from their original format into Excel spreadsheet format and provided CAB with a copy on September 25, 2026. Subsequently, on September 30, Plaintiffs provided CAB with an initial draft of the spreadsheets with the two additional columns for defense counsel's review.

CAB advised Plaintiffs that it needed more time to review the data, and Plaintiffs consented to a further extension. Although defense counsel had said it would provide CAB's proposed edits and/or corrections by the close of business on Tuesday, October 6, it did not provide its version of

[1] This letter conforms to the Court's decision on sealing, Dkt. No. 206.

the Excel spreadsheets until 5:08 p.m. on the following day – with approximately ***1,750*** cells added or changed. This left Plaintiffs' counsel with less than 48 hours to review and meet and confer.

More importantly, CAB's revisions introduced a variety of *legal* arguments and an entirely new column to its version of the Excel spreadsheet that Plaintiffs' counsel objected was outside the scope of the Court's request. By contrast, the chart, as the Court ordered, seeks to identify which of *Mr. Alfaro's* corrections to or clarifications of Mr. Gottlieb's charts Plaintiffs do not object to and/or accept for purposes of summary judgment.

Thus, the issue is **not**, as CAB put it, whether "there is disagreement between the parties" such that "each side should succinctly state its position separately inside the cell," Dkt. No. 505 at 1. The issue is that in Plaintiffs' view it was inappropriate for CAB to insert what amounts to a sur-reply brief on legal arguments it either already made or wishes it had made in summary judgment briefing. The spreadsheet is supposed to encapsulate the *experts'* conclusions, not "the *parties[']* … positions," as CAB contends, *id.* at 3.

***First***, and chiefly, CAB contested hundreds of transactions as not "processed"—but not in the sense the Court or the experts meant. The Court asked if the *experts* agreed "whether the transaction was cancelled, blocked, or processed." Sept. 16 Order.[2] The experts treated nearly *all* of the transactions as "processed," meaning no evidence showed that they were "cancelled [or] blocked."[3]

CAB, however, demanded to add hundreds of objections arguing that the *parties* could not ultimately prove whether a transactional record was "processed" because the records (1) did not always include a CAB bank statement and (2) were mostly not produced by CAB, and thus could not be authenticated. These are not issues of dispute between the *experts*—as CAB itself admits, "[n]either Mr. Alfaro nor Mr. Gottlieb opined that the transactions were processed or that the documents are authentic." Dkt. No. 505 at 2 n.2 (emphasis omitted). ***But that is precisely why CAB's objection does not belong in the chart comparing the experts' conclusions.***

These are legal arguments appropriately raised in a brief, not here. In fact, CAB did not raise authentication of transactional records *at all* in the summary judgment briefing; whether that objection is available at the trial stage, it does not belong here, repeated hundreds of times in an already complicated chart whose scope was expressly limited by the Court to comparing the experts' conclusions.[4]

---

[2] In addressing the transfers at issue on CAB's personal jurisdiction motion, this Court found that "CAB concedes that these transfers occurred and were routed through New York" and that "there is no meaningful dispute that these transfers occurred." Dkt. No. 209 at 14-15. CAB's reliance on Mr. Gottlieb's deposition (Dkt. No. 505 at 2 n.2) misses the point: the Sept. 16 Order asks for the evidence produced as to whether each transaction was processed, with a citation, and that is what Plaintiffs' entries provide.

[3] Mr. Alfaro only noted in general terms that for some transactions the parties did not have access to CAB's records establishing that they were actually processed, *see* Alfaro Rep. ¶¶ 27 n.17 & 57, which language Plaintiffs offered to include in the chart, but CAB refused.

[4] In fact, Mr. Alfaro relied on third-party productions when they suggested a transaction was not completed—*i.e.*, when they benefited CAB. *See* Alfaro Rep. ¶¶ 61-63 nn.86, 90, 93-94 (relying on a correspondent bank's blocking

In its letter, CAB complains that *Plaintiffs* are being "argumentative" for calling these transactions "processed." Dkt. No. 505 at 3. Again, Plaintiffs use the term as suggested by the experts and the Court. CAB is right that "Plaintiffs have refused to allow CAB to separately state its position as to these affected cells," *id.*, but that is because this spreadsheet is not the appropriate place for the *parties'* positions; only the *experts'*.

CAB also argues that Plaintiffs' statement that some transactions are "'processed, then reversed,' or similar language" is "inaccurate" because CAB feels "'[p]rocessed' implies the transaction settled and funds were transferred, but when a transaction is reversed, or a check is returned, no funds are transferred." *Id.* Plaintiffs' more precise language is correct; "processed," as used by the experts, means just that—CAB processed it. That is, CAB—with whatever knowledge it had about a transaction or the parties to it—processed the transaction for payment. As the spreadsheet reflects, this has no effect on either expert's computations.[5]

In any event, Mr. Alfaro excluded these entries from his totals as returned checks, and Plaintiffs accepted that adjustment for purposes of summary judgment (*see* Pls.' Rule 56.1 Statement, Dkt. No. 470, ¶¶ 121-22, 495), so the description does not affect any figure.

***Second***, CAB added approximately 200 notations indicating whether a counterparty was designated as a Specially Designated Global Terrorist at the time of the transaction, a merits issue CAB has already briefed (i.e., as a basis for inferring CAB's knowledge of its role in terrorism financing). The experts did not dispute designation dates, and the Court did not ask for them to be included in the spreadsheet. Nonetheless, Plaintiffs offered to put the objection, despite its irrelevance, into a cover letter if the parties could agree on an appropriately drafted spreadsheet.

***Third***, CAB added an *entirely new column* purporting to provide the "memo line" data, another merits issue (i.e., what the transactions purported to be for) that CAB has already briefed. The experts did not dispute the memo contents, and the Court did not ask for memo data to be included in the spreadsheet. Nonetheless, Plaintiffs offered to put the objection, despite its irrelevance, into a cover letter if the parties could agree on an appropriately drafted spreadsheet.

***Finally,*** CAB argues that Plaintiffs "rejected … revised language" relating to Mr. Alfaro's opinions. Dkt. No. 505 at 3. Plaintiffs accepted CAB's proposed changes to the description of Mr. Alfaro's opinions where they accurately reflected his report and declined them where they did not. For example, CAB proposed to state that "Mr. Alfaro found evidence that [a November 21, 2003

notice, AV-PL001011-023 at 021; a handwritten notation that a payment was cancelled and returned on 5/18/04, AV-PL074838-952 at 888; and handwritten notations on a Swedish counterterrorism unit's summary, *id.* at 842, 886, 894). CAB did the same in its own Rule 56.1 Statement, relying on these documents to assert that "[t]he transaction documents themselves show that four of the five transactions were blocked . . . and thus were not received by CAB." CAB Rule 56.1 Statement, Dkt. No. 460, ¶ 290 (citing Alfaro Rep. ¶¶ 61-63).

[5] Furthermore, CAB and Mr. Alfaro mix banking terms, such as using the word "cancelled" to mean that a transaction was not ultimately completed. Precision is important here—for example, a "cancelled check," as the term is used in the evidence in this case, has been fully paid. A paid check is "cancelled" because it cannot be used again. CAB's decision to process a transaction (even if the customer reverses out the charge or a recipient declines to deposit it) is nevertheless evidence of CAB's mental state; whether a transaction was ultimately reversed or rejected by third parties does not eliminate that evidence.

AAF] transaction was blocked," but his report says the *opposite*: "I did not find evidence suggesting that this transaction was similarly blocked." Alfaro Rep. ¶ 44.

In reviewing the spreadsheet in an effort to be as accurate as possible, Plaintiffs identified and confirmed four errors that ***both* experts made**—two that favor CAB and two that favor Plaintiffs in terms of aggregate dollar amount—and the spreadsheet now notes each of those errors:

(a) <u>Blocked CBSP transfer</u>: An October 26, 2001, transfer of $25,100 from CBSP to the Al-Wafa account at CAB was blocked. A Crédit Lyonnais New York message states that the funds were held in a blocked account under OFAC rules (AV-PL016908). Although not identified as such by Mr. Alfaro, Plaintiffs' spreadsheet now reflects that transfer as blocked and excludes it. If corrected this would reduce the CBSP total in Plaintiffs' Rule 56.1 Statement (Dkt. No. 470, ¶ 660) from $312,112.96 to $287,012.96, and the Al-Wafa total from $395,858.96 to $370,758.96 (¶ 461).

(b) <u>Mistranslated check</u>: Arab Bank check no. 20673070, deposited to the Islamic Charitable Society of Hebron's account at CAB on February 19, 2001, was for $70,000, not $700,000. Plaintiffs have confirmed that the English translation both experts relied on misread the amount (AV-PL105194-196). Although not previously identified by either expert, Plaintiffs note the correction. For purposes of Plaintiffs' Rule 56.1 Statement, this would reduce the Islamic Charitable Society of Hebron total from $1,065,023.91 to $435,023.91 (¶ 495).

(c) <u>Pounds sterling recorded as dollars</u>: A June 27, 2003, Interpal transfer to the CAB account of the Islamic Society for Orphans Welfare – Yatta was £22,660, as NatWest's payment record shows (AV-PL016918; AV-PL017520), not $22,660. The mistake was made by both experts. At the exchange rate Mr. Alfaro applied to another Interpal payment that day, it was worth $37,382.20. For purposes of Plaintiffs' Rule 56.1 Statement, this would increase the Interpal total from $3,166,539.73 to $3,181,261.93 (¶ 659).

(d) <u>Jordanian dinars recorded as dollars</u>: A January 4, 2000, deposit to the Hebron Zakat Committee's account at CAB was for JOD 11,000, not $11,000, as the bank's printed line and the riyal-to-dinar notation on the deposit slip show (AV-PL105173-174). The mistake was made by both experts. At Mr. Alfaro's rate for January 4, 2000, the OANDA bid rate of 1.40449 dollars per Jordanian dinar (Alfaro Rep. ¶ 65 & n.95), the credit was worth $15,449.39. For purposes of Plaintiffs' Rule 56.1 Statement, this would increase the Hebron Zakat Committee total from $31,897.86 to $36,347.25 (¶ 515).

These corrections would also change the overall totals from Mr. Gottlieb's report that Plaintiffs cited in their response to CAB's Rule 56.1 Statement. *See* Pls.' Resp. to Rule 56.1 Statement in Support of Defendant Cairo Amman Bank's Motion for Summary Judgment ¶ 155, Dkt. No. 474 (citing Gottlieb Rep. at 5, 7). Deposits into the Other CAB Accounts would go from $5,452,354.24 to $4,816,425.83, and combined deposits (including the HLF accounts' $6,896,695.10) would go from approximately $12.35 million to approximately $11.71 million.

**In sum,** Plaintiffs learned of CAB's materially new positions for the first time three weeks after the Sept. 16 Order issued and less than two days before the submission was due.

We therefore explained to defense counsel that we would not agree to incorporate into the Excel spreadsheet what amounts to a CAB sur-reply brief on other issues. We offered to include CAB's positions in a joint letter to the Court, which CAB declined. We proposed including Mr. Alfaro's caveat about incomplete records after every transaction that CAB (but not Mr. Alfaro) disputed as processed, but CAB refused—and now blames *Plaintiffs* for providing language after "2 PM," Dkt. No. 505 at 2. Indeed, Plaintiffs' counsel spent many hours attempting to find compromise language (and many more hours identifying and removing language and errors inappropriately inserted by CAB) while staying within the borders of the Sept. 16 Order.

Plaintiffs are therefore submitting the requested Excel spreadsheet solely on behalf of Plaintiffs. This version differs from the version Plaintiffs sent CAB on September 30, 2026, in that it (1) addresses the errors CAB identified in Plaintiffs' entries, (2) corrects the wording of certain entries without changing the experts' conclusions, and (3) does not include the compromise language Plaintiffs offered to CAB on October 9, which tracked Mr. Alfaro's own report, because CAB rejected that compromise. Plaintiffs believe this submission complies with the Sept. 16 Order in addition to making important corrections to the totals.

Respectfully submitted,

/s/ Dina Gielchinsky

cc: All counsel (via ECF)