**DLA Piper LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
www.dlapiper.com

David Horniak
david.horniak@us.dlapiper.com
T 202.799.4361
F 202.799.5361

October 13, 2026

**VIA ECF**
Hon. Katharine H. Parker
United States Magistrate Judge
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *Averbach et al. v. Cairo Amman Bank*, 19-cv-00004-GHW-KHP

Dear Magistrate Judge Parker:

Enclosed please find Cairo Amman Bank's version of the spreadsheet it has prepared in response to this Court's order dated September 16, 2026 (ECF 498) ("Order"). As described in CAB's letter dated October 9, 2026 (ECF 505), this version reflects both Plaintiffs' position (as submitted in their spreadsheet earlier today) and CAB's position on Mr. Alfaro's adjustments and whether transactions were "cancelled, blocked, or processed." For ease of the Court's review, in each tab of the spreadsheet, we have kept Plaintiff's position in its own column and added CAB's position in the column next to it.[1] We have also marked all of CAB's additions with red font. Blank cells in CAB's columns mean CAB is not currently disputing, as to those transactions, Plaintiffs' description of Mr. Alfaro's adjustments and/or whether the transactions were "cancelled, blocked, or processed."

There are also a handful of instances where CAB's expert, David Alfaro, disagrees with Plaintiffs' characterization of his opinions in their spreadsheet; for those entries, this version reflects both Plaintiffs' characterization of his opinions and Mr. Alfaro's own description of his opinions. We have used red font to identify every cell that differs from Plaintiffs' spreadsheet submitted earlier today.

CAB believes its version of the spreadsheet accurately reflects the information this Court ordered the parties to provide. Plaintiffs argue that the Court "asked if the experts agreed 'whether the transaction was cancelled, blocked, or processed.'" ECF 506 at 1. The Order, however, did not ask the parties to state only what Mr. Gottlieb and Mr. Alfaro opined; rather, it requested a column

[1] Last week, we proposed to Plaintiffs that the information be combined into a single column, with cells where the parties differ showing "Plaintiffs' position: …" followed by "Defendant's position: …." At this stage, we believe separate columns may better facilitate your review and make clear that we have not altered Plaintiffs' text.

DLA PIPER



"identifying evidence produced in this litigation for each transaction, if any, as to whether the transaction was cancelled, blocked, or processed with a citation to that evidence." (Emphasis added). This necessarily goes beyond what the experts opined.

Further, Plaintiffs' view that these transactions were "processed" does not come from the experts; it is Plaintiffs' own preferred interpretation of the documentary evidence. As CAB explained in its letter dated October 9, neither Mr. Gottlieb nor Mr. Alfaro opined that transactions were "processed." *See* ECF 505 at 2 n.2 & Exs. A-B. Plaintiffs argue these experts "treated" the transactions as processed, ECF 506 at 2, but that is not true. In fact, both experts expressly disavowed analyzing and opining on that issue. The experts simply tallied the information reflected on the face of the documents without determining, one way or the other, whether the documents were authentic and the transactions were actually completed. In a few instances Mr. Alfaro identified documents that suggested certain transactions had been blocked or cancelled and therefore not processed. But, as he expressly observed, that does not mean that other transactions were processed: "I am unable to verify whether the amounts enumerated in Mr. Gottlieb's summaries in the MSG Report represent the actual transfer of funds or merely proposed transactions that were never processed." Alfaro Rep. ¶ 57. Plaintiffs nonetheless insisted that the evidence shows hundreds of these transactions have been "processed," and that only Plaintiffs' interpretation of that evidence, and not CAB's, could be included in the spreadsheet. CAB could not agree to that.[2]

The rest of Plaintiffs' assertions are red herrings.[3] As explained in CAB's October 9 letter, CAB offered to Plaintiffs to forgo including SDGT and memo field information in order to prepare a joint spreadsheet, so Plaintiffs' recitation of the parties' discussion of these items is irrelevant.[4]

---

[2] CAB did not ask Plaintiffs to change their position statement, only to separately include CAB's position statement.

[3] Plaintiffs complain about timing, but CAB received Plaintiffs' draft on Wednesday, September 30, at 3:30 PM and had its revisions back to Plaintiffs one week later, on Wednesday, October 6. During that time, CAB checked every cell of the spreadsheet against the underlying source documents and Mr. Alfaro's report, an extraordinarily time-intensive task. When CAB sent its edits back to Plaintiffs, it highlighted in red the cells that had changed and described its changes, the vast majority of which were simply to add "Defendant's Position" after the text Plaintiffs had drafted. Plaintiffs cannot deny that the real cause of the delay in submission was their decision, on Friday morning, to change text throughout the spreadsheet that Plaintiffs had drafted and which CAB had not edited or proposed to edit.

[4] CAB has omitted that information from its version of the spreadsheet. CAB will submit a revised version of the spreadsheet with that additional information if the Court requests it.

DLA PIPER



CAB never proposed to include “legal argument” in the spreadsheet; it simply wanted to succinctly state its position that the cited evidence did not support finding a particular transaction was “processed,” such as “Evidence cannot establish transaction was processed. Evidence is not from CAB, and CAB cannot verify it is a CAB document.”

Plaintiffs concede that they refused to work with CAB to find a mutually agreeable way to describe transactions that were reversed or returned, because Plaintiffs allege (inaccurately) that the experts described these transactions as “processed.” ECF 506 at 3. Plaintiffs also concede that they rejected Mr. Alfaro’s own description of his opinions—and refused to allow CAB to separately include that information—when Plaintiffs decided that, in their view, his description did not accurately reflect his report. ECF 506 at 3.[5]

Plaintiffs also purport to identify four additional errors that both experts allegedly made, and to have “corrected” those errors in their spreadsheet. CAB has not yet had an opportunity to review and evaluate these alleged errors (which Plaintiffs did not identify to CAB in advance of filing their spreadsheet with the Court). CAB takes no position on those alleged corrections at this time. CAB’s version of the spreadsheet continues to accurately reflect the contents of the parties’ expert reports, which are what is currently in the record before the Court. Plaintiffs’ attempt to amend their own expert’s report through this exercise is inappropriate, and demonstrates that Plaintiffs are perfectly happy for the spreadsheet to exceed the limits of the experts’ opinions when it suits Plaintiffs.

Finally, CAB wishes to emphasize that the Court does not need to resolve the parties’ disagreements over whether documents are authentic or transactions were “processed” in order to decide CAB’s summary judgment motion. CAB simply could not agree to a joint submission with Plaintiffs that inaccurately reflected its position, because (among other things) CAB could not risk Plaintiffs later arguing that CAB had somehow “conceded” documents were authentic or that the transactions were processed (just as Plaintiffs are have now falsely suggested with regard to Mr.

---

[5] As an example of this, Plaintiffs misrepresent Mr. Alfaro’s opinions by selectively quoting text from his report regarding a transaction that they allege was not blocked. *See* ECF 506 at 4. While Mr. Alfaro observed that he “did not find evidence suggesting that this transaction was similarly blocked,” he also “noted that the two blocked transactions occurred both before and after this transaction and were from the same account (Account number 00846006-9522 at FÖRENINGSSPARBANKEN),” and that he “also did not find evidence that this transaction was actually processed through CAB.” Alfaro Rep. ¶ 44.

DLA PIPER



Alfaro). As noted, CAB's arguments in its summary judgment papers do not depend on the Court resolving these disputes.

Respectfully submitted,

/s/ David Horniak
David Horniak